IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT on behalf of themselves and others similarly situated, | ) ) ) ) Case No.: 1:11-cv-1925 |
| Plaintiffs, | ) ) Judge Bucklo ) Magistrate Judge Keys |
| v. | ) ) |
| ADT Security Services, Inc., | ) ) |
| Defendant. | ) |

## DEFENDANT ADT SECURITY SERVICES, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs Vishva Desai ("Desai") and Philip J. Charvat ("Charvat") claim that they received three separate, unsolicited telephone calls using pre-recorded messages, purportedly promoting the services of Defendant ADT Security Services, Inc. ("ADT"). They claim that the calls violated Section 227(b) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), and seek to represent a class of other persons who received similar calls.

Section 227(b) of the TCPA provides a private right of action against an entity that "initiates" or "makes" a call using a pre-recorded message. Plaintiffs, however, nowhere plead that ADT initiated or made any of the three calls they received. Instead, they allege that ADT is liable because the calls were supposedly made "on behalf of" ADT. But Section 227(b) of the TCPA does not provide a cause of action against a defendant "on whose behalf" a call was made – the "on behalf of language" is instead contained in a different section of the TCPA upon which plaintiffs do not rely. 47 U.S.C. § 227(c)(5). And, even if there were some form of agency liability under Section 227(b) of the TCPA, the plaintiffs fail to plead sufficient facts, and

126245.1

do not offer any legal theory, explaining why ADT is responsible for the conduct of the persons who initiated the calls here. The Complaint should therefore be dismissed.

Plaintiffs' claims should also be dismissed because they are procedurally improper. For one thing, there is no basis for Charvat joining as a plaintiff here. Charvat – a professional TCPA plaintiff who resides in *Ohio* – re-asserts in this Court identical claims that he originally brought in the United States District Court for the Southern District of Ohio. But Charvat's claims involve different calls, on different dates, that were initiated by different entities, to different parties in different states with different messages, and rely on different subsections of Section 227(b). There is no factual nexus between Charvat's claims and Desai's, other than both calls allegedly mentioned ADT. Because any theory of liability against ADT necessarily depends on the connection (if any) between ADT and each of the three different entities that made the calls, the mere mention of ADT's name is insufficient to support joinder of Charvat's claims. The Court should thus reject Charvat's efforts at forum shopping and send him back to Ohio.

Plaintiffs have also failed to join indispensable parties in violation of Rule 19 – specifically, the entities that actually initiated or made the calls at issue. The Court should therefore either dismiss the complaint, or stay all proceedings until it can be determined who made the calls at issue and whether they can feasibly be joined. For example, it is not apparent that this Court has personal jurisdiction over the missing persons who made the calls to Charvat given that Charvat seeks to litigate in Illinois claims that arose in Ohio and that have no apparent connection to Illinois. Nor is it apparent that the missing person who made the call to Desai would be subject to personal jurisdiction here.

## FACTUAL AND PROCEDURAL BACKGROUND

Desai, an Illinois resident, brings this action against ADT alleging that on February 27, 2011, she received a call on her cellular phone, with an automated message mentioning ADT's name, from the number (574) 970-0866 ("Desai Call"). Am. Compl. ¶¶ 47-50. Desai does not allege that ADT made the call. Instead, she claims "upon information and belief, based upon the content of the Desai Call, ADT or a party authorized by ADT, and/or acting on behalf of ADT, placed the Desai Call." Am. Compl. ¶ 51. While the Amended Complaint itself hedges on the identity of the caller, it appears undisputed that Desai is not alleging that ADT placed the call. Indeed, to investigate the call, Desai served a subpoena[1] on EngageTel, Inc., a company to whom the number which placed the call had been sold, requesting "all documents concerning, and communications with, any entity or entities [] associated with the 'Desai Call'" and "[a]ll documents concerning ADT Security Services, Inc., or any agent, subsidiary or affiliate thereof."[2] In response, EngageTel stated it "does not have a relationship with ADT Security" and that the "end user" of the telephone number associated with the Desai Call was EMI, Inc., located at 14281 Spring Vista Lane, Chino Hills, California 91709.[3] (According to "google maps," that address is a family dwelling, with a swimming pool, located on a cul-de-sac in a residential neighborhood). ADT sent a cease and desist letter to EMI, Inc. and its president Christopher Long demanding that EMI, Inc. cease any telemarketing campaigns that may have utilized ADT's name or trademark in violation of ADT's rights.[4]

---

[1] The Court may properly consider the discovery that has taken place so far in determining whether the plaintiff has properly joined claims under ADT's Rule 21 motion. Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield, Inc., 49 F. Supp. 2d 709, 721 (D.N.J. 1999) ("[w]ith regard to severance decisions, the court is not required to consider anything in particular in reaching its conclusion.").

