IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT on behalf of themselves and others similarly situated, | ) ) ) ) | Case No.: 1:11-cv-1925 |
| Plaintiffs, | ) ) ) | Judge Bucklo Magistrate Judge Keys |
| v. | ) ) | |
| ADT Security Services, Inc., | ) ) | |
| Defendant. | ) | |

**DEFENDANT ADT SECURITY SERVICES, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STAY**

Plaintiffs Vishva Desai ("Desai") and Philip J. Charvat ("Charvat") seek to hold Defendant ADT Security Services, Inc. ("ADT") liable for the alleged acts of others under Section 227(b) of the Telephone Consumer Protection Act ("TCPA").[1] Although it is undisputed that ADT did not make any of the three telemarketing calls at issue in this case, plaintiffs claim that ADT is nonetheless liable for the calls because the calls were allegedly made "on behalf of" ADT.

ADT believes that (1) it cannot be liable for calls that it did not make, and even if it could (2) that the calls at issue were not made "on behalf of" ADT under any reasonable interpretation of that phrase. ADT filed a motion to dismiss plaintiffs' claims because Section 227(b) only provides liability for the person who "initiates" or "makes" the call, not for persons "on whose behalf" a call was made. This very issue is before the United States Court of Appeals for the Sixth Circuit in another case brought by Charvat – <u>Charvat v. Echostar Satellite, LLC</u>,

---

[1] 47 U.S.C. § 227.

630 F.3d 459, 465-468 (6th Cir. 2010). In that case, the Sixth Circuit issued an opinion finding that there was considerable uncertainty and divergent view from courts as to the proper scope of vicarious liability under the TCPA, including whether any such liability exists at all. Id. at 465. Pursuant to the doctrine of "primary jurisdiction," the Sixth Circuit referred that issue to the United States Federal Communications Commission – the agency primarily responsible for implementing the TCPA – to provide the agencies' view on the proper scope of vicarious liability under the statute. The Sixth Circuit also stayed all proceedings pending the FCC's "prompt"[2] decision. Id. The United States District Court for the Central District of Illinois recently did the same in a case pending before it, raising the same issues. See United States v. Dish Network, No. 09-3071, 2011 U.S. Dist. LEXIS 10943, *8 (C.D. Ill. Feb. 4, 2011).

The FCC agreed to issue a declarative ruling interpreting "on behalf of" liability for TCPA claims. The FCC will address two questions:

> (1) Under the TCPA, does a call placed by an entity that markets the seller's goods or services qualify as a call made on behalf of, and initiated by, the seller, even if the seller does not make the telephone call (i.e., physically place the call)?
>
> (2) What should determine whether a telemarketing call is made "on behalf of" a seller, thus triggering liability for the seller under the TCPA? Should federal common law agency principles apply? What, if any, other principles could be used to define "on behalf of" liability for a seller under the TCPA?

See Exh. A, FCC Public Notice.

The FCC's declarative ruling on these two questions will provide guidance to this

---

[2] Charvat v. Echostar Satellite, LLC, 630 F.3d 459, 467 (6th Cir. 2010) ("[t]he FCC has agreed to issue a prompt ruling ....").

2

Court on both the liability and discovery issues in this litigation.[3] If the answer to question one above is "no", as ADT argued in its motion to dismiss, and this Court follows that interpretation, the plaintiffs' case disappears. And, even if the FCC answers the first question "yes," how it answers the second question may provide substantial guidance to the Court in determining the circumstances under which ADT could be held liable for the conduct of someone else – particularly where, as here, ADT does not even know who made the calls, let alone approve or authorize them.

This Court should stay all proceedings until the FCC issues its decision, just as the Sixth Circuit and the Central District of Illinois did under similar circumstance. At a minimum, discovery should be limited to the issue of who made the three telephone calls at issue in the Amended Complaint, until it is determined whether ADT could be legally responsible for their conduct. The plaintiffs have already served ADT with scores of document requests unrelated to the calls at issue in the Amended Complaint, see Exh. B, and have also served subpoenas on entities with whom ADT does business seeking vast amounts of information unrelated to the calls at issue in this case. See Exh. C. ADT should not be forced to engage in expensive litigation now, when the FCC has promised a "prompt ruling" that will likely provide guidance on the central legal issue in this case including whether the plaintiffs have any claim at all.

---

[3] The FCC's declaratory ruling is not dispositive, but subject to Chevron deference. Reiter v. Cooper, 507 U.S. 258, 268-69 (1992) (applying Chevron deference to agency's interpretation after referral pursuant to primary jurisdiction). While the FCC's decision is reviewable by this court to determine whether the interpretation comports with Chevron, it is premature to have the parties fight about the meaning of the TCPA prior to the FCC's ruling, only to fight about it again after.

