IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT, on behalf of themselves and others similarly situated,<br>    Plaintiffs,<br><br>vs.<br><br>ADT SECURITY SERVICES, INC.<br>    Defendant. | Case No. 1:11-cv-1925 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

  Plaintiffs Vishva Desai and Philip J. Charvat respectfully submit this Memorandum of Law In Opposition to Defendant ADT Security Services, Inc.'s Motion to Dismiss.  This case involves a massive scheme of illegal telemarketing.  Evidence uncovered to date, even without the benefit of discovery, demonstrates that ADT Security Services, Inc., by and through its authorized distributors (collectively referred to as "ADT"), has engaged in widespread telemarketing via pre-recorded message (a practice known as "Robocall" telemarketing) to consumers throughout the United States to sell ADT goods and services.  Plaintiffs received those calls and filed this putative class action against ADT.  Robocall telemarketing without consent is prohibited by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227.

  ADT has moved to dismiss.  ADT does not deny that illegal Robocall telemarketing promoting its goods and services is widespread, or that it has benefitted from this massive illegal telemarketing campaign.  Instead, ADT argues that since it did not physically press the dial button on the machine utilized to transmit ADT Robocalls, it cannot be held responsible for any violations of the TCPA.  ADT further argues the Class Action Complaint should be dismissed

1

because it was inappropriate for Mr. Charvat to join this litigation. It also argues that Plaintiffs failed to join indispensable parties who placed the actual calls. ADT's arguments are untenable.

## I.     FACTS

### A.     ADT's History Of Illegal Telemarketing

ADT has a long history of using illegal telemarketing and Robocalls to generate revenue. ADT is one of the world's largest providers of electronic security systems and generated net revenue of $7.4 billion last year. In promoting sales and generating new customers, ADT relies heavily on the sales efforts of its authorized distributors, to whom it provides extensive marketing and lead-generation support. *See* ADT Authorized Dealer Program, *available at* https://www.adt.com/about_adt/authorized_dealer (last visited June 15, 2011).

The Amended Class Complaint details the control that ADT exercises over its authorized distributors, and the authority ADT delegates to its distributors to market on ADT's behalf. Specifically, the Amended Complaint alleges that:

- ADT markets and distributes its products and services via its authorized dealers who are authorized to market those products and services on ADT's behalf;

- ADT encourages and authorizes its dealers to utilize various methods of marketing, including telemarketing and lead generation, in promoting ADT goods and services;

- ADT has the contractual right and ability to control its distributors and to discipline them for misconduct; and

- ADT compensates its distributors for generating new customers.

*See* Am. Compl. ¶¶21-27, 36-43.

The use of illegal telemarketing by ADT and its authorized dealers to promote sales and generate profit is nothing new. In 2007, the Federal Trade Commission ("FTC") brought a complaint against ADT and two of its authorized dealers, for engaging in illegal telemarketing in violation of the Do Not Call Registry and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. §

310.4(b)(1)(iii). *See* Am. Compl. ¶¶ 28-30. In November of 2007, ADT and the FTC entered into a Consent Decree and Order for Civil Penalties ("Consent Decree"), which is attached to the Amended Class Complaint as Exhibit A. As part of the Consent Decree, ADT agreed, among other things, to monitor, control, and supervise entities performing telemarketing on its behalf and to track and promptly respond to telemarketing complaints. *See* Am. Compl. ¶¶ 31-35.

**B.      Evidence Of ADT's Illegal Robocall Telemarketing**

Despite the explicit terms of the Consent Decree, consumers have been complaining to ADT and the FTC that ADT's dealers engage in illegal Robocall telemarketing. Evidence of that Robocall telemarketing, compiled by class counsel, is summarized as follows.

Class counsel submitted a Freedom of Information Act request to the FTC seeking all complaints submitted by consumers relating to Robocall telemarketing promoting ADT goods and services. As detailed in the Affidavit of Marc Hatcher, attached hereto as Exhibit 1, the FTC produced to class counsel approximately 1,523 pages of consumer complaints. Approximately 322 of the complaints specifically referenced ADT by name. A small sampling of these complaints is attached to the Affidavit of Mr. Hatcher.

