UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT, on behalf of themselves and others similarly situated | Case No. 1:11-cv-1925 |
| Plaintiffs, | |
| vs. | Judge Bucklo |
| ADT SECURITY SERVICES, INC. | Magistrate Judge Keys |
| Defendant. | JURY DEMANDED |

## ADT SECURITY SERVICES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

## INTRODUCTION

ADT *denies* "that illegal Robocall telemarketing promoting its goods and services is widespread or that it has benefited from this massive illegal telemarketing campaign." Pl.s' Br. at 1. In fact, there is **no** "massive illegal telemarketing campaign" and ADT has a robust policy against illegal telemarketing that it strictly enforces with its Authorized Dealers and marketing partners. Among other things, ADT does not conduct telemarketing using pre-recorded messages and its Authorized Dealers and others are *contractually prohibited* from engaging in illegal telemarketing. And, while Plaintiffs harp upon ADT's four year old consent decree with the Federal Trade Commission ("FTC"), ADT is in full compliance with that consent decree. Indeed, Plaintiffs' own brief makes clear that the FTC regularly monitors ADT's compliance with the Consent Decree and, unlike Plaintiffs, the FTC has the right to bring an action to enforce any violation of that Decree, which it has never done.

But none of this is relevant to the issue raised in ADT's Motion to Dismiss. The question now before the Court is whether *these* plaintiffs[1] have stated a claim upon which relief may be granted and whether they have otherwise complied with the Rules of Civil Procedure. They have not.

*First*, plaintiffs admit that ADT did not "make" or "initiate" the three telemarketing calls at issue. Instead, they rely upon a ***different statutory provision*** to claim that ADT is liable for calls that were made on its "behalf." But Congress specifically chose not to include the "on behalf of" language in the Robocall section of the TCPA, and instead ***limited liability*** only to those who "make" or "initiate" a call.[2] At a minimum, that requires some kind of ***active conduct*** on behalf of the defendant, such as ***specifically instructing*** that the calls be made. The Amended Complaint contains no such allegations with respect to ADT. Contrary to plaintiff's suggestion, the Federal Communication Commission ("FCC") has never ruled that vicarious liability is available in cases like this one; rather, that issue is *now* before the FCC. Plaintiffs' broad "agency" theory is supported by neither the text of the TCPA nor by the cases upon which they rely. Because Plaintiffs fail to allege that ADT "made" or "initiated" the calls at issue, the Amended Complaint should be dismissed with prejudice.

---

[1] Plaintiffs go so far as to attach an affidavit reflecting three other individuals who allegedly have made claims regarding improper telemarketing involving ADT's goods or services. *See* Pl.'s Br. at Exh. 4. The affidavit, aside from being at least double hearsay, has no conceivable relevance to the Motion to Dismiss, which concerns the allegations of *these* Plaintiffs.

[2] Charvat allegedly received the calls on his residential line in violation of 47 U.S.C. §227 (b)(1)(B). Section 227 (b)(1)(B) provides: "[i]t shall be unlawful for any person within the United States . . . **to initiate** any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes . . . ." (emphasis added).

Desai allegedly received the call on a cell phone in violation of 47 U.S.C. § 227(b)(1)(A). Section 227(b)(1)(A) makes it unlawful to "**make any call** . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." (emphasis added).

***Second***, Plaintiffs fail to justify Charvat's joinder in this action. Plaintiff's own Brief establishes that the three calls at issue were made by different entities, on different dates, to different phone numbers, to and from different states, and Desai and Charvat bring claims under different sub-sections of the TCPA. Pl.s' Br. at Exh. C. The calls have no connection whatsoever, except that each involved the unauthorized use of ADT's name. That is insufficient to permit joinder where the fundamental issue in each claim will turn upon the relationship (if any) between ADT and the entity that actually made the call.

***Third***, plaintiffs offer no meaningful response to the point that they have failed to join necessary parties – the entities that actually made or initiated the calls. Rather, plaintiffs rely on a theory that ADT should be strictly liable for the conduct of anyone who even mentioned its name in marketing, regardless of any connection between ADT and the entity that made the calls. Rogue telemarketers ***acting contrary to ADT's policies*** and ***without authorization*** are not ADT's agents.

