UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VISHVA DESAI and PHILIP J. CHARVAT, on
behalf of themselves and others similarly situated

Case No. 1:11-cv-1925

Plaintiffs,

vs.

Judge Bucklo

ADT SECURITY SERVICES, INC.

Magistrate Judge Keys

Defendant/Third Party Plaintiff

JURY DEMANDED

vs.

MR. PETE TOLMAN, LEADS DIRECT
MARKETING, VOICE TEL CORPORATION, MR.
CHRISTOPHER LONG, EMI, INC., JMB
ENTERPRISES, CITY VIP, LLC, DIRECT
SAVINGS USA, INC., MR. OSCAR
MONTENEGRO, EVERSAFE SECURITY
SYSTEMS, INC., SAFE STREETS USA, LLC
AND UNKNOWN JOHN DOE DEFENDANTS I
THROUGH XX,

Third Party Defendants

## ADT SECURITY SERVICES, INC.'S THIRD PARTY COMPLAINT

Defendant ADT Security Services, Inc. ("ADT"), by and through its undersigned

counsel, asserts the following Third Party Complaint in this matter pursuant to Federal Rule of

Civil Procedure 14, and in support states as follows:

### PARTIES

1.      Upon information and belief, Plaintiff Vishva Desai ("Desai") is an

individual who resides in the Northern District of Illinois.

2.      Upon information and belief, Plaintiff Philip J. Charvat ("Charvat") is an

individual who resides in Westerville, Ohio.

3.    Defendant and Third Party Plaintiff ADT is a Delaware corporation with its principal place of business located at 1501 Yamato Road, Boca Raton, Florida 33431.

4.    Upon information and belief, Third Party Defendant Mr. Pete Tolman ("Mr. Tolman") is an individual who resides at 4344 Gold Run Dr., Oakley, California 94561.

5.    Upon information and belief, Third Party Defendant Leads Direct Marketing ("Leads Direct Marketing") is a California corporation with its corporate headquarters located at 4344 Gold Run Dr., Oakley, California 94561.

6.    Upon information and belief, Third Party Defendant Voice Tel Corporation ("Voice Tel") is a California corporation with its corporate headquarters located at 4344 Gold Run Dr., Oakley, California 94561.

7.    Upon information and belief, Third Party Defendant Mr. Christopher Long ("Mr. Long") is an individual who resides at 14281 Spring Vista Lane, Chino Hills, California 91709.

8.    Upon information and belief, Third Party Defendant EMI, Inc. ("EMI") is a California corporation with its corporate headquarters located at 14281 Spring Vista Lane, Chino Hills, California 91709.

9.    Upon information and belief, Third Party Defendant City VIP, LLC ("City VIP") is an Iowa corporation with its corporate headquarters located at 736 Federal St. Ste. 2420, Davenport, Iowa 52803.

10.    Upon information and belief, Third Party Defendant JMB Enterprises ("JMB Enterprises") is an Iowa corporation with its corporate headquarters located at 736 Federal St. Ste. 2420, Davenport, Iowa 52803.

11.    Upon information and belief, Third Party Defendant Direct Savings USA,

Inc. ("Direct Savings") is a Florida corporation with its corporate headquarters located at 6245 Powerline Road, Fort Lauderdale, Florida 33309.

12.    Upon information and belief, Third Party Defendant Mr. Oscar Montenegro ("Mr. Montenegro") is the President of Direct Savings USA, Inc., resides in the State of Florida, and is located at 5747 N. University Drive, Tamarac, Florida 33321.

13.    Upon information and belief, Third Party Defendant the Unknown John Doe Defendants ("John Doe Defendants") are business entities and/or individuals that were or are improperly and illegally using ADT's trademark and/or name in telemarketing calls without ADT's authorization. Each of the John Doe Defendants is subject to the jurisdiction of this Court by virtue of his, her, or its business in this jurisdiction. ADT does not presently have sufficient information to identify the John Doe Defendants but will do so through discovery or otherwise.

14.    Mr. Tolman, Leads Direct Marketing, Voice Tel, Mr. Long, EMI, City VIP, JMB Enterprises, Direct Savings, Mr. Montenegro, and John Doe Defendants are collectively referred to as "Unauthorized Third Party Defendants." Counts I through VI in this Third Party Complaint are against the Unauthorized Third Party Defendants.

