## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT, on behalf of themselves and others similarly situated,<br>　　　　　Plaintiffs,<br><br>vs.<br><br>ADT SECURITY SERVICES, INC..<br>　　　　　Defendant. | Case No. 1:11-cv-1925<br><br>Judge Bucklo<br><br>Magistrate Judge Keys<br><br>JURY DEMANDED |

## AMENDED CLASS ACTION COMPLAINT

In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." 47 U.S.C. §227, Congressional Statement of Findings #5. Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls, finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

47 U.S.C. §227, Congressional Statement of Findings ##10 and 12. Telemarketing via pre-recorded phone message is similarly prohibited by the Telemarketing and Consumer Fraud Abuse Prevention Act, 15 U.S.C. §6101, a law enacted in 2004 and enforced by the Federal Trade Commission via the Telemarketing Sales Rule ("TSR"), 16 CFR Part 310.

This consumer class action concerns widespread institutional disregard for the TCPA by defendant, ADT Security Systems, Inc. ("ADT" or "Defendant"), and ADT's authorized retailers. Upon information and belief, over the past four years, hundreds of thousands of unsolicited pre-recorded telephone calls have been made by or on behalf of ADT, and/or with ADT's knowledge, consent, approval and/or acquiescence, to residential and mobile phone numbers throughout the United States, as part of a campaign to promote ADT's products in violation of the TCPA and the privacy rights of citizens of the United States.

## THE PARTIES

1. Vishva Desai ("Ms. Desai") and Philip J. Charvat ("Mr. Charvat") bring this case against ADT Security Services, Inc. ("ADT") to secure redress for violation of the TCPA.

2. Ms. Vesau is an individual who resides in this District.

3. Mr. Charvat is an individual with a principal residence in Westerville, Ohio.

4. ADT is a Delaware corporation located at 2711 Centerville Road in Wilmington, DE 19808.

5. ADT's corporate headquarters are located at One Town Center Road in Boca Raton, Florida, 33486.

6. At all relevant times, ADT has conducted business in Illinois, solicited business in Illinois, engaged in a persistent course of conduct in Illinois, or has derived substantial revenue from services rendered in Illinois.

## JURISDICTION

7. The District Court has original jurisdiction pursuant to 28 U.S.C. 1332(d)(2)(A) because, on information and belief, the matter in controversy is believed to exceed the sum or value of $5,000,000 for the class, exclusive of interests and costs, and is a class action in which a member of the plaintiff class is a citizen of a state different from the defendant.

8. The District Court also has federal question jurisdiction over these claims pursuant to 28 U.S.C. 1331. *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 466 (7th Cir. 2005).

### THE LEGAL BASIS OF THE CLASS CLAIMS

9. The claims of the Plaintiffs, and the class of persons they seek to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

10. The TCPA specifically prohibits the use of an unsolicited pre-recorded phone message to residential homes to advertise the sale of goods and services. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. §64.1200.

11. It is also a violation of the TCPA to call a person's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice message. 47 U.S.C. § 227(b)(1)(A)(iii);

12. Under the TCPA, as interpreted by the Federal Communications Commission, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly place those calls.

13. The Federal Communications Commission has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, Paragraph 13 (1995).*

14. In 2005, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm*

3

*Mutual Automobile Insurance Company for Clarification and Declaratory Ruling,* Declaratory Ruling, 20 FCC Rc. 13664, 13667 Paragraph 7 (2005).

15. Accordingly, an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

16. The phone calls at issue in this case were made for the benefit of ADT. Because these calls were made "on behalf" of ADT, ADT is legally responsible to ensure that such calls are compliant with applicable telemarketing law, even if ADT did not itself physically dial the call.

17. Further, ADT is responsible for the illegal actions of its agents and is also responsible for any illegal actions conducted in the course of any joint venture with any third party.

18. Federal regulations also require that companies making telemarketing calls provide or volunteer a phone number or address for their company at any point during the call. Failure to do so is a violation of 47 CFR §64.1200(d)(4):

> Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

19. Plaintiffs brings this action individually and as the representative of all members of a nation-wide class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

### ADT'S AUTHORIZED DEALER PROGRAM

20. ADT is the self proclaimed world's largest provider of residential and commercial electronic security service, handling over seven million customers.

21. ADT markets and distributes products via a distribution network of authorized dealers.

4

22. ADT compensates each authorized dealer through a structure of commission payments based upon the amount of product and services sold.

