IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VISHVA DESAI, on behalf of herself and others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) ADT SECURITY SERVICES, INC., ) ) Defendant. ) | No. 11 C 1925 |

**THIRD-PARTY DEFENDANT ELEPHANT GROUP, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Third-Party Defendant, ELEPHANT GROUP, INC., ("Elephant Group"), by and through undersigned counsel, hereby submits its Memorandum of Law in Support of its Motion to Dismiss Counts X, XI, and XII of Defendant/Third-Party Plaintiff ADT SECURITY SERVICES, INC.'S ("ADT") Corrected First Amended Third Party Complaint [D.E. 121] ("ADT's Third Party Complaint.")

**I.     PROCEDURAL POSTURE**

Plaintiffs Desai and Charvat brought this action against ADT for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") arising out of telemarketing calls allegedly made to Plaintiffs "on behalf of ADT" using pre-recorded messages and an autodialing system.  *See* [D.E. 15], ¶ 16 ("Plaintiffs' Amended Complaint").

In turn, ADT denied all liability for these telemarketing calls, alleging that it (ADT) did not make any of the telemarketing calls alleged in Plaintiffs' Amended Complaint, and that any such calls were unauthorized and not made "on behalf of ADT."  *See* [D.E. 121], ¶ 28 ("ADT's Third Party Complaint").

1

ADT now sues Elephant Group for contractual indemnification (Count X), common law indemnification (Count XI), and common law contribution (Count XII) arising from these alleged telemarketing calls, even though ADT tacitly concedes in its Third Party Complaint that these telemarketing calls were *not made* by Elephant Group, were *not known* to Elephant Group, and were *not encouraged or authorized* by Elephant Group.[1]  Rather, ADT alleges the telemarketing calls at issue were made by another Third Party Defendant, EMI, Inc. ("EMI").[2] ADT alleges that EMI provided security system leads to Third Party Defendant, Paramount Media Group ("Paramount"), and that Paramount, in turn, had a contractual relationship with Elephant Group.[3]

## II. SUMMARY OF THE ARGUMENT

This Court should dismiss ADT's Third Party Complaint against Elephant Group in its entirety.  With regard to Count X for contractual indemnification, the two indemnification provisions in the operative agreement between ADT and Elephant Group do *not* trigger a right to indemnification under the facts as alleged in ADT's Third Party Complaint.  The first indemnification provision does not cover the acts of third parties (such as EMI) who are not "Affiliates" of Elephant Group, as that term is defined in the agreement.  The second provision is limited to indemnification for Elephant Group's breach of the contract's telemarketing provisions.  Yet, ADT does not even allege that *Elephant Group* violated the telemarketing

---

[1] ADT does not, and in fact cannot, even allege that Elephant Group made, initiated, or encouraged such telemarketing calls to be made.  ADT further acknowledges that Elephant Group's contracts with its own affiliates expressly prohibited such tactics.  *See e.g.*, ADT's Third Party Complaint, D.E. 121 at ¶ 56.

[2] In fact, ADT accuses nearly every other third party defendant (*except* Elephant Group) of making unauthorized telemarketing calls.  *See id*. at ¶¶ 40 – 49, 75 – 87, 94 – 99, 125 – 134, and 138.

[3] *See id*. at ¶ 202.

2

provisions of the contract; instead, ADT blames EMI (an *unknown* third party with no viable relationship to Elephant Group). Moreover, ADT fails to satisfy the pleading requirements of *Twombly* such that Elephant Group is, for the most part, left to speculate as to how it could be liable to ADT under the contractual indemnification provisions. Finally, ADT fails to set forth a complete cause of action for contractual indemnification, since it does not incorporate any prior factual allegations into Count X.

With regard to Counts XI and XII for common law indemnification and contribution, respectively, those claims fail as a matter of law. Recently, this Court dismissed claims essentially identical to ADT's in *Garrett v. Ragle Dental Laboratory, Inc.*, 2011 WL 2637227 (N.D. Ill. July 6, 2011) (Bucklo, J.), and held that the TCPA does not create an affirmative cause of action for indemnification or contribution, and federal common law does not recognize such causes of action. The invalidity of such claims under the TCPA was reaffirmed by this Court in *Glen Ellyn Pharmacy, Inc. v. Meda Pharmaceuticals, Inc.*, 2011 WL 6156800 (N.D. Ill. December 9, 2011) (Gottschall, J.).

