**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT, on behalf of themselves and others similarly situated, | )<br>)<br>) Case No. 1:11-cv-1925 |
| Plaintiffs, | )<br>) |
| v. | ) Judge Bucklo<br>) Magistrate Judge Keys |
| ADT SECURITY SERVICES, INC., | ) |
| Defendant/Third Party Plaintiff, | ) |
| v. | ) |
| PETE TOLMAN, LEADS DIRECT MARKETING, VOICE TEL CORPORATION, CHRISTOPHER LONG, EMI, INC., JMB ENTERPRISES, CITY VIP, LLC, DIRECT SAVINGS, USA, INC., OSCAR MONTENEGRO, EVERSAFE SECURITY SYSTEMS, INC., SAFE STREETS USA, LLC, PARAMOUNT MEDIA GROUP, THE ELEPHANT GROUP, INC., AND UNKNOWN JOHN DOE DEFENDANTS I THROUGH XX, | ) |
| Third Party Defendants, | ) |
| SAFE STREETS USA, LLC, SUCCESSOR BY MERGER TO EVERSAFE SECURITY SYSTEMS, INC., | ) |
| Fourth Party Plaintiff, | ) |
| v. | ) |
| DIRECT SAVINGS USA, LLC, | ) |
| Fourth Party Defendant. | ) |

**DEFENDANT/THIRD PARTY PLAINTIFF ADT SECURITY SERVICES, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO
<u>THIRD PARTY DEFENDANT ELEPHANT GROUP, INC.'S MOTION TO DISMISS</u>**

Defendant/Third Party Plaintiff ADT Security Services, Inc. ("ADT"), by its attorneys, hereby submits this Memorandum of Law in Opposition to Third Party Defendant Elephant Group, Inc.'s ("Elephant Group") Motion to Dismiss Counts X, XI, and XII of ADT's Corrected First Amended Third Party Complaint ("ADT Amended Complaint").

**I.     INTRODUCTION**

Elephant Group's motion asks the Court to dismiss ADT's third party claims on the same ground that ADT unsuccessfully moved the Court to dismiss plaintiffs' claims against ADT. Elephant Group contends that, like ADT, it neither "initiated" nor "made" any unsolicited, prerecorded calls to plaintiffs in violation of section 227(b) of the Telephone Consumer Protection Act ("TCPA") (*see, e.g.,* Elephant Group Mem. at 1-2), and that it cannot be held vicariously liable for any such calls allegedly made by third party defendant EMI, Inc. ("EMI"), which sold customer leads to an "Affiliate" of Elephant Group, third party defendant Paramount Media Group ("Paramount") (*see id*. at 6-7). While ADT agrees with Elephant Group's position that no defendant should be held vicariously liable for violations of section 227(b), the Court ruled that such a theory of vicarious liability was sufficient to state a claim when it denied ADT's motion to dismiss. (*See* July 18, 2011 Mem. & Order at 2.) And unless the Court decides to revisit that ruling, it is the current law of the case and must govern the Court's decision on Elephant Group's motion.

As explained below, Elephant Group's liability to ADT for indemnification and contribution are derivative of ADT's purported liability to plaintiffs. Because ADT properly impleaded Elephant Group as a third party defendant pursuant to Federal Rule of Civil Procedure 14(a), Elephant Group's motion to dismiss should be denied.

## II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A. In Denying ADT's Motion To Dismiss Plaintiffs' Amended Complaint, The Court Ruled That Whether A Defendant Can Be Held Vicariously Liable For Calls Made By Third Parties In Violation Of Section 227(b) Of The TCPA Is A Factual Matter That Cannot Be Resolved On A Rule 12(b)(6) Motion

On or about March 21, 2011, plaintiff Vishva Desai ("Desai") commenced this action against ADT alleging that she received a call ("Desai call") on her cellular telephone utilizing a prerecorded message purportedly made "on behalf of" ADT,[1] promoting its services. (*See* ADT Am. Compl. ¶¶ 23, 25.) On or about April 18, 2011, Desai amended her complaint to incorporate claims by plaintiff Philip J. Charvat ("Charvat") that he received two separate telephone calls to his residential telephone line using a prerecorded message purportedly made "on behalf of" ADT. (*See id*. ¶¶ 23-24.) Plaintiffs allege that the calls violated section 227(b) of the TCPA, 47 U.S.C. § 227(b), and they seek to represent a class of allegedly similarly situated persons. (*See id*. ¶ 26.)

