**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT on behalf of themselves and others similarly situated, | ) ) ) | Case No.:  1:11-cv-1925 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Bucklo<br>Magistrate Judge Keys |
| ADT Security Services, Inc., | ) ) | |
| Defendant/Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| PETE TOLMAN, LEADS DIRECT MARKETING, VOICE TEL CORPORATION, CHRISTOPHER LONG, EMI, INC., JMB ENTERPRISES, CITY VIP, LLC, DIRECT SAVINGS, USA, INC., OSCAR MONTENEGRO, EVERSAFE SECURITY SYSTEMS, INC., SAFE STREETS USA, LLC, PARAMOUNT MEDIA GROUP, THE ELEPHANT GROUP, INC., AND UNKNOWN JOHN DOE DEFENDANTS I THROUGH XX, | ) ) ) ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) | |
| SAFE STREETS USA, LLC, SUCCESSOR BY MERGER TO EVERSAFE SECURITY SYSTEMS, INC., | ) ) ) | |
| Fourth-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| DIRECT SAVINGS USA, LLC, | ) ) | |
| Fourth-Party Defendant. | ) | |

**ADT SECURITY SERVICES, INC.'S MOTION TO COMPEL DISCOVERY OF
PLAINTIFFS VISHVA DESAI AND PHILIP J. CHARVAT**

## I.      INTRODUCTION

Plaintiffs Vishva Desai and Philip J. Charvat ("Plaintiffs") seek asymmetric discovery obligations in their putative class action against ADT Security Services, Inc. ("ADT") under the Telephone Consumer Protection Act ("TCPA").  When it comes to Plaintiffs asking for discovery information, they find it appropriate to file a Motion to Compel seeking answers and the production of documents to nearly every one of their 19 Interrogatories and 49 Document Requests that related to virtually every aspect of ADT's telemarketing practices.  In the time since Magistrate Judge Keys' granted Plaintiffs' Motion, ADT hired seven contract attorneys to assist in reviewing documents, and along with other Pepper Hamilton attorneys, they have now reviewed and produced on a rolling basis over 200,000 pages of documents at a cost of over $500,000 and counting.  And, ever after this massive production, on February 24, 2012, Plaintiffs served an additional 65 document requests that seek to require ADT to spend yet more time and resources in providing discovery to plaintiffs.

When it comes to their own discovery responses and document productions, however, Plaintiffs apparently take the position that they need only answer interrogatories they deem relevant and that they need only produce documents that are readily at their fingertips.  In August 2011, ADT served Interrogatories and Document Requests on Plaintiffs that included requests for basic, yet critical, information related to class certification, which is set to be briefed this Spring.  In November, 2011, Plaintiffs responded to these discovery requests, but their response was replete with unfounded objections and deficiencies.  For example, Plaintiffs refused to provide even the most basic information pertaining to class certification, including the definition of the class and how they propose to identify the members of the class, stating that such information will not be provided until they file their motion for class certification.  There is

no basis for Plaintiffs' effort to impose their own timing on these disclosures, particularly in light of their repeated insistence that discovery in this case ***not*** be bifurcated.

On January 3, 2012, ADT sent Plaintiffs a detailed letter outlining the deficiencies in Plaintiffs' responses. After six weeks of silence from Plaintiffs on these deficiencies, ADT asked Plaintiffs to meet and confer on these issues to avoid motion practice. Following the meet and confer, Plaintiffs responded by letter on February 16, 2012, indicating that they would supplement their productions with the majority of information ADT sought, leaving ADT to believe that motion practice would be unnecessary.

Much to ADT's surprise, when Plaintiffs did allegedly "supplement" their discovery on February 28, 2012, the most critical pieces of information and documents ADT was led to believe would be produced, were, in fact, not provided. Instead, the same deficiencies that ADT brought to Plaintiffs' attention two months ago remained. Plaintiffs' failure to comply with their discovery obligations is severely prejudicing ADT's ability to defend itself and leaves ADT ill-equipped to depose Plaintiffs (depositions scheduled for March) and prepare for class certification briefing this Spring. This Court should therefore grant ADT's Motion to Compel and require Plaintiffs to promptly produce the requested information below so that this case can proceed in an efficient and effective manner.

