SAMAN BEHNAM, ESQ. (SBN 195310)
LAW OFFICES OF SAMAN BEHNAM
A PROFESSIONAL LAW CORPORATION
UNION BANK BUILDING
400 OCEANGATE, 8TH FLOOR
LONG BEACH, CA 90802

TEL: 562-436-7858
FAX: 562-590-9379

Attorney for CHRISTOPHER LONG

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| VISHVA DESAI and PHILLIP J. CHARAVAT, on behalf of themselves and other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADT SECURITY SERVICES, INC.,<br><br>Defendants. | Case No. 11-cv-1925<br><br>OPPOSITION TO MOTION FOR RULE TO SHOW CAUSE AND FOR CONTEMPT ORDER; DECLARATION OF SAMAN BEHNAM<br><br>DATE: 4/23/2012<br>TIME: 9:00 A.M.<br>PLACE: COURTROOM 2230<br>219 S. DEARBORN ST., CHICAGO, IL 60604 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

COMES NOW EMI, INC., a California Corporation, ("EMI") and CHRISTOPHER LONG, ("Long") by and through their attorneys of record, SAMAN BEHNAM, ESQ., of the Law Offices of Saman Behnam and hereby submits their Opposition to the Motion for Rule of Cause and for Contempt Order filed by Plaintiffs.

///

///

///

This Opposition is made on the following facts:

1.     Long on behalf of EMI responded to a Subpoena for production demand on July 29, 2011 - see attached and produced documents responsive to the request. Long submitted all items that it had in its possession back in 2011 and since then the office has closed and is no longer in business, see Exhibit "A" to the declaration of Saman Behnam.

2.     Long initially filed BK on January 12, 2012  Case Number:  8:12-bk-10473-MW (first filing), see Exhibit "B" to the declaration of Saman Behnam.

3.     Counsel for Long filed a Notice of stay under 11 USC §362 and served counsel Alex Burke, see Exhibit "C" to the declaration of Saman Behnam.

4.     Counsel for Class Plaintiff did not seek relief from stay in the 473 BK case above.

5.     Subsequently the first 473 BK case was dismissed for failure to file a creditor matrix.

6.     Long filed his second BK case on January 31, 2012 [Case no 8:12-bk-11252] (second filing), see Exhibit "D" to the declaration of Saman Behnam.

7.     Counsel for Class Plaintiff obtained limited relief from stay as it pertains to discovery. (ruling dated 4/10/2012), see Exhibit "E" to the declaration of Saman Behnam.

8.     Opposing parties contend that counsel for Class Plaintiff can re-serve his discovery  and Long will provide responses to the same in a timely manner.

9.     This Court should not hold either EMI, Long, or their counsel in contempt as Long was in a  pending BK and Class Plaintiff never obtained an order for relief from automatic stay in the first BK case and only received the relief  from stay in the second BK case on April 10, 2012. Until then Long was protected from any creditor seeking any collection or discovery under the 11 USC §362 unless the court makes a ruling allow relief from the stay

10.     Now that the stay has been lifted Long will comply with the court's ruling in the BK case and will respond to the discovery per the code.

///

///

///

OPPOSITION TO MOTION FOR RULE TO SHOW CAUSE AND FOR CONTEMPT ORDER

11.     This court should deny class plaintiff's motion and order Long to respond to the discovery per the code.

"The automatic stay remains in effect until the bankruptcy court disposes of the case or grants relief from the stay." *Matter of Williams*, 144 F.3d 544, 546 (7th Cir.1998), see also *Middle Tennessee News Co., Inc. v. Charnel of Cincinnati, Inc.* 250 F.3d 1077, 1082 (7th Cir. 2001).

"However, actions taken which are, in fact, violative of a court order (or of a provision of bankruptcy law), while not necessarily contemptuous, are void and without legal basis." *In re Johnson* 18 B.R. 755, 756-757 (Bkrtcy.Ohio, 1982) (citing text).

"Actions taken in violation of an automatic stay ordinarily are void." See *Middle Tennessee News Co., Inc. v. Charnel of Cincinnati, Inc.* 250 F.3d 1077, 1082 (7th Cir. 2001) (citing text).

12.     Because the order made on January 23, 2012 was in violation of the automatic stay it is void and without legal basis. Therefore, neither, EMI, Long or their counsel can be found in contempt of an order issued that is void and without legal basis.

13.     In fact by filing the motion counsel for Class Plaintiff has violated Rule 11 of the Federal Rules of Civil Procedure ("FRCP")in that he is requesting that the opposing parties be held in contempt of an order that is clearly void and without legal basis. By filing the motion, counsel for Class Plaintiff is certifying that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law". See *Rule 11* (b)(1) and (2) FRCP.  Accordingly, EMI and Long request that the Court use its discretion under *Rule 11*(c)(3) FRCP and require Counsel for Class Plaintiff to show cause why his conduct has not violated *Rule 11*(b) of the FRCP.

"Although the determination of whether Rule 11 has been violated is necessarily very fact-based and is accordingly reviewed with deference, the imposition of sanctions, when Rule 11 has been violated, is mandatory." *United States v. Oberhellmann*, 946 F.2d 50, 53 (7th Cir.1991) see also *Ross v. City of Waukegan* 5 F.3d 1084, 1088. (7th Cir.1993).

14.     For the reasons stated herein, EMI and Long respectfully request that this Court deny the motion for rule to show cause, and for a contempt order, and further request that this Court use its discretion under *Rule 11*(c)(3) FRCP and require Counsel for Class Plaintiff to show cause why his conduct has not violated *Rule 11*(b) of the FRCP.

Dated: _____, 2012                          **LAW OFFICES OF SAMAN BEHNAM**

                                                By: _____
                                                     Saman Behnam, Attorney for
                                                     EMI, INC., a California Corporation,
                                                     and CHRISTOPHER LONG

OPPOSITION TO MOTION FOR RULE TO SHOW CAUSE AND FOR CONTEMPT ORDER

### DECLARATION OF SAMAN BEHNAM

I, SAMAN BEHNAM, declare as follows:

1.     I am the attorney of record for Christopher Long ("Long") in the above-entitled proceeding. I have personal knowledge of the facts stated herein, except as to those matters stated on information and belief, and as to those matters I believe them to be true, and if called as a witness I could and would testify competently to the truth of the facts stated herein.

2.     I make this declaration in support of the opposition to the Motion for Rule to Show Cause and for Contempt Order filed by Plaintiffs and request for award of attorney fees pursuant to Rule 11 of the FRPC.

3.     Long on behalf of EMI responded to the Subpoena for production demand on July 29,2011- see attached and produced documents responsive to the request submitted as exhibit to Plaintiff's moving papers. Long submitted all items that it had in its possession back in 2011 and since then the office has closed and is no longer in business.

4.   Long initially filed for bankruptcy on January 12, 2012  Case Number: 8:12-bk-10473-MW (first filing), see Exhibit "A"attached hereto and incorporated herein by reference.

5.     Counsel for Long filed a Notice of stay under 11 USC §362 and served counsel Alex Burke, see Exhibit "B" attached hereto and incorporated herein by reference.

6.     Counsel for Class Plaintiff did not seek relief from stay in the 473 bankruptcy case above.

7.     Subsequently the first 473 bankruptcy case was dismissed for failure to file a creditor matrix.

8.     Long filed his second bankruptcy case on January 31, 2012  [Case no 8:12-bk-11252]  (second filing), see Exhibit "C" attached hereto and incorporated herein by reference.

9.     Counsel for Class Plaintiff obtained limited relief from stay as it pertains to discovery. (ruling dated 4/10/2012), attached to Plaintiff'S moving papers which is incorporated by reference herein.

OPPOSITION TO MOTION FOR RULE TO SHOW CAUSE AND FOR CONTEMPT ORDER

10. Opposing parties contend that counsel for Class Plaintiff can re-serve his discovery and Long will provide responses to the same in a timely manner.

11. This Court should not hold either Long, or myself in contempt as Long was in a pending bankruptcy and class Plaintiff never obtained an order for relief from automatic stay in the first BK (473) case and only received the relief from stay in the second bankruptcy case (252) on April 10, 2012. Until then Long was protected from any creditor seeking any collection or discovery under the 11 USC §362 unless the court makes a ruling allow relief from the stay.

12. Now that the stay has been lifted Long will comply with the court's ruling in the bankruptcy case and will respond to the discovery per the code.

13. I am an attorney duly licensed to practice law in all of the courts in the State of California, and in good standing before the State Bar of California, and that I am the attorney of record for the Debtor Christopher Long in this matter. My hourly rate is $300 per hour.

14. I have spent one hour (1) meeting and discussing the case with client, three (3) hours preparing documents, researching case law, drafting the opposition, and my declaration, for a total of four (4) hours.

