# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1925 | **DATE** | 5/11/2012 |
| **CASE TITLE** | Desai vs. ADT | | |

### DOCKET ENTRY TEXT

For the reasons explained below, ADT's Motion to Compel [#181] is granted in part and denied in part; it is granted with respect to document requests 3, 19 and 36 and denied with respect to interrogatories 12 and 13 and document request 45.

■ [ For further details see text below.]

Notices mailed by Judicial staff.
*Copy to judge/magistrate judge.

### STATEMENT

According to the initial complaint filed in this case on March 21, 2011, Vishva Desai received a voicemail message on her cell phone advertising ADT Security services; according to Ms. Desai, the call was automated, not placed by a person. Ms. Desai received the call on February 27, 2011, but she alleges that ADT – or someone authorized to make calls on ADT's behalf – made more than 100 similar calls to cell phones nationwide during that same month. Ms. Desai sued ADT alleging violation of the Telephone Consumer Protection Act ("TCPA") on behalf of herself and a class of individuals consisting of people who received calls on their cell phones from ADT or entities authorized to place calls on behalf of ADT, using an automatic telephone dialing system and/or prerecorded voice message from March 15, 2007 through March 15, 2011. Ms. Desai filed an amended class action complaint on April 18, 2011, joined by a second named plaintiff: Philip J. Charvat; the amended complaint spells out in greater detail the factual allegations upon which it is based. The plaintiffs do not allege that ADT actually placed the calls, but that the calls were made on behalf of, and for the benefit of, ADT, via ADT's authorized dealer program and one of ADT's authorized dealers. The plaintiffs allege that ADT promotes the use of telemarketing to generate business and that the telemarketing conducted on its behalf often runs afoul of the TCPA. For example, on February 27, 2011, Ms. Desai received a recorded message on her cell phone voicemail; the call was dialed from a machine and the message was prerecorded. Similarly, on September 7, 2010, Mr. Charvat received a call at his home, placed by a machine and containing a prerecorded message promoting ADT's goods and services; the call failed to identify the business or entity responsible for initiating it. Mr. Charvat received a second call on January 11, 2011; that call, like the first, used an automated dialing system and a prerecorded message, left on Mr. Charvat's home phone. The putative class is defined in the amended complaint as "all persons or entities within the United States who ADT either directly, or through its authorized agents, sent, or caused to be sent unsolicited prerecorded telemarketing calls promoting ADT's goods or services, at any time within the four years prior to the filing of the instant Complaint." Amended Class Action

| | Courtroom Deputy Initials: | |
|---|---|---|

**STATEMENT**

Complaint, ¶86. The plaintiffs also seek to represent a "sub-class" comprised of "persons or entities who received, on a cellular phone, an unsolicited ADT prerecorded telemarketing/auto.-dialer calls promoting ADT's goods or services, at any time within the four years prior to the filing of the instant Complaint." *Id.*, ¶87. They allege claims of negligent and knowing violation of the TCPA, and seek $500 per violation on the former and $1,500 per violation on the latter; they also seek injunctive relief.

The case is currently before the Court on ADT's motion to compel the plaintiffs to respond to certain outstanding discovery requests. Specifically, ADT seeks to compel responses to two interrogatories (12 and 13) and to four document requests (3, 19, 36 and 45). The federal discovery rules permit liberal discovery in an effort to facilitate trial preparation or settlement of legal disputes. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). Indeed, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" even if the relevant information is not admissible at trial. Fed. R. Civ. P. 26(b)(1). The discovery must, however, "appear[] reasonably calculated to lead to the discovery of admissible evidence." *Id.* "[T]he burden is upon the objecting party to show why a discovery request is improper." *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)(citing *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001)). If the party fails to make the requisite showing, Federal Rule of Civil Procedure 37 allows the Court to enter an order compelling the party to comply with discovery requests.

ADT seeks to compel answers to both interrogatories and document requests. Turning first to the former, ADT seeks to compel responses to Interrogatories 12 and 13, which deal with class information, including the class definition, identification and management of class members, etc. Interrogatory 12 asks the plaintiffs to "[s]tate the precise definition of the class(es) you seek to represent, state the basis for your standing to represent that class, and state in detail how you intend to identify all members of the proposed class." The plaintiffs have argued that this information is spelled out in the complaint, and, quite frankly, the Court agrees. The Amended Complaint defines the classes and subclasses, includes the allegations indicating how the named plaintiffs fall within these definitions, and explains that the members of the classes will be discovered based upon documents within ADT's custody and control. And, in response to the interrogatory, the plaintiffs explained the basis for the named plaintiffs' standing. *See* Response to ¶12 (attached as Exhibit D to ADT's Motion). Beyond that, the plaintiffs' response indicates that class counsel "will submit a detailed explanation of how they will identify class members in this case upon filing a Motion for Class Certification"; they also indicated that "class counsel are currently in possession of a list of over two million consumers who are believed to have been contacted by EMI, Inc., via pre-recorded message, on behalf of ADT to generate new customers for ADT and its Authorized Agents." *Id.* Although neither the complaint nor the response actually names names, the Court is unsure what else ADT hopes to get from the plaintiffs in response to this interrogatory at this point. The issue may more appropriately be addressed during the class certification phase. The motion to compel further responses to this interrogatory is denied.

