## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT, on behalf of themselves and others similarly situated | ) ) ) | Case No. 1:11-cv-1925 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Bucklo |
| ADT SECURITY SERVICES, INC. | ) ) | Magistrate Judge Keys |
| Defendant/Third Party Plaintiff | ) | JURY DEMANDED |
| v. | ) ) | |
| MR. PETE TOLMAN, LEADS DIRECT MARKETING, VOICE TEL CORPORATION, MR. CHRISTOPHER LONG, EMI, INC., JMB ENTERPRISES, CITY VIP, LLC, DIRECT SAVINGS USA, INC., MR. OSCAR MONTENEGRO, EVERSAFE SECURITY SYSTEMS, INC., SAFE STREETS USA, LLC, PARAMOUNT MEDIA GROUP, THE ELEPHANT GROUP, INC., AND UNKNOWN JOHN DOE DEFENDANTS I THROUGH XX, | ) ) ) ) ) ) ) ) ) ) ) | |
| Third Party Defendants, | ) ) | |
| SAFE STREETS USA, LLC, SUCCESSOR BY MERGER TO EVERSAFE SECURITY SYSTEMS, INC. | ) ) ) ) | |
| Fourth Party Plaintiff, | ) ) | |
| v. | ) ) | |
| DIRECT SAVINGS USA, LLC, | ) ) | |
| Fourth Party Defendant. | ) | |

**ADT SECURITY SERVICES, INC.'S BRIEF IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**INTRODUCTION**

ADT submits this short brief in support of the proposed settlement agreement that is the subject of the preliminary approval motion that Plaintiffs filed on February 11, 2013. (Doc. 226.) ADT supports the settlement and believes that the consideration offered is generous and fair to the class, particularly in light of the enormous challenges the Plaintiffs would otherwise face in both establishing their novel theory of liability (for calls which ADT did not authorize or even know about) and in establishing that a class could be certified here. Simply put, without a settlement, the class would likely recover nothing. Thus, the $15 million ADT is offering to pay to finally and fully resolve any and all claims relating to "robocalls" that may have been made by persons or entities seeking to sell ADT's services, is more than fair and should be approved.

ADT submits this memorandum to ask that the Court scrutinize the settlement agreement and Plaintiffs' Motion in light of the substantial financial burden ADT must undertake *after* entry of preliminary approval but *before* final approval. If the Court enters the preliminary approval order, ADT must immediately spend approximately *$4 million* to cover the cost of notifying the class of the settlement. Once spent on notice, those funds are not recoverable if the Court denies final approval or the settlement otherwise founders. In that event, ADT will have received no benefit from this substantial expenditure – the funds will have been wasted. ADT therefore respectfully requests that the Court carefully examine the settlement and the notice plan before the Court rules on the preliminary approval motion, so that any questions or concerns that the Court has can be addressed before ADT spends this money on the notice plan.

Specifically, ADT would like to highlight for the Court two aspects of the settlement. First, ADT urges the Court to scrutinize the settlement agreement's notice plan, because only those class members who have been identified through Plaintiffs' third-party

discovery efforts (namely, the Dynamic /EMI call records) will receive direct notice. *See* Pls.' Br. at 5-6. Only publication notice will be used to provide notice to class members who have not been specifically identified—either because call records are unavailable through subpoena, or address information is not possible using available data sources, or the class members cannot otherwise be identified through reasonable efforts. This means most of the class will receive only publication notice. The parties believe that such notice satisfies Due Process and Rule 23 requirements in the context of this settlement. Second, and relatedly, ADT seeks to emphasize that the Settlement's proposed therapeutic benefits constitute adequate consideration as to those class members who will not receive cash payments.

## **ARGUMENT**

The settlement class is comprised of any person or entity that, from September 1, 2007 to January 30, 2013, received either (1) a telemarketing call utilizing a pre-recorded message or (2) a telemarketing call to a cell phone that was made through the use of automated dialing equipment, where the call relates in any way to ADT (collectively "Robocalls).The settlement class includes not only Robocalls that were made by ADT or that mention ADT in the call, but any Robocall where the lead sought to be generated from the call ultimately could have been sold to ADT. ADT's willingness to settle the case for the stated consideration is premised on a broad settlement class and corresponding release that will give ADT total peace with respect to any claims relating to Robocalls, that relate in any way to ADT, prior to the effective date.