[2] See Exh. A Desai Subpoena to EngageTel, Inc.

[3] See Exh. B EngageTel, Inc. Response to Desai Subpoena.

[4] See Exh. C Cease and Desist Letter to EMI, Inc.

While initially bringing this action as the sole plaintiff, on April 18, 2011, Desai amended her complaint to incorporate Charvat's claims. Charvat is no stranger to TCPA claims. Over the past thirteen years, Charvat has filed at least thirteen TCPA complaints in his home state of Ohio.[5] Charvat originally brought his suit against ADT in the Southern District of Ohio (the "Ohio Complaint").[6] ADT filed a motion to dismiss the Ohio Complaint because, among other things, Charvat did not plead that ADT "initiated" the calls at issue. ADT relied on another case Charvat had brought against Dish Network in the Southern District of Ohio in which Charvat sought to hold Dish Network responsible for "robocalls" made by Dish Networks' authorized dealers. Charvat lost that case. Charvat v. Echostar Satellite, LLC, 676 F Supp. 2d 668, (S.D. Ohio 2009).[7] Rather than respond to ADT's Motion, Charvat amended his Ohio Complaint to include additional allegations, but still did not plead that ADT "initiated" the calls. On the day ADT's response to Charavat's Amended Ohio Complaint was due, and also the last day allowed without leave of court, Charvat voluntarily dismissed the Ohio Complaint, choosing instead to join suit here in Illinois (which has no known connection to the calls involving him).

Charvat pleads the same allegations here in Illinois as he did in the Amended Complaint he filed in Ohio. First, Charvat alleges that on September 7, 2010, "ADT, either directly or via one of its authorized dealers, employed the use of automated telephone equipment

---

[5] Charvat v. GVN Mich., Inc., 561 F.3d 623 (6th Cir. 2009) (affirmed dismissing the case for lack of subject-matter jurisdiction was); Charvat v. NMP, LLC, 703 F. Supp. 2d 735 (S.D. Ohio 2010) (dismissed for lack of jurisdiction); State ex rel. Charvat v. Frye, 868 N.E.2d 270 (Ohio 2007); Charvat v. Ryan, No. 2006-1647, 2007 Ohio LEXIS 3353 (Ohio 2007); Charvat v. Dispatch Consumer Servs., Inc., 769 N.E.2d 829 (Ohio 2002); Charvat v. GVN Mich., Inc., 2010-Ohio-3209 (Ohio Ct. App. 2010); Charvat v. Credit Found. of Am., 2008-Ohio-6820 (Ohio Ct. App. 2008); Charvat v. Farmers Ins. Columbus, Inc., 897 N.E.2d 167 (Ohio Ct. App. 2008); Charvat v. Telelytics, LLC, 2006-Ohio-4623 (Ohio Ct. App. 2006); Charvat v. Crawford, 799 N.E.2d 661 (Ohio Ct. App. 2003); Charvat v. Colo. Prime, Inc., No. 97APG09-1277, 1998 Ohio App. LEXIS 4292 (Ohio Ct. App. 1998); Charvat v. ATW, Inc., 712 N.E.2d 805 (Ohio Ct. App. 1998); Charvat v. Cont'l Mortg. Servs., Inc., No. 9912-10225, 2002 WL 1270183 (Ohio Ct. Com. Pl. June 1, 2000).

[6] See Charvat v. ADT Security Services, Inc., Civ. Action No. 2:11-cv-0093 (S.D. Ohio) (filed Jan. 1, 2011) (Judge George C. Smith).