127427.1

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs claim that they received three separate, unsolicited telephone calls using pre-recorded messages, purportedly promoting the services of ADT. Am. Compl. ¶¶ 47-50, 54, 74. They claim that the calls violated Section 227(b) of the TCPA, which generally prohibits telemarketing using pre-recorded messages, and seek to represent a class of other persons who received similar calls. Am. Compl. ¶¶ 82-98. Section 227(b) of the TCPA provides a private right of action against an entity that "initiates" or "makes" a call. Plaintiffs, however, nowhere plead that ADT initiated or made any of the three calls they received; instead, they alleged ADT is liable because the calls were supposedly made "on behalf of" ADT.

On May 18, 2011, ADT filed a motion to dismiss plaintiffs' Amended Complaint because, among other things, Section 227(b) of the TCPA does not provide a cause of action against a defendant "on whose behalf" a call was made. ADT's motion to dismiss remains pending before this Court.

Meanwhile, the plaintiffs have launched a massive fishing expedition into every aspect of ADT's marketing and its relationship with numerous third parties that have nothing to do with the calls at issue in the Amended Complaint. So far, despite serving scores of third-party subpoenas on the telephone companies that own the three numbers alleged to have made the calls at issue in the Amended Complaint and entities identified by the phone companies as associated with those numbers, there is no evidence that ADT had anything to do with the three calls. To the contrary, ADT has no association with the entities that have been identified in those various subpoenas,[4] ADT has sent letters to those entities demanding that they cease their improper and

---

[4] Desai brings this action against ADT alleging that she received a call on her cellular phone from the number (574) 970-0866 ("Desai Call"). Am. Compl. ¶¶ 47-50. To investigate the call, Desai served a subpoena on EngageTel, Inc., a company to whom the number which placed the call had been sold, requesting "all documents
(continued...)

4

unauthorized use of ADT's name, and ADT has made clear to plaintiffs that it did not make or authorized the calls at issue in the Amended Complaint.

The 19 Interrogatories and 49 Document Requests plaintiffs served on ADT have almost nothing to do with the three calls at issue in the Amended Complaint. For example, the very first Interrogatory seeks "all complaints and reports of complaints . . . you have received since January 1, 2005, that have to do with alleged improper telemarketing." See Exh. B. Other Interrogatories seek information relating to ADT's consent decree with the FTC (which has nothing to do with the calls at issue in the Amended Complaint) and irrelevant information about ADT's relationship with third parties, such as "the top twenty ADT dealers, by sales volume and sales growth, for the years 2008-2011." None of the Interrogatories ask any questions about the three telephone calls at issue in the Amended Complaint.

---

(continued...)

concerning, and communications with, any entity or entities [] associated with the 'Desai Call'" and "[a]ll documents concerning ADT Security Services, Inc., or any agent, subsidiary or affiliate thereof." In response, EngageTel stated it "does not have a relationship with ADT Security" and that the "end user" of the telephone number associated with the Desai Call was EMI, Inc. Plaintiffs served a subpoena on EMI which subsequently filed a motion to quash because "the caller ID attached to the number at that time was replicated or spoofed to falsely represent my firm."

Charvat alleges he received a call on his residential phone line from the number (401) 558-0010. Am. Compl. ¶ 54. Charvat avers that he followed instructions in the pre-recorded message to "reach a live operator" who claimed he worked for Direct Savings in Fort Lauderdale, Florida. Am. Compl. ¶¶ 58-59. Plaintiffs (inaccurately) claim that Direct Savings is an "authorized dealer" of ADT, but plead no details at all as to the nature of the relationship or how ADT is responsible for Direct Savings' activities. In fact, plaintiffs' subpoena to Engagetel, Inc., whom records indictated owned the phone number that made the call, suggests that the entity that initiated the telephone call was a company called Leads Direct Marketing. Plaintiffs served subpoenas on both Direct Savings and Leads Direct Marketing all of which remain outstanding.

Charvat also alleges that on January 18, 2011, he received a second call on his residential phone line from the number (918)-442-0937 ("Second Call"). To investigate the origins of the call, Charvat served a subpoena on Fulltel, Inc., whom records indicated owned the phone number that made the call, for all documents identifying what entity or entities initiated the Second Call. FullTel, Inc. responded that the phone number is part of a block of numbers used by its customer TM Caller ID. Plaintiffs served a subpoena on TM Caller ID who responded that the company associated with the call was City VIP LLC. Plaintiffs served a subpoena to City VIP LLC which remains outstanding.