Following receipt of those voluminous complaints, class counsel submitted a second request to the FTC seeking all documents relating to ADT's compliance with the terms of the Consent Decree. In response, the FTC produced two letters that it sent to ADT regarding the Complaints, *attached hereto* as Exhibit 2. In the first letter, the FTC informed ADT that it continued to receive consumer complaints regarding ADT Robocall telemarketing "at a high volume," and the second letter demanded that ADT produce specific information regarding the Robocall complaints. The letters were sent to ADT before the Robocalls were made to Plaintiffs

and confirm that ADT has long been aware that its dealers are telemarketing via Robocall on its behalf.

The experiences of class Plaintiffs Ms. Desai and Mr. Charvat are consistent with the FTC complaints. For instance, on or about February 27, 2011, Ms. Desai, an Illinois-based consumer, received an unauthorized Robocall on her cellular telephone promoting ADT home security services. *See* Am. Compl. ¶¶ 47-53. After the instant suit was filed, class counsel subpoenaed the carrier assigned to the phone number from which the Robocall originated and eventually tracked the call back to a "voice broadcast" company called EMI, Inc. of Chino Hills, California. Class counsel issued a subpoena to EMI seeking to identify the entity that hired it to transmit ADT Robocalls. Class counsel subsequently had a "meet and confer" conference with Christopher Long, EMI's principal, during which Mr. Long acknowledged that EMI's voice broadcast clients include ADT authorized distributors. However, EMI ultimately moved to quash the subpoena, which Plaintiffs have resisted.

Mr. Charvat, an Ohio based consumer, received an ADT Robocall on his residential phone line on September 7, 2010 (the "First Charvat Call"). *See* Am. Compl. ¶ 54. The Robocall promoted ADT's goods and services and was transmitted to Mr. Charvat without his consent. *See id.* ¶¶ 54-55. After receiving the First Charvat Call, Mr. Charvat followed the instructions of the pre-recorded message to reach a live operator and identify the parties responsible for the First Charvat Call. *See id.* ¶ 58. After following a phone prompt, Mr. Charvat was referred to an operator who informed Mr. Charvat that he worked for Direct Savings and that Direct Savings was an ADT authorized dealer. *See id.* ¶ 59. The ADT agent told Mr. Charvat that his name was Jason and that he worked for Direct Savings. *See id.* ¶ 60.

Class counsel tracked the First Charvat Call, via subpoena, back to a California corporation called Voice-Tel d/b/a Leads Direct Marketing. Voice-Tel informed class counsel that it was retained by Direct Savings to facilitate the transmission of ADT Robocalls. ADT has admitted in its Answers to Interrogatories that Direct Savings is a marketing entity affiliated with one of its largest dealers, a corporation called Safe Streets, USA, Inc. Safe Streets was created in January 2011, via a merger of two of ADT's largest authorized distributors, Alarm Team, Inc. and Eversafe, Inc. Safe Streets states on its web site: "If one word could sum up our culture it would have to be 'PARTNERSHIP'. We have a partnership with ADT as an Authorized Dealer . . . ." *See* Safe Streets USA, "Our Culture," *available at* http://www.safestreetsusa.com/Our_Culture.aspx (last visited June 15, 2011). Class counsel intends to further pursue their subpoena issued to Voice-Tel. Class counsel also issued a subpoena to Direct Savings seeking all information relating to ADT Robocalls, which Direct Savings has resisted.

On January 11, 2011, a second ADT Robocall was transmitted to Mr. Charvat's residential telephone line ("Second Charvat Call"). *See* Am. Compl. ¶ 74. This Robocall was virtually identical in substance to the first and promoted ADT's goods and services and was transmitted to Mr. Charvat without his consent. *See id.* ¶¶ 75-78. After receiving the Second Charvat Call, Mr. Charvat followed the instructions of the pre-recorded message to reach a live operator and identify the parties responsible for the Second Charvat Call. *See id.* ¶ 80. After following a prompt, Mr. Charvat was referred to an individual named "Scott" with an entity called "Home Security" who informed Mr. Charvat that he was offering an ADT home security system. *See id.* ¶ 81. "Scott" informed Mr. Charvat that he was an "authorized agent" for ADT. *Id.* When Mr. Charvat asked Scott for more information, the Second Charvat Call was terminated. A summary of the extensive discovery efforts conducted by class counsel to

5

discover the identity of the ADT related entities associated with the Robocalls is *attached hereto* as Exhibit 3.