## ARGUMENT

I. *The Plain Text of the Statute Precludes The Broad Vicarious Liability Theory for Robocall Liability Pleaded in the Amended Complaint and Advocated by Plaintiffs*

As explained in ADT's opening Brief, the TCPA contains two separate subsections concerning liability for Robocalls on the one hand, and calls made to persons on the "Do Not Call" list on the other hand. *Compare* 47 U.S.C. § 227(b) *with* 47 U.S.C. § 227(c). With respect to the Do Not Call list – which is *not* at issue in this case – the private right of action provides as follows: "[a] person who has received more than one telephone call within any 12-month period by ***or on behalf of*** the same entity in violation of the regulations prescribed under this subsection" may bring a private right of action. 47 U.S.C. § 227(c) (emphasis added). The private right of action concerning Robocalls – which *is* at issue here – is markedly different.

It does *not* contain any language suggesting liability for calls made "on behalf of" an entity, but instead provides for liability only against a single defendant who violates Section 227(b) of the statute by initiating or making a Robocall:

> A person or entity may, if otherwise permitted by the laws or rules of Court of a State, bring in an appropriate court of that State—
>
> (A) an action based on a violation of **this subsection** or the regulations prescribed under **this subsection** to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, or
>
> (C) If the court finds that the **defendant** willfully or knowingly violated **this subsection** or the regulations prescribed under **this subsection**, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3) (emphasis added).

As explained in ADT's opening brief, it is a basic principle of statutory construction that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Immigration & Naturalization Serv. v. Cardozo-Fonseca*, 480 U.S. 421, 432 (1987). *Expressio unius est exclusio alterius. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (U.S. 1993); *United States v. Head*, 552 F.3d 640, 645 n.2 (7th Cir. 2009) (applying the "famous maxim, *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of another)"). Simply put, transferring the "on behalf of" language from Section 227(c)(5) to Section 227(b)(3) would rewrite the statute. Congress knew how to use the term "on behalf of" when it wanted to, and chose not to do so in the private right of action for Robocalls.

Plaintiffs offer no response to this argument. They ignore the text of the statute and offer no alternative canon of statutory construction that would permit applying Section 227(c)(5) of the TCPA in a case arising under Section 227(b). Instead, Plaintiffs rest their statutory argument on the proposition that the FCC has supposedly "already recognized" that the TCPA imposes vicarious liability for Robocalls made "on behalf of" an entity.

The FCC has done no such thing. To the contrary, as explained in ADT's opening brief, that issue is *presently* before the FCC. The FCC is now considering, among other things, the following question: "Under the TCPA, does a call placed by an entity that markets the seller's goods or services qualify as a call made on behalf of, and initiated by, the seller, even if the seller does not make the telephone call (i.e., physically place the call)?" Exh. A. If the FCC had "already decided" this issue, there would be no reason to decide it now.[3]

The FCC opinions cited by Plaintiffs do not support their position. The primary opinion relied upon, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, CG Docket No. 02-278, 20 F.C.C.R. 13664 (Aug. 17, 2005), not only was unrelated to the specific issue of vicarious liability under the TCPA, but it also asked for an interpretation of the *Do Not Call* provisions of the TCPA, not the Robocall provisions. *See id.* at ¶ 1 ("we clarify that State Farm's 'exclusive agents' may rely on the 'established business relationship' (EBR) exemption of the . . . TCPA to make telephone solicitations on behalf of State Farm *to consumers on the national do-not-call list.*" (emphasis added)). Similarly, Paragraphs 12 and 13 of *In the Matter of Rules and Regulations*

---

[3] Plaintiffs argue that any decision of the FCC can only be reviewed by a court of appeal, and that this Court may not refuse to follow an order of the FCC. Pl.'s Br. at 9 n.2. As explained above, the FCC has *not* issued an order on this issue, and is instead presently considering the issue.

*Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order*, 10 F.C.C.R. 12391 (1995), discussed whether calls made at the direction of a tax exempt organization were subject to the same exemption as the organization itself. The statement relied upon by plaintiffs, that "[o]ur rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations," cites as authority 47 C.F.R. § 64.1200(e)(2)(iii), *id.* at ¶ 13 n.38, which dealt with Do Not Call requests, not Robocalls. Exh. B.[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG 02-278, 23 F.C.C.R. 559 (Jan. 4, 2008) also did not deal with the general question of vicarious liability under Section 227(b) and instead dealt with the issue of consents to call in the context of debt collection actions where the debt collectors were acting at the express instruction of their principal.