15.    Third Party Defendant Eversafe Security Systems, Inc. is a New Jersey corporation with its principal place of business located at 475 Market St., 3rd Fl., Elmwood Park, New Jersey 07407.

16.    Third Party Defendant Safe Streets USA, LLC ("Safe Streets") is a limited liability company registered in Delaware with its principal place of business located at 5305 Raynor Road, Suite 100, Garner, NC 27529, and, upon information and belief, is the corporate successor of Eversafe Security Systems, Inc. Eversafe Security Systems, Inc. and Safe Streets

USA, LLC are collectively referred to as "Eversafe." Count VII in this Third Party Complaint is against Eversafe.

## VENUE AND JURISDICTION

17.     This Court has supplemental jurisdiction of the joinder claims in this Third Party Complaint pursuant to 28 U.S.C. § 1367(a) because the claims asserted in this Third Party Complaint are part of the same case in controversy as the claims stated in Plaintiffs' Amended Complaint.

18.     The District Court also has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332 over some or all of the claims.

19.     This Court has jurisdiction over the Unauthorized Third Party Defendants and Third Party Eversafe because they have engaged in conduct relevant to the claims at issue in this case in the State of Illinois and/or have systematic and continuous contacts with the State of Illinois and have otherwise availed themselves to the jurisdiction of Illinois.

20.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims at issue occurred within this district.

## BACKGROUND AND PROCEDURAL HISTORY

21.     On or about March 21, 2011, Plaintiff Vishva Desai commenced this action against ADT alleging that she received a call on her cellular phone purportedly made "on behalf of" Defendant ADT using a pre-recorded message and automatic dialing equipment.

22.     On or about April 18, 2011, Desai amended her complaint to incorporate plaintiff Philip Charvat's claims. A true and correct copy of Plaintiffs' Amended Complaint is

attached hereto as Exhibit A.

23.     In their Amended Complaint, Plaintiffs claim that they received three separate, unsolicited telephone calls using pre-recorded messages, purportedly promoting the services of Defendant ADT and purportedly made "on behalf of" ADT. (*See* Exh. A at ¶¶ 47, 54, 74).

24.     Plaintiffs allege that the calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), and seek to represent a class of similarly situated persons. (*See* Exh. A at ¶¶ 9-19).

25.     On or about August 11, 2011, ADT filed its Answer and Affirmative Defenses to Plaintiffs' Amended Complaint.

26.     None of the calls were made by ADT or "on behalf of" ADT and ADT denies all liability for the allegations in Plaintiffs' Amended Complaint.

27.     As described below, ADT avers that any liability resulting from this lawsuit arises from the acts, errors, omissions, and/or other conduct of the Unauthorized Third Party Defendants and that ADT is entitled to contractual indemnity from Eversafe.

## FACTUAL ALLEGATIONS

### *The Desai Call*

28.     Plaintiff Desai alleges that on or about February 27, 2011, she received a telephone call utilizing a pre-recorded message on her cellular telephone, and that the call was placed using an automated dialing system ("Desai Call"). (*See* Exh. A at ¶ 47).

29.     Desai's cellular phone number that received the call is 415-326-xxxx.

30.     Desai claims that the caller identification for the Desai Call indicated that the Desai Call originated from the telephone number (574) 970-0866. (*See* Exh. A at ¶ 50).

31.     Desai pleads that the message in the Desai Call mentions ADT's name. (*See* Exh. A at ¶ 49).

32.     ADT did not initiate, make or authorize the Desai Call.

33.     On or about April 8, 2011, plaintiff Desai served a subpoena on EngageTel, Inc. ("Engagetel"), a company to whom the number which placed the Desai Call had been assigned, requesting "all documents concerning, and communications with, any entity or entities associated with the 'Desai Call'" and "[a]ll documents concerning ADT Security Services, Inc., or any agent, subsidiary or affiliate thereof." In response to this subpoena, EngageTel stated it "does not have a relationship with ADT Security" and that the "end user" of the telephone number associated with the Desai Call was EMI, Inc. and its president Christopher Long.

34.     ADT has no association with EMI and ADT did not authorize it to conduct telemarketing on its behalf.

35.     EMI is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

36.     ADT has no association with Mr. Long and ADT did not authorize him to conduct telemarketing on its behalf.

37.     Mr. Long is not authorized to conduct any activities on behalf of ADT or to hold himself out as associated with ADT in any way.