23. ADT allows its authorized dealers to market ADT's products and services.

24. ADT has, at all times, had the right and responsibility to control and police its authorized dealers as evidenced by the following facts:

- a. ADT's contracts with its dealers are form agreements prepared by ADT typically entitled "Authorized Dealer Agreement."
- b. Each ADT authorized dealer is given a set of standardized written procedures, entitled the "ADT Dealer Program Guidelines", which are referenced by and incorporated into the Authorized Dealer Agreement.
- c. Pursuant to these form contracts, ADT's authorized dealers agree to sell and install home security services to customers and then are *required* to "sell" these customer accounts exclusively to ADT, which then provides security monitoring services.
- d. Once an authorized dealer installs alarm equipment in a customer's home or office, the alarm system is connected by telephone lines to ADT's monitoring centers, which monitor the alarm equipment.
- e. All authorized dealers are instructed to market using the ADT name. In addition, ADT advertises through it's website to it's authorized dealers that "As an ADT Authorized Dealer, you can have the opportunity to capitalize on the power of the ADT name."

## ADT PROMOTES USE OF TELEMARKETING
## TO GENERATE NEW LEADS

25. ADT sells its security alarm systems through its own call center as well as those of authorized dealers.

26. ADT promotes these systems through a variety of marketing methods, including telemarketing. ADT also approves authorized dealers' scripts and marketing materials.

27. ADT's contractual agreements with authorized dealers give dealers the authority to solicit consumers through means including telemarketing. ADT authorized dealers sell ADT security systems exclusively, using a variety of methods, including telemarketing.

28. In 2007, the Federal Trade Commission ("FTC") brought a complaint against ADT and two of its authorized dealers, for engaging in illegal telemarketing.

29. The FTC alleged that ADT marketed its security systems directly to consumers and through authorized dealers, which used a variety of marketing techniques, including telemarketing.

30. The FTC specifically alleged that ADT and/or its authorized dealers called consumers whose numbers were on the Do Not Call Registry in violation of the Telemarketing Sales Rule, 16 C.F.R. 310.4(b)(1)(iii).

31. In November of 2007, ADT and the FTC entered into a Consent Decree and Order for Civil Penalties ("Consent Decree"). A copy of the Consent Decree is attached at Exhibit A.

32. As part of the Consent Decree with the FTC, ADT agreed

- To monitor and audit its agents' telemarketing practices;

- To create a complaint database for telemarketing complaints and to promptly investigate complaints;

- To conduct a reasonable due diligence investigation to ensure that its authorized dealers had established and actively enforced telemarketing policies and procedures;

- To have a written contract with authorized dealers engaged in telemarketing on ADT's behalf that specifically included provisions relating to telemarketing compliance;

- To monitor outbound telemarketing campaigns conducted by its authorized dealers;

- To cease doing business with an authorized dealer after becoming aware that the authorized dealer was engaged in telemarketing in violation of the TSR;

33. By entering into the Consent Decree, ADT acknowledged that it had both the ability and the duty to control the actions of its authorized dealers to ensure compliance with telemarketing law.

34. The FTC Consent Decree further specifically enjoined ADT from failing to monitor its authorized dealers, and from doing business with authorized dealers who ADT knew or should have known were engaged in illegal telemarketing.

35. The FTC Consent Decree further Ordered ADT to:

- Develop, implement, adequately staff, and continuously operate and maintain, a system to receive and retain complaints related to telemarketing ADT goods or services that are received by telephone, mail and e-mail.

- Make available to the FTC all relevant information relating to complaints made to ADT by consumers relating to its telemarketing practices, including but not limited to (1) the name, address and phone number of the complaining consumer; (2) the substance of the complaint; (3) the nature and result of any investigation concerning the complaint; (4) the name, phone number and address of the Authorized Dealer, Authorized Marketer or Authorized Telemarketer, which made the call that was the basis of the complaint (5) the date of the call, and (6) any relevant information for determining whether a violation of the law had occurred.

- Submit to the FTC monthly reports documenting the complaints made to ADT in regards to violations of the Telemarketing Sales Rule;

- Promptly investigate each consumer complaint relating to telemarketing and take all reasonable steps to identify the person whose activities prompted the complaint; and

- For a period of five years from the entry of the Order, to take a random sampling of 10% of all new accounts to determine how its customers were solicited and to specifically note if the client was contacted initially through outbound telemarketing.

### ADT PROFITS DIRECTLY FROM ILLEGAL TELEMARKETING THROUGH ITS JOINT VENTURE WITH AUTHORIZED DEALERS

36. As described above, ADT markets its goods and services directly to consumers and through its relationships with authorized dealers.