### III.     ARGUMENT

#### A.     LEGAL STANDARD FOR REVIEWING A MOTION TO DISMISS

When reviewing a motion to dismiss, the court must accept all well-pleaded facts as true. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). However, the complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotations omitted)). To state a plausible claim, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations, quotations, and brackets omitted). The complaint "must contain

something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Id*. (same). A complaint which fails to satisfy these pleading thresholds must be dismissed.

> B. THIS COURT MUST DISMISS COUNT X OF ADT'S THIRD PARTY COMPLAINT AGAINST ELEPHANT GROUP FOR CONTRACTUAL INDEMNIFICATION BECAUSE ADT DOES NOT (AND CANNOT) ALLEGE FACTS THAT TRIGGER THE INDEMNIFICATION PROVISIONS IN THE PARTIES' AGREEMENT.

The terms of ADT's relationship with Elephant Group are set forth in a contractual agreement dated May 28, 2008 (the "ADT-Elephant Group Agreement" or "Agreement", attached hereto as **Exhibit "A"**).[4] Count X of ADT's Third Party Complaint against Elephant Group for contractual indemnification is premised on two separate provisions in the ADT-Elephant Group Agreement.

The first provision, set forth in paragraph 6(b) of the Agreement, provides in pertinent part:

> Elephant Group shall indemnify, defend, and hold ADT, its Affiliates, officers, directors, employees and agents (collectively the "ADT Group") harmless from and against any and all damages, costs (including court costs and attorneys' fees), losses, fees and expenses suffered by the ADT Group *resulting from or relating to, any negligence or intentional torts by Elephant Group, its Affiliates, officers directors, employees and agents*, in connection with or related to this Agreement.

(emphasis added). The definition of the term "Affiliate" – which is significant, as explained *infra* – is set forth in paragraph 4.1 of the Agreement as "any corporation or other person or entity that directly or indirectly controls, [or] is controlled by . . . ADT or Elephant Group."

---

[4] *See* ADT's Third Party Complaint, D.E. 121 at ¶ 50. As the Seventh Circuit held in *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993), "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."

The second provision upon which ADT relies in Count X for contractual indemnification is set forth in paragraph 23(F) of the ADT-Elephant Group Agreement. It provides, in pertinent part:

> Elephant Group agrees to indemnify, defend, and hold ADT harmless from and against any claims, actions, proceedings and damages, including reasonable attorney's fees and costs, and all monetary penalties or costs imposed upon ADT *arising out of Elephant Group's breach* of the provisions set forth in Sections A and B, hereinabove [concerning telemarketing and emailing].

(emphasis added). The "Sections A and B" referred to in paragraph 23(F) are paragraphs 23(A) and 23(B) concerning telemarketing and email marketing compliance, respectively. Paragraph 23(A), in turn, prohibits Elephant Group from making unsolicited outbound telephone calls and generally requires Elephant Group to comply with telemarketing laws.[5]

Neither of these indemnification provisions is triggered under the facts as ADT has alleged them in its Third Part Complaint – nor could they ever be. Accordingly, this Court should dismiss Count X of ADT's Third Party Complaint against Elephant Group for contractual indemnification, and should do so with prejudice.[6]

### 1. This Court must Strictly Construe the Indemnification Provisions, Interpret and Enforce them According to their Plain Language, and Resolve any Ambiguity in those Provisions against ADT.

Under Illinois law, "[t]he terms of an agreement, if not ambiguous, should generally be enforced as they appear, and those terms will control the rights of the parties." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998). In other words, "the intent of the parties must be

---

[5] *See* Exhibit "A", ADT-Elephant Group Agreement, pgs. 14 – 18, paragraph 23(A).