On May 18, 2011, ADT filed a motion to dismiss plaintiffs' Amended Complaint on grounds, *inter alia*, that section 227(b) of the TCPA makes it unlawful "to ***initiate*** any [unauthorized] telephone call to any residential telephone line, 47 U.S.C. § 227(b) (1)(B) (emphasis added), or "to ***make*** any [unauthorized] call . . . to any cellular telephone service, 47 U.S.C. § 227(b) (1)(A) (emphasis added), and that plaintiffs did not, and could not, allege that ADT "initiated" or "made" any of the three calls they received. (*See, e.g.,* ADT's Mem. in Supp. of Mot. to Dismiss at 1-3, 5-8.) ADT also argued that Section 227(b) did not provide a cause of action against a defendant "on whose behalf" an unauthorized call was made. (*See id*. at 1, 6-8.)

---

[1] In February 2012, plaintiffs for the first time produced a recording of the Desai call. ADT believes the recording does not refer to ADT, but to another company called "ADP." This issue is the subject of ongoing discovery.

The Court, however, disagreed and denied ADT's motion on July 18, 2011. (*See* July 18, 2011 Mem. Op.) Apparently applying agency principles, the Court held that

> [t]he term "initiate" [in Section 227(b) (1)(B)] is broad enough to include cases where, as plaintiffs allege of ADT here, a party has encouraged or otherwise prompted its authorized dealers to make calls on its behalf. To be sure, ADT staunchly denies that it encouraged its dealers to make such calls. Indeed, ADT claims that it specifically forbade its authorized dealers from violating the TCPA and other laws. But whether this is so is a factual matter that cannot be resolved on a Rule 12(b)(6) motion.

(*Id.* at 2.)

    **B.** **After Learning During Discovery That Elephant Group's Affiliate Paramount Media Group Used Leads Provided By EMI, The Entity That Plaintiffs Claim Made The Desai Call, ADT Joined Elephant Group And Paramount As Third Party Defendants**

In light of the Court's ruling on its motion to dismiss, ADT filed a third party complaint on August 25, 2011 against various entities which ADT learned through discovery were likely connected to one or more of the three calls to plaintiffs. Based upon ADT's investigation and discovery to date, it appears that two of these third party defendants, EMI and Christopher Long ("Mr. Long") may have initiated or made the Desai Call, and that plaintiffs would take this position. (*See* ADT Am. Compl. ¶¶ 35-42.) At no time has ADT had any association with either EMI or Mr. Long; nor has ADT authorized them to conduct telemarketing or any other activities on its behalf or to hold themselves out as being associated with ADT in any way. (*See id*. at 36-39.)

In the fall of 2011, after the parties conducted further third party discovery, ADT learned that:

(a) Elephant Group, which engages in marketing activity to promote leads for ADT Authorized Dealers[2] through its subsidiary Saveology.com LLC ("Saveology"), had entered into an Affiliate Agreement with Paramount in or about October 2010 and had allowed Paramount to market ADT products and services for Elephant Group, without obtaining prior written approval from ADT;[3] and

(b) Beginning in late 2010 or early 2011, without ADT's knowledge or consent, Paramount utilized EMI's services to obtain leads to prospective customers. According to Paramount, EMI represented that it used its own database of customers who had consented to being contacted by telephone regarding generic security services (referred to as "opt-in," "generic" leads), and that EMI made telephone contact with the opt-ins through a live telephone operator, who would then "warm transfer" the calls to a live operator at Paramount for a fee. (*See id*. ¶¶ 55, 58.)