## II.     STATEMENT OF FACTS

Plaintiffs initiated this litigation claiming that they received three separate, unsolicited telephone calls using pre-recorded messages, purportedly promoting ADT's services. Ms. Desai allegedly received one call ("Desai Call") and Mr. Charvat claims he received two calls ("the Charvat Calls"). Plaintiffs do not contend that ADT itself made any of the calls, but

3

instead claim that the calls were made on ADT's "behalf." They claim that these calls violated

Section 227(b) of the TCPA and seek to represent a class of persons who received similar calls.

On August 11, 2011, ADT served Plaintiffs with its First Set of Interrogatories

and First Set of Requests for Production of Document Requests. ADT served sixteen

Interrogatories and forty-five Document Requests, all of which were narrowly-tailored and

reasonably calculated to lead to the discovery of admissible evidence. The Interrogatories and

Document Requests seek information relating to the Desai and Charvat calls, and basic

information pertinent to class certification, such as the contours of the class, how Plaintiffs

intend to identify and manage the class, and Plaintiffs' adequacy as class representatives. True

and correct copies of ADT's Interrogatories and Document Requests are attached hereto as

Exhibits A and B.

On August 19, 2011, the parties appeared before Magistrate Judge Keys on a

separate motion – Plaintiffs' motion to compel ADT to respond to discovery. There, the parties

made arguments regarding the scope of discovery. A true and correct copy of the transcript of

these proceedings is attached hereto as Exhibit C. Plaintiffs repeatedly accused ADT of

attempting to "bifurcate discovery" between class and merits. See Exh. C at 15–16. The Court

rejected ADT's arguments that discovery should be limited to the three calls at issue, and

confirmed that the scope of discovery was "broad" and included the entire class.[1] Judge Keys

ultimately granted Plaintiffs' Motion to Compel ADT's production of numerous categories of

discovery, which has resulted in ADT's production of hundreds of thousands of documents. See

Exh. C at 60.

---

[1] "You can see I have a very broad view of what's discoverable consistent with the Rules of Civil Procedure." Exh. C at 47–48.

On November 11, 2011, Plaintiffs responded to ADT's Interrogatories and
Requests for Production — more than two months after the were originally due.[2]True and correct
copies of Plaintiffs' responses to ADT's Interrogatories and Document Requests are attached
hereto as Exhibits D and E.  On January 3, 2012, pursuant to N.D. Ill. Local Rule 37.2, ADT sent
Plaintiffs a letter requesting that Plaintiffs clarify and supplement the evasive and incomplete
responses, and raising deficiencies with Plaintiffs' objections to ADT's Interrogatories and
Requests for Production.  A true and correct copy of this deficiency letter is attached hereto as
Exhibit F.  ADT requested that either Plaintiffs provide amended responses and documents by
the close of business on January 10, 2012, or the parties conduct a meet and confer regarding
these issues.

On January 11, 2012, Plaintiffs responded to this deficiency letter by sending
ADT's counsel a recording of the Desai Call — oddly, this recording, the most critical document
in the plaintiff Desai's case, was not produced until months after initial disclosures were
exchanged. This recording (which ADT believes identifies a company called "ADP" not ADT)
corrected two of the incomplete responses identified by ADT.  After Plaintiffs did not respond to
the remaining deficiencies raised in the letter, ADT requested a meet and confer to discuss the
various problems with Plaintiffs' discovery productions.  On February 14, 2012, the parties
conducted a teleconference to discuss the various discovery issues to avoid motion practice.
Following this meet and confer, counsel for Plaintiffs sent ADT a letter characterizing the meet
and confer and offering to supplement their discovery responses and productions to address
ADT's concerns.  See Exh.G.  Based on the representations in Plaintiffs' letter, ADT was
expecting Plaintiffs to fulfill their discovery obligations in good faith and opted not to seek the

---

[2] In accordance with Rules 33 and 34, Plaintiffs' responses to the Interrogatories and Document Requests
were due on September 12, 2011.  Fed. R. Civ. P. 33(b)(2) & 34 (b)(2)(A).  Plaintiffs requested an additional 60
days to respond to them.