15. I seek an award of attorney's fees and costs paid to date and for the balance of this case pursuant to rule 11(b) of the FRCP for a total of $1,200.

I declare under penalty of perjury under the laws of the State of Illinois, and the United States of America that the foregoing is true and correct, and that this declaration was executed on 4/16 , 2012 at _Los Bela_ , California.

SAMAN BEHNAM

OPPOSITION TO MOTION FOR RULE TO SHOW CAUSE AND FOR CONTEMPT ORDER

# EXHIBIT A

This may take a few minutes...Please be patient. A confirmation screen will appear.

## 341 Judge And Trustee

| Case | Case Title | Chapter | 341 Meeting | Judge Name | Trustee Name |
|------|-----------|---------|-------------|-----------|-------------|
| 12-10473 | Christopher Thomas Long | 7 | Meeting of Creditors with 341(a) meeting to be held on 02/21/2012 at 11:00 AM at RM 3-110, 411 W Fourth St., Santa Ana, CA 92701. Objections for Discharge due by 04/23/2012. Cert. of Financial Management due by 04/23/2012 for Debtor and Joint Debt | Wallace,Mark S | Hahn (TR),David L |

# EXHIBIT B

01/24/2012 18:05 FAX 562 590 9379     LAW OFFICE                    ☑001

LAW OFFICES OF

## SAMAN BEHNAM

| | |
|---|---|
| **All correspondence:** | ORANGE COUNTY |
| 400 OCEANGATE, 8™ FLOOR | 8544 EAST CHAPMAN, SUITE B |
| | ORANGE CA 92868 |
| TEL: (562) 436-7858 | TEL: (714) 547-4040 |
| FAX: (562) 590-9379 | MOBILE: (714) 865-8000 |

# FACSIMILE FAX

TO: Burke Law Offices ,LLC.
ATTN: Alexander H. Burke

DATE: 01/23/12

NUMBER: (312)729-5289

FROM: Lynda Padilla  (Legal Secretary)

RE: Desai v. ADT Security Services Inc.
CASE No. 1:11-cv-1925 (N.D. Ill)
**Notice of Commencement**


Please call (562)436-7858 in the event that this transmission is impaired.

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR
ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT
IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER
APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED
RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING
THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN
ERROR, PLEASE NOTIFY US IMMEDIATELY.

1 │ SAMAN BEHNAM (SBN 195310)
   │ LAW OFFICES OF SAMAN BEHNAM
2 │ 400 OCEANGATE, 8TH FLOOR
   │ LONG BEACH, CA 90802
3 │
   │ (562) 436-7858
4 │
   │ Attorneys for Defendant/Debtor
5 │
6 │
7 │
8 │            IN THE UNITED STATES DISTRICT COURT
   │            FOR THE NORTHEN DISTRICT OF ILLINOIS
9 │                    EASTERN DIVISION
10 │
11 │ VISHVA DESAI and PHILIP J. CHARVAT,
    │ on behalf of themselves and others
12 │ similarly situated
    │                          CASE NO. 1:11-cv-1925 (N.D.III)
13 │                        )
    │        Plaintiff       )
14 │ vs.                     )
    │                        )NOTICE OF COMMENCEMENT OF
15 │ ADT Security Services,INC..  )BANKRUPTCY PROCEEDINGS UNDER
    │                        )CHAPTER 7 OF THE UNITED STATES
16 │                        )BANKRUPTCY CODE AND AUTOMATIC
    │                        )STAY OF PROCEEDING
17 │        Defendant.       )
    │                        )
18 │    TO: UNITED STATES DISTRICT COURT FOR THE NORTHEN DISTRICT OF

19 │ ILLINOIS EASTERN DIVISION, AND ALL INTERESTED PARTIES AND THEIR

20 │ ATTORNEYS OF RECORD:

21 │    PLEASE TAKE NOTICE that a Chapter 7 bankruptcy case

22 │ concerning defendant, **Christopher Thomas Long was filed January**

23 │ **12,2012** in the United States Bankruptcy Court, Central District

24 │ of California, Santa Ana Branch, as In Re: Christopher Thomas

25 │ Long Case No. 2:12-bk-10473-MW.

26 │    PLEASE TAKE FURTHER NOTICE that, pursuant to the provisions

27 │ of 11 U.S.C. §362, the filing of the bankruptcy petition under

28 │ this section operates as a stay, applicable to all entities, of:

    │ (1) the commencement or continuation, including the issuance or

                                    1

1    employment of process, of a judicial, administrative, or other

2    action or proceeding against the debtor; (2) the enforcement,

3    against the debtor or against the property of the estate; (3) any

4    act to obtain possession of property of the estate or of property

5    from the estate or to exercise control over property of the

6    estate; (4) an act to create, perfect, or enforce any lien

7    against the property of the estate; (5) any act to create,

8    perfect, or enforce any lien against the property of the debtor;

9    (7) the offset of any debt owing to the debtor; and (8) the

10   commencement or continuation of any proceeding before the Unite

11   Tax Court concerning the debtor. Any parties and/or entities

12   taking actions in violation of the United States Bankruptcy Code

13   may be penalized by the applicable United Sates Bankruptcy Court.

14

15   Date: __1|22|12__                    LAW OFFICES OF SAMAN    BEHNAM

16

17

18                                        By:_____

19                                        SAMAN BEHNAM, Attorney for
                                          Debtor

20

21

22

23

24

25

26

27

28

                                    2

                                              NOTICE OF COMMENCEMENT

**PROOF OF SERVICE**

1.   I am over the age of 18 and not a party to this action.
I am a resident of or employed in the county where the
mailing occurred.

2.   My residence or business address is: 400 Oceangate, 8th
Floor, Long Beach, California 90802.

3.   I served the following document:

**NOTICE OF COMMENCEMENT**

by enclosing a copy in an envelope addressed as shown below
and depositing the sealed envelope with the United States
Postal Service with the postage fully prepaid.

4.   a:  Date of Deposit:      1/23   , 2012
     b:  Place of Deposit:    Long Beach, CA
     c:  Addressed as follows:

5 [ (By Facsimile) I served a true and correct copy by
facsimile during regular business hours to the number(s)
listed above. Said transmission was reported complete and
without error.

Alexander H. Burke
BURKE LAW OFFICES, LLC.
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601

United States District Court
Northen District
Eastern Division
219 South Dearborn Street
Chicago, IL 60604

5.   I am readily familiar with the business practice at my
place of business for collection and processing or
correspondence for mailing with the United States Postal
Service.  Correspondence so collected and processed is
deposited with the United States Postal Service that same
day in the ordinary course of business.

6.  I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.

3

1 | DATED: 1·23 , 2012

Lynda Padilla

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

NOTICE OF COMMENCEMENT

# EXHIBIT C

This may take a few minutes...Please be patient. A confirmation screen will appear.

### 341 Judge And Trustee

| Case | Case Title | Chapter | 341 Meeting | Judge Name | Trustee Name |
|------|-----------|---------|-------------|------------|--------------|
| 2-11252 | Christopher Thomas Long | 7 | Meeting of Creditors with 341(a) meeting to be held on 03/14/2012 at 10:00 AM at RM 3-110, 411 W Fourth St., Santa Ana, CA 92701. Objections for Discharge due by 05/14/2012. Cert. of Financial Management due by 05/14/2012 for Debtor and Joint Debt | Kwan,Robert N. | Naylor (TR),Karen S |

# EXHIBIT D

Westlaw.

FOR EDUCATIONAL USE ONLY

Page 1

18 B.R. 755
**(Cite as: 18 B.R. 755)**

C

United States Bankruptcy Court, S.D. Ohio, Eastern Division.
In re Daniel D. JOHNSON, Barbara J. Johnson, Debtors.

Bankruptcy No. 2-81-03770.
Jan. 19, 1982.

On debtors' application for contempt judgment, the Bankruptcy Court, R. J. Sidman, J., held that creditor was in civil contempt of court for its failure to return unlawfully repossessed vehicles to debtors upon acquiring knowledge of pending bankruptcy case, entitling debtors to damages of $500 for missed work resulting from inability to secure transportation.

Judgment accordingly.

West Headnotes

**[1] Bankruptcy 51 ⟲⟶2393**

51 Bankruptcy
 51IV Effect of Bankruptcy Relief; Injunction and Stay
  51IV(B) Automatic Stay
   51k2393 k. Notice to Creditors; Commencement. Most Cited Cases
  (Formerly 51k217(4), 51k217.3(2))
 Creditor's lack of "official" notification from court of debtors' Chapter 7 case was no defense to finding that a violation of automatic stay occurred. Bankr.Code, 11 U.S.C.A. §§ 362, 701 ct seq.