Interrogatory 13 asks the plaintiffs to "[s]tate in detail your plan for managing the proposed class in this case, including your plan for presenting the class action to the jury and why you believe the class is manageable and the superior method for proceeding, including, but not limited to, whether you are proposing sub-classes and what they are; the procedures you propose for handling the factual differences between claims, including calls that were placed by, or made at the direction of, different entities; the procedures proposed for proving that any particular calls were knowing violations of the Act; the procedures proposed for proving that ADT is responsible for the various calls placed by different entities; and the proposed procedures for handling affirmative defenses based on consent and prior existing business relationship." Defendant ADT Security Services, Inc.'s First Set of Interrogatories Directed to Plaintiffs, No. 13 (attached as Exhibit A to ADT's Motion to Compel). Although the Amended Complaint spells out how the class will be defined and how members will be identified, it does not include information responsive to this interrogatory. But it does seem that issues of class management and class member identification are more appropriately addressed by the attorneys during the class certification phase. Discovery is really directed at the parties, who would presumably have no plan and little or no input on these issues.

## STATEMENT

In addition to these two interrogatories, ADT seeks to compel responses to document requests 3, 19, 36 and 45. Request number 3 seeks "[a]ll telephone billing records for any telephone used by Plaintiffs from 2007 to present." The plaintiffs objected to this request as overbroad, but did actually produce Mr. Charvat's billing records; they also represented that Ms. Desai "is not in possession of billing records relating to the Desai Call." Of course that is not the same thing as saying that they don't exist. And, as between Ms. Desai and ADT, Ms. Desai is in a better position to obtain those records. At this point, the Court is not persuaded that the records have no relevance, and the request is limited in scope to the same timeframe defined in the plaintiffs' allegations. Accordingly, the Court will grant the motion to compel a response to this request; to the extent such records exist, they must be produced.

In request number 19, ADT seeks "[a]ll pleadings from any lawsuits in which Plaintiffs were or are involved." The plaintiffs argue that their litigation histories are irrelevant. But if, as ADT implies, the plaintiffs have devised a system that increases the odds of their capturing a statutory violation, that could be relevant to what happened in this case, and ADT has a right to pursue discovery along those lines. To be sure, given the response to interrogatory number 10, Mr. Charvat appears to be a serial litigator; ADT is entitled to explore whether his conduct contributed in any way to the violations alleged here, as long as that exploration is not overly broad or unduly burdensome. Accordingly, the Court will compel the plaintiffs to produce responsive documents for lawsuits involving the TCPA that allege violations based on the same conduct alleged in this lawsuit. Although it may be burdensome for Mr. Charvat to have to compile these documents, it is not overly burdensome, and, certainly, as a party to these lawsuits, it will be easier for him to collect the documents than it would be for ADT.

Request number 36 (actually number 37 in the version served by ADT) seeks "[a]ll documents and communications relating in any way to Plaintiffs' recording of telemarketing calls, including documents identifying or describing the method in which Plaintiffs record telemarketing calls." The plaintiffs objected to this request on relevance grounds. Given the allegations of the amended complaint, this information is clearly relevant; the recordings will, no doubt, be offered as evidence at trial and ADT is entitled to know how those recordings were captured. This seems to have become a bit of an enterprise for Mr. Charvat, and the Court cannot imagine that responding to this request will be burdensome.

Document request number 45 (actually number 46 in the version served by ADT) seeks "[d]ocuments sufficient to show the amount of money you have received as a result of complaints under the TCPA or similar state laws (whether made in court or otherwise) from 2004 to present." The plaintiffs have – rightly – objected on relevance grounds. The Court cannot see how this information could ever be admitted at trial or lead to relevant information. It is one thing to say you want to understand how Mr. Charvat's operation works; that may be relevant to understanding what happened in this lawsuit. But his take from this cottage industry can have no bearing on this lawsuit, other than perhaps to embarrass or expose him in front of a jury. The request to compel with regard to this request is denied.