Because the Plaintiffs' proposed class is premised not on calls made by ADT, but on calls made by others, there are substantial challenges to identifying class members. During discovery aimed at identifying potential class members, Plaintiffs identified approximately 50 million pre-recorded telemarketing calls placed by a telemarketer called EMI, Inc., including one

of the calls allegedly at issue (to Desai). Pls.' Br. at 4, 6. Plaintiffs represent that EMI placed Robocalls for not only ADT, but other entities as well. Plaintiffs' counsel have indicated that they had identified 4,055,245 calls (from the 50 million calls transmitted by EMI) that delivered a prerecorded message that mentioned ADT in the message. Not all of the 50 million calls were analyzed. Plaintiffs' counsel further represented that they provided this data to the claims administrator, AB Data, Ltd., which determined that 1.4 million of the 4,055,245 attempted calls were actually completed. *See* Pls.' Br. at 6. Plaintiffs further represented that, of those 1.4 million calls, AB Data will likely be able to locate a mailing address for 700,000 to 900,000 of the calls. *Id.* Those individuals are slated to receive direct notice by mail. Doc. 226-3 (Notice Plan) at 1-2. All other settlement class members will receive notice by publication through advertisements placed in magazines, newspapers, and the Internet. *Id.* This includes those who may have received Robocalls from EMI that related to ADT but did not mention ADT by name in the message and any other Robocalls that may have been made by anyone other than EMI that relate in any way to ADT. Thus, because they cannot be specifically identified through reasonable efforts, the vast majority of the settlement class will receive publication notice rather than direct notice.

        Although direct notice is preferred, in the context of this proposed settlement, publication notice satisfies both Due Process and Rule 23(e) requirements because direct notice is not possible. Many courts have held that where, like here, it is impossible to identify members of the class, in the context of a settlement, notice by publication is proper. *See* Pls.' Br. at 18-20.Thus, for the reasons stated in Plaintiffs' Memorandum of Law, ADT believes that the Court can and should approve the notice plan.

Additionally, although not all class members will receive direct notice and many may provide releases without receiving any cash payment or direct notice, ADT submits that the settlement is supported by the additional consideration ADT is offering in the form of procedures designed to prevent Robocalls being made on its behalf. Plaintiffs estimate that between 69,000 and 139,000 class members will file claim forms, resulting in cash payments of between $50 and $100 per class member. *See* Pls.' Br. at 9. For those who do not receive cash payments, they will nonetheless receive the benefits of ADT's agreement to contractually forbid its authorized dealers and authorized marketers from utilizing prerecorded messages for telemarketing purposes (despite the fact that such calls are not per se illegal). Such therapeutic relief constitutes consideration for those class members who do not opt out and do not receive cash. *See, e.g.*, *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1311, 1318 (3d Cir. 1993) (affirming fairness of settlement where plaintiffs received nonmonetary consideration in the form of structural changes to defendant Bell Atlantic's corporate governance); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992)(holding that settlement conferred substantial benefit to plaintiffs where settlement required changes to defendant's corporate governance); *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) (holding that nonmonetary derivative settlement relief adequate when it provided guidelines for "future management responses to tender offers and takeover bids").

To the extent that the Court has any questions or concerns about the Notice Plan or other aspects of the settlement, ADT understands that the Plaintiffs will have the claims administrator available to answer questions on February 19, 2013, when the Motion for Preliminary Approval will be presented to the Court. The Parties are also happy to discuss with

the Court on that date whether the Court requires any additional documentation or other evidence to address any questions or concerns the Court may have.

Dated: February 14, 2013                    Respectfully submitted,

                                                    s/ John A. Leja
                                                  John A. Leja
                                                  Polsinelli Shughart PC
                                                  161 N. Clark Street, Suite 4200
                                                  Chicago, IL 60601
                                                  (312) 873-3670
                                                  (312) 819-1910 *facsimile*
                                                  Email: jleja@polsinelli.com

                                                  Of Counsel:
                                                  Robert L. Hickok
                                                  Michael E. Baughman
                                                  Pepper Hamilton LLP
                                                  3000 Two Logan Square
                                                  Eighteenth & Arch Streets
                                                  Philadelphia, PA 19103
                                                  (215) 981-4000
                                                  (215) 981-4750 *facsimile*
                                                  E-mail:       hickokr@pepperlaw.com
                                                                             baughmanm@pepperlaw.com

                                                  *Attorneys for Defendant, ADT Security*
                                                  *Services, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 14, 2013, the foregoing was filed electronically with the Court's CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system.

                                                  /s/ John A. Leja