[7] As explained below, that case was appealed to the Sixth Circuit, and then referred to the FCC.

to deliver a pre-recorded message" to his residential phone line ("Charvat First Call"). Am. Compl. ¶ 54. Charvat does not plead that ADT initiated the call and, again, it appears undisputed that ADT did not make the phone call. The call originated from the number (401) 558-0010.[8] Charvat avers that he followed instructions in the pre-recorded message to "reach a live operator" who claimed he worked for Direct Savings in Fort Lauderdale, Florida. Am. Compl. ¶¶ 58-59. Plaintiff (inaccurately) claims that Direct Savings is an "authorized dealer" of ADT, but pleads no details at all as to the nature of the relationship or how ADT is responsible for Direct Savings' activities. In fact, subpoenas suggest that the entity that initiated the telephone call was a company called Leads Direct Marketing.[9] On February 1 and April 15, 2011, ADT sent cease and desist letters to that Company's president, Pete Tolman, demanding that he and any affiliated entities cease any telemarketing campaigns that may have improperly utilized ADT's name or trademark.[10]

Charvat also alleges that on January 18, 2011, "ADT, either directly or via one of its authorized dealers, employed the use of automated telephone equipment to deliver a pre-recorded message" to his residential phone line ("Charvat Second Call"). Am. Compl. ¶ 74. Plaintiff does not allege that ADT initiated this call either. Instead, once again it appears undisputed that ADT did not make the call. Again, Charvat avers he followed instructions to reach a live operator who purportedly worked for a company called "Home Security" and was offering an ADT home security system. Am. Compl. ¶ 81. To investigate the origins of the call, Charvat served a subpoena on Fulltel, Inc., whom records indicated owned the phone number that made the call, for all documents identifying what entity or entities initiated the Second

---

[8] Although not pled in the Amended Complaint, Charvat provided ADT the telephone numbers from which the alleged calls originated from in his Fed. R. Civ. P. 26(a) initial disclosures.

[9] See Exh. D Engagetel, Inc. Response to Charvat Subpoena.

[10] See Exh. E Cease and Desist Letters dated Feb. 1, 2011, and April 4, 2011.

Call.[11] FullTel, Inc. responded that the phone number is part of a block of numbers used by its customer TM Caller ID.[12] There is no allegation in the Amended Complaint tying this entity to ADT and ADT also sent this entity a cease and desist letter.[13]

## ARGUMENT

I. **The Court Should Dismiss the Plaintiffs' Claims Because They Fail Sufficiently to Plead How ADT is Responsible for the Phone Calls at Issue**

    A. *Legal Standard For a Motion to Dismiss Pursuant to Rule 12(b)(6)*

In a motion to dismiss, this Court is required to take all factual assertions by the non-moving party as true. This Court is not, however, required to accept conclusory statements of law or unsupported conclusions of fact. McLeod v. Arrow Marine Transport, Inc., 258 F.3d 608, 614 (7th Cir. 2001). In order to survive a motion to dismiss, the allegations in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1947 (2009) (citing Twombly, 550 U.S. at 555). To state a plausible claim, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly at 555 (citation omitted). The plausibility standard is not met where plaintiff "pleads facts that are 'merely consistent with' a defendant's liability." Id.

    B. *The Complaint Should Be Dismissed Because ADT Did Not "Initiate" or "Make" the Calls At Issue*

---

[11] See Exh. F Charvat Subpoena to Fultell, Inc.

[12] See Exh. G Fultell, Inc. Response to Charvat Subpoena

[13] See Exh. H Cease and Desist letter to TM Caller ID.

- 6 -

This case is about so called "robocalls" prohibited by 47 U.S.C. § 227(b)(1). Desai and Charvat bring claims under separate sections of the statute. Section 227(b)(1)(B), dealing with calls to residential lines (like Charvat's) provides:

> It shall be unlawful for any person within the United States . . . **to initiate** any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes . . . .

47 U.S.C. § 227(b)(1)(B) (emphasis added). Desai allegedly received her message on a cell phone. 47 U.S.C. § 227(b)(1)(A) makes it unlawful to "**make** any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." (emphasis added).

In drafting § 227(b)(1), Congress chose to attribute liability only to the person that "**initiate[d]**" or "**ma[d]e**" the prerecorded call. Congress created a private right of action for such calls, but only for violations of the specific subsections set forth in the statute:

> A person or entity may, if otherwise permitted by the laws or rules of Court of a State, bring in an appropriate court of that State—
>
> (A) an action based on a violation of **this subsection** or the regulations prescribed under **this subsection** to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, or
>
> (C) If the court finds that the **defendant** willfully or knowingly violated **this subsection** or the regulations prescribed under **this subsection**, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3) (emphasis added).