5

The document requests are also incredibly broad and only one of the forty-nine request is tied to the phone calls received by the plaintiffs. One request makes the absurdly broad request of "[a]ll documents concerning the Telephone Consumer Protection Act." Id. at Request No. 8. Others seek information about persons on "Do Not Call Lists," even though there is no allegation in the Amended Complaint concerning calls made to persons on any Do Not Call lists. Id. at Request 5. Another seeks "[a]ll documents concerning investigations conducted by, or on behalf of ADT, concerning *the possibility* that someone *may have* been making telemarketing calls on ADT's behalf." Id. at Request 11 (emphasis added).

Plaintiffs have also served entities with whom ADT does business subpoenas seeking scores of information having nothing to do with the three calls that are at issue in the Amended Complaint. For example, plaintiffs served a subpoena on Defender Security, ADT's largest authorized dealer, seeking 36 categories of documents, including "all contractual agreements relating to ADT" despite the fact that no allegation in plaintiffs' Amended Complaint even mentions Defender Security. Similarly, plaintiffs served subpoenas requesting dozens of categories of documents such as "all communications between you and defendant" on Security Choice and the Elephant Group – even though these companies do not even make telemarketing calls for ADT. See Exh. C.

In short, the plaintiffs are seeking to use discovery in this case not to buttress, prove or support any claims that relate to calls that were made to them, but to explore ADT's general telemarketing policies, its general business model, and whether others have complained to ADT. Allowing plaintiffs to continue their broad discovery path is irrelevant under any theory

6

127427.1

of law,[5] but it is particularly irrelevant if the TCPA does not apply to calls that were made or initiated by someone else. Before ADT is required to spend hundreds of thousands of dollars responding to discovery, the Court should first await guidance from the FCC on whether there is any conceivable legal theory to support liability for the three calls at issue in the Amended Complaint. Unless and until the plaintiffs establish that ADT is responsible for the three calls involving them, it is clearly premature to permit broad ranging discovery into every aspect of ADT's marketing practices.

## ARGUMENT

In Charvat v. Echostar Satellite, LLC, 630 F.3d 459, 461-62 (6th Cir. 2010), Charvat sued EchoStar Satellite for violations of the TCPA claiming he received unsolicited telemarketing calls containing pre-recorded messages attempting to sell satellite programming. Charvat traced the telemarketing calls to several companies all of whom had signed agreements with EchoStar authorizing them to advertise, promote and solicit orders for EchoStar. Id. Charvat did not sue the companies that made the calls, opting instead to sue EchoStar because the calls were allegedly made "on its behalf." The issue before the court was "whether the [TCPA] and its accompanying regulations permit Charvat to recover damages from EchoStar, an

---

[5] While some of the request may have some tangential relevance to class wide claims, no class has been certified here. Schultz v. Prudential Ins., Co. of Am., 678 F.Supp.2d 771, 782 (N.D. Ill. 2010) ("named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)). There is also no possibility that a class could ever be certified. As ADT does not conduct telemarketing using pre-recorded messages, the class apparently envisioned by plaintiff (persons who received telemarketing calls using pre-recorded messages) must consist entirely of calls made by entities other than ADT. Among other things, it would be impossible to identify a class of persons who received calls not from ADT, but from some collection of unknown entities allegedly making calls that mention ADT's products or services. Indeed, the three calls at issue here prove the point. Despite scores of subpoenas, the plaintiffs cannot even identify who made the three telephone calls at issue that they received – though it is apparent that each originated from a separate entity. If the plaintiffs cannot even determine – at least without significant discovery – who made the calls to them, it would clearly be impossible to identify a class of unknown persons who received calls from unknown entities over whom ADT has no control.

7

entity that did not place any illegal calls to him but whose independent contractors did." Id. at 465. The lower court, the United States District Court for the Southern District of Ohio, held it did not and granted summary judgment on the issue to EchoStar. Charvat v. Echostar Satellite, LLC, 676 F Supp. 2d 668 (S.D. Ohio 2009). Charvat appealed to the Sixth Circuit.

The Sixth Circuit referred interpretation of "on behalf of" liability for TCPA claims to the FCC due to the FCC having primary jurisdiction over the statute it implements. Echostar Satellite, 630 F.3d at 465-68. In making this decision, the Sixth Circuit relied upon three factors - uniformity, discretion, and expertise. Id. First, the Sixth Circuit held that different jurisdictions had already reached different conclusions as to whether a company could be liable for calls made "on its behalf," and a decision by the FCC would help nationwide uniformity of rulings. Id. at 466. Second, Congress' discretion to vest the FCC with authority to implement the TCPA and its regulations necessitated giving the FCC the chance to construe the TCPA's provisions. Id. at 467. Third, the Sixth Circuit held that the FCC's expertise over the TCPA called for referral to the FCC because "although the FCC's position would be subject to review by the judiciary for reasonableness, the agency's views are the logical place for the judiciary to start." Id. For these reasons, and because Charvat did not object,[6] the Sixth Circuit referred the issue to the FCC.