As further confirmation of the large scope of the illegal ADT Robocall campaign, consumers from California, Pennsylvania, and South Carolina have provided class counsel with evidence confirming their receipt of ADT Robocalls. Their experiences are summarized in the attached affidavit and are consistent with those of the named Plaintiffs. See Exhibit 4.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant tests the sufficiency of the complaint, not its merits. *See Gibbons v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964–65 (2007) (citations omitted). As the Seventh Circuit stated:

> The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court.

*EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).

## III. APPLICABLE TELEMARKETING LAW

Congress enacted the TCPA in an effort to address certain telemarketing practices that invaded consumer privacy. In enacting the TCPA, Congress specifically imposed heightened restrictions on the widespread practice of telemarketing via Robocall. Congress recognized that such calls are more intrusive than live solicitations. *See In The Matter of Rules and Regulations*

6

*Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 2736, 2737, at para. 25 (Apr. 17, 1992); *see also* 47 U.S.C. § 227, Congressional Statement of Findings Nos. 10 and 12; *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995).

As initially enacted by Congress, the TCPA's Robocall broad prohibition provided that:

> It shall be unlawful for any person within the United States to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is otherwise exempted by the FCC.

47 U.S.C. § 227(b)(1)(B). The FCC, thereafter, interpreted the TCPA to exempt Robocalls made for emergency purposes and commercial Robocalls that did not "introduce an unsolicited advertisement or constitute a telephone solicitation." 47 C.F.R. § 64.1200(a)(2)(i-iii). A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase of or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(12).

## IV. ARGUMENT

ADT's Motion to Dismiss makes three arguments. First, ADT claims it cannot be liable for TCPA violations committed by third parties acting on its behalf, because it did not physically "initiate" or "make" the calls at issue. Second, ADT argues that the Plaintiffs' claims, which began in different jurisdictions and were joined in this Court for reasons of efficiency, are somehow "procedurally improper." Third, ADT claims that the Plaintiffs have failed to join indispensable parties and that the Plaintiffs' allegations of massive TCPA violations should be dismissed "in the interests of justice." These arguments, all meritless, are addressed seriatim.

**A. ADT is responsible for Robocalls transmitted on its behalf.**

    *1.    ADT ignores controlling law in contending that Robocall liability is limited to the entity that physically dials the Robocall.*

7

ADT should be held responsible for its massive campaign of illegal telemarking. In an attempt to avoid liability, ADT urges a narrow and restrictive view of particular sections of the TCPA. Specifically, ADT notes that the "on behalf of" language only appears in the TCPA's private right of action, set forth at 47 U.S.C. § 227(c)(5), relating to the TCPA's Do Not Call Registry requirements set forth at 47 U.S.C. §227(c) and 47 C.F.R. §64.1200(c). ADT argues that because similar "on behalf of" language does not appear in the text of the Robocall prohibition found at 47 U.S.C. 227 § (b)(1)(B), or in the private right of action found at 47 U.S.C. § 227(b)(3), "on behalf of" liability cannot extend to TCPA Robocall violations. ADT claims that liability lies solely with the entity that "initiates" or "made" a Robocall which it defines as "directly places." ADT posits that since it did not "directly place" the Robocalls at issue, it cannot be liable for any violations of the TCPA—even if it ultimately benefitted from them.

Although ADT correctly notes that the "on behalf of" language does not appear in §227(b)(1)(B) or § 227(b)(3), ADT ignores the obvious. The Robocalls sent to Plaintiffs were unquestionably "telephone solicitations" seeking to sell ADT's goods and services. The FCC has long held that TCPA liability extends to the entity ***on whose behalf*** a "telephone solicitation" is made, and has repeatedly made clear that the TCPA's broad restrictions on various forms of "telephone solicitations" (be they facsimiles, robo-calls, or live calls) cannot be evaded simply by utilizing third parties to physically transmit illegal calls. Specifically, the FCC has repeatedly warned:

> We take this opportunity to reiterate that a company ***on whose behalf a telephone solicitation*** is made bears the responsibility for ***any*** violation of our telemarketing rules ***and calls placed by a third party on behalf of that company are treated as if the company itself placed the call.***

*See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of State Farm Mutual Automobile Insurance Company for Clarification and*

*Declaratory Ruling*, CG Docket No. 02-278, 20 F.C.C.R. 13664 at ¶ 7 (August 17, 2005) (emphasis added); *see also In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order,* 10 F.C.C.R. 12391 at ¶13 (1995) (stating that "our rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations").