Plaintiffs characterize ADT's argument as follows: ADT is not liable unless it "physically press[ed] the dial button on the machine utilized to transmit ADT Robocalls." Pl.s' Br. at 1. That grossly mischaracterizes ADT's position. The terms "Make" and "Initiate" are affirmative verbs that require affirmative action. It may well be that the definition of "make" or "initiate" under the statute is broad enough to include someone who affirmatively tells another entity to make a call – that is an affirmative act directed at ensuring that someone "makes" or "initates" a call. But no conceivable definition of "make" or "initiate" could include the passive conduct that Plaintiffs say it includes – an "entity that benefited from the telephone solicitation or unsolicited advertisement, or in whose interest the telephone solicitation or unsolicited

---

[4] As the CFR has periodically been updated, for the Court's convenience, attached as Exhibit B is the relevant provision as it existed at the time of the FCC's decision.

advertisement was made." Pl.s' Br. at 10. Holding ADT liable in such circumstances would be contrary to the clear intent of Congress as expressed in the statute. Indeed, such an expansive interpretation of the statute would violate ADT's due process rights since it would hold ADT liable for actions of another over which it had no involvement, knowledge or control.

Plaintiffs also claim that ADT can be held liable under an "agency" theory. But their agency theory cannot be reconciled with the text of the statute and there is no case law to support it. The Plaintiffs' agency theory is not that ADT instructed one of its dealers to make the calls at issue or specifically authorized the calls at issue. Rather, Plaintiffs broadly claim that "ADT . . . is accountable under the TCPA for the acts and omissions of its authorized dealers and other third-party's [sic] telemarketing on its behalf." Pl.s' Br. at 7. This broad theory of agency is flatly inconsistent with the text of the statute which requires *affirmative* action on behalf of the defendant to "initiate" or "make" a call.

Indeed, Plaintiff Charvat lost the "agency" argument in the Southern District of Ohio in *Charvat v. Echostar Satellite, LLC*, 676 F Supp. 2d 668 (S.D. Ohio 2009), where the court found that Dish Network could not be liable for improper telemarketing conducted by its authorized agents, because Dish Network "maintains no control over the method of advertising or the means by which the Retailers carry out their marketing activities." *Id.* at 675. Plaintiffs' failure to even acknowledge this case is curious, particular since the decision is likely *res judicata* on Charvat. *Little v. Tapscott*, No. 01-c-9738, 2002 U.S. Dist. LEXIS 13314, *20 (N.D. Ill. 2002) ("Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in a prior action against the same or a different party."); *Sroga v. Decero*, No. 09-c-3286, 2010 U.S. Dist. LEXIS 119594, *5 (N.D. Ill. 2010).

Similarly, all of the state law cases relied upon by Plaintiffs in their brief suggest that some affirmative assent or instruction is required before a defendant can be held liable for the act of others under the TCPA.[5] Plaintiffs do not cite a single case – or any authority at all – for the proposition that a "consumer may bring an action against the entity that benefited from the telephone solicitation or unsolicited advertisement, or in whose interest the telephone solicitation or unsolicited advertisement was made" – apparently without regard to the entity's involvement (if any) with respect to these activities. Pl.s' Br. at 10. They cite no such cases because that is not the law.

The Amended Complaint broadly asserts that the calls were made by "ADT, either directly or via one of its authorized dealers" or "a party authorized by ADT and/or acting on behalf of ADT." Am. Compl. at ¶¶ 51, 54 & 74. But the Complaint fails to plead any facts explaining *who* made the calls at issue or any facts explaining how that person was acting at ADT's affirmative instruction so as to find that ADT "made" or "initiated" the calls. The Amended Complaint should be dismissed.