38.     Upon information and belief, EMI initiated or made the Desai Call.

39.     Upon information and belief, EMI initiated or made similar calls to others.

40.     Upon information and belief, Mr. Christopher Long initiated or made the Desai Call.

41.     Upon information and belief, Mr. Christopher Long initiated or made similar calls to others.

42.     Upon information and belief, some of the Unknown John Doe Defendants initiated or made the Desai Call.

43.     Upon information and belief, some of the Unknown John Doe Defendants initiated or made similar calls to others.

44.     None of the John Doe Defendants were authorized to conduct any activities on behalf of ADT or to hold themselves out as associated with ADT in any way.

45.     Upon information and belief, any liability resulting from the Desai Call or similar calls arises from the acts, errors, omissions, and/or other conduct of EMI.

46.     Upon information and belief, any liability resulting from the Desai Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Mr. Long.

47.     Upon information and belief, any liability resulting from the Desai Call or similar calls arises from the acts, errors, omissions, and/or other conduct of the Unknown John Doe Defendants.

### First Charvat Call

48.     Plaintiff Charvat alleges that on or about September 7, 2010, he received a pre-recorded message on his residential phone line ("First Charvat Call"). (*See* Exh. A at ¶ 54).

49.     Charvat's residential telephone number that received the First Charvat Call is 614-895-xxxx.

50.     Charvat alleges that the caller identification for the First Charvat Call indicated that the call originated from the telephone number (401) 558-0010.

51.     Charvat alleges the First Charvat Call promoted ADT's goods and services. (*See* Exh. A at ¶ 55).

52.     ADT did not initiate, make or authorize the First Charvat Call.

53.     On or about April 27, 2011, plaintiff Charvat served a subpoena on EngageTel, a company to whom the number which placed the First Charvat Call had been assigned, requesting all documents relating to the First Charvat Call.

54.     On or about May 10, 2011, EngageTel responded to the subpoena by naming Leads Direct Marketing as the company that used the phone number associated with the First Charvat Call.

55.     Upon information and belief, Leads Direct Marketing is associated with Voice Tel Corporation and both companies are owned by Mr. Pete Tolman.

56.     ADT has no association with Mr. Tolman and ADT did not authorize him to conduct telemarketing on its behalf.

57.     Mr. Tolman is not authorized to conduct any activities on behalf of ADT or to hold himself out as associated with ADT in any way.

58.     ADT has no association with Leads Direct Marketing and ADT did not authorize it to conduct telemarketing on its behalf.

59.     Leads Direct Marketing is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

60.     ADT has no association with Voice Tel Corporation and ADT did not authorize it to conduct telemarketing on its behalf.

61.     Voice Tel Corporation is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

62.    Upon information and belief, Mr. Pete Tolman initiated or made the First Charvat Call.

63.    Upon information and belief, Mr. Pete Tolman initiated or made similar calls to others.

64.    Upon information and belief, Leads Direct Marketing initiated or made the First Charvat Call.

65.    Upon information and belief, Leads Direct Marketing initiated or made similar calls to others.

66.    Upon information and belief, Voice Tel initiated or made the First Charvat Call.

67.    Upon information and belief, Voice Tel initiated or made similar calls to others.

68.    Upon information and belief, some of the John Doe Defendants initiated or made the First Charvat Call.

69.    Upon information and belief, some of the John Doe Defendants initiated or made similar calls to others.

70.    None of the John Doe defendants are authorized to conduct any activities on behalf of ADT or to hold themselves out as associated with ADT in any way.

71.    Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Mr. Pete Tolman.

72.    Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Leads Direct

Marketing.

73. Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Voice Tel Corporation.

74. Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of some of the Unknown John Doe Defendants.

75. Charvat further alleges that when he received the First Charvat Call he followed the instructions of the pre-recorded message to reach a live operator and that the live operator informed him that he worked for Direct Savings USA, Inc. (*See* Exh. A at ¶ 59).

76. ADT has no association with Direct Savings USA, Inc. and ADT did not authorize Direct Savings USA, Inc. to conduct telemarketing on its behalf.

77. Direct Savings USA, Inc. is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

78. Upon information and belief, Mr. Oscar Montenegro is the President of Direct Savings USA, Inc.

79. ADT has no association with Mr. Oscar Montenegro and ADT did not authorize him to conduct telemarketing on its behalf.

80. Mr. Oscar Montenegro is not authorized to conduct any activities on behalf of ADT or to hold himself out as associated with ADT in any way.