37. At all relevant times, ADT was engaged in a partnership with its authorized dealers.

38. At all relevant times, ADT was engaged in a contractual association with its authorized dealers, to carry out a single business enterprise for profit.

7

39. To carry out this partnership and/or joint venture, ADT and its authorized dealers combined their property, money, effects, skill and knowledge.

40. In the course of its partnership or joint venture, ADT delegated authority to market its products to ADT's authorized dealers.

41. ADT either knew or should have known that its authorized dealers were engaging in telemarketing via auto-dialer and/or pre-recorded message.

42. Even after ADT became aware that its authorized dealers were engaging in telemarketing via auto-dialer or pre-recorded message, it failed to take sufficient action to cause such conduct to cease.

43. By failing to act after having knowledge of such conduct, ADT ratified illegal telemarketing conducted on its behalf by its authorized dealers.

## CONSUMERS COMPLAIN ABOUT ADT'S TELEMARKETING TACTICS

44. For many years now, consumers have been complaining directly to ADT, and to the Federal Trade Commission, that ADT's distributors were engaging in illegal telemarketing in violation of the TCPA.

45. The Federal Trade Commission recently produced to class counsel well over a thousand pages of consumers complaints relating to illegal pre-recorded telemarketing being conducted by ADT's authorized distributors on behalf of ADT.

46. Upon information and belief, despite having knowledge that a number of its distributors were engaged in illegal telemarketing, and having the ability to discipline such distributors, ADT failed to take action to cause such conduct to cease. The persons who suffered TCPA violations as a result of these actions and omissions are the class members in this class.

Case: 1:11-cv-01925 Document #: 185 Filed: 04/28/11 Page 8 of 18 PageID #:3735

## FACTUAL ALLEGATIONS AS TO THE REPRESENTATIVE PLAINTIFFS

### *The Call to Ms. Desai*

47.  On or about February 27, 2011, at approximately 4:21 central time, Ms. Desai received a telephone call on her cellular telephone, phone number xxx-xxx-9079 (the "Desai Call").

48. Ms. Desai's cellular telephone voice mail answered the call.

49. The following automated message was then played on Ms. Desai's voice mail:

[unintelligible] With an alarm system from ADT, you'll have total protection. Soon, because it's obvious that you have an alarm, you significantly reduce the possibility of burglary or [unintelligible] robbery.  To get this free in-home system, press 1 now and we can schedule your installation.  You just pay the monthly monitoring fee.

50. The caller identification for the Desai Call indicated telephone number (574) 970-0866.

51. Upon information and belief, based upon the content of the Desai Call, ADT or a party authorized by ADT, and/or acting on behalf of ADT, placed the Desai Call.

52. Upon information and belief, the Desai Call was dialed by a machine, rather than by a human being, and the message left on Ms. Desa's voice mail was a pre-recorded message.

53. Ms. Desai does not have any relationship with ADT and never gave anyone consent to contact her cell phone on behalf of ADT.

### *The First Call to Mr. Charvat*

54. On September 7, 2010, ADT, either directly or via one of its authorized dealers, employed the use of automated telephone equipment to deliver a pre-recorded message (the "First Charvat Call") to Mr. Charvat's residential phone line (xxx) xxx-8940, without Mr. Charvat's prior express consent.

55. The First Charvat Call promoted ADT's goods and services.

56. The First Charvat Call failed to identify the business, individual, or other entity responsible for initiating the First Call.

57. The First Charvat Call failed to include the phone number on whose behalf the solicitation was made.

58. After receiving the First Charvat Call, Mr. Charvat followed the instructions of the pre-recorded message in order to reach a live operator and to identify the parties responsible for the First Charvat Call.

59. After following a prompt, Mr. Charvat was referred to a live operator who informed Mr. Charvat that he worked for Direct Savings, an ADT authorized dealer.

60. The ADT agent told Mr. Charvat that his name was Jason and that he worked for Direct Savings located at 6245 North Powerline Road in Fort Lauderdale, Florida.

61. The web site for Direct Savings (www.directsavingsusa.com) confirms that Direct Savings is an Authorized Dealer for ADT.

### *Direct Savings And Its ADT Affiliates*

62. The web site for Direct Savings lists the various state license numbers under which Direct Savings does business in other states.

63. Such entities include, but may not be limited to Eversafe Security Systems, Inc. of Elmwood Park, New Jersey and Security Choice, Inc. of Fort Mill, South Carolina, both of which are authorized ADT dealers.