[6] Elephant Group also notes that in Count X, ADT fails to incorporate any previous allegations of the complaint (*i.e.*, ADT does not "set forth the foregoing paragraphs as though fully set forth herein", as they did in the other counts). Moreover, counsel for ADT acknowledged to the undersigned (Joshua L. Spoont) that they mistakenly included a prayer for punitive damages in Count X's *ad damnum* clause. ADT should be required to correct these honest mistakes in the event Count X is not dismissed with prejudice.

determined solely from the language of the contract itself, which should be given its plain and ordinary meaning, and the contract should be enforced as written." *Salce v. Saracco*, 409 Ill. App. 3d 977, 981 (2011). Moreover, any ambiguity must be resolved against ADT since it drafted the Agreement. *See Dowd & Dowd*, 181 Ill. 2d at 479. Finally, "since indemnity agreements are not favored in Illinois, *they must be strictly construed against the indemnitee*." *Taracorp, Inc. v. NL Industries, Inc.*, 73 F.3d 738, 744 (7th Cir. 1996) (emphasis added) (internal citation omitted).

### 2. ADT Fails to State a Claim for Contractual Indemnification under the First Indemnification Provision of the ADT-Elephant Group Agreement, paragraph 6(b).

According to the plain language of the Agreement, in order for ADT to establish a right to indemnification under paragraph 6(b), ADT must plead and prove that either Elephant Group, Elephant Group's "Affiliates", or Elephant Group's officers, directors, or agents committed an intentional tort or negligence. ADT wholly fails to make these required allegations to bring these claims within the ambit of paragraph 6(b), and in any event, ADT would ultimately fail to prove any such allegations.

As ADT acknowledges, the only potential wrongdoer here is EMI (and others who lack even a tenuous relationship to Elephant Group).[7] Nowhere in the Third Party Complaint does ADT allege – nor could it – that Elephant Group, Elephant Group's "Affiliate" (*e.g.*, Paramount), or any of Elephant Group's employees or agents acted negligently or committed an intentional

---

[7] ADT does *not*, however, allege that any of the telemarketing calls referenced in Plaintiffs' Complaint can be traced in any way to or through Elephant Group. While ADT would always be the ultimate beneficiary of any telemarketing call which sells its services, the same cannot be said for Elephant Group, who was only one of many authorized resellers. Nowhere in ADT's Third Party Complaint is it alleged or even inferred that any telemarketing calls in question inured to Elephant Group's benefit whatsoever.

6

tort. Yet, that is precisely what ADT would be required to allege to state its cause of action for contractual indemnification pursuant to paragraph 6(b). Instead, ADT merely alleges that, upon information and belief, EMI (and others) initiated or made telemarketing calls that may have violated the TCPA, and that since Paramount has worked with EMI, and Elephant Group has a contract with Paramount, that indemnification is proper.[8] However, EMI is not an entity that is encompassed within the plain language of paragraph 6(b), and ADT's allegations do not otherwise establish entitlement to relief under paragraph 6(b).[9] EMI is not an "Affiliate" of Elephant Group, and ADT does not even allege as much. Absent these allegations, ADT fails to state a claim.

In reality, ADT cannot allege in good faith that Elephant Group or Paramount committed an intentional tort or acted negligently, or that EMI was an "Affiliate" of Elephant Group. ADT has no basis in fact to seek indemnification from Elephant Group under paragraph 6(b) of the Agreement. Leave to amend would be futile, and accordingly, this Court should dismiss Count X to the extent it is premised on paragraph 6(b) of the ADT-Elephant Group Agreement, and should do so with prejudice.[10]

---

[8] *See e.g.,* ADT's Third Party Complaint, D.E. 121 at ¶ 40, 41, 47, 202.

[9] The purely contractual analysis of Count X's viability (*i.e.*, Elephant Group's contractual duty to indemnify ADT) is markedly different from the analysis of ADT's potential liability under the TCPA to Plaintiffs as a result of EMI's alleged conduct. The latter analysis concerns ADT's ultimate liability under the TCPA as a matter of law – which this Court previously considered. *See* [D.E. 29, 57]. Conversely, the relevant inquiry here (regarding Count X) is whether, *as a matter of contractual interpretation*, Elephant Group must indemnify ADT for actions taken by third parties (*i.e.*, EMI) who are not Affiliates or agents of Elephant Group, and who are thus not encompassed by the plain language of paragraph 6(b) of the Agreement. The answer to this question is "no."