At no time did ADT approve Elephant Group's use of Paramount to market ADT's products and services; nor did ADT know about, authorize, or consent to Paramount's use of EMI's leads for the purpose of marketing ADT's products and services. Under the ADT-Elephant Group Agreement, Elephant Group is prohibited from conducting any unsolicited telemarketing services involving ADT's products or services. (*See* ADT Am. Compl. ¶¶ 51, 59; EG Exh. A, ADT-Elephant Group Agreement ¶ 23.A.) The only circumstance in which Elephant Group may make telephone calls involving ADT's goods or services is to respond to consumer requests for information. (*See* ADT Am. Compl. ¶ 51; EG Exh. A, ADT-Elephant Group

---

[2] A copy of the Agreement between ADT and Elephant Group ("ADT-Elephant Group Agrement" or "the Agreement") is appended to Elephant Group's motion to dismiss as Exhibit A (cited herein as "EG Exh. A").

[3] A true and correct copy of excerpts of the Affiliate Agreement between Saveology and Paramount that Elephant Group's counsel provided ADT's counsel are appended hereto as Exhibit A" (cited herein as "ADT Exh. A").

Agreement ¶ 23.A.)  The ADT-Elephant Group Agreement forbids Elephant Group from using prerecorded messages in any telemarketing absent ADT's written approval, which ADT has never given.  (*See* ADT Am. Compl. ¶ 52; EG Exh. A, ADT-Elephant Group Agreement ¶ 23.A.1.)

The ADT-Elephant Group Agreement also prohibits Elephant Group from delegating or contracting its telemarketing duties or obligations to any third party without ADT's prior written consent.  (*See* EG Exh. A, ADT-Elephant Group Agreement ¶ 17.)  Nonetheless, without ADT's written consent, Elephant Group (through its subsidiary Saveology) delegated and contracted to Paramount certain of Elephant Group's telemarketing services owed to ADT.  (*See* ADT Am. Compl. ¶ 55; ADT Exh. A, Saveology-Paramount Agreement.)  The Agreement provides that, in such circumstances, Elephant Group is obligated to indemnify ADT for any violations of the telemarketing provisions of the agreement by the person to whom Elephant Group has delegated its duties.  (*See* EG Exh. A, ADT-Elephant Group Agreement ¶ 23.A (prohibiting "any unsolicited outbound telephone calls . . . directly or indirectly through telemarketing agents or others on behalf of ADT"), ¶ 23.F (requiring indemnification by Elephant Group for any breach of ¶ 23.A.).)

Pursuant to the terms of the ADT-Elephant Group Agreement, Elephant Group is required to indemnify, hold harmless, and exonerate ADT from any loss, claim, or expense stemming from any conduct by it or any third parties with which it is associated, including Paramount.  (*See* ADT Am. Compl. ¶ 201; EG Exh. A, ADT-Elephant Group Agreement ¶¶ 6(b), 23.F.)  Specifically, Elephant Group agreed to "indemnify, defend and hold ADT . . . harmless from and against any and all damages, costs (including court costs and attorneys' fees), losses, fees and expenses suffered by [ADT] resulting from or relating to, any negligence or intentional torts by Elephant Group, its Affiliates, officers, directors, employees and agents, in connection

with or related to [the] Agreement . . . ." (EG Exh. A, ADT-Elephant Group Agreement ¶ 6(b); ADT Am. Compl. ¶ 199.)[4] Elephant Group also agreed to "indemnify, defend and hold ADT harmless from and against any claims, actions, proceedings and damages, including reasonable attorney's fees and costs, and all monetary penalties or costs imposed upon ADT arising out of Elephant Group's breach of" the telemarketing and e-mail marketing provisions set forth in paragraph 23.A and 23.B of the Elephant Group Agreement or any breach by any entity to whom it has delegated its obligations. (EG Exh. A, ADT-Elephant Group Agreement ¶ 23.F; ADT Am. Compl. ¶ 200.)