Court's assistance.  On February 28, 2012, Plaintiffs served their Supplemental Responses to ADT's interrogatories and document requests.  See Exh. H, I ("Supplemental Response").  Despite the six week delay in addressing the deficiencies and the representations made in Plaintiffs' letter to ADT on February 16th, however, Plaintiffs again did not provide crucial information regarding class certification issues or other issues, leaving ADT with no choice but to file this Motion.

## III.    ARGUMENT

The Federal Rules permit discovery of any "nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  A party may move to compel discovery where another party fails to respond to a discovery request or where the response is evasive or incomplete.  Fed. R. Civ. P. 37(a)(3)–(4).  "In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules." Lanigan v. Babusch, No. 11 C 3266, 2011 U.S. Dist. LEXIS 124416, at *2–3(N.D. Ill. Oct. 27, 2011) (quotation omitted).  See alsoCanon v. Burge, No. 05 C 2192, 2010 U.S. Dist. LEXIS 95460, at *4 (N.D. Ill. Sept. 14, 2010) ("The federal discovery rules are liberal in order to assist in trial preparation and settlement.").  The Court has broad discretion when reviewing a discovery dispute and "should independently determine the proper course of discovery based upon the arguments of the parties."  Gile v. United Airlines, Inc., 95 F.3d 492, 496 (7th Cir.1996).

A. **This Court Should Compel Plaintiffs to Produce Basic Information Related to the Definition of Plaintiffs' Proposed Class and Plaintiffs' Plans for Managing It.**

As a result of Plaintiffs request for, and this Court's ordering of, class-wide discovery, ADT served Document Requests and Interrogatories related to the most basic issues of class certification. Despite requesting and receiving class-wide discovery, Plaintiffs have repeatedly taken the position that defendant's discovery requests are inappropriate at this stage of the litigation because Plaintiffs have not yet moved for class certification.

- Interrogatory No. 12 requests that Plaintiffs state the precise definition of the class(es) that they seek to represent, the basis for standing, and how Plaintiffs intend to identify all members of the proposed class(es). Exh. A ¶ 12.

  o Plaintiffs originally objected to this Interrogatory "to the extent that [it calls] for the production of information that is attorney work product." Plaintiffs also argue that this is a contention interrogatory and is "inappropriate at this stage of the litigation" and that Plaintiffs will provide this information upon moving for class certification. Exh. D ¶ 12.

  o In their Supplemental Response, Plaintiffs provide no substantive information at all. They state that "third party discovery is ongoing and extensive at this point" and that "[t]he definition of the putative class is contained in the Amended Complaint in this matter and is subject to change and refinement based on the results of ongoing discovery. Plaintiffs will further supplement this answer once all necessary discovery on the issue has been completed and they are able to provide a full and final answer as to the definition of the class and the best method to identify the proposed class has been determined by counsel." Exh. H ¶ 12.

- Interrogatory No. 13 requests that Plaintiffs explain their plan for managing the proposed class. Plaintiffs object to this Interrogatory "to the extent that [it calls] for the production of information that is attorney work product." Exh. A ¶ 13.

  o Plaintiffs also argue that this is a contention interrogatory and is "inappropriate at this stage of the litigation" and that Plaintiffs will provide this information upon moving for class

certification. Exh. D ¶ 13.

- o In their Supplemental Response, Plaintiffs answered that "third party discovery is ongoing and extensive at this point in time. The definition of the putative class is contained in the Amended Complaint in this matter and is subject to change and refinement based on the results of ongoing discovery. Plaintiffs will further supplement this answer once all necessary discovery on the issue has been completed and they are able to provide a full and final answer as to the definition of the class and the best method to identify the proposed class has been determined by counsel. Only once all discovery is completed and a determination of the class composition is finalized will an appropriate response to this interrogatory on managing that class be possible." Exh. H ¶ 13.