**[2] Contempt 93 ⟲⟶20**

93 Contempt
 93I Acts or Conduct Constituting Contempt of Court
   93k19 Disobedience to Mandate, Order, or Judgment
    93k20 k. In General. Most Cited Cases

There can be no contempt of court emanating from conduct which is taken without chargeable knowledge that such conduct is in violation of a court order.

**[3] Bankruptcy 51 ⟲⟶2462**

51 Bankruptcy
 51IV Effect of Bankruptcy Relief; Injunction and Stay
  51IV(D) Enforcement of Injunction or Stay
   51k2462 k. Validity of Acts in Violation of Injunction or Stay. Most Cited Cases
  (Formerly 51k217(4), 51k217.3(1))
 Actions taken which arc, in fact, violative of a court order or of a provision of bankruptcy law, while not necessarily contemptuous, are void and without legal basis.

**[4] Bankruptcy 51 ⟲⟶2467**

51 Bankruptcy
 51IV Effect of Bankruptcy Relief; Injunction and Stay
  51IV(D) Enforcement of Injunction or Stay
   51k2467 k. Damages and Attorney Fees. Most Cited Cases
  (Formerly 51k217(4), 51k217.8(2))
 Creditor was in civil contempt of court for its failure to return unlawfully repossessed vehicles to debtors upon acquiring knowledge of pending bankruptcy case, entitling debtors to damages of $500 for missed work resulting from inability to secure transportation. Bankr.Code, 11 U.S.C.A. § 362
.

**\*755** Mitchel D. Cohen, Columbus, Ohio, for debtors.

Claude W. McLeskey, Kelly M. Morgan, McLeskey & McLeskey, Columbus, Ohio, for Chrysler Credit Corp.

Frank Pees, Worthington, Ohio, Trustee.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

Page 2

18 B.R. 755
(Cite as: 18 B.R. 755)

ORDER ON APPLICATION FOR CONTEMPT
JUDGMENT

R. J. SIDMAN, Bankruptcy Judge.

On November 6, 1981, the debtors, Daniel D. and Barbara J. Johnson, filed an application with this Court requesting that this Court find Chrysler Credit Corporation ("Chrysler") in contempt of this Court for certain of its conduct which is alleged to be in violation of the provisions of s 362 of the Bankruptcy Code. 11 U.S.C. s 362. The Court finds the following facts.

On November 23, 1979, the Johnsons filed a joint petition under the auspices of Chapter 13 of the Bankruptcy Code. That case *756 (No. 2-79-03506) proceeded to confirmation on January 29, 1980, and remained pending as a Chapter 13 case until September 4, 1981, when this Court issued an order of dismissal based upon the default of the debtors in payments to the Chapter 13 trustee as called for in their confirmed plan. Chrysler (under the name of Chrysler Life Insurance Co.) was a duly scheduled creditor in this proceeding and had received written notification of its pendency. Chrysler was also mailed a copy of the September 4, 1981 dismissal order the same day it issued.

Subsequent to that dismissal the Johnsons filed on September 24, 1981, another joint petition under the auspices of Chapter 13 of the Bankruptcy Code, a filing bearing the above-captioned case number. This filing was not accompanied by a Chapter 13 statement which would have included a listing of the creditors of these debtors, and thus no immediate notification of this filing was sent to creditors. Subsequently, on October 5, 1981, the Johnsons moved to convert the recently filed Chapter 13 case to a Chapter 7 case and, by order dated October 9, 1981, such conversion was allowed. The Johnsons finally filed a statement of affairs and appropriate schedules with this Court on October 28, 1981, such filing causing the issuance by the Clerk of this Court of a notice to all creditors of the pendency of the case. This notice was mailed to creditors on November 6, 1981. Thus, as far as notification is concerned, Chrysler had no indication that, between September 4, 1981, and November 6, 1981, the Johnsons had any case pending in this Court.

The Johnsons request that this Court find Chrysler in contempt of this Court by reason of its repossession of two motor vehicles, a 1977 Dodge Diplomat and a 1977 Dodge Tradesman Van, from the debtors on November 3, 1981, and its continuing refusal since that time to return such vehicles to the debtors after gaining knowledge of the pendency of this bankruptcy case.

There is no doubt that in this case the provisions of s 362 of the Bankruptcy Code have been violated. Specifically, the filing of a petition automatically operates as a stay against the following actions:

"(3) Any act to obtain possession of property of the estate or of property from the estate;

(4) Any act to create, perfect, or enforce any lien against property of the estate; and

(5) Any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; ..." 11 U.S.C. s 362(a)(3), (4) & (5).

(1) Chrysler has taken acts to obtain property of the estate and to enforce its lien against property of the estate since the filing of the petition by these debtors on September 24, 1981. This stay is automatically imposed, and Chrysler's lack of "official" notification from this Court is no defense to the finding that a violation did, in fact, occur.

The Johnsons, however, request not only a finding that a violation of the stay did in fact occur, but also a finding that the conduct of Chrysler constitutes contempt of court and that certain monetary damages suffered as a result of such conduct be assessed against Chrysler. The justification for this request is largely that Chrysler, upon acquiring

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

18 B.R. 755
**(Cite as: 18 B.R. 755)**

knowledge of the pending bankruptcy case, such knowledge first being imparted by a telephone call from debtors' counsel to the attorney for Chrysler on the same day the vehicles were repossessed, continued and still continues to refuse to rectify the actions complained of by a return of the vehicles in question.

(2)(3) There can be no contempt of court emanating from conduct which is taken without chargeable knowledge that such conduct is in violation of a court order. Pickus v. Vitagliano (In re Pickus), 8 B.R. 114, 7 B.C.D. 189 (Bkrtcy.D.Conn.1980). However, actions taken which are, in fact, violative of a court order (or of a provision of bankruptcy law), while not necessarily contemptuous, are void and without legal *757 basis. See Pickus, supra, 8 B.R. at 118-119, 7 B.C.D. at 192.

This Court would be inclined to absolve Chrysler of any liability for damages emanating from its initial unlawful repossession had it returned the repossessed vehicles upon learning of the pendency of the bankruptcy case on November 3, 1981. However, nothing in the record would appear to justify Chrysler's continuing refusal to correct its unlawful action from November 3 to the present. This Court hereby finds that the failure of Chrysler to return the unlawfully repossessed vehicles upon learning of the pending bankruptcy case is conduct which constitutes a wilful disregard of the clear mandate of the bankruptcy code that actions by creditors are severely limited by a bankruptcy filing. See Miller v. The Savings Bank of Baltimore (In re Miller), 10 B.R. 778, 4 C.B.C.2d 530 (Bkrtcy.D.Md.1981). Having obtained knowledge of the fact that its repossession post-dated a bankruptcy filing, Chrysler had a duty to return the possession of the vehicles to the debtors, thereby restoring the status quo as it existed at the time of the bankruptcy filing. See Miller, supra, 10 B.R. at 780, 4 C.B.C.2d at 532.

Chrysler has not provided any explanation as to why it continued to hold the unlawfully repossessed

vehicles after actual notification of the pendency of this bankruptcy case. Chrysler had the benefit of legal counsel at all times and it has not, and could not, therefore claim ignorance of the law as an excuse. It's plea of "self-protection" cannot be sufficient-that excuse would validate a last minute scramble by creditors to grab (after a bankruptcy filing but prior to "official" notification) any or all of a debtor's assets, a result clearly in conflict with the equal distribution objective of the Bankruptcy Code and the automatic stay provided for in s 362. Chrysler had a remedy available to it to protect its interest in the vehicles-s 362(d) of the Bankruptcy Code gives a creditor a right to request relief from the s 362 stay if it is not adequately protected. And such relief is to be given by the bankruptcy court on an expedited basis, a recognition of the need to afford protection to a creditor's interest in assets of the bankruptcy estate. Chrysler, instead, chose to ignore the effect of the bankruptcy filing. That choice was imprudent. This Court can only assume that Chrysler was willing to take the risk that its conduct would result in damages to the debtors, or other parties, and that it was willing to assume the risk that such damages would ultimately be its responsibility. The Court so finds in this case.

This continued retention of the vehicles by Chrysler has caused damage to the debtors in the form of missed work. Mrs. Johnson testified that she has lost 16 to 17 days of work since the repossession because she was unable to secure transportation. She works as a private duty nurse in varying locations, and transportation was not otherwise available to her. Mrs. Johnson further testified that her hourly rate for such work was $4.00 per hour and that she worked between 8 to 12 hours per day. The Court hereby finds that the loss of wages approaches $500.00 in this case, not an insubstantial amount considering the financial plight of these debtors which caused their filing in the first place.