There is no indication in the statute that Congress chose to create vicarious liability for phone calls that were not "initiated" or "made" by a "defendant," but were instead

- 7 -

126245.1

made "on behalf of" the defendant as plaintiffs claim. Am. Compl. at ¶ 12-16. Indeed, the words "on behalf of," "on whose behalf," or any similar phrase giving rise to vicarious liability appear nowhere in either § 227(b)(1)(B) or its private right of action § 227(b)(3). To the contrary, § 227(b)(3) refers to "the defendant," that is, one defendant – the entity that initiated the call.

Instead, the plaintiffs appear to draw the "on behalf of" theory of liability from a *different* section of the TCPA. 47 U.S.C. § 227(c) creates a private right of action for calls made in violation of the telemarketing rules and regulations promulgated under that subsection. Unlike the private right of action provisions of the robocall sub-section, section 227(c)(5) expressly states that "[a] person who has received more than one telephone call within any 12-month period by *or on behalf of the same entity* in violation of the regulations prescribed under this subsection" may bring a private right of action. The fact that, in drafting the TCPA, Congress chose to omit the words "on behalf of" or any similar sentiment in § 227(b), must be interpreted as intentional. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." Immigration & Naturalizaiton Sev. v. Cardozo-Fonseca, 480 U.S. 421, 432 (1987).

Plaintiffs rely upon Section 227(b), not Section 227(c). Section 227(b)'s private right of action does not contain any language suggesting that there may be liability for calls made by someone else. Because neither Desai nor Charvat plead that ADT initiated or made the calls they received and in fact appear to concede that someone else initiated the calls, the Complaint should be dismissed.

126245.1

      C.    *Even if Some Form of Agency Liability is Viable Under Section 227(b) of the TCPA, Plaintiffs Fail to Articulate Any Facts Suggesting How ADT is Liable for the Conduct of the Entities that Made the Calls.*

Even if ADT could be liable under some form of agency theory notwithstanding the clear text of the statute, courts hold that parties are not automatically liable when someone associated with them makes the call and employ a range of different tests. See Charvat v. Echostar Satellite, LLC, 676 F Supp. 2d 668 (S.D. Ohio 2009) (holding that Echostar was not responsible for telemarketing calls made by its authorized retailers). But plaintiffs fail to plead any facts or legal theory explaining why ADT is responsible for any, never mind all, of the three calls at issue here. The calls came from three different phone numbers, on three different dates, by three different entities. Other than to state (inaccurately) in conclusory form that ADT's "authorized dealers" were responsible for the calls, the plaintiffs offer no theory whatsoever as to how ADT is responsible for the calls. This is insufficient. If it is plaintiffs' position that ADT "initiated" or "made" the calls, they must state that. If it is plaintiffs' position that someone else initiated or made the call, they must state who made the call and spell out the agency theory of liability for holding ADT responsible. As it now stands, plaintiffs provide no factual averments explaining how ADT is supposedly responsible for calls made by other entities. The "broad, conclusory allegations" are insufficient under the pleading standards articulated in the Supreme Court's Twombly and Iqbal decisions.

                           \* \* \*

The Echostar case was appealed to the United States Court of Appeals for the Sixth Circuit, which issued an opinion on December 30, 2010. Charvat v. EchoStar Satellite, 630 F.3d 459 (6th Cir. 2010). The Sixth Circuit's decision highlights that there is uncertainty as to the scope of liability, if any, for the acts of "agents" and independent contractors under the TCPA. The Sixth Circuit found that the difference in language between Section 227(b) and

126245.1

227(c)(5) raises questions as to whether Section 227(b) was meant to create vicarious liability. Id. at 465. It also found that "[i]n interpreting the Telephone Act and its regulations, courts have reached different conclusions about whether an entity on whose behalf a call is made can be liable under the Act, announcing different measures for determining whether an independent contractor or an agent acts on behalf of a company." Id. at 466. Based on these and other factors the Sixth Circuit referred the case to the FCC's primary jurisdiction to provide the FCC's views on the appropriate interpretation of the statute and proceedings are presently pending in the FCC. Id. Given that the FCC is considering the legal issues that will play a significant role in this Court's determination of this litigation, the Court should stay proceedings here until the FCC has had the opportunity to issue its decision in the matter. Reiter v. Cooper, 507 U.S. 258, 268-69 (1992) (primary jurisdiction " requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling."). ADT anticipates filing a separate motion for a stay.

## II. The Court Should Dismiss Charvat's Claims Pursuant to Rule 21 Because The Claims Are Improperly Joined with Desai's Claims.