Faced with the same issue, Chief Judge Michael McCusky of the United States District Court for the Central District of Illinois followed the Sixth Circuit's ruling and again referred the interpretation of the TCPA to the FCC. See United States v. Dish Network, No. 09-3071, 2011 U.S. Dist. LEXIS 10943, *8 (C.D. Ill. 2011) ("[c]onsiderations of uniformity,

---

[6] Echostar Satellite, LLC, 630 F.3d at 467 ("[t]he claimant, Charvat, does not object to proceeding before the agency.").

discretion and expertise all militate in favor of primary jurisdiction since only the FCC can disambiguate the phrase "on behalf of."). In addition, the Central District of Illinois held that the court must suspend all proceedings, including discovery, until the FCC provides its declaratory ruling. Id. at *11 n.3. "Some courts have allowed discovery to proceed pending an agency's resolution of a referred issue. While that has great practical appeal given the prospective delay[7] caused by agency review, Supreme Court jurisprudence requires courts to suspend all proceedings exclusively related to a referred issue." Id. (citing Western Pac. R. Co., 352 US 64, 64 (1956)).

The same legal issue that was presented in *EchoStar* and *Dish Network* is presented in this case. Indeed, it is even more appropriate to stay the proceedings here than it was for the Sixth Circuit to stay Charvat's case against *EchoStar* because in that case Charvat tracked the alleged telemarketing calls to *EchoStar's* authorized dealers. Echostar Satellite, LLC, 630 F.3d at 461. Here, none of the responses plaintiff has received to its discovery requests regarding use of the three phone numbers at issue show that an ADT dealer made the calls. To the contrary, to date the numbers have been traced to three companies that have no apparent connection to ADT.

Staying this proceeding until the FCC issues its ruling promotes judicial efficiency because the FCC will soon provide guidance on whether ADT could even be liable for a call made "on its behalf," and plaintiffs have issued far reaching discovery on both ADT and entities with whom it does business, untethered to the three calls that they have put at issue. Markel Am. Ins. Co. v. Dolan, No. 09-4431, 2011 U.S. Dist. LEXIS 50904, *7-11 (N.D. Ill. 2011) (finding " stay will simplify the issues and streamline the trial, will reduce the burden of

---

[7] There is no risk of delay here because this issue is already under the FCC's advisement.

9

127427.1

litigation on the parties and the Court . . . ."). The parties will not incur additional expense because the issue is already fully briefed before the FCC and no delay will occur because the FCC promised a "prompt ruling." Moreover, failure to stay this action will result in the parties fighting about the existence of "on behalf of" liability for Section 227(b) claims twice in this court, once before the FCC's ruling, and again after. At a minimum, discovery should be limited to identifying the entities that made the three calls at issue in the Amended Complaint and their connection to ADT – if any. That way, the court will have the basic facts to apply to the law as clarified once the FCC rules.

Charvat lost his case before the United States District Court for the Southern District of Ohio when the court ruled "on behalf of" liability did not exist in Section 227(b) of the TCPA. On Charvat's appeal, the Sixth Circuit gave Charvat a second chance by referring the matter to the FCC. If this Court allows discovery to go forward against ADT prior to the FCC's ruling, Charvat will gain the benefit of having the case he lost guided by the FCC's ruling **and** the benefit of forcing ADT to proceed in this litigation without the FCC's ruling. There is no basis for doing so. Having consented to referring the issue to the FCC in the Sixth Circuit, Charvat is in no position to complain that the matter here be stayed pending the FCC's ruling.

## CONCLUSION

ADT moves this Court to follow the Sixth Circuit and the United States District Court for the Central District of Illinois and stay this action, including all discovery obligations, pending the FCC's exercise of its primary jurisdiction to interpret the scope of vicarious liability under the TCPA.

Dated: June 6, 2011                                   Respectfully submitted,

/s/ John A. Leja
John A. Leja
Polsinelli Shughart PC

10

161 N. Clark Street, Suite 4200
Chicago, IL 60601
(312) 873-3670
(312) 819-1910 *facsimile*
Email: jleja@polsinelli.com

Of Counsel:
Robert L. Hickok
Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 *facsimile*
E-mail: hickokr@pepperlaw.com
baughmanm@pepperlaw.com

*Attorneys for Defendant, ADT Security Services, Inc.*

127427.1