Indeed, the FCC has *already* recognized that an entity on whose behalf a Robocall is made, in violation of the TCPA, is responsible for ensuring the Robocall is compliant with the TCPA, even where the Robocall was placed or dialed by a third party. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (FCC recognizes that if a debt collector utilizes illegal Robocalls, the creditor on whose behalf the debt collector was collecting, is responsible for any violation of the TCPA).[2]

A Robocall that includes a recorded message for the purpose of encouraging the purchase of goods or services is undeniably a type of "telephone solicitation" under the TCPA. Accordingly, when the TCPA, its implementing regulations, and the FCC's interpretation of its own regulations are read as they should be (in unison), it is evident that an entity on whose behalf a Robocall telephone solicitation is made is responsible for ensuring that the call complies with the TCPA. Such calls will be treated as if the entity itself had placed the call. Simply stated, if a telephone solicitation in violation of *any* provision of the TCPA is made on an entity's behalf by a third party, the FCC will treat it as if it was made by the entity itself. That places the responsibility for the Robocalls squarely on ADT.

---

[2] A declaratory ruling issued by the FCC is a "final order" over which only a federal court of appeals has jurisdiction to review. *See Leckler v. Cashcall, Inc, 554 F.Supp.2d 1025 (N.D.Cal. May 20, 2008, and Leckler v. Cashcall, Inc., 2008 WL 5000528 at *2 (N.D.Cal. Nov. 21, 2008)* (Court reverses its own decision after recognizing that it did not have jurisdiction, pursuant to 27 U.S.C. 2342, to make a ruling in contravention of an FCC declaratory ruling).

ADT further claims that the Amended Class Complaint should be dismissed because the Plaintiffs "failed to sufficiently plead how ADT is responsible for the phone calls at issue." As set forth throughout the Complaint, however, the Plaintiffs have made clear that ADT is responsible for the illegal Robocalls at issue because the Robocalls were "telephone solicitations" sent "on behalf of" ADT. A telephone solicitation, in violation of § 227(b)(1)(B) may be enforced by a consumer via the private right of action embodied in § 227(b)(3). That consumer may bring an action against the entity that benefitted from the telephone solicitation or unsolicited advertisement, or in whose interest the telephone solicitation or unsolicited advertisement was made. In this case, that is ADT.

> 2. *Alternatively, the Amended Complaint pleads sufficient facts to support agency and joint venture theories under which ADT is vicariously liable for the calls.*

In addition to facing liability under governing statutes and regulations, ADT is responsible for the illegal conduct of its authorized dealers under agency and joint venture principles. In enforcing the TCPA, courts frequently apply agency and joint venture law to overcome defendants' efforts to shield themselves from liability under the TCPA by marketing its products and services via a third party. *See generally, e.g., Hooters of Augusta, Inc. v. Nicholson*, 537 S.E.2d 468 (Ga. Ct. App. 2000); *Worsham v. Nationwide Ins. Agency*, 772 A.2d 868 (Md. App. 2001); *Brentwood Travel v. Annex Computers, Inc.*, 2001 WL 36018637 (Mo. Cir. Dec. 18, 2001); *Charvat v. Dispatch Consumer Servs., Inc.,* 769 N.E.2d 829 (Ohio 2002).

ADT's argument that the Plaintiffs have failed to plead sufficient facts relating to agency in their Amended Class Complaint rings hollow. The Complaint alleges that:

- ADT markets and distributes its products and services via its authorized dealers who are authorized to market on ADT's behalf;

- ADT encourages and authorized its dealers to utilize various methods of marketing including telemarketing and lead generation, in promoting ADT goods and services;

- ADT has the contractual right and ability to control its distributors and to discipline them for misconduct;

- ADT explicitly agreed to supervise, train and monitor the telemarketing conduct of its distributors when it entered into the Consent Decree with the FTC in 2007; and

- ADT compensates its distributors for generating new customers.

*See* Am. Compl. ¶¶ 21-27, 36-43. The Complaint has sufficiently alleged the existence of a principal-agent relationship. *See Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.,* 376 F.3d 664, 673 (7th Cir.2004); *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064-65 (7th Cir. 2000); Restatement (Third) of Agency § 1.01 (2006).

The Amended Class Complaint also alleges sufficient facts to support a joint venture claim:

- At all relevant times, ADT and its authorized dealers were engaged in a partnership or a contractual association to carry out a single business for profit;

- To carry out the partnership/joint venture, ADT and its authorized dealers combined their property, money, effects, skill and knowledge; and

- ADT delegated authority to market its products to authorized dealers.