---

[5] In *Hooters of Augusta, Inc. v. Nicholson*, 537 S.E.2d 468 (Ga. App. 2000), the court affirmed the denial of summary judgment based on an allegation that Hooters controlled the content of the allegedly illegal solicitation. *Id.* at 472. In *Worsham v. Nationwide Ins. Co.*, 772 A.2d 868 (Md. App. 2001) – a case arising under Section 227(c), not 227(b) – the Court held that Nationwide "can be liable for calls that an independent contractor makes at Nationwide's *direction and request*." *Id.* at 878 (emphasis added). Notably, in a related discussion, the Court rejected the plaintiff's argument that it could be held liable as an "affiliated entity" of the person who made the call "even if it had no direct role in either call," because "[t]he mere existence of a mutual benefit resulting from such telephone solicitations is not sufficient to establish affiliation." *Id.* at 880. *Charvat v. Dispatch Consumer Services, Inc.*, 769 N.E.2d 829 (Ohio 2002) dealt with issues concerning severing an established business relationship under Section 227(c), not vicarious liability under Section 227(b). In *Brentwood Travel, Inc. v. Annex Computers, Inc.*, 2001 WL 36018637 (St. Louis County, MO March 18, 2001), unlike in this case, it was undisputed that the agent had sent the allegedly illegal faxes at the direction of the principal: "the facts as admitted demonstrate that ABF was retained to send unsolicited advertising faxes by and for Annex, and that is precisely what ABF did." *Id.* at *1. All of these cases require some kind of affirmative action on behalf of the defendant to be held liable for the acts of their "agents." Plaintiffs allege no affirmative action here.

## II. *Charvat's Claim is Improperly Joined with Desai's Claim*

As explained in ADT's Opening Brief, Charvat's claims do not arise out of the same transaction or occurrence as Desai's, and cannot be joined under Rule 20. The calls took place on different dates, were initiated by different entities, involved different messages, to different persons, in different states, and allegedly violate different sections of the TCPA. Plaintiffs admit this in their brief. Pl.s' Br. at Exh C. Even assuming some theory of agency liability is viable under the TCPA, ADT's liability would necessarily turn on specific issues as to each of these calls, including ADT's connection, if any, with the entities that made those calls and whether it authorized the particular calls at issue. Those issues will be unique to each call and are not part of the same transaction or occurrence.

Plaintiffs assert that "common issues of fact and law abound" because the calls "arose out of the same transaction or occurrence (or series thereof) as part of ADT's long standing Robocall practices." But the Amended Complaint does not identify *any* common "practices" engaged in by *ADT* other than the fact that others have allegedly received telemarketing calls which mention ADT. Plaintiffs argument is entirely circular as the supposed "same transaction or occurrence" is premised entirely on the proposition that ADT is responsible for all these calls, regardless of its connection with the entity that actually made the call, simply because ADT's name was mentioned in the calls. As explained above, that is not and cannot be the law. To the contrary, even under the most generous of agency law theories, ADT's liability must turn in each case on its connection (if any) with the entity that made the call and whether ADT authorized that particular entity to make the calls at issue. Thus, Charvat's claims do not arise out of the same transaction or occurrence as Desai's and the Court should dismiss Charvat from this case.

### III. *Plaintiffs Have Failed to Join Indispensible Parties – The Entities that Made or Initiated the Three Calls At Issue in the Amended Complaint*

Finally, ADT showed in its Opening Brief that Plaintiffs failed to join indispensable parties – the entities that actually made or initiated the three telemarketing calls at issue here. Plaintiffs claim that there is no requirement that the entities that actually made the calls be joined because "ADT is strictly liable for ensuring that any 'telephone solicitation' transmitted on its behalf is compliant with the TCPA." Pl.s' Br. at 14. Again, that argument turns the language of the TCPA on its head – only an entity that makes or initiates a call is liable, an entity is not strictly liable for calls made by unknown entities without any knowledge or authority by ADT.

And, while Plaintiffs cite *Pasco Int'l (London), Ltd. v. Stenograph Corp.*, 637 F.2d 496 (7th Cir. 1980), for the proposition that joinder of agents is not always required in cases asserting vicarious liability, the entities who made the calls here are not ADT's agents.[6] The closest nexus that Plaintiffs offer between any of the three calls and ADT is as follows:

- Subpoenas in this case have shown that one of the calls call was likely made by a company called "Voice-Tel."

- One of ADT's Authorized Dealers, Safe Streets USA is "affiliated" with an entity called Direct Savings, Inc.

- Plaintiffs claim that Voice-Tel's principal has "indicated to class counsel" that it was retained by Direct Savings to make the call.

Pl.s' Br. at Exh. C, ¶¶ 10-20.