81. Upon information and belief, Mr. Oscar Montenegro initiated or made the First Charvat Call.

82. Upon information and belief, Mr. Oscar Montenegro initiated or made

similar calls to others.

83.     Upon information and belief, Direct Savings USA, Inc. initiated or made the First Charvat Call.

84.     Upon information and belief, Direct Savings USA, Inc. initiated or made similar calls to others.

85.     Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Mr. Oscar Montenegro.

86.     Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Direct Savings USA, Inc.

### *Facts Pertaining to Eversafe*

87.     Eversafe is an Authorized Dealer of ADT. Pursuant to the terms of the Authorized Dealer Agreement between ADT and Eversafe, Eversafe is an independent contractor and not an agent of ADT.

88.     The Authorized Dealer Agreement between ADT and Eversafe requires Eversafe to follow all federal state and local laws concerning their activities, including all laws concerning telemarketing.

89.     The Authorized Dealer Agreement contains an Indemnity Provision that states "[Eversafe] and Owner shall, jointly and severally, indemnify and hold ADT, its respective Affiliates, officers, directors, employees and agents (collectively the 'ADT Group') harmless from and against any and all damages, costs (including court costs and attorneys' fees (including costs of in-house attorney services)), losses, fees and expenses suffered by the ADT group

-11-

resulting from (i) Authorized Dealer's failure to comply with any of the terms and conditions of this Agreement, the Alarm Services Agreements, and the Servicing Agreements; and (ii) any claims by a third party(ies) arising from or relating to [Eversafe's] (or any Representative of Affiliate thereof) or Owner's action or conduct related to or arising from this Agreement."

90. On October 7, 2010, Eversafe's owner, Todd Herman, signed and notarized an ADT Authorized Dealer Certification of Telemarketing Compliance, which is incorporated into the Authorized Dealer Agreement.

91. Section (i) of the Certification of Telemarketing Compliance states "[Eversafe] has established and implemented effective written policies and procedures for compliance with the requirements of the Telephone Consumer Protection Act of 1991 ("TCPA"), the Telemarketing Sales Rule ("TSR"), and of all other federal, state and local laws, statutes ordinances, rules and regulations regulating telemarketing and advertising."

92. Section (ii) of the Certification of Telemarketing Compliance states "[Eversafe] maintains written telemarketing policies and procedures for compliance with the TCPA and the TSR; provides a copy of its telemarketing policy to consumers upon request; has trained its telemarketing personnel on the requirements of the TCPA and the TSR; and has established a reliable procedure for recording Do-Not-Call ("DNC") requests for ensuring that individuals who request that they not be called are in fact not called in the future."

93. Section (vii) of the Certification of Telemarketing Compliance states "[Eversafe] will always clearly and unequivocally identify itself only by its true and correct company name and will never, expressly or impliedly, identify itself as ADT, as an ADT Authorized Dealer or utilize the ADT name, trade name, trademark, service mark, or any direct or indirect reference to ADT in any telemarketing advertising."

94.     Section (ix) of the Certification of Telemarketing Compliance states "[t]o the extent that Dealer uses and third-parties, including but not limited to any employees, agents or subcontractors, to perform any telemarketing or advertising services for [Eversafe], [Eversafe] will ensure that such third-parties will perform such services in accordance with this certification, and [Eversafe] assumes all responsibility for the acts or omissions of such third-parties."

95.     Section (x) of the Certification of Telemarketing Compliance states "[Eversafe] agrees to indemnify and hold harmless ADT, and its officers, directors, employees, agents, parents and subsidiaries, against any and all claims losses, costs, damages, expenses, fines, penalties, and assessments, including but not limited to attorneys' fees and court costs, of whatever kind and nature, resulting directly or indirectly from [Eversafe's] breach of any of the above covenants, representations, warranties and certifications"

96.     Eversafe had a contractual relationship with Direct Savings and its president Mr. Montenegro. ADT is not a party to the contract, was not involved in the negotiation or course of performance of the contract, and had no involvement in Eversafe's selection of Direct Savings to perform any work for Eversafe.

97.     The contract between Eversafe and Direct Savings required Direct Savings to comply with the TCPA and forbade Direct Savings from using ADT's name in any telemarketing or using pre-recorded messages in telemarketing without Eversafe's approval.