64. Upon information and belief, at all relevant times, ADT authorized dealers including Direct Savings, Eversafe and Security Choice have all engaged in illegal telemarketing on behalf of ADT.

65. In addition, and on information and belief, Direct Savings also uses the d/b/a Alarm One (www.alarmone.com) and All Home Security (www.allhomesecurity.com), which entities also identify themselves as ADT authorized dealers.

66. Upon information and belief, Alarm One and All Home Security, at all relevant times, have engaged in illegal telemarketing on behalf of ADT.

67. Direct Savings' web-site also indicates that it is affiliated with an entity called The Elephant Group, a Florida corporation.

68. The Elephant Group is a marketing entity that promotes various products, including ADT home security systems (www.elephantgroup.com).

69. The Elephant Group is also an ADT authorized dealer.

70. Upon information and belief, The Elephant Group has engaged in illegal telemarketing on behalf of ADT.

71. The Elephant Group, and a Fort Lauderdale Florida corporation called Saveology, Inc. are owned by the same principal, Benzion Aboud.

72. Saveology, Inc. is an ADT authorized dealer.

73. Upon information and belief, at all relevant times to this Complaint, Saveology has engaged in illegal telemarketing on behalf of ADT.

### *The Second Charvat Call*

74. On January 11, 2011, ADT, either directly or via one of its authorized dealers, employed the use of automated telephone equipment to deliver a pre-recorded message to Mr. Charvat's residential phone line (xxx) xxx-8940, without Mr. Charvat's prior express consent (the "Second Charvat Call").

75. The Second Charvat Call promoted ADT's goods and services.

76. The Second Charvat Call failed to identify the business, individual, or other entity responsible for initiating the Second Charvat Call.

77. The Second Charvat Call failed to include the phone number on whose behalf the solicitation was made.

78. At no time did Mr. Charvat give prior express consent to ADT, or its agents, to contact him at home via pre-recorded message.

79. Mr. Charvat did not have a prior business relationship with ADT or its agents.

80. After receiving the Second Charvat Call, Mr. Charvat followed the instructions of the pre-recorded message in order to reach a live operator and to identify the parties responsible for the First Call.

81. After following a prompt, Mr. Charvat was referred to an individual named "Scott" with an entity called "Home Security" and was offering a ADT home security system. "Scott" informed Mr. Charvat that he was an "authorized agent" for ADT.

## CLASS ALLEGATIONS

82. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

83. Upon information and belief, over the past four years, pursuant to a uniform policy and procedure, ADT and/or its authorized agents, have engaged in widespread advertising via unsolicited prerecorded telemarketing calls and auto-dialer use in violation of the TCPA.

84. Upon information and belief, over the past several years, pursuant to a uniform policy and procedure, ADT and/or its authorized agents, have transmitted unsolicited prerecorded telemarketing calls to hundreds of thousands, if not millions, of consumers throughout the United States.

85. Upon information and belief, pursuant to a uniform policy and procedure, ADT and/or its authorized agents did not obtain the consent of recipients prior to the transmission of prerecorded telemarketing calls.

86. The class of persons represented by Plaintiffs is composed of all persons or entities within the United States who ADT either directly, or through its authorized agents, sent, or caused to be sent, unsolicited prerecorded telemarketing calls promoting ADT's goods or services, at any time within the four years prior to the filing of the instant Complaint.

87. A sub-class of persons represented by Plaintiffs is composed of all persons or entities who received, on a cellular phone, an unsolicited ADT prerecorded telemarketing/auto-dialer calls promoting ADT's goods or services, at any time within the four years prior to the filing of the instant Complaint.

88. The classes as defined above are identifiable by phone records and phone number databases, employed by ADT, or its agents, in transmitting its unsolicited prerecorded telemarketing calls. On information and belief, the potential class members number in the hundreds of thousands and constitutes a class so numerous that joinder of all class members is impracticable.

89. Plaintiffs are members of the class.

90. Plaintiff Desai is a member of the sub-class..

91. There are questions of law and fact common to Plaintiffs and to the proposed class, including but not limited to the following:

    a. Whether ADT violated the TCPA by engaging in advertising by unsolicited prerecorded telemarketing calls.

    b. Whether the unsolicited prerecorded telemarketing calls sent by ADT's agents were made "on behalf of" ADT;

      c. Whether the Plaintiffs and the members of the class are entitled to statutory damages as a result of ADT's actions.