[10] Surely, paragraph 6(b) cannot be reasonably interpreted to require indemnification on the part of Elephant Group for the actions of an entity who Elephant Group has no knowledge of or control over. The plain language of paragraph 6(b) simply does not support it. Nevertheless,

### 3. ADT Fails to State a Claim for Contractual Indemnification under the Second Indemnification Provision of the ADT-Elephant Group Agreement, paragraph 24(F).

Likewise, ADT has failed to state a claim for contractual indemnification pursuant to paragraph 24(F) of the Agreement. Again, this Court must interpret paragraph 24(F) of the Agreement according to its plain language, must resolve any ambiguities against ADT as the drafter, and must strictly construe the paragraph 24(F) against ADT as the indemnitee. *See Dowd & Dowd*, *Salce*, and *Taracorp, Inc.*, *supra*. In order to trigger indemnification under paragraph 24(F) of the Agreement, ADT must plead and prove that Elephant Group committed a "breach of the provisions of set forth in Sections A and B" of paragraph 24.[11] However, ADT's Third Party Complaint is completely devoid of any such allegations. Once again, ADT attempts to justify its right to contractual indemnification merely by alleging a relationship between EMI and Paramount, and then Paramount and Elephant Group.[12] ADT does not, however, indicate how such a tenuous relationship would constitute a breach of paragraph 24(A) of the Agreement. Yet, that is precisely what ADT would be required to allege to properly state a claim for contractual indemnification under paragraph 24(F). Absent such allegations, ADT's claims fail to the extent they are predicated on paragraph 24(F).

ADT's complete failure to set forth any grounds to indicate that Elephant Group breached paragraph 24(F) of the Agreement runs squarely afoul of the pleading requirements of *Twombly* and its progeny. Further, as a practical matter, since paragraph 24(A) is nearly 3.5 pages long

---

*even if* such an illogical interpretation could be inferred from paragraph 6(b), this Court *must* construe the Agreement in general, and paragraph 6(b) in particular, against ADT (the drafter and indemnitee).

[11] *See* Exhibit "A", ADT-Elephant Group Agreement, pg. 27, paragraph 24(F).

[12] *See* ADT's Third Party Complaint, D.E. 121 at ¶ 202.

and contains 3 subparts, Elephant Group is left to speculate what exactly *it* may have done to breach that paragraph. Once and if ADT clarifies its position, Elephant Group can be in the position to refute those allegations. As it stands, Count X is nothing more than an unsubstantiated recitation of labels and conclusions. Accordingly, this Court must dismiss it.

> C. **THIS COURT MUST DISMISS COUNTS XI AND XII OF ADT'S THIRD PARTY COMPLAINT AGAINST ELEPHANT GROUP FOR COMMON LAW INDEMNIFICATION AND CONTRIBUTION BECAUSE, AS A MATTER OF LAW, THOSE CLAIMS CANNOT BE MAINTAINED UNDER THE TCPA OR FEDERAL COMMON LAW.**

In Count XI, ADT brings a common law indemnification claim against Elephant Group. In Count XII, ADT brings a common law claim for contribution. Both claims fail as a matter of law, and should therefore be dismissed with prejudice. As this Court recently held in *Garrett v. Ragle Dental Laboratory, Inc.*, 2011 WL 2637227 (N.D. Ill. July 6, 2011) (Bucklo, J.), "the TCPA does not create an affirmative cause of action for contribution or indemnification [and] federal common law does not recognize such a cause of action." Just last month, this Court reached the same holding again in *Glen Ellyn Pharmacy, Inc. v. Meda Pharmaceuticals, Inc.*, 2011 WL 6156800 (N.D. Ill. December 9, 2011) (agreeing with *Garrett* in holding that no right to contribution exists under the TCPA).