On October 7, 2011, after discovering Paramount's relationship to EMI and Elephant Group's relationship to Paramount, ADT filed a motion for leave to amend its third party complaint for the purpose of joining both Elephant Group and Paramount as additional third party defendants.[5] The Court granted ADT's motion on October 13, 2011.[6]

As delineated above, ADT's claims against Elephant Group derive from Elephant Group's contractual relationship with Paramount, Paramount's use of EMI's leads, and EMI's alleged unsolicited, prerecorded call to Desai. To the extent that any of the liability alleged by plaintiffs is premised on the conduct, actions, or omissions of Elephant Group, Paramount, or

---

[4] The ADT-Elephant Group Agreement defines the term "Affiliate" as meaning "any corporation or other person or entity that directly or indirectly controls, is controlled by, a successor-in-interest to, or alter ego of, or is under common control with, ADT or Elephant Group, respectively." (EG Exh. A, ADT-Elephant Group Agreement ¶ 4.1.)

[5] ADT also demanded that Elephant Group cease using Paramount for any activities involving ADT, which Elephant Group has done. (*See* ADT Am. Compl. ¶ 60.)

[6] On October 20, 2011, ADT filed a Corrected First Amended Third Party Complaint for the purpose of correcting the pleading's caption.

EMI, Elephant Group is required to indemnify ADT for all losses, liability, attorneys' fees and other expenses associated with this action. (*See* ADT Am. Compl. ¶ 202.)[7]

### C. Despite The Court's July 18, 2011 Decision That A Defendant's Vicarious Liability Under Section 227(b) Of The TCPA Is A Factual Matter That Cannot Be Resolved On A Rule 12(b)(6) Motion, Elephant Group Has Moved To Dismiss ADT's Third Party Claims For Indemnification And Contribution

Although the Court has held in this case that whether a defendant can be held vicariously liable for calls made by third parties in violation of section 227(b) of the TCPA is a factual matter that cannot be resolved on a Rule 12(b)(6) Motion, Elephant Group has moved to dismiss ADT's third party claims on grounds that ADT does not allege that Elephant Group itself initiated, made, knew about, authorized, or encouraged any of the telemarketing calls at issue. (*See, e.g.*, Elephant Group Mem. at 1-3.) Elephant Group further argues that:

 1. ADT's claim for contractual indemnification (Count X) should be dismissed because, according to Elephant Group, (a) EMI is not an "Affiliate" of Elephant Group, and the indemnification provision set forth in paragraph 6(b) of the ADT-Elephant Group Agreement does not cover the acts of third parties who are not "Affiliates" of Elephant Group (*see id.* at 2, 4-7); and (b) the indemnification provision set forth in paragraph 23.F of the Agreement only applies if Elephant Group has breached the Agreement's telemarketing provisions, and the Amended Complaint does not allege any such breach (*see id*. at 2, 8-9); and

 2. ADT's claims for common law indemnification (Count XI) and contribution (Count XII) fail as a matter of law under recent decisions by this Court.

---

[7] To date, Elephant Group has not agreed to indemnify ADT for any costs it has incurred in this litigation. (*See* ADT Am. Compl. ¶ 203.)

As explained below, none of these arguments supports dismissal of ADT's Amended Complaint, and Elephant Group's motion should be denied.

## III. ARGUMENT

### A. Applicable Standards

#### 1. ADT's Amended Complaint Satisfies The Pleading Standards Of Federal Rule Of Civil Procedure 12(b)(6)

In reviewing Elephant Group's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts set forth in ADT's Amended Complaint, view the facts in the light most favorable to ADT, and draw reasonable inferences in ADT's favor. *See, e.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). As explained in Section B below, ADT's third party claims against Elephant Group meet the pleading standards of Rule 12(b)(6).[8]

#### 2. ADT's Amended Complaint Satisfies The Requirements Of Federal Rule Of Civil Procedure 14(a)

When considering Elephant Group's motion to dismiss, the Court must also apply Rule 14(a), which "sets forth the circumstances in which a defendant may implead a third party defendant." *Federalpha Steel LLC Creditors' Trust v. Fed. Pipe & Steel Corp.*, 245 F.R.D. 615, 618 (N.D. Ill. 2007) (Bucklo, J.). Rule 14(a) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or ***may be*** liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a) (emphasis added). Accordingly, under Rule 14, "a defendant/third party plaintiff [may] implead a third-party defendant when the third party defendant's liability to the third-party plaintiff is ***derivative*** of the third-party plaintiff's liability

---

[8] Should the Court determine that there is a pleading deficiency, however, ADT respectfully requests leave to replead.