Plaintiffs' continued contention that these interrogatories are premature is especially ironic because Plaintiffs ***opposed*** bifurcated discovery and insisted on conducting class-wide discovery at this stage of the litigation. Thus, while ADT has spent hundreds of thousands of dollars responding to Plaintiffs' class wide discovery requests, Plaintiffs refuse to provide even the most basic information relevant to class certification, including the definition of their class and their plan for managing it.

The definition of the class, how Plaintiffs intend to identify class members, and how they intend to manage the class go to the most critical issue in this litigation. Defendants need this information now so that they can determine how to plan their opposition to Plaintiffs' class certification motion, and to prepare any appropriate expert reports which are due in less than two months. Unlike the typical TCPA class, where a plaintiff sues an entity for making a discrete and identifiable set of calls, here, ADT is not alleged to have made ***any*** calls. Instead, Plaintiffs seek to hold ADT liable for three calls which apparently were made by some lead generator, which has some apparent connection with entities that ADT does business with. ADT does not control these entities, has no idea who they called or why, and has sued them for

apparent misuse of ADT's trademarks. Simply put, ADT has no idea who is in the proposed

class. Given the complexity of Plaintiffs' theory, ADT is entitled to know — now — how

Plaintiffs intend to certify a class here, so that ADT can plan its discovery to meet the Plaintiffs'

theory and to allow ADT adequate time to search for and engage an expert witness. The

Plaintiffs' have failed to provide any meaningful respond to this Interrogatory, other than to cite

the amorphous class definition in the Complaint. That is insufficient. ADT's motion to compel

as to Interrogatories Nos. 12 and 13 should therefore be granted.[3]

> **B.     This Court Should Compel Plaintiffs to Produce Information Related
> to the Adequacy and Typicality of Plaintiffs' Proposed Class, as Well
> as Information That May Provide Evidence of Unique Defenses.**

ADT has also requested discovery relating to basic questions of the adequacy and

typicality of Plaintiffs' proposed class, and information that may reveal unique defenses for

ADT. These, again, are relevant issues for the upcoming class certification briefing. ADT

requested the following:

- Document Request No. 19 seeks all pleadings from lawsuits in which Plaintiffs were or are involved. Exh. B ¶ 19.

    - Plaintiffs disclosed that Mr. Charvat has filed 99 TCPA lawsuits, but object to this request and refuse to produce these materials because according to Plaintiffs, they "may be easily obtained by ADT." Exh. E ¶ 19.

    - Despite originally stating in a meet and confer that they would provide this information, in their Supplemental Response, Plaintiffs stated that this request was "irrelevant" and "overbroad" and that it would create an undue burden on Charvat and his form counsel to produce the information. They refuse to produce any documents, and instead suggest

---

[3]     The United States Supreme Court has recognized that it is appropriate to engage in discovery regarding Fed. R. Civ. P. 23's threshold requirements before Plaintiffs move for class certification. See Kernats v. Comcast Corp., No. 09-3368, 2010 U.S. Dist. LEXIS 20276, at *5 (N.D. Ill. Jan. 14, 2010) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13 (1978) ("In Rule 23 cases where Plaintiffs have not yet filed a motion for class certification, discovery may be used to help determine whether the class can properly be certified, particularly with respect to the threshold requirements of 'numerosity, common questions, and adequacy of representation.'")).

that the defendants rummage through various Ohio state court clerk's offices to find them because the "documents sought are public record [sic] that can easily obtained [sic] by ADT with the information provided by Mr. Charvat." Exh. I ¶ 19.

- <u>Document Request No. 36</u> seeks documents relating to Plaintiffs' recording of telemarketing calls. Exh. B ¶ 36.

  - o Plaintiffs recorded the three telemarketing calls in this case, and apparently have some type of system or methodology to record all calls they receive that may lead to a TCPA claim. Plaintiffs object to this request and argue that it is "not relevant nor calculated to lead to the discovery of relevant information." Exh. E ¶ 36. The methodology of the recoding is relevant and important because the recording of the Desai call refers to a company called "ADP," not "ADT."