(4) Based upon the foregoing findings, the Court hereby finds Chrysler in civil contempt of court for its failure to return the unlawfully repos-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

18 B.R. 755
**(Cite as: 18 B.R. 755)**

sessed vehicles to the debtors upon acquiring know-
ledge of the pending bankruptcy case. The Court
further finds that as a direct result of such contempt
the debtors have suffered damages amounting to
Five Hundred Dollars ($500.00), and the Court
hereby assesses such compensatory damages as a
civil penalty against Chrysler. Chrysler shall pay
such damages within ten (10) days of the date of
this Order. The debtors, having requested no other
form of relief, are accorded no other relief.

    IT IS SO ORDERED.

Bkrtcy.Ohio, 1982.
In re Johnson
18 B.R. 755

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

FOR EDUCATIONAL USE ONLY                                              Page 1

5 F.3d 1084, 26 Fed.R.Serv.3d 1481
**(Cite as: 5 F.3d 1084)**

ᴴ

United States Court of Appeals,
Seventh Circuit.
Ollie B. ROSS, individually and as Administrator
of the Estate of William ROSS, Deceased, Plaintiff-
Appellee, Cross-Appellant,
v.
CITY OF WAUKEGAN, Defendant-Appellant,
Cross-Appellee.

Nos. 92-1349, 92-1350 and 92-1439.

Argued May 4, 1993.
Decided Sept. 23, 1993.

Civil rights action was brought against city, and the District Court, 697 F.Supp. 974, dismissed. The Court of Appeals reversed in part, 910 F.2d 1422, and, on subsequent motion to dismiss, the District Court, 764 F.Supp. 1308 found that plaintiff could not reassert pendent claims but that sanctions were not warranted. After case was reassigned, the United States District Court for the Northern District of Illinois, George W. Lindberg, reaffirmed dismissal of city, refused to allow plaintiff to file third-amended complaint, and denied city's subsequent motion for sanctions. Parties appealed. The Court of Appeals, Ripple, Circuit Judge, held that: (1) allegations of proposed amended complaint fell within ambit of earlier appellate decision affirming dismissal; (2) order denying sanctions was not adequate to allow appellate review; and (3) plaintiff was not subject to sanctions for pursuing frivolous appeal.

Affirmed in part, vacated and remanded in part.

West Headnotes

**[1] Federal Courts 170B ☞597**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(C) Decisions Reviewable
      170BVIII(C)2 Finality of Determination

       170Bk585 Particular Judgments, Decrees or Orders, Finality
        170Bk597 k. Costs and security for costs. Most Cited Cases
      (Formerly 170Bk585.1, 170Bk585)

**Federal Courts 170B ☞769**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)1 In General
       170Bk768 Interlocutory, Collateral and Supplementary Proceedings and Questions
        170Bk769 k. On appeal from final judgment. Most Cited Cases
     Appeal of order denying sanctions was properly before Court of Appeals even though denial was entered in separate order and did not contain finding of finality; district court expressly made denial of motion for sanctions effective nunc pro tunc to date of its denial of motion to vacate dismissal of action, and dismissal order had been entered with finding of finality and appealability. Fed.Rules Civ.Proc.Rule 54(b), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☞1838**

170A Federal Civil Procedure
   170AXI Dismissal
     170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
       170Ak1837 Effect
        170Ak1838 k. Pleading over. Most Cited Cases
     Where allegations of proposed amended complaint were within ambit of earlier decision affirming dismissal of complaint, further consideration of allegations through device of amended complaint was precluded. Fed.Rules Civ.Proc.Rules 15(a), 59(e), 28 U.S.C.A.

**[3] Federal Courts 170B ☞813**

170B Federal Courts

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY                                          Page 2

5 F.3d 1084, 26 Fed.R.Serv.3d 1481
**(Cite as: 5 F.3d 1084)**

170BVIII Courts of Appeals
   170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)4 Discretion of Lower Court
         170Bk813 k. Allowance of remedy and
matters of procedure in general. Most Cited Cases

District court's decision not to impose Rule 11 sanctions is reviewed only for abuse of discretion. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⚖➡2758**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(A) In General
         170Ak2758 k. Mandatory duty or discretion. Most Cited Cases

Although determination of whether Rule 11 has been violated is necessarily very fact-based and is accordingly reviewed with deference, imposition of sanctions, when Rule 11 has been violated, is mandatory. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[5] Federal Courts 170B ⚖➡554.1**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(C) Decisions Reviewable
         170BVIII(C)1 In General
            170Bk554 Nature, Scope and Effect of Decision
               170Bk554.1 k. In general. Most Cited Cases
    (Formerly 170Bk554)

District court's cursory order, without hearing or explanation, denying defendant's request for sanctions after refusing to allow plaintiff to file third-amended complaint was not adequate to allow appellate review, particularly in view of length of time case had been in court system without success by plaintiff and fact that defendant had unsuccessfully sought sanctions on prior occasions. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⚖➡2830**

170A Federal Civil Procedure

170AXX Sanctions
   170AXX(E) Proceedings
      170Ak2830 k. Determination; order. Most Cited Cases

Although Court of Appeals' review of denial of sanctions is limited, denial of sanctions with no explanation may constitute abuse of discretion. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⚖➡2830**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(E) Proceedings
         170Ak2830 k. Determination; order. Most Cited Cases

Cursory order granting or denying Rule 11 sanctions without explanation is not necessarily abuse of discretion; however, such will be the case only when record clearly reflects on its face whether sanctions were appropriate. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[8] Federal Courts 170B ⚖➡751**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk751 k. Power of court in general. Most Cited Cases

No matter what the applicable standard of review is, Court of Appeals is not a rubber stamp.

**[9] Federal Civil Procedure 170A ⚖➡2769**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(B) Grounds for Imposition
         170Ak2767 Unwarranted, Groundless or Frivolous Papers or Claims
            170Ak2769 k. Reasonableness or bad faith in general; objective or subjective standard. Most Cited Cases

**Federal Civil Procedure 170A ⚖➡2771(1)**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

5 F.3d 1084, 26 Fed.R.Serv.3d 1481
**(Cite as: 5 F.3d 1084)**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(B) Grounds for Imposition
         170Ak2767 Unwarranted, Groundless or
Frivolous Papers or Claims
            170Ak2771 Complaints, Counter-
claims and Petitions
               170Ak2771(1) k. In general. Most
Cited Cases

Counsel may be held liable for excessive costs under statute only upon showing of bad faith and only if litigation is pursued unreasonably and vexatiously. 28 U.S.C.A. § 1927.

**[10] Federal Civil Procedure 170A** ☞**2839**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(F) On Appeal
         170Ak2837 Grounds
            170Ak2839 k. Frivolousness in general. Most Cited Cases

Cross appellee failed to establish that sanctions for pursuit of frivolous appeal were appropriate against cross appellant; most arguments in support of motion for sanctions were same arguments raised by cross appellee in its appeal from denial of sanctions at trial level, and Court of Appeals had determined that record on appeal was inadequate to resolve that question. F.R.A.P.Rule 38, 28 U.S.C.A.

**[11] Federal Civil Procedure 170A** ☞**2839**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(F) On Appeal
         170Ak2837 Grounds
            170Ak2839 k. Frivolousness in general. Most Cited Cases

Sanctions may be awarded if appeal is frivolous. F.R.A.P.Rule 38, 28 U.S.C.A.

**[12] Federal Civil Procedure 170A** ☞**2842**

170A Federal Civil Procedure
   170AXX Sanctions

170AXX(F) On Appeal
   170Ak2837 Grounds
      170Ak2842 k. Bad faith. Most Cited Cases

Imposition of sanctions for frivolous appeal requires some evidence of bad faith. F.R.A.P.Rule 38, 28 U.S.C.A.

***1085** Louis R. Hegeman, Kathryn S. Matkov (argued), Gould & Ratner, Chicago, IL, Forrest L. Ingram, Kalish & Colleagues, Chicago, IL, Cindy M. Johnson, Teller, Levit & Silvertrust, Chicago, IL, Gail Bley, Chicago, IL, for plaintiff-appellee.

David A. Novoselsky (argued), Novoselsky & Associates, Chicago, IL, for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and WILLIAMS, Senior District Judge.[FN*]

      FN* The Honorable Spencer M. Williams of the United States District Court for the Northern District of California is sitting by designation.

RIPPLE, Circuit Judge.

This is an appeal from the district court's denial of the City of Waukegan's request for sanctions against Ollie Belle Ross, under Federal Rule of Civil Procedure 11, pursuant to 28 U.S.C. § 1927 (1988), and under Federal Rule of Appellate Procedure 38. The City submits that Ms. Ross has maintained frivolous litigation. Additionally, Ms. Ross cross-appeals from the district court's denial of her motion for leave to file a third amended complaint. For the reasons that follow, we affirm in part, and vacate and remand in part.