Multiple plaintiffs may join in a single action if (1) the right to relief arises from the same transaction or occurrence **and** (2) there is some question of law or fact that is common to all persons seeking to be joined. Fed. R. Civ. P. 20(a)(1). Courts generally apply a "case-by-case approach" in determining "whether a particular factual situation constitutes a single transaction or occurrence." Nelson v. Chertoff, No. 07-2991, 2008 U.S. Dist. LEXIS 82981, at *15 (N.D. Ill. Sept. 10, 2008). Among the factors considered are when the alleged conduct occurred, whether the same people were involved, whether the conduct was similar, and whether it implicated a system of decision-making or widely-held policy. Wilson v. Peslak, No. 04-2345, 2005 U.S. Dist. LEXIS 10365 (N.D. Ill. May 12, 2005). Here, plaintiffs seek relief under two

different provisions of Section 227(b), relating to three separate and distinct incidents. As their complaints do not arise out of the same transaction or occurrence, joinder of their claims is improper.

It is insufficient to join separate plaintiffs alleging different TCPA violations against ADT simply because all three telephone calls allegedly mention ADT. See McDowell v. Morgan Stanley & Co., 645 F. Supp. 2d 690, 696-7 (N.D. Ill. Aug. 10, 2009) (finding misjoinder because although plaintiffs' claims revolved around the same corporate policy, each claim was different.). In McDowell, this Court recognized that joinder is inappropriate where, as here, "[p]laintiffs, in effect, are not only challenging an alleged corporate policy [], but also the discretionary decision of [others]." Desai received a call presumably in Illinois, Charvat received two calls in Ohio. The calls to Desai were to his cell phone, the calls to Charvat to his residential lines, implicating two different statutory provisions. The calls took place on different dates, came from different callers, and provided different messages. Initial subpoenas show that the three calls at issue come from three different entities. Any liability for ADT stemming from these calls will necessarily turn upon theories of vicarious liability specific to each company that initiated the call and the circumstances under which each call was made. Those issues are distinct and there is no common factual nucleus among the claims.

Rule 21 allows the Court to add or drop a party where claims or parties are improperly joined. Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1016 (7th Cir. 2000) (citing Fed. R. Civ. P. 21). As shown above, that is the case here. Indeed, it appears that Charvat has simply engaged in forum shopping to avoid the unfavorable rulings he has received in the past in the Southern District of Ohio where he resides. His claims belong in Ohio, and once dismissed, Charvat is free to file a new complaint in the proper venue for his claims – Ohio. See

126245.1

McDowell, 645 F. Supp. 2d at 697 (severing plaintiffs to allow them to re-file in appropriate venue); Maclin v. N. Telecom, No. 95-7485, 1996 U.S. Dist. LEXIS 12565, *5 (N.D. Ill. Aug. 28, 1996) (severing claims as misjoined where alleged act took place at different times and involved different parties).

### III. Plaintiffs' Claims Should Be Dismissed for Failure to Join Indispensable Parties

It is undisputed (and initial subpoenas have shown) that ADT did not initiate any of the three calls at issue. Instead, plaintiffs seek to hold ADT vicariously liable for the conduct of other entities who initiated the calls, based on the fact that the ADT was mentioned during the calls or pre-recorded message. Federal Rules of Civil Procedure 19 and 12(b)(7) require that a case be dismissed if necessary and indispensable parties, such as the entities who initiated the alleged calls here, cannot be feasibly joined to this lawsuit.

When ruling on a motion to dismiss for failure to join a necessary party, the court must engage in a two-step inquiry. Davis Companies v. Emerald Casino, Inc., 268 F.3d 477, 481 (7th Cir. 2001). First, the court must make a determination whether a non-party is necessary based on the requirements listed in Rule 19(a). Then, if the non-party is necessary but cannot be feasibly joined, the court must determine under Rule 19(b) whether in the interests of fairness and equity, the action should be maintained without the non-party or dismissed. Id.