*See* Am.Compl.¶¶ 36-43; *see also The Majestic Star Casino, LLC v. Trustmark Ins. Co.*, 667 F. Supp.2d 809, 819 (N.D. Ill. 2009). ADT is therefore accountable under the TCPA for the acts and omissions of its authorized dealers and other third-party's telemarketing on its behalf.

**B.  Plaintiffs' Claims Are Properly Joined As They Arise From The Same Series Of Transactions And Occurrences And Present Common Questions Of Law And Fact.**

In its second argument in support of its Motion to Dismiss, ADT urges dismissal of the Amended Complaint on the ground that the Plaintiffs were improperly joined in this action. Plaintiffs' claims are properly joined as they arise out of the same transactions and occurrences, and present common questions of law and fact. ADT's representation of Plaintiffs' claims as arising from separate and distinct incidents is a myopic view of this case. Plaintiffs are the victims of ADT's Robocalls, and its failure to correct illegal telemarketing behavior after years of warnings from the FTC and consumers.

"[F]ederal policy favors joinder, as the purpose of Rule 20 is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Benitez v. Am. Std. Circuits, Inc.,* 678 F.Supp. 2d 745, 768 (N.D. Ill. 2010) (citing *Nelson v. Chertoff,* No. 07 C 2991, 2008 U.S. Dist. LEXIS 82981, at **13-14 (N.D. Ill. Sept. 10, 2008)); *see also Elmore v. Henderson,* 227 F.3d 1009, 1012 (7th Cir. 2000) (stating that the policy underlying joinder is judicial economy). Rule 20 provides for permissive joinder if (1) the plaintiffs assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action. *See* Fed. R. Civ. P. 20(a).

In this case, common issues of fact and law abound. Plaintiffs' claims arise from a nucleus of "logically related" facts regarding ADT's violations of the TCPA. The calls at issue sought to promote ADT goods and services via Robocall, and delivered a similar message. All of the calls were unsolicited and were transmitted to the class representatives "on behalf of" ADT. The calls arose out of the same transaction or occurrence (or series thereof) as part of ADT's long-standing Robocall practices. And the calls raise identical legal issues, including whether the calls were in violation of the TCPA, whether the calls were transmitted "on behalf of" ADT, and whether Plaintiffs and other class members are entitled to statutory damages.

As a result, forcing the courts and the parties to litigate them twice would contravene the interests of convenience and judicial economy. ADT simply cannot reasonably suggest that Plaintiffs' claims, which involve the same Defendant and a common allegation of illegal telemarketing, cannot be joined.

**C.     ADT Is The Only Indispensable Defendant In This Case.**

Consistent with ADT's refusal to recognize its liability for its distributors' illegal activities, ADT argues that Plaintiffs' claims should be dismissed for failure to join its agent-distributors as "indispensable parties." ADT's final argument represents the height of irony. ADT knows precisely which of its agents are engaged in illegal Robo-telemarketing. But ADT has refused to identify those agents in response to Plaintiffs' discovery requests, and now moves to dismiss Plaintiffs' claims for failure to join these unidentified, yet "indispensable" third parties. ADT attempts to have its cake and eat it too.

In ruling on a motion to dismiss for failure to join a necessary and indispensable party, the Court must accept the allegations of the complaint as true. *See Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 479 n.2 (7th Cir. 2001). ADT bears the burden of showing that third parties must be joined for just adjudication. *See Pudela v. Swanson,* No. 91 C 3559, 1996 U.S. Dist. LEXIS 19497, at *13 (N.D. Ill. Dec. 31, 1996). The purpose of Federal Rule of Civil Procedure 19 is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.,* 901 F.2d 1445, 1447 (7th Cir. 1990).

Under Rule 19, courts follow a two-step inquiry for determining whether to dismiss an action for failure to join an individual. *See Florian v. Sequa Corp.,* No. 98 C 7459, 2002 U.S. Dist. LEXIS 24149, at **11-12 (N.D. Ill. Dec. 16, 2002) (citing *United States ex rel Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 478 (7th Cir. 1996). The court first must determine whether the absent party is "necessary" within the meaning of the Rule. *Id.* "Necessary parties are all those persons who should be joined to the action, including those whose joinder is not feasible and who ultimately may be regarded as indispensable under Rule 19(b)." *Id.* (citing, *inter alia,*