---

[6] *Pasco* turned largely on the fact that the principal could have joined the agent pursuant to Rule 14(a) to protect itself against inconsistent verdicts. It is not at all clear that ADT could do so here. None of the entities identified by Plaintiffs in Exhibit C to their Brief are located in Illinois, and it not clear whether they have engaged in any conduct in this forum which would subject them to personal jurisdiction. Plaintiffs simply ignore this personal jurisdiction problem in their Brief.

In other words, Plaintiffs claim that the call was made by a company at the behest of a company that was affiliated with a company that does business with ADT.[7] While Plaintiff's affidavit states that "ADT has admitted in its discovery responses [that Direct Savings] is an entity that markets ADT's goods and services," Pl.s' Br. at Exh. C, ¶ 14, that is false. ADT stated in its discovery responses that "ADT states that it does not do business with Direct Savings, USA. Upon information and belief, ADT believes that one of its dealers, Eversafe, may have had a business relationship with Direct Savings." Exh. F.

ADT has no contractual relationship with Direct Savings, Exh. G (Heather Page Affidavit), but it does have a contractual relationship with Eversafe which prohibits Eversafe from engaging in illegal telemarketing. Eversafe's principal affirmed under oath that he will not engage in illegal telemarketing, that none of its agents or subcontractors will engage in illegal telemarketing, and that in any telemarketing calls Eversafe will identify itself as Eversafe, and will not even mention ADT's name. Exh. H at ¶ 7. ADT has obtained a copy of Eversafe's agreement with Direct Savings, which also prohibits Direct Savings from engaging in illegal telemarketing, prohibits use of telemarketing using pre-recorded messages without Eversafe's written consent (which, as far as ADT knows, was never given) and prohibits use of ADT's name in any telemarketing. Exh. I, at Exh. B, ¶¶ 1.D, 3.I, 3.V.[8] Far from showing that ADT "made" or "initiated" the call, or an agency relationship of any kind, it is clear that any calls that

---

[7] With respect to the other two calls, Plaintiffs' affidavit does not tie the calls to any ADT dealer. Rather, ADT sent each of the entities that Plaintiffs have identified as potentially having made the calls here cease and desist letters making clear that they have no authority to be engaged in any activity on behalf of ADT. Exh. C; Exh. D; Exh. E.

[8] The Court may consider this information in connection with ADT's improper joinder and failure to join necessary party arguments. *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield*, 49 F. Supp.2d 709, 721 (D.N.J. 1999).

were made were made without ADT's knowledge or consent and contrary to its established policies.

Plaintiffs also offer no meaningful response to the point that the Court cannot afford injunctive relief without the entities that made the calls. Instead, they simply cite to their Amended Complaint for the proposition that ADT supposedly has the "right and responsibility to control and police its authorized dealers . . . ." Pl.s' Br. at 14. Even if that were so, the calls at issue were not made by ADT's Authorized Dealers, ADT has no relationship at all with the three entities plaintiffs have identified as potentially responsible for the call, and has no ability to control their conduct. Exh. G (Affidavit of Heather Page). That point is proven by the fact that ADT sent cease and desist letter to the three entities, and all three entities have ignored them. Exh. J (Baughman Affidavit).

## CONCLUSION

There is no vicarious liability under 47 U.S.C. § 227(b), the statute prohibits only active conduct – the "making" or "initiating" or Robocalls. Plaintiffs plead no facts showing any active involvement at all by ADT and instead seek to hold ADT liable for conduct that was not authorized by ADT and was against ADT's interests. The Amended Complaint should be dismissed with prejudice.

Dated: June 27, 2011

Respectfully submitted,

/s/John A. Leja
John A. Leja
Polsinelli Shughart PC
161 N. Clark Street, Suite 4200
Chicago, IL 60601
(312) 873-3670
(312) 819-1910 *facsimile*
Email: jleja@polsinelli.com

Of Counsel:
Robert L. Hickok
Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 *facsimile*
E-mail: hickokr@pepperlaw.com
        baughmanm@pepperlaw.com

*Attorneys for Defendant, ADT Security Services, Inc.*

# CERTIFICATE OF SERVICE

I, John A. Leja, do hereby certify that on June 27, 2011, a true and correct copy of Defendant ADT Security Services, Inc,'s Reply Brief In Support Of Its Motion To Dismiss was served via this Court's CM/ECF system, which will serve each of the parties electronically.

                                                           /s/John A. Leja
                                                           John A. Leja