### Second Charvat Call

98.    Charvat also alleges that on or about January 18, 2011, he received a second call containing a pre-recorded message on his residential phone line ("Second Charvat Call"). (*See* Exh. A at ¶74).

99.    Charvat's residential telephone number that received the Second Charvat Call is 614-895-xxxx.

100.    Charvat alleges that the caller identification for the Second Charvat Call indicated that the call originated from the telephone number (918)-442-0937.

101.    Charvat alleges the Second Charvat Call promoted ADT's goods and services. (*See* Exh. A at ¶ 75).

102.    ADT did not initiate, make or authorize the Second Charvat Call.

103.    On or about March 29, 2011, plaintiff Charvat served a subpoena on Fulltel, Inc. ("Fulltel"), whom records indicated was assigned the phone number that made the Second Charvat Call, for all documents identifying what entity or entities initiated the Second Charvat Call.

104.    On or about April 22, 2011, FullTel responded to the subpoena by stating that the phone number associated with the Second Charvat Call is part of a block of numbers used by its customer TM Caller ID.

105.    On or about April 28, 2011, Plaintiffs served a subpoena on TM Caller ID requesting all documents relating to the Second Charvat Call.

106.    On or about May 19, 2011, TM Caller ID responded to the subpoena by stating the telephone number associated with the Second Charvat Call was used by City VIP, LLC.

107.    Upon information and belief, City VIP shares office space with JMB Enterprises, which is described on its website as "one of the top Voice Message Broadcast provider [sic] available today.  We have been in this industry for over ten years, [and] are committed to getting your message out to the greatest number of people in the least amount of time."

108.    ADT has no association with City VIP and ADT did not authorize it to conduct telemarketing on its behalf.

109.    City VIP is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

110.    ADT has no association with JMB Enterprises and ADT did not authorize it to conduct telemarketing on its behalf.

111.    JMB Enterprises is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

112.    Upon information and belief, City VIP initiated or made the Second Charvat Call.

113.    Upon information and belief, City VIP initiated or made similar calls to others.

114.    Upon information and belief, JMB Enterprises initiated or made the Second Charvat Call.

115.    Upon information and belief, JMB Enterprises initiated or made similar calls to others.

116.    Upon information and belief, some of the Unknown John Doe Defendants initiated or made the Second Charvat Call.

117.    Upon information and belief, some of the Unknown John Doe Defendants initiated or made similar calls to others.

118.    None of the John Doe defendants are authorized to conduct any activities on behalf of ADT or to hold themselves out as associated with ADT in any way.

119.    Upon information and belief, any liability resulting from the Second Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of City VIP.

120.    Upon information and belief, any liability resulting from the Second Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of JMB Enterprises.

121.    Upon information and belief, any liability resulting from the Second Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of some of the Unknown John Doe Defendants.

### *Unauthorized Third Party Defendants' Actions In Holding Themselves Out As Associated In Some Way With ADT Are False, Deceptive, And Unlawful.*

122.    Today, no less than 7.4 million commercial, government and residential customers throughout the world receive security services provided under ADT's name. In the United States alone, ADT receives over 16 million alarm signals per year warning of a threat to people and property.

123.    Purchasers rely upon ADT's name for high-quality, reliable security services and trust their safety and personal property to security services provided under ADT's name.

124.    The Unauthorized Third Party Defendants who initiated the Desai Call.
First Charvat Call, and Second Charvat Call engaged in false, misleading and deceptive business
practices by making calls to Desai, Charvat and, upon information and belief, others, and holding
themselves out as being associated in some way with ADT when, in fact, those entities are not
associated with ADT, have no right to conduct any business on behalf of ADT, no right to
telemarket on behalf of ADT, and no right to engage in telemarketing using pre-recorded
messages.  To the contrary, to the extent that these entities engaged in telemarketing activities
that violated the TCPA, they were acting contrary to ADT's expressly stated policy and
instructions that any telemarketing involving ADT's products and services be done in strict
accordance with the TCPA and other laws.

125.    The Unauthorized Third Party Defendants initiated or made each of the
calls willfully and with a wanton disregard for ADT's rights.

126.    ADT has been and will continue to be irreparably harmed if the
Unauthorized Third Party Defendants are permitted to continue to engage in unlawful business
practices and deceit.