92. Plaintiffs claims are typical of the claims of the class.

93. Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and they are represented by counsel skilled and experienced in class actions.

94. The actions of ADT are generally applicable to the class as a whole and to Plaintiffs.

95. Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by ADT and/or its agents.

96. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and because class members are unlikely to know that their rights have been violated.

97. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

98. Plaintiffs are capable of and is willing to represent the other members of the class.

## CAUSES OF ACTION

### COUNT I: NEGLIGENT VIOLATION OF THE TCPA
### SENDING UNSOLICITED PHONE MESSAGES

99. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

100. ADT, either directly or through its authorized agents, negligently caused pre-recorded telemarketing solicitations to be sent to Plaintiffs' home or cell-phone, and to the homes or cell-phones of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

101. The TCPA provides for statutory damages in the amount of a minimum of $500 for each negligent violation of the TCPA.

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray that this Honorable Court find that ADT is responsible to class for its negligent violation of the TCPA and award statutory damages in favor of the class.

### COUNT II: KNOWING VIOLATION OF THE TCPA
### SENDING UNSOLICITED PHONE MESSAGES

102. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

103. ADT, either directly or through its authorized agents, knowingly caused pre-recorded telemarketing solicitations to be sent to Plaintiffs' home or cell phone, and to the homes or cell-phones of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

104. The TCPA provides for statutory damages in the amount of $1,500 for each knowing violation of the TCPA.

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray that this Honorable Court find that ADT is responsible to class for its knowing violation of the TCPA and award statutory damages in favor of the class.

### COUNT III: INJUNCTIVE RELIEF
### TO BAR FUTURE TCPA VIOLATIONS

105. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

106. The TCPA expressly authorizes injunctive relief to prevent further violations of the Telephone Consumer Protection Act.

107.  The Plaintiffs, acting on behalf of the Class, respectfully petition this Court to order all defendants, including but not limited to ADT, its employees, agents or independent distributors, to immediately cease engaging in unsolicited telemarketing in violation of the TCPA.

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray that this Honorable Court find that ADT is responsible to class for its violation of the TCPA and issue injunctive relief to ensure that ADT, and its agents, cease engaging in such conduct going forward.

## COUNT IV: INJUNCTIVE RELIEF
## PRESERVATION OF EVIDENCE

108.  Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

109.  ADT or its agents, have custody and control of the business records and other information necessary to identify the members of the class including names and telephone numbers.  Unless immediate injunctive relief is ordered, it is feared that the defendants will alter, erase, delete, destroy or otherwise dispose of the records in their possession which are necessary to identify each recipient of the pre-recorded messages sent by ADT.  For this reason, the Plaintiffs petition the Court for an order enjoining ADT and its agents, or anyone acting on their behalf, from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray that this Honorable Court find that Order that ADT and its agents preserve all evidence relating to this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray for the following relief:

1.	That ADT be restrained from engaging in future telemarketing in violation of the TCPA.

2. That ADT, and its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

3. That this Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure.

4. That the named plaintiffs and the other members of the class action so certified be awarded statutory damages for each separate violation of the TCPA by the named defendants.

5. That the named plaintiffs and the members of the class be granted such other and further relief as is just and equitable under the circumstances.

**THE CLASS PLAINTIFFS REQUESTS A JURY TRIAL AS TO ALL CLAIMS OF THE COMPLAINT SO TRIABLE**

PLAINTIFFS, VISCVA DESAI and PHIL CHARVAT,

By their attorneys,

/s/Alexander H. Burke
Alexander H Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 *facsimile*
ABurke@BurkeLawLLC.com

/s/Brian K. Murphy
Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul & Basil LLP
1533 Lake Shore Drive
Columbus, OH  43204

(614) 488-0400
(614) 488-0401 *facsimile*
E-mail:  murphy@mmmb.com
         murray@mmmb.com

John W. Barrett, Esq. *Pro Hac Vice Admission Pending*
Jonathan Marshall, Esq.
Bailey & Glasser, LLP
227 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 *facsimile*

Edward A. Broderick, Esq. *Pro Hac Vice Admission Pending*
The Law Office of Edward A. Broderick
727 Atlantic Avenue, Second Floor
Boston, MA  02111
(617) 738-7080
(617) 314-7783 *facsimile*

Matthew P. McCue, Esq. *Pro Hac Vice Admission Pending*
The Law Office of Matthew P. McCue
340 Union Avenue
Framingham, MA 01790
 (508) 620-1166
 (508) 820-3311 *facsimile*