Both *Garrett* and *Glen Ellyn Pharmacy* involved dismissals of claims nearly identical to those brought here by ADT in Counts XI and XII against Elephant Group.[13] In *Garrett*, a doctor filed a class action complaint against two companies – Ragle Dental Laboratory, Inc. and

---

[13] *See e.g., Garrett v. Ragle Dental Laboratory, Inc., et al.*, Case No. 10-cv-01315 (N.D. Ill), D.E. 63, Ragle's Cross-Claim, at ¶¶ 36 and 37 (alleging that should "Plaintiff recover any sums . . . from Ragle . . . any such liability results from the acts or omissions of Cadent . . . [and] [a]ccordingly, Cadent . . . should indemnify Ragle.") There is, of course, one significant difference: in *Ragle*, Cadent did send the facsimiles in question. Here, Elephant Group did *not* make the telemarketing calls in question. Rather, as ADT alleges, EMI may have.

9

Cadent, Inc. – for violations of the TCPA arising out of an unsolicited fax advertisement sent by Cadent on behalf of Ragle. *Garrett*, 2011 WL 2637227 at *1. Ragle then filed a crossclaim against Cadent for indemnification and contribution, which this Court dismissed. *Garrett*, 2011 WL 2637227 at *2. In doing so, this Court held that the TCPA does not explicitly or implicitly provide a right for contribution or indemnification, and that federal common law does not recognize the viability of such claims either. *Id*. at *1 – 2. Accordingly, Ragle could not maintain those claims.

A few months after *Garrett*, this Court in *Glen Ellyn Pharmacy* reached the same conclusion. In *Glen Ellyn Pharmacy*, this Court dismissed a third-party plaintiff's claims for contribution under the TCPA, and held that the "TCPA itself strongly suggests that Congress never intended to create such a right." *Glen Ellyn Pharmacy*, 2011 WL 6156800 at *2. This Court further went on to hold – as it did in *Garrett* – that the federal common law did not provide such a right. *Id*. at *3. In doing so, this Court rejected the third party plaintiff's argument that "the underlying purpose of the TCPA would be furthered by" expanding the federal common law to encompass such claims.[14] *Id*.

Twice in the last year, this Court has squarely addressed third party claims under the TCPA like those ADT brings here against Elephant Group, and has dismissed those claims in both instances. ADT's claims for indemnification (Count XI) and contribution (Count XII) fail as a matter of law, and this Court should therefore dismiss them with prejudice.

---

[14] Citing *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981), this Court recognized that the expansion of federal common law is only available in very limited circumstances that have no application to third party claims under the TCPA. *Glen Ellyn Pharmacy*, 2011 WL 6156800 at *3.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, Third Party Defendant, Elephant Group, Inc., respectfully requests this Court dismiss Counts X, XI, and XII of Third Party Plaintiff ADT Security Services, Inc.'s Corrected First Amended Third Party Complaint [D.E. 121] and for any further relief this Court deems just and appropriate.

Respectfully submitted,

BEERMANN PRITIKIN MIRABELLI SWERDLOVE, LLP
*Attorneys for Third-Party Defendant, Elephant Group, Inc.*
161 N. Clark Street, Ste. 2600
Chicago, IL 60601
Telephone: (312) 621-9700

By: /s/ Howard L. Teplinsky
    HOWARD L. TEPLINSKY
    Illinois Bar No. 6197501
    hteplinsky@beermannlaw.com

- and -

RICHMAN GREER, P.A.
*Attorneys for Third-Party Defendant, Elephant Group, Inc.*
250 Australian Avenue South, Ste. 1504
West Palm Beach, FL 33401
Telephone: (561) 803-3500
Facsimile: (561) 820-1608

By: /s/ Gary S. Betensky
    GARY S. BETENSKY
    Florida Bar No. 0434302
    gbetensky@richmangreer.com
    JOSHUA L. SPOONT
    Florida Bar No. 053263
    jspoont@richmangreer.com
    ***ADMITTED PRO HAC VICE***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 31, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the Master Service List, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

    /s/ Howard L. Teplinsky
    HOWARD L. TEPLINSKY