-9-

to the original plaintiff." *Federalpha Steel*, 245 F.R.D. at 618 (emphasis added). As this Court explained in *Federalpha Steel*:

> Rule 14(a) "is designed to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted" and "guarantees consistent results" and "saves the time and cost involved in the needless repetition of evidence at a subsequent trial."

*Id.* (quoting *Colton v. Swain*, 527 F.2d 296, 299 (7th Cir. 1975)).

As set forth in Sections III.B and III.C below, ADT's Amended Complaint sufficiently alleges that Elephant Group's liability to ADT is derivative of ADT's purported liability to plaintiffs. Because ADT properly impleaded Elephant Group as a third party defendant, Elephant Group's motion to dismiss should be denied.

### 3. Under The Law Of The Case Doctrine, The Court Has The Discretion To *Either* Deny Elephant Group's Motion To Dismiss *Or* Grant The Motion And Reverse Its Prior Decision On ADT's Motion To Dismiss Plaintiffs' Claims

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "This presumption against reopening matters already decided reflects interests in consistency, finality, and the conservation of judicial resources, among others." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). A court has the discretion, however, to revisit a prior ruling "if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears*, 466 F.3d 570, 572 (7th Cir. 2006).[9]

---

[9] In addition, although courts "treat decisions on legal issues made at one stage of a case as binding precedent to be followed in successive stages of the same litigation, the [law of the case] doctrine never blocks a higher court from examining a decision of an inferior tribunal." *Payne v. Churchich*, 161 F.3d 1030, 1038 n.9 (7th Cir. 1998) (citation and internal quotation marks omitted).

In its denial of ADT's motion to dismiss, the Court held that whether a defendant can be held vicariously liable under section 227(b) of the TCPA for telemarketing calls made by third parties "is a *factual matter* that cannot be resolved on a Rule 12(b)(6) motion." (July 18, 2011 Mem. Op. at 2 (emphasis added).) In disregard for the law on the case doctrine, Elephant Group seeks by its motion to dismiss a ruling that is contrary to the Court's earlier decision on ADT's motion: It asks the Court to rule *as a matter of law* that Elephant Group cannot be held vicariously liable for calls made by any of the same third parties, even though Elephant Group does not, and cannot, dispute that it has a closer connection to third parties Paramount and EMI than does ADT. If the Court were to grant Elephant Group's motion, then it should revisit and reverse its decision on ADT's motion to dismiss plaintiffs' claims.

**B.    Count X Of ADT's Amended Complaint Alleges Sufficient Facts To Trigger The Indemnification Provisions Of The ADT-Elephant Group Agreement**

**1.    Paragraph 6(b) Of The ADT-Elephant Group Agreement Covers The Acts Of Paramount And EMI**

Contrary to Elephant Group's assertions (*see* Elephant Group Mem. at 2, 4-7), the indemnification provision set forth in paragraph 6(b) of the ADT-Elephant Group Agreement *does* cover the acts of third parties such as Paramount and EMI. Elephant Group's repeated contention that EMI cannot be considered one of its "Affliates" as that term is defined in paragraph 4.1 of the Agreement (*see id.*)[10] is beside the point for the following reasons:

First, Elephant Group does not dispute that, during the relevant time period, Paramount was Elephant Group's Affiliate; Paramount purchased customer leads from EMI; and, according to plaintiffs, EMI made the Desai call. (*See id*; ADT Am. Compl. ¶¶ 55, 58.)