  - o Plaintiffs stated in a letter that no such documents exist, but have not provided a supplement to the actual document request.

- <u>Document Request No. 3</u> seeks all telephone billing records for any phone that Plaintiffs used from 2007 to the present. Exh. B ¶ 3.

  - o In response, Plaintiffs produced documents related to the Charvat calls only. They also noted that there were no records related to the Desai call, but failed to produce any other records. Plaintiffs object to this request and argue that it is "not relevant nor reasonably calculated to lead to the discovery of relevant information."[4] Exh. E ¶ 3.

  - o Plaintiffs did not address this in their Supplemental Response.

- <u>Document Request No. 45</u> requests documents sufficient to show the sum that Plaintiffs have received through complaints filed under the TCPA or similar state laws. Exh. B ¶ 45.

  - o Plaintiffs objected to this request on the basis of relevance. Exh. E ¶ 45.

  - o Plaintiffs did not address this in their Supplemental Response.

---

[4] In light of Plaintiffs' objection to breadth, ADT has limited the time frame of this request from January 1, 2010 to the present.

ADT's Document Requests seek straightforward information relating to the Plaintiffs' background generally, and their experience in TCPA litigation in particular. Mr. Charvat has apparently brought almost 100 TCPA claims and, among other things, the discovery sought here seeks to understand how his operation works. ADT is also entitled to know what prior statements have been made and positions taken by each Plaintiff. Plaintiffs refuse to provide any of the pleadings or other documents from Mr. Charvat's other 100 litigations, which defendants need to prepare for his deposition (scheduled in March) and determine whether his statements and positions in those litigations are consistent with those he is making here. Instead, Plaintiffs suggest that ADT perform its own search of dockets of the various cases to find the documents for itself. Mr. Charvat was a party to these lawsuits; ADT was not. There is no basis for shifting the burden of obtaining these documents to ADT (assuming they can even be obtained at the Clerk's office of various Ohio state courts). ADT has already spent hundreds of thousands of dollars gathering documents for the plaintiffs — the plaintiffs can now spend some time retrieving and reviewing files for defendants.

All of the information sought is relevant because it may bear on both the adequacy of Plaintiffs as class representatives as well as whether their claims are typical to those of the class. "A claim is deemed to be a typical claim under Rule 23(a) if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory . . . the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." Groussman v. Motorola, Inc., No. 10 C 911, 2011 U.S. Dist. LEXIS 134769, at *13–14 (N.D. Ill. November 15, 2011) (first omission in original) (quotation omitted).

The information sought may also be probative of affirmative defenses such as consent. For example, the discovery may show that Mr. Charvat seeks to place his telephone numbers on numerous marketing lists in order to maximize the number of telemarketing calls that he receives. ADT is entitled to understand how his operation works, and the scope and type of telemarketing calls that he receives. Simply put, ADT is entitled to understand the number and nature of telemarketing calls that Plaintiffs have received and the manner in which their phone numbers are used, and their previous experiences with TCPA claims. If these circumstances vary significantly from the circumstances surrounding the calls received by the other members of the purported class, Plaintiffs may not be appropriate class representatives and may be subject to unique defenses.

## IV.    CONCLUSION

For all of the reasons stated above, ADT respectfully requests that this Court grant this Motion and order Plaintiffs to serve on counsel for ADT within twenty (20) days from the date of the Order,all non-privileged documents and information responsive to the document requests and interrogatories described above.


Dated: March 6, 2012                     Respectfully submitted,

                                         /s/ John A. Leja
                                         John A. Leja
                                         Polsinelli Shughart PC
                                         161 N. Clark Street, Suite 4200
                                         Chicago, IL60601
                                         (312) 873-3670
                                         (312) 819-1910 *facsimile*
                                         Email: jleja@polsinelli.com

                                         Of Counsel:
                                         Robert L. Hickok
                                         Michael E. Baughman

Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA19103
(215) 981-4000
(215) 981-4750 facsimile
E-mail:     hickokr@pepperlaw.com
              baughmanm@pepperlaw.com

*Attorneys for Defendant, ADT Security Services, Inc.*

.