I
BACKGROUND

*A. Facts*

On August 11, 1985, the City of Waukegan, Illinois held its annual Waukegan Lakefront Festival on the shores of Lake Michigan. During the fest-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

5 F.3d 1084, 26 Fed.R.Serv.3d 1481
**(Cite as: 5 F.3d 1084)**

ival, William Ross, twelve years old, and a friend wandered onto a breakwater that extended out into the lake. The boy slipped and fell into the lake. His friend ran for help. Within ten minutes, two lifeguards, two firefighters, a city police officer and two civilians who had been scuba diving nearby were on the scene and prepared to effect a rescue. However, before any rescue attempt could begin, Lake County Deputy Sheriff Gordon Johnson arrived on the scene in a patrol boat. Deputy Sheriff Johnson instructed all bystanders that no one was to enter the water until an official county rescue team arrived.

The City of Waukegan and Lake County previously had entered into an intergovernmental agreement that gave the County the responsibility to provide all police services in the entities' concurrent jurisdiction on Lake Michigan. Pursuant to its authority to police the lake, the County had promulgated a policy under which only divers from the City of Waukegan Fire Department could attempt to rescue a person in danger of drowning in Lake Michigan. Further, the policy directed **\*1086** all members of the county sheriff's department to prevent civilians from attempting to effect a lake rescue.

Apparently, city officials were present when the boy began to drown, but did not act because of the policy of deferring to the County. The two civilian scuba divers who were on the lake in a boat attempted to assist, but were stopped by Deputy Sheriff Johnson who threatened arrest if the citizens interfered before the official rescue team arrived. By the time a rescue crew arrived, some thirty minutes later, the boy, although still manifesting some clinical signs of life, was in extremis and died shortly thereafter.

B. *Prior Proceedings*

On August 8, 1986, William Ross' mother, Ollie Belle Ross, filed a complaint in federal court with regard to the drowning death of her son. Ms. Ross' six count, eighty-seven paragraph complaint named nine defendants, including both the City of

Waukegan and Lake County.[FN1] Federal question jurisdiction was based upon allegations that the defendants had violated the civil rights of William Ross. *See* 42 U.S.C. § 1983 (1988).

> FN1. Only the City of Waukegan is before us on this appeal. Accordingly, we shall limit discussion of the other defendants to that necessary to understand the City's present appeal.

Ms. Ross' case was initially assigned to Judge Bua of the United States District Court for the Northern District of Illinois. Shortly after Ms. Ross filed her complaint, in separate motions and supporting memoranda, the City and the County each moved for dismissal. Judge Bua referred the case to a magistrate judge for a report and recommendation. The magistrate judge recommended that the action not be dismissed. On June 12, 1987, over objections from both the City and the County, Judge Bua adopted the magistrate judge's Report and Recommendation and denied the City and the County defendants' motions to dismiss.

Shortly thereafter, upon the appointment of Judge Zagel, Ms. Ross' case was transferred to his docket. In November 1987, the City and the County again filed motions to dismiss on the same grounds that had previously been rejected by the magistrate judge and Judge Bua. On August 29, 1988, Judge Zagel dismissed Ms. Ross' § 1983 claims against the City and the County and requested that the parties submit memoranda on Ms. Ross' state law claims. On September 28, 1988, Judge Zagel denied Ms. Ross' motion to reconsider the August 29 dismissal of her federal causes of action. On that same day, Ms. Ross filed a motion for leave to file an amended complaint. The following year, on August 24, 1989, Judge Zagel issued an order declining to retain jurisdiction over Ms. Ross' remaining state law claims, denying Ms. Ross leave to file an amended complaint, and dismissing the case in its entirety.

On August 16, 1990,[FN2] we affirmed Judge

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

5 F.3d 1084, 26 Fed.R.Serv.3d 1481
**(Cite as: 5 F.3d 1084)**

Zagel's dismissal of the City. We held that the City was not liable under § 1983 either for entering the intergovernmental agreement with the County or for the actions of the County and its employees under a respondeat superior theory of liability. *Ross v. United States,* 910 F.2d 1422 (7th Cir.1990). However, we reinstated and remanded Ms. Ross' § 1983 cause of action against the County. We held that the alleged County policy or practice could have led to an unconstitutional deprivation of William's right to life in violation of § 1983. Upon remand, the case was reassigned randomly to Judge Bua's docket. Ms. Ross filed a motion seeking leave to file a second amended complaint.

> FN2. On August 15, 1990, while her first appeal was pending before this court, Ms. Ross filed a complaint in the state courts of Illinois.

On May 28, 1991, Judge Bua dismissed the City as a defendant on res judicata grounds; he noted that this court had affirmed the first dismissal of the City. 764 F.Supp. 1308. Nevertheless, Judge Bua denied the City's motions to sanction Ms. Ross for filing a previously barred claim. Judge Bua's order stated in part:

Indeed, this is a borderline case for sanctions. On the one hand, [Ms.] Ross's attempts to add the City as a defendant are contrary to the mandate of the Seventh Circuit. But, on the other hand, [Ms.] Ross's conduct does not appear to be motivated by an improper purpose, such as *1087 harassment or delay.... At any rate, while [Ms.] Ross's apparent disregard for the Seventh Circuit's mandate is not to be condoned, this Court does not believe that sanctions are warranted under the unique facts and procedural history of this case.

R. 330 at 4. Thereafter, the City filed a motion for entry of a Rule 54(b) judgment as to its possible liability. Judge Bua denied this motion at Ms. Ross' request and on her assertion that she could demonstrate a new theory of liability that had just come to her new attorneys'[FN3] attention and had initially

been foreclosed because Judge Zagel said that *no* § 1983 action could be pursued.

> FN3. Ms. Ross' initial counsel died during the pendency of this litigation and a ninety-day stay was issued to allow her to retain new counsel.

Judge Bua retired in December 1991, and Ms. Ross' case was reassigned to Judge Lindberg. Shortly after the reassignment, Judge Lindberg reviewed Ms. Ross' case file and, on December 19, 1991, he entered an order reaffirming the previous dismissals of the City and ruling that there was "no just reason for delaying enforcement or appeal." On December 23, Ms. Ross filed a 59(e) motion to vacate the dismissal and a motion for leave to file a third amended complaint. In response, the City filed a second motion for Rule 11 sanctions and a second motion for sanctions pursuant to § 1927.

[1] On January 9, 1992, Judge Lindberg denied Ms. Ross' motion to vacate the December 19 dismissal of the City and her motion for leave to file a third amended complaint. Subsequently, on January 27, 1992, without a hearing and without explanatory comment, in a one sentence minute order effective *nunc pro tunc* to January 9, 1992, Judge Lindberg also denied the City's motion for Rule 11 sanctions and its motion for sanctions pursuant to § 1927. The City now appeals the denial of its motions for sanctions under Rule 11 and pursuant to § 1927. It also asks that we impose sanctions on appeal pursuant to Rule 38. Ms. Ross cross-appeals from Judge Lindberg's denial of her motion to vacate his December 19, 1991 order dismissing the City and her motion for leave to file a third amended complaint.[FN4]

> FN4. Prior to oral argument, this court, sua sponte, raised the issue of its jurisdiction and directed the parties' attention to *Cassidy v. Cassidy,* 950 F.2d 381 (7th Cir.1991). Consequently, both parties briefed the issue of jurisdiction. We believe that this case differs from *Cassidy,* in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

5 F.3d 1084, 26 Fed.R.Serv.3d 1481
**(Cite as: 5 F.3d 1084)**

which the issue of sanctions was also raised. In *Cassidy,* the sanction issue was only resolved as to two of the three defendants and no Rule 54(b) judgment was entered. In the present action, all of the City's sanction issues have been resolved and the district court expressly entered a 54(b) judgment on December 19.

The denial of the City's motions to sanction was entered in a separate order on January 27 and did not contain a 54(b) finding. However, the district court expressly made the denial of the City's motions to sanction effective *nunc pro tunc* to the January 9 denial of Ms. Ross' motion to vacate the December 19 dismissal. We think it is clear that the court took this action to make clear that the decision was a final and immediately appealable order. Accordingly, we conclude that the City's appeal is properly before this court and we shall proceed to the merits.

II
DISCUSSION

We have before us both an appeal and a cross-appeal. The cross-appeal involves the district court's decision refusing to allow Ms. Ross to file a third amended complaint. The appeal brings to us the district court's decision not to impose sanctions on Ms. Ross for tendering this complaint. Therefore, we shall first address the cross-appeal and then the appeal.

1.

[2] On cross-appeal, Ms. Ross argues that the district court erred in denying her Rule 59(e) motion to vacate the December 19 dismissal of the City and in denying leave for her to file a third amended complaint.