Under Rule 19(a), a non-party is necessary if "in that [non-party's] absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). The absent parties that initiated the calls are necessary to provide complete relief to plaintiffs because plaintiffs' theory of liability depends heavily upon the assumption that these other entities were acting at some sort of direction of ADT sufficient to establish an agency relationship. Where the interrelationship between non-parties and named defendant are fundamental to resolving Plaintiffs' claims, this Court holds the absent parties necessary. See Steele v GE Money Bank,

No. 08-1880, 2009 U.S. Dist. LEXIS 11536, at *25-26 (N.D. Ill., Feb. 17, 2009) (finding non-party brokers necessary parties where plaintiffs' complaint turned upon the existence of a relationship between the parties and the non-party brokers and actions allegedly taken under the direction of the defendants); Hashop v. Federal Loan Home Mortgage Corp., 171 F.R.D. 208, 211 (N.D. Ill. 1997) (" . . .when plaintiffs seek to impose liability on a party not for its own positive acts but for the positive acts of another not joined in the suit . . . . [t]he absent parties thus become . . .essential to ensuring complete relief to the parties.").

Moreover, as plaintiffs are seeking injunctive relief to enjoin future behavior, it is necessary that the entities who initiated the calls be made party to the suit in order to ensure complete relief. Associated Dry Goods Corp. v. Towers Financial Corp., 920 F.2d 1121, 1124 (2d Cir. 1990) (holding absent party necessary under 19(a) because without it, claimant would be unable to obtain the full injunctive relief sought); Hashop, 171 F.R.D. at 212 (finding non-parties necessary because "if a violation is found, it is the [non-parties] who must change their...practices to prevent future violations.").

The non-party must be joined if joinder is feasible. Here, it is unclear whether joinder will be possible because the identities of the entities that initiated the calls are not pleaded and not definitively known. Among the more significant likely hurdles is personal jurisdiction. Charvat has chosen to litigate in a state having no connection whatsoever with the calls that involved him. Subpoenas indicate that the entities that made the calls to Charvat may be located in California and Oregon. Since the calls to Charvat were placed to Ohio, and it appears that the entities responsible for the calls are not located in Illinois, there may be significant personal jurisdiction issues to suing them here. It is also unclear whether the person

who called Desai engaged in sufficient acts connected with Illinois to subject that person to jurisdiction here.[14]

If joinder is not feasible, the court turns to Rule 19(b) to determine whether, "in equity and good conscience" the action should proceed among the existing parties or be dismissed. Fed. R. Civ. P. 19(b). ADT respectfully asks this Court to dismiss plaintiffs' complaint because without the entities who initiated the calls at issue, ADT is prejudiced in its defense. At a minimum, the Court should stay all substantive proceedings until it is determined who made the calls and whether they can feasibly be joined.[15]

## CONCLUSION

For the foregoing reasons, Defendant ADT respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' Complaint with prejudice. Alternatively, if the Court does not dismiss the Complaint in its entirety, ADT respectfully requests that Plaintiff Charvat be dismissed from the case for misjoinder of claims and/or that all substantive matters be stayed until it is determined whether the indispensable parties that have not been joined (the entities that actually made the calls) can, in fact, be joined.

Dated: May 18, 2011                    Respectfully submitted,

---

[14] Among other things, Desai's phone number for the cell phone that received the call has a 415 area code (which is the San Francisco area), and he does not plead that he received the call in Illinois.

[15] Plaintiffs' claims for injunctive relief should also be dismissed. Count III of the Complaint seeks an injunction to "bar future TCPA violations," claiming such relief is "expressly authorize[d]" by the TCPA. Such relief is authorized only where a plaintiff shows "a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation." 47 U.S.C. § 227(b)(3). As shown above, plaintiffs failed to plead a violation of "this subsection," so they are not entitled to injunctive relief. Count IV of the Complaint seeks an injunction barring ADT "and its agents, or anyone acting on their behalf, from altering, deleting or destroying any documents or records which could be used to identify the members of the class." Am. Compl. at ¶ 109. Plaintiff identifies no legal basis for such an injunction, and fails to particularize anything to support the bald allegation that "defendant will alter, erase, delete, destroy or otherwise dispose of records in their possession . . . ." Id. ADT has issued an appropriate internal litigation hold pursuant to its discovery obligations. There is no basis for entering an injunction on this issue.

POLSINELLI SHUGHART PC


By: /s/ John A. Leja
John A. Leja (ARDC # 6256269)
161 N. Clark Street, Suite 4200
Chicago, IL 60601
Tel: (312) 819-1900
Cook County Atty. No. 47375

Of Counsel:
Robert L. Hickok
Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 *facsimile*
E-mail:    hickokr@pepperlaw.com
           baughmanm@pepperlaw.com

*Attorneys for Defendant, ADT Security* Services, Inc.