Charles Alan Wright *et al.*, 7 Fed. Prac. & Proc. § 1604 (3d ed. 2001)). If this "absent party" does not qualify as a necessary party, the court's analysis ends. If the court determines that the absent party is a necessary party under Rule 19, "dismissal will still be improper unless joinder of the absentee is not feasible, and . . . the court determines that it would be inequitable to proceed without the absentee." *Id.*

ADT's position is that the entities which physically placed the calls to Plaintiffs' telephones must be joined as necessary parties to this suit. This argument should be disregarded for several reasons. First, as explained above, Plaintiffs' claims against ADT are expressly grounded in "on behalf of" liability. The TCPA, as implemented and interpreted by the FCC, holds an entity strictly liable for ensuring that any "telephone solicitation" transmitted on its behalf is compliant with the TCPA. The Robocalls were sent "on behalf of" ADT. Because ADT is strictly liable for those calls, there is no need to add any other party to this lawsuit.

Second, and in the alternative, ADT is vicariously liable for those calls based on an agency theory, namely that ADT, and/or its "authorized agents" engaged in the prohibited telemarketing activities. It is well recognized that joinder of agents is not required. *See* Charles Alan Wright *et al.*, 7 Fed. Prac. & Proc. § 1623 (3d ed. 2001). As the Seventh Circuit held in finding that an agent was not an indispensable party,"[a]ny agent will suffer some adverse practical consequences when his principal is held vicariously liable on account of the agent's conduct, but this is not a sufficient interest for finding the agent indispensable under Rule 19." *Pasco Int'l (London), Ltd. v. Stenograph Corp.,* 637 F.2d 496, 502 (7th Cir. 1980). ADT's agency relationship with its distributors also dispenses with its concern that any injunctive relief ordered would have to include those parties in order to be effective. This is because ADT has the "right and responsibility to control and police its authorized dealers," Am. Compl. at ¶ 24, it

14

will therefore be ADT's responsibility to ensure its agents' compliance with any injunctions entered.

Finally, Plaintiffs readily acknowledge that ADT is welcome to pursue claims against any third parties for contribution, indemnification, or both. However, this potential claim is ADT's concern, and does not affect the suit that Plaintiffs have chosen to bring against this Defendant, and this Defendant only. *See Florian,* 2002 U.S. Dist. LEXIS 24149, at *17 (dismissing defendants' concern that complete relief could not be granted in third parties' absence based on a future contribution claim against those parties because the "prospect of later litigation is not in itself sufficient to make the [third parties] necessary parties.").

### IV.     CONCLUSION

ADT has put forth no viable argument as to why this case must be dismissed. The Robocalls to Plaintiffs are "telephone solicitations" under the TCPA because they promoted ADT's goods and services via telephone. The FCC has long made it clear that TCPA liability will extend to the entity ***on whose behalf*** a "telephone solicitation" is made, regardless as to whether that entity physically dialed the call. The entity "on whose behalf" a call is sent is the entity that ultimately benefits from the call. As ADT was the ultimate beneficiary of the Robocalls at issue, ADT is responsible for ensuring that such calls were compliant with the TCPA. The fact that the Robocalls were physically dialed by third-parties is irrelevant. Similarly, because Mr. Charvat was properly joined as a Plaintiff in this litigation, and as the Plaintiffs need not add other parties at this time, ADT's alternative arguments for dismissal also fail. The motion to dismiss must be denied.

RESPECTFULLY SUBMITTED,

PLAINTIFFS, VISHVA DESAI and PHIL CHARVAT,

By their attorneys,

  */s/ Brian K. Murphy*
Brian K. Murphy (ARDC #6225697)
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH  43204
(614) 488-0400
(614) 488-0401  *facsimile*
E-mail:  murphy@mmmb.com
murray@mmmb.com

Matthew P. McCue, Esq. *Pro Hac Vice*
The Law Office of Matthew P. McCue
340 Union Avenue
Framingham, MA 01790
 (508) 620-1166
 (508) 820-3311 *facsimile*

Alexander E. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 6060

John W. Barrett, Esq. *Pro Hac Vice*
Jonathan Marshall, Esq. *Pro Hac Vice*
Bailey & Glasser, LLP
227 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 *facsimile*

Edward A. Broderick, Esq. *Pro Hac Vice*

The Law Office of Edward A. Broderick
727 Atlantic Avenue, Second Floor
Boston, MA 02111
(617) 738-7080
(617) 314-7783 *facsimile*