## COUNT I – INDEMNIFICATION
### (AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

127.    ADT sets forth the foregoing paragraphs as though fully set forth herein.

128.    ADT denies the allegations in Plaintiffs' Amended Complaint.

129.    The allegations in Plaintiffs' Amended Complaint were the direct and
proximate result of the conduct, actions and omissions of the Unauthorized Third Party
Defendants and/or their agents, representatives and employees and were in no way the result of
any conduct, act or omission by ADT.

130.    In the event that ADT is found liable to Plaintiffs or any class, the Unauthorized Third Party Defendants are wholly liable over to the Plaintiffs or any class, and the Unauthorized Third Party Defendants are wholly liable over to ADT to indemnify ADT for any claims, lawsuits, or liability including costs and attorneys' fees incurred as a result of the alleged losses suffered by the Plaintiffs and the class of persons they seek to represent.

WHEREFORE, if ADT is found liable to the Plaintiffs or any class, ADT is entitled to indemnification from the Unauthorized Third Party Defendants.

## COUNT II – CONTRIBUTION
### (AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

131.    ADT incorporates the foregoing paragraphs as though fully set forth herein.

132.    ADT denies any liability to Plaintiffs.

133.    The allegations in Plaintiffs' Amended Complaint were the direct and proximate result of the conduct, actions and omissions of the Unauthorized Third Party Defendants and/or their agents, representatives and employees and were in no way the result of any conduct, act or omission by ADT.

134.    If ADT is found liable to Plaintiffs, the Unauthorized Third Party Defendants are also liable for the same wrongful conduct, and ADT has a right of contribution from the Unauthorized Third Party Defendants.

WHEREFORE, to the extent that ADT is found liable to Plaintiffs or any class, ADT is entitled to contribution from the Unauthorized Third Party Defendants. ADT further requests judgment against the Unauthorized Third Party Defendants for all amounts if ADT is

found liable in this action, and for all costs and attorneys' fees incurred by ADT to defend the claims asserted by Plaintiffs in this action and for such other and further relief as the Court deems just and proper.

**COUNT III – UNFAIR COMPETITION UNDER THE LANHAM ACT**
**15 U.S.C. § 1125(A) ET SEQ.**
(AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

135. ADT incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

136. ADT is the Licensee of numerous United States Federal Trademark Registrations in and to the ADT name, including, but not limited to, Registration Nos. 710, 708, 3,445,423, and 3,485,321.

137. Unauthorized Third Party Defendants have attempted to sell their goods and services by making false and deceptive representations to consumers.

138. Specifically, Unauthorized Third Party Defendants have falsely implied that ADT has an affiliation with Unauthorized Third Party Defendants when no such affiliation exists.

139. Upon information and belief, Unauthorized Third Party Defendants have falsely implied that their telemarketing activities are on behalf of, with authorization from, and/or as an agent of, ADT.

140. Unauthorized Third Party Defendants have made each of the false and/or deceptive statements with the intent of deceiving consumers as to the origin, connection, association, affiliation, or sponsorship between ADT and Unauthorized Third Party Defendants.

141. Upon information and belief, Unauthorized Third Party Defendants have falsely misrepresented themselves as agents, affiliates, and/or authorized dealers of ADT.

142.     Unauthorized Third Party Defendants' false and misleading statements regarding ADT will create a likelihood of confusion, mistake, or deception among consumers.

143.     To that end, Plaintiffs' Amended Complaint evidences actual confusion among consumers as to an association, affiliation, or sponsorship between ADT and Unauthorized Third Party Defendants.

144.     To the extent that the Unauthorized Third Party Defendants have engaged in illegal telemarketing while holding themselves out as associated with ADT, that activity is false, misleading and deceptive in that these entities have no authority to engage in any such activity and any such illegal telemarketing is contrary to ADT's express policy and instructions that any telemarketing involving ADT's products and services be done in strict accordance with the TCPA and other laws.

145.     ADT has been and will continue to be injured as a result of the Unauthorized Third Party Defendants' false statements by a lessening of the reputation and goodwill associated with ADT's name.

146.     ADT has and will suffer irreparable damage to its business and goodwill by reason of the Unauthorized Third Party Defendants' unlawful acts unless Unauthorized Third Party Defendants are restrained and enjoined therefrom.

147.     It will be difficult or impossible to determine the amount of compensation that would afford ADT complete and adequate relief from Unauthorized Third Party Defendants' continuing unlawful conduct, therefore, ADT is without an adequate remedy at law.