---

[10] Although Elephant Group cites to Illinois principles of contract interpretation (*see id*. at 5-6), the ADT-Elephant Group Agreement is actually governed by Colorado law. (*See* EG Exh. A, ADT-Elephant Group Agreement ¶ 19.)

-11-

Whether Paramount was negligent in its use of EMI's services and whether Elephant Group itself was negligent in its oversight of Paramount's telemarketing activities, are *fact* issues that cannot be resolved on a Rule 12(b)(6) motion. But should ADT be held vicariously liable for any prerecorded calls made by EMI, and should either Elephant Group or Paramount be found negligent with respect to such transactions, Elephant Group will be contractually obligated to indemnify ADT pursuant to the terms set forth in paragraph 6(b) of the ADT-Elephant Group Agreement.

Second, even if the facts were to support Elephant Group's contention that EMI is not its "Affiliate" under the ADT-Elephant Group Agreement, under plaintiffs' theory of the case, EMI is somehow a "sub-sub agent" of ADT and ADT is therefore liable for EMI's actions. ADT vigorously disputes this. But if it is proven, then the jury would have to find that Paramount acted as an agent of Elephant Group and that EMI acted as a subagent of Elephant Group. Simply put, if plaintiffs prove their claim, the only way they can reach ADT is to show that EMI violated the TCPA, while acting as an agent of Paramount, a subagent of Elephant Group, and a sub-sub agent of ADT. While neither the law nor facts support such a theory, it is the theory that the Court has allowed to proceed in this case, and under Rule 14(a), ADT is entitled to assert cross claims that are contingent on plaintiffs' proving their claim. If plaintiffs prove their claim, and establish agency all along the chain, then Elephant Group will be required to indemnify ADT under paragraph 6(b) for this separate and independent reason. (*See* EG Exh. A, ADT-Elephant Group Agreement ¶ 6(b) (requiring indemnification against any and all damages, costs, losses, fees and expenses suffered by ADT "resulting from or relating to, any negligence or intentional torts by Elephant Group, its Affiliates, officers, directors, employees and *agents*") (emphasis added).)

### 2. Paragraph 23.F Of The ADT-Elephant Group Agreement Also Covers The Acts Of Paramount And EMI

Such general agency principles also support ADT's claim against Elephant Group for contractual indemnification under paragraph 23.F of the ADT-Elephant Group Agreement. If plaintiffs prevail on their agency theory (which they should not), and either Paramount or EMI, while acting as Elephant Group's agent or subagent, breached any of the telemarketing provisions set forth in paragraph 23.A of the Agreement (*e.g.*, by using prerecorded messages in violation of 23.A.1) as alleged in ADT's Amended Complaint (*see* ADT Am. Compl. ¶¶ 55-60, 202); and such breach resulted in any of the alleged prerecorded calls at issue here; and ADT is held vicariously liable to plaintiffs for the calls; then Elephant Group will be required to indemnify ADT for all its losses, liability, attorneys' fees and other expenses associated with this action pursuant to the terms of paragraph 23.F of their Agreement. While ADT does not believe the TCPA creates such liability, the Court has allowed plaintiffs' theory to proceed, at least for now, in ruling on ADT's motion to dismiss, *i.e.*, that a defendant can be held vicariously liable under section 227(b) of the TCPA for telemarketing calls allegedly initiated or made by third parties. (*See* July 18, 2011 Mem. Op. at 1-2.) Thus, contrary to Elephant Group's assertions (*see* Elephant Group Mem. at 8-9), ADT's Amended Complaint adequately pleads a claim for contractual indemnity under paragraph 23.A of the ADT-Elephant Group Agreement.

### C. ADT's Common Law Claims Of Indemnification And Contribution (Counts XI And XII) Are Consistent With The Court's Ruling That ADT Can Be Held Vicariously Liable Under Section 227(b) For Conduct Committed By Third Parties

Elephant Group argues that ADT's claims for common law indemnification and contribution fail to state a cause of action under two recent decisions by this Court, which held that the TCPA does not create an affirmative cause of action for contribution or indemnification. *See Garrett v. Ragle Dental Laboratory, Inc.*, No. 10 C 1315, 2011 WL 2637227, at *1-2 (N.D.