The district court's three-line minute order was laconic. Although a more plenary explanation of the matter would have significantly aided us in our evaluation of counsels' submissions on appeal, we cannot fault the trial court for going to the heart of the matter and determining that, however the other criteria for Rule 59(e) relief or for amendment of a complaint might impact on the ultimate decision, *1088 amendment was not possible here in light of our earlier decision in this case. "While Rule 15(a) states that 'leave shall be freely given when justice so requires,' the court should not allow the plaintiff to amend [her] complaint when to do so would be futile." *Moore v. Indiana,* 999 F.2d 1125, 1128 (7th Cir.1993).

In the amended complaint tendered to the district court, Ms. Ross alleged that the City is liable because it had a policy of aiding and abetting the County in its policy of preventing available rescuers from reaching the victim. It further alleges that City personnel present at the breakwater on that tragic day acted pursuant to that policy when they helped County personnel keep the breakwater clear of non-official personnel, including potential rescuers. Upon examination of the first complaint filed in this action and of our earlier opinion, *see Ross,* 910 F.2d at 1428-29, we believe that these allegations are within the ambit of our earlier decision and therefore further consideration of them at this point through the device of an amended complaint is precluded.

2.

We now turn to the matter of sanctions. Rule 11 of the Federal Rules of Civil Procedure provides in part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed *after reasonable inquiry* it is *well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper pur-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY                Page 7

5 F.3d 1084, 26 Fed.R.Serv.3d 1481
**(Cite as: 5 F.3d 1084)**

pose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall impose* upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including reasonable attorney's fees.

Fed.R.Civ.P. 11 (emphasis added).

[3][4] The City submits that the district court erred in denying its repeated motions for sanctions under this rule. We review a district court's decision not to impose Rule 11 sanctions only for an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 397-99, 110 S.Ct. 2447, 2457-58, 110 L.Ed.2d 359 (1990); *Dunn v. Gull,* 990 F.2d 348, 350 (7th Cir.1993). Although the determination of whether Rule 11 has been violated is necessarily very fact-based and is accordingly reviewed with deference, the imposition of sanctions, when Rule 11 has been violated, is mandatory. *United States v. Oberhellmann,* 946 F.2d 50, 53 (7th Cir.1991) (subjective bad faith no longer a prerequisite to Rule 11 sanctions; standard is an objective one); *Dahnke v. Teamsters,* 906 F.2d 1192, 1200 (7th Cir.1990) (same).

[5][6][7] As this case comes to us, we must review the judgment entered by Judge Lindberg. His reevaluation of the case is the decision properly before us. The City argues that Judge Lindberg abused his discretion in refusing, without holding a hearing or making any record findings, to issue Rule 11 sanctions based upon Ms. Ross' attempt to file a third amended complaint. Although our review of a denial of sanctions is limited, the denial of sanctions with no explanation may constitute an abuse of discretion. *Wojan v. General Motors Corp.,* 851 F.2d 969, 974 (7th Cir.1988). "Deferential review will not prevent this court from

ensuring that district judges reflect seriously, and consider fully, before imposing (or denying) sanctions." *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 936 (7th Cir.1989) (en banc); *see also In re Ronco, Inc.,* 838 F.2d 212, 217-18 (7th Cir.1988) (deferential review does not mean no review at all). Ms. Ross correctly asserts that there are instances in which a cursory order granting or denying sanctions without exposition is not an abuse of discretion. *See* \*1089*Teamsters Local 579 v. B & M Transit, Inc.,* 882 F.2d 274, 279 (7th Cir.1989) ("We have even discouraged lower courts from conducting additional proceedings when the record was adequate to determine whether sanctions were necessary."); *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1084 (7th Cir.1987) , *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988) (If the reasons for denying a motion for sanctions are clear on the record "the judge need not belabor the obvious[;] ... [Otherwise, the parties] and this court are entitled to explanations."). Although on occasion we have upheld cursory orders granting or denying sanctions, we have done so only when the record clearly reflected on its face whether sanctions were appropriate.

The present appeal is not such a case. Of particular concern to us is the circuitous route that this case has taken in the district court. This case has been, at various times during the last eight years, before at least five different courts in two separate court systems. This court alone has seen no less than three appeals. The City has brought five separate motions for sanctions and appealed two of them. Three separate courts have considered and denied the City's requests for sanctions. The parties are in disagreement on many of the facts, as well as the inferences that should properly be drawn from earlier orders of three different district judges and a magistrate judge. [FN5] Accordingly, the considerations that need to be weighed in adjudicating the matter of sanctions are not susceptible to resolution without explanation by the district court and certainly ought not be settled definitively by an appel-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

Page 8

5 F.3d 1084, 26 Fed.R.Serv.3d 1481
**(Cite as: 5 F.3d 1084)**

late tribunal.

FN5. The City argues that Judge Bua concluded that Ms. Ross' litigation conduct may be sanctionable, but that, employing an improper standard, he did not sanction her because her conduct did not appear to be intended to harass. In support of its assertion that Judge Bua found a Rule 11 violation, the City invites our attention to a portion of his memorandum order in which he expressly notes that Ms. Ross attempted to amend the complaint adding the City as a party "against the mandate of the Seventh Circuit." In response, Ms. Ross invites our attention to language in the same order that states that judicial economy and convenience to the litigants suggest that the state law claims against the City may best be consolidated with the federal action. Moreover, as Ms. Ross submits, Judge Bua expressly emphasized that this case has had a very complex and unique procedural history that he believed made sanctions inappropriate in this instance. Even though the language in Rule 11 is mandatory, "the hulk of the Rule 11 calculus is [still] best left to the trial court." *FDIC v. Tefken Constr. Co.,* 847 F.2d 440, 443 (7th Cir.1988). We believe that Judge Bua's order is indeed ambiguous and note, moreover, that Judge Lindberg did not indicate his agreement with or reliance on any part of Judge Bua's order.

[8][9] For these reasons, we must conclude that the district court's explanation is so conclusory that we cannot review the substance of its decision. To affirm the district court's decision, given without explanation, would render us no more than a rubber stamp. We are not-no matter what the applicable standard of review-a rubber stamp. Accordingly, the denial of sanctions is vacated; on remand, the parties may again address the issue of sanctions and obtain a more plenary explanation from the district court. FN6

FN6. Although we have cast our discussion in terms of Rule 11 sanctions, we believe that the district court's lack of explanation also prevents meaningful review of the refusal to impose sanctions under 28 U.S.C. § 1927. That section provides in part:

Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously *may be required* by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

§ 1927 (emphasis added).

Before sanctions may be imposed under § 1927, a party must show "bad faith." *McCandless v. Great Atlantic & Pacific Tea Co.,* 697 F.2d 198, 201 (7th Cir.1983). Section 1927 allows recovery of fees only if a party litigates "unreasonably and vexatiously." *Koffski v. Village of North Barrington,* 988 F.2d 41, 45 n. 8 (7th Cir.1993). The power to impose costs under § 1927 should be exercised "only in instances of a serious and studied disregard for the orderly processes of justice." *United States v. Ross,* 535 F.2d 346, 349 (6th Cir.1976) (quoting *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163 (7th Cir.1968), *cert. denied,* 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969)). Further, even if that standard has been met (unlike the "shall" language in Rule 11) a court "may" award § 1927 fees. That is, it is within the sound discretion of the district court whether to grant or to deny sanctions under § 1927.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

5 F.3d 1084, 26 Fed.R.Serv.3d 1481
**(Cite as: 5 F.3d 1084)**

The City argues that the district court abused its discretion in denying the City's motion for sanctions pursuant to 28 U.S.C. § 1927. However, there may have been extenuating circumstances in this litigation. Ms. Ross' case was repeatedly reassigned and her initial counsel died shortly before her third attempt to amend her complaint.

**\*1090 3.**

[10][11][12] Finally, the City submits that we should impose sanctions against Ms. Ross under Federal Rule of Appellate Procedure 38. Ms. Ross' cross-appeal, contends the City, evidences that she has no intention of stopping her "campaign of vexatious litigation against the City." Appellant's Br. at 27. Sanctions may be awarded under Rule 38 if an appeal is frivolous. "An appeal is frivolous 'when the result is obvious or when the appellant's argument is wholly without merit.' " *Spraying Sys. Co. v. Delevan, Inc.,* 975 F.2d 387, 396 (7th Cir.1992) (quoting *Williams v. United States Postal Serv.,* 873 F.2d 1069, 1075 (7th Cir.1989)). Additionally, to impose Rule 38 sanctions we have required "some evidence of bad faith." *Koffski v. Village of North Barrington,* 988 F.2d 41, 45 n. 8 (7th Cir.1993) (quoting *Rodgers v. Wood,* 910 F.2d 444, 449 (7th Cir.1990)).