WHEREFORE, ADT respectfully asks this Court to enter judgment in ADT's favor on the claim set forth above and award ADT injunctive relief, damages, treble damages, attorneys' fees and costs and prejudgment interest.

## COUNT IV – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT - FLA. STAT. § 501.201 et seq. AND/OR THE COMMON LAW OR OTHER APPLICABLE STATE STATUTES
### (AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

148.   ADT incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

149.   Upon information and belief, Unauthorized Third Party Defendants are using ADT's name in order to mislead the public into believing that Unauthorized Third Party Defendants' actions, products and/or services have been authorized and/or sponsored by ADT.

150.   Unauthorized Third Party Defendants' acts are likely to cause confusion, mistake, or deception as to the origin, connection, association, sponsorship, or approval of Unauthorized Third Party Defendants' goods and services.

151.   Unauthorized Third Party Defendants' acts are willful, deliberate, false, and misleading representations of fact as to the right to use ADT's name.

152.   Upon information and belief, Unauthorized Third Party Defendants have falsely misrepresented themselves as agents, affiliates, and/or authorized dealers of ADT.

153.   Unauthorized Third Party Defendants' conduct constitutes unfair or deceptive acts or practices.

154.   As a direct and proximate result of Unauthorized Third Party Defendants' unlawful acts and practices, ADT has suffered and will continue to suffer irreparable harm.

WHEREFORE, ADT respectfully asks this Court to enter judgment in ADT's favor on the claim set forth above and award ADT injunctive relief, damages, attorneys' fees and costs, and punitive damages.

## COUNT V: COMMERCIAL DISPARAGEMENT
(AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

155.    ADT incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

156.    Unauthorized Third Party Defendants' telemarketing calls, which were published to one or more parties, contain statements and/or implications about ADT that are false, including the false statements and/or implication that the Unauthorized Third Party Defendants are authorized by ADT to engage in the telemarketing calls they have made or are making.

157.    Unauthorized Third Party Defendants' false and misleading statements demean the quality of ADT's services.

158.    Unauthorized Third Party Defendants' statements and actions were made with knowledge that they were false, reckless disregard as to their falsity, and/or negligence.

159.    Unauthorized Third Party Defendants' false and misleading statements have caused and will cause harm to ADT's reputation and good will, and ADT will suffer damages.

160.    Unauthorized Third Party Defendants' actions were malicious, wanton, purposeful and made with reckless disregard for ADT's rights, entitling ADT to punitive damages.

WHEREFORE, ADT respectfully asks this Court to enter judgment in ADT's favor on the claim set forth above and award ADT damages, attorneys' fees and costs, and punitive damages.

## COUNT VI: INJUNCTIVE RELIEF
### (AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

161. ADT incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

162. ADT respectfully asks that this Court enter a permanent injunction against Unauthorized Third Party Defendants to stop the Unauthorized Third Party Defendants' ongoing wrongful conduct, including an order that Unauthorized Third Party Defendants be prohibited from making any representations or conducting any telemarketing that suggest or imply an association, sponsorship, connection, or relationship with ADT.

WHEREFORE, ADT respectfully asks this Court to enter judgment in ADT's favor on the claim set forth above and award ADT injunctive relief to halt the Unauthorized Third Party Defendants' ongoing wrongful conduct.

## COUNT VII: CONTRACTUAL INDEMNIFICATION
### (AGAINST EVERSAFE ONLY)

163. ADT incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

164. ADT entered into an Authorized Dealer Agreement with Eversafe.

165. The Authorized Dealer Agreement with Eversafe requires Eversafe to comply with all federal, state and local laws, including all laws regarding telemarketing.

166. The Authorized Dealer Agreement between ADT and Eversafe contains an Indemnity Provision that states "[Eversafe] and Owner shall, jointly and severally, indemnify and hold ADT, its respective Affiliates, officers, directors, employees and agents (collectively the 'ADT Group') harmless from and against any and all damages, costs (including court costs

and attorneys' fees (including costs of in-house attorney services)), losses, fees and expenses

suffered by the ADT group resulting from (i) Authorized Dealer's failure to comply with any of

the terms and conditions of this Agreement, the Alarm Services Agreements, and the Servicing

Agreements; and (ii) any claims by a third party(ies) arising from or relating to [Eversafe's] (or

any Representative of Affiliate thereof) or Owner's action or conduct related to or arising from

this Agreement."