July 6, 2011) (Bucklo, J.); *accord Glen Ellyn Pharm., Inc. v. Meda Pharms., Inc.*, Case No. 09 C 4100, 2011 U.S. Dist. LEXIS 142373, at *7-11 (N.D. Ill. Dec. 9, 2011). (*See* Elephant Group Mem. at 9-11.) In each case, the Court acknowledged that no court has specifically held that the TCPA prohibits claims for indemnification or contribution, but went on to hold that, on the facts presented, the third party plaintiff had failed to provide a sufficient basis for expanding the federal common law to provide such a right. *See Garrett*, 2011 2637227, at *1-2; *Glen Ellyn Pharmacy*, 2011 U.S. Dist. LEXIS 142373, at *10.

In neither *Garrett* nor *Glen Ellyn Pharmacy*, however, had the Court ruled, as it has here, that a defendant can be held ***vicariously*** liable for a ***third party's*** violation of section 227(b) of the TCPA. So long as the Court intends to abide by its earlier ruling in this case that ***any*** defendant linked in the chain leading to the actual wrongdoer can be held vicariously liable under section 227(b) of the TCPA, it should allow all such defendants to assert common law claims for indemnification and contribution down the chain so that the actual wrongdoers do not go unpunished. As the Court pointed out in *Glen Ellyn Pharmacy*, "'the existence of a treble damages provision reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.'" 2011 U.S. Dist. LEXIS 142373, at *8 (quoting *Tex. Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 639 (1981) (discussing Clayton and Sherman Acts)). If a defendant can be held vicariously liable for treble damages under section 227(b)(3) as the result of a ***third party's*** "willful" and "knowing" violation of section 227(b), but not be allowed to assert a common law indemnification or contribution claim against that third party, then the purpose of the TCPA's treble damage provision to "punish past, and to deter future, unlawful conduct" and "not to ameliorate the liability of wrongdoers" will be thwarted and innocent parties unfairly penalized. This reason, alone, should be a sufficient basis for expanding federal common law to include the indemnification and contribution claims of a

defendant held vicariously liable under section 227(b) of the TCPA. Accordingly, ADT asks that the Court deny Elephant Group's motion to dismiss its common law indemnification and contribution claims set forth in Counts XI and XII of its Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendant/Third Party Plaintiff ADT Security Services, Inc. respectfully requests that the Court deny Elephant Group, Inc.'s Motion to Dismiss Counts X, XI, and XII of ADT's Corrected First Amended Third Party Complaint in its entirety.

Dated: February 24, 2012                     Respectfully submitted,

                                             /s/ John A. Leja
                                             John A. Leja
                                             Polsinelli Shughart PC
                                             161 N. Clark Street, Suite 4200
                                             Chicago, IL  60601
                                             (312) 873-3670
                                             (312) 819-1910 *facsimile*
                                             Email: jleja@polsinelli.com

                                             Of Counsel:
                                             Robert L. Hickok
                                             Michael E. Baughman
                                             Pepper Hamilton LLP
                                             3000 Two Logan Square
                                             Eighteenth & Arch Streets
                                             Philadelphia, PA  19103
                                             (215) 981-4000
                                             (215) 981-4750  *facsimile*
                                             E-mail:   hickokr@pepperlaw.com
                                                       baughmanm@pepperlaw.com

                                             *Attorneys for Defendant, ADT Security Services, Inc.*

**CERTIFICATE OF SERVICE**

I, John A. Leja, do hereby certify that on February 24, 2012, a true and correct copy of Defendant/Third Party Plaintiff ADT Security Services, Inc.'s Memorandum of Law in Opposition to Third Party Defendant Elephant Group, Inc.'s Motion to Dismiss was served via this Court's CM/ECF system, which will serve each of the parties electronically.

/s/ John A . Leja
John A. Leja