The City's arguments in support of its request for Rule 38 sanctions are essentially the same as its arguments for sanctions under Rule 11 and pursuant to § 1927. Without more explicit findings by the district court, we cannot, on this record, assess definitively whether bringing this appeal can be considered sanctionable conduct. The only additional circumstance to which the City invites our attention is that Ms. Ross attempted to supplement the Record on Appeal with a deposition taken several months after the notice of appeal was filed. The parties are in disagreement as to whether the deponent was available previously and as to whether the deposition supports a new theory for § 1983 liability against the City. After study of the submissions

of the parties, we have concluded that the City has not carried its burden of demonstrating the appropriateness of sanctions under Rule 38.

Conclusion

The judgment of the district court is affirmed insofar as it dismisses Ms. Ross' case against the City. The decision of the district court with respect to sanctions is vacated and the matter is remanded for proceedings consistent with this opinion. No costs are awarded in the appeal. The City may recover its costs in the cross-appeal.

AFFIRMED, in part and VACATED and REMANDED, in part.

C.A.7 (Ill.),1993.
Ross v. City of Waukegan
5 F.3d 1084, 26 Fed.R.Serv.3d 1481

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

FOR EDUCATIONAL USE ONLY                    Page 1

946 F.2d 50
**(Cite as: 946 F.2d 50)**

▷

United States Court of Appeals,
Seventh Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elmer C. OBERHELLMANN, Defendant-Appel-
lant.

No. 90-3864.
Argued Sept. 6, 1991.
Decided Oct. 18, 1991.

Attorney cited for criminal contempt for for-
ging another attorney's signature on a notice of
withdrawal of appearance filed motion and supple-
mental motion for new trial or to dismiss. The
United States District Court for the Central District
of Illinois, Richard Mills, J., 748 F.Supp. 1344,
denied the motions, and attorney appealed. The
Court of Appeals, Posner, Circuit Judge, held that
attorney could not be found guilty of criminal con-
tempt for forging another attorney's signature on
notice of withdrawal of appearance, where it was
not shown beyond a reasonable doubt that attor-
ney's conduct obstructed the administration of
justice.

Reversed.

West Headnotes

**[1] Contempt 93 ⬤➞7**

93 Contempt
    93I Acts or Conduct Constituting Contempt of
Court
        93k7 k. Disturbance of Proceedings of Court.
Most Cited Cases
    With regard to statute authorizing federal court
to punish for criminal contempt "misbehavior of
any person in its presence or so near thereto as to
obstruct the administration of justice," Government
must prove beyond a reasonable doubt that the mis-
behavior, wherever it occurred, actually obstructed

the administration of justice by delaying proceed-
ings, making more work for the judge, inducing er-
ror, or by imposing costs on parties. 18 U.S.C.A. §
401(1).

**[2] Contempt 93 ⬤➞2**

93 Contempt
    93I Acts or Conduct Constituting Contempt of
Court
        93k1 Nature and Elements of Contempt
            93k2 k. In General. Most Cited Cases

**Contempt 93 ⬤➞7**

93 Contempt
    93I Acts or Conduct Constituting Contempt of
Court
        93k7 k. Disturbance of Proceedings of Court.
Most Cited Cases
    Criminal contempt requirement that there be an
obstruction of justice cannot be satisfied by proof
that the contempt proceeding itself, and such ancil-
lary events as the complaint that touched it off, im-
posed costs and delays. 18 U.S.C.A. § 401(1).

**[3] Contempt 93 ⬤➞10**

93 Contempt
    93I Acts or Conduct Constituting Contempt of
Court
        93k10 k. Misconduct as Officer of Court.
Most Cited Cases
    Attorney could not be found guilty of criminal
contempt for forging another attorney's signature on
notice of withdrawal of appearance, where it was
not shown beyond a reasonable doubt that attor-
ney's conduct obstructed the administration of
justice. 18 U.S.C.A. § 401(1).

**\*50** Rodger A. Heaton (argued), Patrick Kelley,
Asst. U.S. Attys., Office of the U.S. Atty., Spring-
field, Ill., for plaintiff-appellee.

John M. Bray, Charles B. Wayne (argued),

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

946 F.2d 50
**(Cite as: 946 F.2d 50)**

Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., for defendant-appellant.

Before BAUER and MORAN [FN*], Chief Judges, and POSNER, Circuit Judge.

> FN* Hon. James B. Moran, of the Northern District of Illinois, sitting by designation.

**\*51** POSNER, Circuit Judge.

Judge Mills found Mr. Oberhellmann, a member of the Missouri bar, guilty of criminal contempt and sentenced him to two months in jail. A plaintiffs' tort lawyer, Oberhellmann had in 1987 hired a young lawyer named Howard Becker to assist him in his practice; the terms of their relationship were never formalized. Shortly after Becker came on board, Oberhellmann was retained by Douglas Payton to sue the City of Mattoon, Illinois, for an accident that had rendered Payton a quadriplegic. Oberhellmann assigned the matter to Becker, who filed suit in Judge Mills' court. Only Becker entered an appearance for Payton, and the court was unaware of any interest in the case that Oberhellmann might have had. Indeed, throughout a lengthy pretrial period that included extensive discovery, a number of motions, and periodic court appearances, Becker remained the only counsel of record for Payton.

On April 10, 1990, Oberhellmann fired Becker. Shortly afterward, Oberhellmann discovered that the Payton file was missing. Becker claims to have told Oberhellmann's secretary that he (Becker) had the file because it was his case. Oberhellmann insists that Becker denied he had the file but that he, Oberhellmann, suspected that Becker had taken the file and would attempt to settle the case in order to get some ready cash. Becker did settle the case, and notified Judge Mills, who on April 27 signed an order dismissing the case with prejudice pursuant to Fed.R.Civ.P. 41(a)(2). On that very day, fearing though not knowing the worst, Oberhellmann had

prepared a notice of withdrawal of appearance which states that Howard Becker "hereby withdraws as counsel for Plaintiff" and that "Elmer C. Oberhellmann, Inc. will remain as counsel for Plaintiff." Oberhellmann forged Becker's signature on this document, then mailed the notice to the clerk of Judge Mills' court and a copy of the notice to the lawyer for the City of Mattoon. The date of these mailings is unknown but the clerk received the notice on May 9 and docketed it the next day; we shall see that the city's lawyer must have received his copy no later than the clerk. With the copy for the city's lawyer went a cover letter in which Oberhellmann stated that Becker had left his office and that Payton was a client of Oberhellmann's professional corporation.

Early in May, Oberhellmann discovered that Becker had indeed settled the Payton suit. On May 10 he called the city's lawyer and told him that Becker had in settling the case acted without authority. Oberhellmann followed up this call with two telegrams. Also on May 10, Judge Mills received a letter from Becker, mailed the previous day. Apparently, the city's lawyer had, upon receiving Oberhellmann's letter enclosing the notice of withdrawal of appearance, immediately called Becker, who promptly fired off the letter to Judge Mills. The letter stated that Becker's name on the notice of withdrawal had been forged and that Oberhellmann had no interest in the case.

On May 29, the city's lawyer, joined by Becker, moved Judge Mills to enforce the settlement agreement. The judge denied the motion on the ground that his order of April 27 had ended the case and that the subsequent brouhaha between Becker and Oberhellmann had no effect on the settlement's validity. Payton had not complained. He had agreed to the settlement negotiated by his counsel of record and that, Judge Mills said, was the end of it. The city was not satisfied, and filed in Judge Mill's court an interpleader suit to obtain a judicial determination of the respective rights of itself, Payton, Becker, and Oberhellmann. That suit was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

946 F.2d 50
**(Cite as: 946 F.2d 50)**

settled in December 1990 with an order confirming the tort settlement that Becker had negotiated with the city on Payton's behalf (a "structured," i.e., installment, settlement with a present value of $500,000) and awarding Oberhellmann $121,000 in fees and expenses and Becker $21,000.

In the middle of all this, on May 14, Judge Mills had on his own initiative sent a notice of criminal contempt charges to Oberhellmann. The notice laid the charges under 18 U.S.C. § 401(2), which was wrong. That section punishes misbehavior by court officers, which for purposes of the section *52 the litigants' attorneys are not. *Cammer v. United States,* 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474 (1956). One of the questions raised by this appeal that we need not decide is whether the naming of the wrong statute was a mere typographical error or something more harmful because it may have made the judge slide over a critical question under section 401(1) that is immaterial to 401(2)-whether there was an actual obstruction of justice as a consequence of Oberhellmann's misconduct.

The government having agreed not to seek a sanction that would trigger the defendant's right to a jury trial, the case was tried by Judge Mills on July 3, 1990, pursuant to the streamlined procedures of Fed.R.Crim.P. 42(b). After an 80-minute hearing in which Oberhellmann (who was not represented by counsel) admitted having knowingly acted without authority in signing Becker's signature to the notice of withdrawal of appearance, the judge found him guilty. 748 F.Supp. 1344 (C.D.Ill.1990).