167.    On October 7, 2010, Eversafe's owner, Todd Herman, signed and

notarized an ADT Authorized Dealer Certification of Telemarketing Compliance which is

incorporated into the Authorized Dealer Agreement.

168.    Section (i) of the Certification of Telemarketing Compliance states

"[Eversafe] has established and implemented effective written policies and procedures for

compliance with the requirements of the Telephone Consumer Protection Act of 1991 ("TCPA"),

the Telemarketing Sales Rule ("TSR"), and of all other federal, state and local laws, statutes

ordinances, rules and regulations regulating telemarketing and advertising."

169.    Section (ii) of the Certification of Telemarketing Compliance states

"[Eversafe] maintains written telemarketing policies and procedures for compliance with the

TCPA and the TSR; provides a copy of its telemarketing policy to consumers upon request; has

trained its telemarketing personnel on the requirements of the TCPA and the TSR; and has

established a reliable procedure for recording Do-Not-Call ("DNC") requests for ensuring that

individuals who request that they not be called are in fact not called in the future."

170.    Section (vii) of the Certification of Telemarketing Compliance states

"[Eversafe] will always clearly and unequivocally identify itself only by its true and correct

company name and will never, expressly or impliedly, identify itself as ADT, as an ADT

-24-

Authorized Dealer or utilize the ADT name, trade name, trademark, service mark, or any direct or indirect reference to ADT in any telemarketing advertising."

171. Section (ix) of the Certification of Telemarketing Compliance states "[t]o the extent that Dealer uses and third-parties, including but not limited to any employees, agents or subcontractors, to perform any telemarketing or advertising services for [Eversafe], [Eversafe] will ensure that such third-parties will perform such services in accordance with this certification, and [Eversafe] assumes all responsibility for the acts or omissions of such third-parties."

172. Section (x) of the Certification of Telemarketing Compliance states "[Eversafe] agrees to indemnify and hold harmless ADT, and its officers, directors, employees, agents, parents and subsidiaries, against any and all claims losses, costs, damages, expenses, fines, penalties, and assessments, including but not limited to attorneys' fees and court costs, of whatever kind and nature, resulting directly or indirectly from [Eversafe's] breach of any of the above covenants, representations, warranties and certifications. . . ."

173. Pursuant to the terms of the Indemnity Provision, Eversafe is required to hold harmless ADT and indemnify ADT, keep indemnified, and exonerate ADT from any loss, claim, or expense stemming from any conduct by it or any third parties with which it is associated, including Direct Savings.

174. The plaintiffs' claims are premised, at least in part, on allegations concerning the conduct of Direct Savings, with whom Eversafe had a contractual relationship. To the extent that any of the liability in this case is premised on the conduct, actions or omissions of Eversafe or third parties with whom Eversafe contracted, including but not limited to Direct Savings, Eversafe is required to indemnify ADT for all losses, liability, attorneys fees and other

expenses associated with this action.

175.    To date, Eversafe has refused to indemnify ADT for any amounts associated with this litigation, resulting in harm to ADT.

WHEREFORE, ADT respectfully requests this Court to enter judgment in ADT's favor on the claim set forth above and award ADT damages, attorneys' fees and costs, and punitive damages.

Dated:  August 25, 2011                    Respectfully submitted,

                                           /s/ John A. Leja
                                           John A. Leja
                                           Polsinelli Shughart PC
                                           161 N. Clark Street, Suite 4200
                                           Chicago, IL  60601
                                           (312) 873-3670
                                           (312) 819-1910 *facsimile*
                                           Email: jleja@polsinelli.com

                                           Of Counsel:
                                           Robert L. Hickok
                                           Michael E. Baughman
                                           Pepper Hamilton LLP
                                           3000 Two Logan Square
                                           Eighteenth & Arch Streets
                                           Philadelphia, PA  19103
                                           (215) 981-4000
                                           (215) 981-4750 *facsimile*
                                           E-mail:      hickokr@pepperlaw.com
                                                        baughmanm@pepperlaw.com

                                           *Attorneys for Defendant, ADT Security
                                           Services, Inc.*

## CERTIFICATE OF SERVICE

I, John A. Leja, do hereby certify that on August 25, 2011, a true and correct copy of Defendant ADT Security Services, Inc's Third Party Complaint was served via this Court's CM/ECF system, which will serve each of the parties electronically.


/s/ John A. Leja
John A. Leja