[1] A federal court is authorized to punish for criminal contempt "misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1). As an original matter, having reference to the grammar as well as apparent purpose of this provision, we might have thought that the only significance of the reference to obstructing justice was the help it gave in determining whether misbehavior outside the presence of the court was sufficiently likely to interfere with the sound functioning of the court to be punishable, and that of course a judge could punish misbehavior-properly defined to exclude trivial breaches of etiquette or decorum-that occurred in his presence whether or not it actually obstructed the administration of justice. *United States v. Lowery,* 733 F.2d 441, 444-45 (7th Cir.1984); *Farese v. United States,* 209 F.2d 312, 316 (1st Cir.1954); cf. *Ex parte Savin,* 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150 (1889); *In re Brown,* 454 F.2d 999, 1013-14 (D.C.Cir.1971) (dissenting opinion). The original statute (Act of March 2, 1831, ch. 99, 4 Stat. 487) fairly dictated this interpretation because it had a comma after "presence," and the subsequent disappearance of the comma in the course of a revision of the criminal code was an accident. *United States v. Lowery,* 733 F.2d at 445. But, bowing to a long line of cases, the government concedes that, wherever the misbehavior occurs, the government must prove (of course beyond a reasonable doubt) that the misbehavior actually obstructed the administration of justice-by delaying proceedings, making more work for the judge, inducing error, imposing costs on parties, or whatever. *In re McConnell,* 370 U.S. 230, 234, 82 S.Ct. 1288, 1291, 8 L.Ed.2d 434 (1962); *United States v. Seale,* 461 F.2d 345, 367 (7th Cir.1972); *Vaughn v. City of Flint,* 752 F.2d 1160, 1168 (6th Cir.1985); *In re Kirk,* 641 F.2d 684, 687 (9th Cir.1981); *In re Brown, supra,* 454 F.2d at 1003-04.

The difference between these two interpretations might not affect the outcome in this case, for it is uncertain that merely filing a paper with the clerk of court should be classified as a form of misbehavior that is committed in the "presence" of the court. Perhaps the term should be confined to words uttered or gestures made in the courthouse, rather than interpreted to embrace the quiet filing of a piece of paper, albeit a fraudulent one. The circuits are split on this (surprisingly) infrequently litigated issue. Compare *Laughlin v. United States,* 151 F.2d 281, 285 (D.C.Cir.1945) (per curiam), and *Schmidt v. United States,* 124 F.2d 177 (6th Cir.1941), with *United States v. Lee,* 720 F.2d 1049, 1052 (9th

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

946 F.2d 50
**(Cite as: 946 F.2d 50)**

Cir.1983). What is plain is that a mere filing in the clerk's office could not rise to the level of a contempt committed in the "actual presence of the court," the test for whether the contempt can be punished without any notice or hearing at all, Fed.R.Crim.P. 42(a), because that test requires that the judge have seen or heard the act alleged to be contemptuous. *Id.; Blalock v. United States,* 844 F.2d 1546, 1553 n. 4 (11th Cir.1988) (concurring opinion). The present case was and could only be prosecuted under Rule 42(b), which requires notice and a hearing-but it's still a pretty summary procedure, and the occasions for **\*53** its exercise should be circumscribed as narrowly as is consistent with the maintenance of order and decorum essential to the effective operation of the judicial system. *United States v. Lowery, supra,* 733 F.2d at 446; Norman Dorsen & Leon Friedman, *Disorder in the Court* 107-08 (1973).

[2] But all this is to one side of our case. For the parties agree as we have said that there must be an "actual obstruction" even if what occurred here was misbehavior in the presence of the court; and whatever exactly "actual obstruction" means, it requires, at a minimum, that the defendant's conduct have had an effect. An effect, in turn, presupposes a cause. Causation is a complex, contextually variable concept, in law as in life. H.L.A. Hart & Tony Honoré, *Causation in the Law* (2d ed. 1985); John Borgo, "Causal Paradigms in Tort Law," 8 *J.Legal Stud.* 419 (1979). But we understand the government to concede, and wisely too, that the requirement of causality, and hence of an effect of the defendant's contemptuous behavior and hence of an actual obstruction of justice, cannot be satisfied here unless, but for Oberhellmann's forging of Becker's name to the withdrawal of appearance, the commotion that followed-the motion to enforce the settlement, the denial of that motion, the interpleader suit, and the consequent delay in putting the settlement into effect-would not have occurred, or at least would not have been as great as it was. As far as can be determined from this record, it would have occurred anyway, and would have been just as

great. Suppose that instead of filing a notice of withdrawal of appearance and mailing a copy to the city's lawyer, Oberhellmann had mailed just the cover letter, notifying the lawyer that Becker had acted without authority, and then, when he found out that Becker had as he feared settled the case, had followed up the letter with the phone call and the telegrams. The city's lawyer would still have joined with Becker in filing the motion to enforce the agreement, the motion would still have been denied, therefore the city would still have filed the interpleader suit, and that suit would have wended its way to a conclusion on the same timetable and with the same consequences. The only difference is that Becker would not have written a letter to Judge Mills complaining of Oberhellmann's forgery and Judge Mills would not have instituted a proceeding for contempt. The requirement of proving an obstruction of justice obviously cannot be satisfied by proof that the contempt proceeding itself, and such ancillary events as the complaint that touched it off, imposed costs, delay, etc. That would read the requirement of proving an obstruction of justice out of the law, for in every case of contempt the contempt proceeding itself imposes the sort of burdens that, if imposed by the act alleged to be contemptuous, would satisfy the requirement of proving an obstruction of justice.

[3] Of course it is just speculation that the forged notice had no incremental effect on the ensuing proceedings. So, if the defendant had the burden of proof, Oberhellmann would lose. But the government has the burden, so it loses. The judgment must therefore be reversed with directions to enter a judgment of acquittal. This ruling should not, of course, be interpreted as an exoneration of Mr. Oberhellmann's wholly improper act in forging Becker's signature-an act that cannot be excused by reference to the claimed provocation supplied by Becker's stealing the Payton file and settling the case (quite possibly for an insufficient amount) *sub rosa,* improper as *that* conduct would have been as well. All we hold is that on this record no trier of fact could rationally find that Oberhellmann had ac-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOR EDUCATIONAL USE ONLY

946 F.2d 50
**(Cite as: 946 F.2d 50)**

tually obstructed justice. Not all criminal conduct can be proved so beyond a reasonable doubt and not all professional misconduct is criminal. But the remedies for wrongdoing are not limited to criminal sanctions, let alone to criminal contempt. Rule 11 of the Federal Rules of Civil Procedure provides mandatory sanctions for the signing of a knowingly false pleading-and the signer of course was Oberhellmann, the forger, not Becker. That is not all. The filing of a knowingly false statement with a federal court can be punished criminally under 18 U.S.C. § 1001, as in *54*United States v. Barber,* 881 F.2d 345, 349-51 (7th Cir.1989). (We disclaim any opinion on whether such a charge would be appropriate here.) And while Oberhellmann is not a member of the bar of the U.S. District court for the Central District of Illinois and thus is not subject to professional discipline by that court, we trust that the disciplinary authorities of the Missouri bar, to whom a copy of this opinion is being sent, will take a close look at both Oberhellmann's and Becker's conduct.

REVERSED.

C.A.7 (Ill.),1991.
U.S. v. Oberhellmann
946 F.2d 50

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**400 Oceangate, 8th floor**
**Long Beach, CA 90802**

A true and correct copy of the foregoing document described **Opposition To Motion For Rule To Show Cause And For Contempt Order,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **4/16/2012** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
☐ Alex Burke ABurke@BurkeLawLLC.com
☐ Matthew P. McCue mmccue@massattorneys.net
☐ Brian Murphy murphy@mmmb.com
☐ Jon R. Marshall JMarshall@baileyglasser.com
☐ John Barrett JBarrett@baileyglasser.com
☐John Barrett JBarrett@baileyglasser.com
☐ ted@broderick-law.com ted@broderick-law.com
☐ Anthony Paronich  anthony@broderick-law.com
☐ Honorable Elaine E. Bucklo, USDJ

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ___4/16/2012_____ I served the following person(s) and/or entity(ies) at the last nown address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Honorable Elaine E. Bucklo
United States District Court
Courtroom 1441
219 South Dearborn Street
Chicago, IL 60604

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____I served the following person(s) and/or entity (ies) by personal delivery, or (for those who consented in writing to such service method), by *facsimile transmission* and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/16/2012 | Lucy Roeung | /s/ |
|-----------|-------------|-----|
| Date      | Type Name   | Signature |

**PROOF OF SERVICE**