# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement, dated January 30th, 2013, is entered into by Plaintiffs Vishva Desai and Philip J. Charvat ("Plaintiffs"), individually and on behalf of the Settlement Class Members (defined below), on the one hand, and ADT, LLC and The ADT Corporation (f/k/a ADT Security Services, Inc.) ("ADT" or "ADT Security Services, Inc.") on the other hand (collectively, the "Parties"), subject to Court approval.

## ARTICLE I
## RECITALS

1.1.  On January 28, 2011, Charvat filed a putative class action complaint ("Ohio Complaint") in the United States District Court for the Southern District of Ohio entitled *Charvat v. ADT Security Services, Inc.*, Civ. Action No. 2:11-cv-0093 ("Ohio Action"). Charvat alleged that ADT violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") when it used, either directly or via one of its authorized dealers, automated telephone equipment to deliver two pre-recorded messages to Charvat's residential phone line without Charvat's prior express consent or any established business relationship. ADT filed a motion to dismiss the Ohio Complaint. Instead of responding to the motion, Charvat amended his Ohio Complaint. On the day ADT's response to Charvat's amended Ohio Complaint was due, Charvat voluntarily dismissed the Ohio Complaint.

1.2.  On March 21, 2011, Desai filed a putative class action complaint in the United States District Court for the Northern District of Illinois entitled *Vishva Desai, on behalf of herself and others similarly situated v. ADT Security Services, Inc.*, Civ. Action No. 1:11-cv-1925, alleging that ADT violated the TCPA when "ADT, or a party authorized by ADT, and/or acting on behalf of ADT" used automated telephone equipment to deliver a pre-recorded message to Desai's cellular phone line without Desai's prior express consent.

1.3.  On April 18, 2011, Desai filed an amended complaint to incorporate Charvat's claims from the Ohio Action ("Amended Complaint") entitled *Vishva Desai and Philip J. Charvat, on behalf of themselves and others similarly situated v. ADT Security Services, Inc.*, Civ. Action No. 1:11-cv-1925 ("Action").

1.4.  On May 18, 2011, ADT moved to dismiss the Amended Complaint. The court denied the motion by order dated July 18, 2011.

1.5.  On August 25, 2011, ADT filed a Third Party Complaint against individuals and entities that ADT believed were connected to the calls at issue in the Amended Complaint. These individuals and entities are: Pete Tolman, Leads Direct Marketing, Voice Tel Corporation, Christopher Long, EMI, Inc., JMB Enterprises, City VIP, LLC, Direct Savings, USA, Inc., Oscar Montenegro, Eversafe Security Systems, Inc., and Safe Streets USA, LLC. ADT asserted claims for contribution, indemnification, Lanham Act violations, violations of Florida's Deceptive and Unfair Trade Practices Act (and/or the common law or other applicable state statutes), commercial disparagement, and injunctive relief.

1.6.  On October 20, 2011, ADT filed a First Amended Third Party Complaint adding Paramount Media Group and The Elephant Group, Inc. as third party defendants because

IH7549664 v3

of their connection to the calls at issue. ADT asserted claims for contribution and indemnification against them.

1.7. ADT denies all claims asserted against it in the Action, denies all allegations of wrongdoing and liability, and denies all material allegations in the Amended Complaint. ADT desires to settle the Action on the terms set forth herein solely for the purpose of avoiding the burden, expense, risk and uncertainty inherent in litigation.

1.8. This Agreement resulted from good faith, arm's length settlement negotiations over more than six months, which included three mediation sessions before Professor Eric D. Green, and follow-up negotiations through Professor Green.

1.9. Based on the negotiation described above, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of the Action, and the substantial benefits to be received pursuant to this Agreement, that a settlement with the Released Parties on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class.

1.10. The Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. This Agreement is inadmissible as evidence against any party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any party to this Agreement. It is the Parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

1.11. The settlement contemplated by this Agreement is subject to preliminary and final approval by the Court, as set forth herein. This Agreement is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof. The Parties acknowledge and agree, however, that ADT is not releasing any claims for indemnity and is expressly preserving those claims.

## ARTICLE II
## DEFINITIONS

2.1. "ADT's Authorized Dealers" means each Person that is, or was at any time since January 1, 2007, a party to an Authorized Dealer Agreement with ADT.

2.2. "ADT's Authorized Telemarketers" means each Person that is, or was at any time since January 1, 2007, a party to an agreement with ADT to provide telemarketing services of any kind for ADT.

2.3. "ADT's Marketing Partners" means each Person that is, or was at any time since January 1, 2007, a party to an agreement with ADT to provide marketing services of any kind for ADT.

2.4. "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release.

#17549664 v3

2.5. "Approved Claims" means claims that have been timely submitted and approved for payment by the Claims Administrator pursuant to the terms of this Agreement.

2.6. "Bernal Declaration" means the declaration captioned "Declaration of Daniel Bernal," and signed by Daniel Bernal on July 2, 2012.

2.7. "CAFA Notice" means the notice required by 28 U.S.C. § 1715(b).

2.8. "Claims Deadline" means one-hundred and eleven (111) days from the date of the Preliminary Approval Order, unless otherwise modified by the Court.

2.9. "Claims Administrator" means AB Data, Ltd.

2.10. "Class Counsel" or "Plaintiffs' Counsel" means The Law Office of Matthew P. McCue, Murray Murphy Moul + Basil LLP, Bailey & Glasser, LLP, Broderick Law, P.C., and Burke Law Offices, LLC.

2.11. "Class Period" means January 1, 2007 through the date of this Agreement.

2.12. "Court" means the United States District Court for the Northern District of Illinois, and the U.S. District Judge to which this case is assigned.

2.13. "Covered Calls" means either (1) a telemarketing call utilizing a pre-recorded message or (2) a telemarketing call to a cell phone that was made through the use of automated dialing equipment, where the call described in (1) and/or (2) relates in any way to ADT Security Services, Inc. Covered Calls include calls initiated or made by ADT or by someone acting or purporting to act on behalf of ADT, or calls initiated or made by someone seeking to sell products or services relating in any way to ADT, including calls made by ADT's Authorized Dealers, ADT's Authorized Telemarketers, ADT's Marketing Partners, or calls initiated or made by anyone seeking to sell leads relating to ADT, or any calls initiated or made by anyone seeking to sell leads relating to ADT to anyone else, where the lead sought to be generated from the call ultimately could have been sold to ADT, ADT's Authorized Dealers, ADT's Authorized Telemarketers, or ADT's Marketing Partners, including but not limited to any calls made or caused to be made by Christopher Long (or any entity associated with Christopher Long), Oscar Montenegro (or any entity associated with Oscar Montenegro), EMI, Inc. (also known as European Marketing International and European Media International and Nationwide Media, Inc.) (collectively "EMI") (or anyone acting by, through, or with EMI), Direct Savings USA, LLC (or anyone acting by, through, or with Direct Savings USA, LLC), Direct Savings USA, Inc. (or anyone acting by, through, or with Direct Savings USA, Inc.), Paramount Media Group (or anyone acting by, through or with Paramount Media Group), Dynamic Interactive Corp. (or anyone acting by, through or with Dynamic Interactive Corp.), Pete Tolman, Leads Direct Marketing (or anyone acting by, through, or with Leads Direct Marketing), Voice Tel Corp. (or anyone acting by, through, or with Voice Tel Corp.), TM Caller ID (or anyone acting by, through, or with TM Caller ID), City VIP (or anyone acting by, through, or with City VIP), and JMB Enterprises (or anyone acting by, through, or with JMB Enterprises). Covered Calls included any such calls whether or not authorized by, approved by, or known by ADT.

#17549664 v3

2.14. "Effective Date" means the date when the judgment has become final as provided in paragraph 13.1.

2.15. "Final Approval Hearing" means the hearing held by the Court to determine whether to finally approve the Settlement set forth in this Agreement as fair, reasonable and adequate, sometimes referred to herein as the "Fairness Hearing."

2.16. "Final Approval Order" means the Court's Order entered in connection with the Final Approval Hearing, substantially in the form attached hereto as Exhibit 1.

2.17. "Notice" means the notice of the proposed class action Settlement Agreement and the Fairness Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Agreement, and is consistent with the requirements of Due Process and Federal Rule of Civil Procedure 23, as approved by the Court.

2.18. "Notice Plan" means the proposed plan of disseminating notice to the Settlement Class Members of the proposed Settlement and the Fairness Hearing described in Paragraph 8.1 below and attached as Exhibit 2 hereto.

2.19. "Objection Deadline" means eighty-one (81) calendar days from the date of the Preliminary Approval Order, unless otherwise modified by the Court.

2.20. "Opt-Out Deadline" means eighty-one (81) calendar days from the date of the Preliminary Approval Order, unless otherwise modified by the Court.

2.21. "Person" means any individual, corporation, trust, partnership, limited liability company, or other legal entity and their respective affiliates, predecessors, successors, or assigns.

2.22. "Preliminary Approval Order" means the Court's Order entered in connection with the Preliminarily Approving Hearing, substantially in the form attached as Exhibit 3.

2.23. "Released Claims" means the claims released in Paragraph 14.1.

2.24. "Released Parties" means ADT Security Services, Inc., and all ADT Authorized Dealers, ADT Authorized Telemarketers, ADT Authorized Marketing Partners, including but not limited to Eversafe Security Systems, Inc., k/n/a Safe Streets USA LLC, Defender Security, Inc., Elephant Group LLC d/b/a Saveology LLC, Absolute Security, Inc., Absolute Security of America, LLC, Home Alert, Inc., and each and all of their respective past, present and future parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past, present and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, lead generators, marketing partners, contractors, independent contractors, or related entities, and each and all of their respective executors, successors, assigns, and legal representatives, and anyone who may be liable by, through or with them for the Released Claims.

#17549664 v3

2.25. "Settlement" means the settlement contemplated by this Settlement Agreement.

2.26. The "Settlement Class" or "Settlement Class Members" means all persons or entities who, at any time from January 1, 2007 through the date of the Settlement Agreement, received one or more Covered Calls.

2.27. "Settlement Class List" means the list of Settlement Class Members who can be identified from phone logs identified in the Bernal Declaration. Class Counsel shall prepare the Settlement Class List and provide it to the Claims Administrator.

2.28. "Settlement Costs" means all costs incurred in the litigation by the class and their attorneys, including but not limited to Plaintiffs' attorneys' fees, their costs of suit, Plaintiffs' expert or consultant fees, incentive payments paid to Desai and Charvat, notice costs, costs of claims administration, and all other costs of administering the Settlement.

2.29. "Settlement Fund" means the funds to be paid by ADT to an interest-bearing escrow account managed by the Claims Administrator pursuant to paragraphs 4.4 and 4.5 below. ADT shall select the depository institution for the Settlement Fund, subject to Plaintiffs' Counsel's approval, which shall not be unreasonably withheld. Interest in the Settlement Fund will accrue for the benefit of the Settlement Fund.

2.30. "Settlement Notice for Direct Mailing" means the notice of settlement which shall be sent to Settlement Class Members on the Settlement Class List on the form attached hereto as Exhibit 4 or as otherwise approved by this Court.

2.31. "Settlement Notice for Publication Notice" means the notice of settlement which shall be made through publication notice in the form attached hereto as Exhibit 5, or as otherwise approved by this Court.

2.32. "Settlement Notice Date" means the date the Settlement Notices are required by the Court to be sent pursuant to the Notice Plan.

2.33. "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

2.34. "TSR" means the FTC Rule entitled "Telemarketing Sales Rule," 16 C.F.R. § 310.

2.35. Unless otherwise indicated, all references to "days" are meant to mean "calendar days."

## ARTICLE III
## TERMS OF SETTLEMENT

3.1. Conditional Certification of Settlement Class. ADT disputes that a litigation class would be manageable and further denies that a litigation class properly could be certified pursuant to Fed. R. Civ. P. 23 on the claims asserted in the Action. However, solely for purposes

of avoiding the expense and inconvenience of further litigation, ADT does not oppose the certification for *settlement purposes only* of the Settlement Class, per Fed. R. Civ. P. 23(b)(3), as defined above in Paragraph 2.26 above. Preliminary certification of the Settlement Class shall not be deemed a concession that certification of a litigation class is appropriate, nor would ADT be precluded from challenging class certification in further proceedings in the Action, or in any other action, if the Settlement is not finalized or finally approved. If the Settlement is not finally approved by the Court for any reason whatsoever, the certification of the Settlement Class will be void, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in the Action or elsewhere. No agreements made by or entered into by ADT in connection with the Settlement may be used by Plaintiffs, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or any other judicial proceeding.

      3.2. <u>Class Representative And Class Counsel Appointment</u>. For settlement purposes, and subject to Court approval, Vishva Desai and Philip Charvat are appointed as the class representatives for the Settlement Class and the following law firms are appointed Class Counsel for the Settlement Class as follows: The Law Office of Matthew P. McCue, Murray Murphy Moul & Basil LLP, Bailey & Glasser, LLP, Broderick Law, P.C., and Burke Law Offices, LLC.

**ARTICLE IV**
**SETTLEMENT CLASS BENEFITS**

      4.1. <u>Settlement Amount</u>. ADT shall pay, on behalf of itself and the Released Parties, $15,000,000 in total and complete satisfaction of all obligations under this Agreement, to include payment for Approved Claims and Settlement Costs, and any other obligations under this Agreement. Under no circumstances shall ADT have any further payment obligations under the Settlement Agreement to Plaintiffs, any Settlement Class Member, Class Counsel or anyone else.

      4.2. <u>Distributions</u>. Subject to the claims process set forth in Article IX, each Settlement Class Member is entitled to make only one claim regardless of the number of calls s/he received and will under no circumstances be paid more than the statutory limit of $500 in cash, dependent upon the number of Approved Claims. If the number of Approved Claims (at the maximum payment of $500 per Approved Claim) plus Settlement Costs would be less than or equal to $15,000,000, the amount paid per claim will be $500 per Approved Claim. If the Settlement Costs plus Approved Claims at the rate of $500 per Approved Claim would exceed $15,000,000, the amount paid per Approved Claim shall be as follows: the difference between $15,000,000 and the Settlement Costs, divided among the approved claimants on a *pro rata* basis.

      4.3. <u>Cy Pres</u>. If the sum of the Approved Claims and Settlement Costs is less than $15,000,000, the difference between $15,000,000 and the sum of the Approved Claims and Settlement Costs shall be paid to a *cy pres* recipient. Subject to Court approval, the *cy pres* recipient shall be the Electronic Privacy Information Center ("EPIC"). If the Court does not approve EPIC as the *cy pres* recipient or if the proposed recipient is no longer in existence, ADT shall propose replacement recipient(s) of such monies (subject to Class Counsel's approval),

-6-

which must be non-profit charitable organization(s) with the mission of promoting consumer privacy rights, subject to Court approval.

    4.4. <u>Initial Payment</u>. Within ten (10) business days of the entry of the Preliminary Approval Order, ADT will make payment of $4 million to the Settlement Fund from which the costs of Notice may be drawn subject to Article VII. In the event that the Effective Date does not occur, any remaining funds from the initial $4 million payment by ADT will be returned to ADT, along with accrued interest. Such remaining funds are any monies that have not been paid, or which have been incurred (but not paid), for Notice or claims administration services. In the event that the costs of Notice exceed $4 million, ADT will promptly advance any additional amounts necessary to the Settlement Fund for use by the Claims Administrator, subject to Paragraph 4.1 that any such additional payments are part of, and not in addition to, the total amount ADT is obligated to pay under this Agreement.

    4.5. <u>Final Payment</u>. Within fifteen (15) business days of the Effective Date, ADT shall pay the remaining $11 million to the Settlement Fund, or such lesser amount (as contemplated in Paragraph 4.4) necessary to satisfy ADT's total obligation set forth in Paragraph 4.1

    4.6. <u>Additional Consideration</u>. As an additional benefit to all Settlement Class Members, for a period of at least two years from the Effective Date, ADT will continue in place its policy of not making telemarketing calls promoting ADT services using pre-recorded messages. Additionally, ADT shall, for a period of at least two years from the Effective Date, include in all new contracts with ADT's Authorized Marketers a provision, and amend its telemarketing guidelines for all of ADT's Authorized Dealers, to prohibit Authorized Marketers and Authorized Dealers from making telemarketing calls promoting ADT's services using pre-recorded messages or purchasing leads that were generated through telemarketing using pre-recorded messages. These restrictions on use of pre-recorded messages described in this Paragraph will include any call using an artificial or prerecorded voice to deliver a message with or without consent, that is made for the purpose of marketing ADT services. The restrictions do not apply to calls (i) made for non-solicitation purposes, including, but not limited to, calls for appointment scheduling and confirmation, calls regarding service issues or advisories, calls regarding account payment and administration, customer satisfaction survey calls, and calls associated with provision of monitoring services or (ii) made by an Authorized Marketer or Authorized Dealer to market products and services that do not relate to ADT. The prohibition also does not apply to any pre-recorded messages made to comply with the Telemarketing Sales Rule's and Telephone Consumer Protection Act's call abandonment rules. The Settlement Class agrees that ADT's obligation is limited to including the prohibition in its agreements, and ADT shall not be liable under this Settlement Agreement should any Authorized Dealer or Authorized Marketer make any such calls in violation of its agreement with ADT, and ADT expressly denies that it is responsible for any conduct of its Authorized Dealers or Authorized Marketers.

## ARTICLE V
## ATTORNEYS' FEES, COSTS AND PAYMENT TO NAMED PLAINTIFFS

5.1. Attorney Fees. Class Counsel may move the Court for an award of attorneys' fees and expenses to be paid from the Settlement Fund. ADT will not object to any request by Class Counsel for attorneys' fees totaling $5,000,000 or less (i.e., up to one-third of the maximum Settlement Fund), plus their costs and expenses. The amount of attorneys' fees and costs approved by the Court shall be paid from the Settlement Fund, and not in addition thereto. Within seven days after the Effective Date, the Claims Administrator shall pay to Class Counsel from the Settlement Fund the amount of attorneys' fees, costs, and expenses awarded to Class Counsel by the Court, as directed by written instructions from Class Counsel.

5.2. Payment to Named Plaintiffs. Plaintiffs may also move the Court seeking incentive payments for the time and effort they have personally invested in this Action. ADT shall not object to such incentive payments to Desai and Charvat paid from the Settlement Fund that do not exceed $30,000 per each Plaintiff, subject to Court approval. Within seven days after the Effective Date, the Claims Administrator shall pay from the Settlement Fund to Plaintiffs' Counsel the amount of incentive payments awarded by the Court, and Plaintiffs' Counsel shall disburse such funds to Plaintiffs.

5.3. Effect of Lesser Award. If the Court makes a lower award of attorneys' fees, costs, and expenses than what Class Counsel requested, or if the Court makes a lower award of incentive payments than what Class Counsel requested, this Settlement Agreement will be otherwise in full force and effect and binding on the Settlement Class Members; provided, however that, pursuant to Paragraph 13.1 below, the Effective Date will not occur until any potential appeal is resolved.

## ARTICLE VI
## PRELIMINARY APPROVAL

6.1. Order Of Preliminary Approval. As soon as practicable after the execution of this Agreement, Plaintiffs shall move the Court for the entry of the Preliminary Approval Order in the form attached as Exhibit 3. Class Counsel shall be responsible for filing the preliminary approval motion and supporting papers. Pursuant to the motion for preliminary approval, and as set forth in more detail in Exhibit 3, the Plaintiffs will request that:

(a) the Court conditionally certify the Settlement Class for settlement purposes only and appoint Class Counsel as counsel for the Settlement Class for settlement purposes only;

(b) the Court preliminarily approve the Settlement and this Agreement as fair, adequate and reasonable, and within the reasonable range of possible final approval;

(c) the Court approve the form of Settlement Notice and find that the Notice Plan set forth herein constitutes the best notice practicable under the circumstances, and satisfies Due Process and Federal Rule of Civil Procedure 23;

#17549664 v3

(d)     the Court set the date and time for the Final Approval Hearing, which may be continued by the Court from time to time without the necessity of further notice; and

(e)     the Court set the Claims Deadline, the Objection Deadline and the Opt-Out Deadline.

6.2.  Memorandum of Law May be Filed by ADT.  ADT shall have the right, but not the obligation, to file its own Memorandum of Law concerning preliminary approval for the purpose of emphasizing to the Court the importance of carefully considering and reviewing the Notice Plan during the preliminary approval process, in light of the significant costs of providing notice to the class.

## ARTICLE VII
## ADMINISTRATION AND NOTIFICATION PROCESS

7.1.  Third-Party Claims Administrator.  The Claims Administrator, whom Class Counsel chose, shall be responsible for all matters relating to the administration of this Settlement, as set forth herein.  Those responsibilities include, but are not limited to, giving notice, obtaining follow-up addresses for returned mail, setting up and maintaining the settlement website and toll-free telephone number, fielding inquiries about the settlement, processing of claims, acting as a liaison between claimants and the Parties regarding claims information, rejecting a claim form where it is invalid, incomplete, or there is evidence of fraud, directing the mailing of settlement payments to claimants, and any other tasks reasonably required to effectuate the foregoing.  The Claims Administrator shall be permitted to communicate freely and without any restriction with counsel for ADT and Class Counsel, and will provide monthly updates on the claims status to counsel for all Parties.

7.2.  Payment of Notice and Claims Administration.  All costs of settlement administration will be drawn from the Settlement Fund by the Claims Administrator, subject to the written approval of ADT.  The Claims Administrator has provided an estimated cost of $4,000,000 to effectuate notice, establish the settlement website, establish a toll-free telephone number, and all other costs prior to the Effective Date.  Regardless of the actual costs of Notice, ADT's payment obligation is limited to that which is set forth in Paragraph 4.1.

## ARTICLE VIII
## NOTICES

8.1.  Notice Plan:  Subject to Court approval, and a specific determination by the Court in the Preliminary Approval Order that the Notice Plan comports with Due Process and is the best notice practicable under the circumstances, the Claims Administrator will effectuate Notice in the manner set forth in Exhibit 2.  In the event that the Court does not approve the Notice Plan, the Agreement will terminate pursuant to Paragraph 15.1.

8.2.  CAFA Notice.  The Claims Administrator shall prepare and serve the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 within ten (10) calendar

days of the filing of the preliminary approval motion. The costs associated with the CAFA Notice shall be deducted from the Settlement Fund.

## ARTICLE IX
## CLAIMS PROCESS

9.1. <u>One Claim per Claimant</u>. Each Settlement Class Member who has not opted-out of the Settlement is entitled to make a claim. Each such Settlement Class Member shall be entitled to make only one claim, regardless of the number of calls that were made to the Settlement Class Member's cell phone number(s) or residential phone number(s).

9.2. <u>Claim Form</u>. In order to make a claim, a Settlement Class Member must (a) submit the completed claim form sent to him or her, in the form attached as Exhibit 6 if the Settlement Class Member is on the Settlement Class List or as Exhibit 7 if the Settlement Class Member is not on the Settlement Class List, which may be downloaded from the Settlement website created by the Claims Administrator, by first class U.S. mail or any commercial carrier (e.g., UPS and Federal Express), or (b) submit via the Settlement website an online claim form in substantially the same form as that attached as Exhibit 7. All mailed claims must be post-marked by the Claims Deadline as set forth in the Settlement Notice; all online claim forms shall be submitted by the Claims Deadline. Any claim form postmarked or submitted online after the Claims Deadline shall be deemed untimely, and an invalid claim.

## ARTICLE X
## CLAIM REVIEW PROCESS

10.1. <u>Review of Claim</u>: Each Settlement Class Member who does not exclude himself or herself from the Settlement Class and who makes a timely claim shall have his or her claim reviewed by the Claims Administrator. The Claims Administrator will ensure that no more than one claim form is filed for each Settlement Class Member and phone number. If the Settlement Class Member provides all the information required by the claim form, and the claim form is signed under oath, the claim will be approved. The Claims Administrator shall review the claims and advise the Parties, at a minimum, on a monthly basis of the claims that are approved and denied. If either party wants to contest the denial or approval of any claims, they shall meet and confer, and if they are unable to resolve a dispute regarding the administration of a claim, they shall seek assistance of the Court to resolve the issues at the earliest possible date, and to attempt to have a resolution before any fairness hearing. However, if those issues are unresolved at the time of the Fairness Hearing, that will not prevent the Fairness Hearing from going forward, with the issues to be resolved at a later date but within sixty (60) days of the entry of any order regarding the Fairness Hearing, including any order for final approval of the Settlement.

10.2. <u>Mailing of Settlement Check</u>. The settlement checks shall be sent by the Claims Administrator via U.S. mail no later than sixty (60) days after the Effective Date. If any settlement checks are returned, the Claims Administrator shall verify the mailing address using the efforts described in the Notice Plan. If, after a second mailing, the settlement check is again returned, no further efforts need be taken by the Claims Administrator to mail the check again. The Claims Administrator shall advise Class Counsel and ADT's counsel of the names of the

-10-

claimants whose checks are returned by the postal service as soon as practicable. Each settlement check will be negotiable for a maximum of one hundred and eighty (180) days after it is mailed. Any returned checks and un-cashed settlement checks shall be paid as part of the *cy pres* award.

10.3. *Cy Pres*: If a *cy pres* is necessary under the terms of this Settlement Agreement, the Claims Administrator shall pay the amount of the *cy pres* to those *cy pres* recipients within two hundred and ten (210) days after the claims payment process described in this Article X is completed.

## ARTICLE XI
## OPT-OUTS AND OBJECTIONS

11.1. Opting Out of the Settlement. Any Settlement Class Members who wish to exclude themselves from the Settlement Class ("opt out") must advise the Claims Administrator in writing of that intent postmarked no later than the Opt-Out Deadline. The Claims Administrator shall provide the Parties with copies of all completed Settlement opt-out requests, and Plaintiffs shall file a list of all who have opted out with the Court no later than ten (10) calendar days prior to the Fairness Hearing. Except for those persons who have properly and timely submitted a Settlement opt-out request, all Settlement Class Members will be bound by this Agreement and the judgment, including the release in Paragraph 14.1 below. If more than the number of calls to Class Members set forth in the Tip-Over Agreement are subject to opt-out of the Settlement Class, then ADT may void the Settlement and proceed with the litigation, as provided in Paragraphs 15.1 and 15.2 below.

    (a)    In the written request for exclusion, the Settlement Class Member must state his or her full name, address, telephone numbers that s/he maintains are Covered Calls, whether each telephone number is a cellular phone or a residential landline, and the number of calls that s/he claims to have received. Further, the Settlement Class Member must include a statement in the written request for exclusion that he or she wishes to be excluded from the Settlement.

    (b)    Any Settlement Class Member who submits a valid and timely request for exclusion shall not be bound by the terms of this Agreement.

11.2. Objections. Any Settlement Class Member who intends to object to the fairness of this Settlement must file a written objection with the Court with a copy to Class Counsel and Counsel for ADT by the Objection Deadline.

    (a)    In the written objection, the Settlement Class Member must state his or her full name, address, telephone numbers that s/he maintains are Covered Calls, and whether each telephone number is a cellular phone or a residential landline, the reasons for his or her objection, and whether he or she intends to appear at the Fairness Hearing on his or her own behalf or through counsel. Any documents supporting the objection must also be attached to the objection.

    (b)    Any Settlement Class Member who objects, as described herein, may appear at the Fairness Hearing, either in person or through an attorney hired at the

-11-

Settlement Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the Settlement. A Settlement Class Member or his or her attorney intending to make an appearance at the Fairness Hearing must: (a) file a notice of appearance with the Court no later than ten (10) calendar days prior to the Fairness Hearing, or as the Court may otherwise direct; and (b) serve a copy of such notice of appearance on counsel for all Parties. Any Settlement Class Member who fails to comply with the provisions of this Paragraph 11.2 shall waive and forfeit any and all rights to appear separately and/or to object, and shall be bound by all the terms of this Settlement Agreement and the Settlement, and by all proceedings, orders, and judgments in the Action.

## ARTICLE XII
## FINAL APPROVAL AND JUDGMENT ORDER

12.1. <u>Declaration of Notice</u>. No later than fourteen (14) calendar days prior to the Final Approval Hearing, the Claims Administrator shall file with the Court and serve on counsel for all Parties a declaration stating that the Notice required by the Agreement has been completed in accordance with the terms of the Preliminary Approval Order.

12.2. <u>Motion for Final Approval</u>. If the Settlement is approved preliminarily by the Court, and all other conditions precedent to the Settlement have been satisfied, at least fourteen (14) calendar days prior to Final Approval Hearing:

(a)     The Parties shall jointly request that the Court enter a Final Order of Judgment and Dismissal ("Final Approval Order") in substantially the form attached as Exhibit 1 with Class Counsel preparing and filing the joint motion for final approval of the Settlement, a memorandum of law in support of the motion, and any other necessary papers, all of which are subject to ADT's approval; and

(b)     Class Counsel shall file a memorandum addressing any timely submitted objections to the Settlement, and Counsel for ADT may, but is not required to, file an additional memorandum in response.

12.3. <u>Final Approval Hearing</u>. At the Final Approval Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable, and adequate, whether any objections to the Settlement should be overruled, whether the award of attorneys' fees, costs, and expenses and class representative award should be approved, and whether a judgment finally approving the Settlement should be entered.

12.4. <u>Final Approval Order</u>. This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order which grants final approval of this Agreement and:

(a)     Finds that the Settlement Notice provided in this action satisfies the requirements of Due Process and Fed. R. Civ. P. 23(e);

(b)     Finds that the Settlement Class Members have been adequately represented by the named Plaintiffs and Class Counsel.

        (c)     Finds that the Settlement Agreement is fair, reasonable and adequate to the Settlement Class, that each member of the Settlement Class (except those who submit a timely and valid request for exclusion) shall be bound by this Settlement Agreement, including the release and covenant not to sue in Paragraphs 14.1 and 14.2, and that this Settlement Agreement should be and is approved;

        (d)     Dismisses on the merits and with prejudice all claims of the Settlement Class Members asserted in the Action against ADT;

        (e)     Permanently enjoins each and every Settlement Class Member (excluding those who submit a timely and valid request for exclusion) from bringing, joining, or continuing to prosecute against anyone any action involving the Released Claims; and

        (f)     Retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Settlement.

## ARTICLE XIII
## FINAL JUDGMENT

    13.1.  The judgment entered at the Final Approval Hearing shall be deemed final:

        (a)     Thirty (30) days after entry of the Final Approval Order approving the Settlement if no document is filed within that time seeking appeal, review, or rehearing of the Judgment; or

        (b)     If any such document seeking appeal, review, or rehearing is filed, then fourteen (14) days after the date upon which all appellate and/or other proceedings resulting from such document have been finally terminated in such a manner as to permit the Judgment to take effect in substantially the form described in Paragraph 12.4.

## ARTICLE XIV
## RELEASE OF CLAIMS

    14.1.  <u>Released Claims</u>. Plaintiffs and each Settlement Class Member, their respective affiliates, assigns, heirs, executors, administrators, successors and agents hereby release, resolve, relinquish and discharge each and all of the Released Parties from each of the Released Claims (as defined below). The Settlement Class Members further agree that they will not institute any action or cause of action (in law, in equity or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have in state or federal court, or with or through any state, federal or local government agency or with any administrative or advisory body, arising from or reasonably attributable to the Released Claims. The release does not apply to Settlement Class Members who timely opt-out of the Settlement.

        (a)     "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation,

-13-

any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory as of the date of the Final Approval Order that arise out of or relate in any way to (1) the Covered Calls or (2) any other telephone call, facsimile, e-mail, text message, or other communication received at any time prior to the date of this Settlement Agreement, or the use of an "automatic telephone dialing system" or an "artificial or prerecorded voice" (to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, relevant regulatory or administrative promulgations and case law) by any of the Released Parties, or anyone acting on their behalf or purporting to act on their behalf, for any purpose whatsoever; such released claims to include, but not be limited to, claims under or for a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* or the Telemarketing Sales Rule, and any other statutory or common law claim arising from the use of automatic telephone dialing systems and/or an artificial or prerecorded voice, including, but not limited to, any claim under any federal or state unfair and deceptive practices statutes, invasion of privacy, and/or conversion.

Without limiting the foregoing, the Released Claims specifically extend to claims that Settlement Class Members do not know or suspect to exist in their favor at the time of the Settlement, and the releases contained therein, becomes effective. This Paragraph constitutes a waiver of, without limitation as to any other applicable law, section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs and the Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases. In connection with such waivers and relinquishment, Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts that they now know or believe to be true with respect to the subject matter of the Settlement, but that it is their intention to release fully, finally and forever all Released Claims with respect to the Released Parties, and in furtherance of such intention, the releases of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

14.2. <u>Covenant Not To Sue</u>. Plaintiffs agree and covenant, and each Settlement Class Member will be deemed to have agreed and covenanted, not to sue anyone with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.

-14-

## ARTICLE XV
## TERMINATION OF AGREEMENT

15.1. Right to Terminate. ADT, by its counsel, shall have, in its sole and absolute discretion, the right to unilaterally terminate this Agreement by providing written notice of its election to do so ("Termination Notice") to Class Counsel within fourteen (14) calendar days of any of the following occurrences:

        (a)     the Court rejects, or materially modifies, amends or changes, or declines to preliminarily or finally approve the Settlement Agreement;

        (b)     an appellate court reverses the Final Approval Order;

        (c)     any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement Agreement in a manner ADT reasonably believes to be material;

        (d)     the Effective Date does not occur;

        (e)     more than the number of calls to Settlement Class Members set forth in the Tip-Over Agreement opt out of the Settlement;

        (f)     there has been a material change in the law which makes the terms of the Settlement Agreement impossible; or

        (g)     any other ground for termination provided for elsewhere in this Agreement.

15.2. Effect of Termination. If ADT terminates this Agreement as provided herein, the Agreement shall be of no force and effect and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if this Agreement had never been executed, and any Orders entered by the Court in connection with this Agreement shall be vacated.

## ARTICLE XVI
## NO ADMISSION OF LIABILITY

16.1. Denial of Liability. ADT denies any liability or wrongdoing of any kind associated with the claims alleged in the Amended Complaint. ADT has denied and continues to deny each and every material factual allegation and alleged claim asserted in the Action. Nothing herein shall constitute an admission by ADT of wrongdoing or liability or of the truth of any factual allegations in the Action. Nothing herein shall constitute an admission by ADT that the Action is properly brought on a class or representative basis other than for settlement purposes. To this end, the settlement of the Action, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement: (i) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of ADT or of the truth of any of the factual allegations in the Action; (ii) are not, shall not be deemed to be, and may not be used as, an

-15-

admission or evidence of any fault or omission on the part of ADT in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; and (iii) are not, shall not be deemed to be and may not be used as, an admission of the appropriateness of these or similar claims for class certification. Nonetheless, ADT has concluded that further litigation would be protracted and expensive, and would also divert management and employee time. ADT has taken into account the uncertainty and risks inherent in litigation. ADT has therefore concluded that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement.

16.2. <u>Non-Admissibility.</u> Pursuant to Federal Rule of Evidence 408, this Agreement and any related documents filed or created in connection with it shall be inadmissible in evidence in any proceeding, except as necessary to approve, interpret or enforce this Agreement.

**ARTICLE XVII**
**FUTURE CHANGES IN LAW OR REGULATIONS**

17.1. To the extent Congress, the Federal Communications Commission, the Federal Trade Commission, the Consumer Financial Protection Bureau, or any other relevant regulatory authority promulgates any law or regulation that would govern ADT's actions as described in Paragraph 4.6 of this Settlement, or promulgates different requirements under the TCPA, those laws and regulatory provisions shall control the conduct of ADT rather than this Settlement Agreement.

**ARTICLE XVIII**
**MISCELLANEOUS**

18.1. <u>Entire Agreement.</u> This Agreement and the exhibits hereto constitute the entire agreement between the Parties. No representations, warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Agreement.

18.2. <u>Governing Law.</u> This Agreement shall be governed by the laws of the State of Delaware.

18.3. <u>Jurisdiction.</u> The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including the Plaintiffs and all Settlement Class Members, and over the administration and enforcement of this Agreement.

18.4. <u>No Construction Against Drafter.</u> This Agreement shall be deemed to have been drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any party because such provision, or this Agreement as a whole, was purportedly prepared or requested by such Party.

18.5. <u>Headings.</u> The headings set forth in this Settlement Agreement are for purposes of convenience only and are not a part of the agreement between the Parties.

-16-

#17549664 v3

18.6.  Resolution of Disputes.  The Parties shall cooperate in good faith in the administration of this Settlement.  Any unresolved dispute regarding the interpretation or enforcement of this Agreement shall be decided by the Court, unless otherwise agreed to by the Parties in writing.

18.7.  Counterparts.  This Agreement may be signed in counterparts and the separate signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

18.8.  Authority.  Each person executing this Settlement Agreement on behalf of any of the Parties hereto represents that such person has the authority to so execute this Agreement.

18.9.  No Oral Modifications.  This Agreement may not be amended, modified, altered or otherwise changed in any manner except by a writing signed by a duly authorized agent of ADT and Class Counsel, and approved by the Court.

18.10.  Press Releases.  The Parties and their counsel agree they will not issue any press releases concerning this Settlement Agreement or the resolution of the Action.

18.11.  Notices.  Unless otherwise stated herein, any notice required or provided for under this Agreement shall be in writing and shall be sent by electronic mail, fax or hand delivery, postage prepaid, as follows:

#17549664 v3

If to Class Counsel:
Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH 43204
(614) 488-0400

If to Counsel for ADT Security Services, Inc.:

Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
baughmanm@pepperlaw.com

IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed on the dates indicated below each signature line.

_____
Vishva Desai, Plaintiff and
Class Representative

Dated: **February 1**, 2013


_____
Philip J. Charvat, Plaintiff and
Class Representative

Dated: _____, 2013

_____
Defendant ADT Security Services, Inc.
Authorized Representative

[Name] **R. David Bleisch**

Dated: **January 30**, 2013

-18-

#15443041 v3

If to Class Counsel:
Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH 43204
(614) 488-0400


If to Counsel for ADT Security Services, Inc.:

Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
baughmanm@pepperlaw.com


IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed on the dates indicated below each signature line.

Vishva Desai, Plaintiff and (AUB R-A)
Class Representative

Dated: Jan 30, 2013


Philip J. Charvat, Plaintiff and
Class Representative

Dated: _____, 2013


Defendant ADT Security Services, Inc.
Authorized Representative

[Name] N. David Bleisch

Dated: January 30, 2013

-18-

#17549664 v3

If to Class Counsel:
Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH  43204
(614) 488-0400


If to Counsel for ADT Security Services, Inc.:

Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA19103
Telephone: (215) 981-4000
baughmanm@pepperlaw.com


        IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed on the dates indicated below each signature line.


_____

Vishva Desai, Plaintiff and
Class Representative

Dated: _____, 2013


_____

Philip J. Charvat, Plaintiff and
Class Representative

Dated: _____, 2013


_____

Defendant ADT Security Services, Inc.
Authorized Representative

[Name] N. David Bleisch

Dated: January 30, 2013

**APPROVED AS TO FORM:**

_(signature)_

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
340 Union Avenue
Framingham, MA 01790

Dated: _January 30_, 2013

John W. Barrett, Esq.
Jonathan Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301

Dated: _____, 2013

Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH 43204
(614) 488-0400

Dated: _____, 2013

Edward A. Broderick, Esq.
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110

Dated: _____, 2013

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave. Suite 9020
Chicago, IL 60601

Dated: _____, 2013

**Counsel for Plaintiffs and the Settlement Class**

_(signature)_

Robert L. Hickok
Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

Dated: _January 30_, 2013

**Counsel for Defendant ADT**

-19-

#17549664 v3

**APPROVED AS TO FORM:**

_____
Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
340 Union Avenue
Framingham, MA 01790

Dated: _____, 2013


_____
Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH 43204
(614) 488-0400

Dated: _____, 2013


_____
Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave. Suite 9020
Chicago, IL 60601

Dated: _____, 2013

**Counsel for Plaintiffs and the Settlement Class**

_____
Robert L. Hickok
Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

Dated: January 30, 2013

**Counsel for Defendant ADT**


_____
John W. Barrett, Esq.
Jonathan Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301

Dated: 1/30, 2013


_____
Edward A. Broderick, Esq.
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110

Dated: _____, 2013

-19-

#17549664 v3

**APPROVED AS TO FORM:**

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
340 Union Avenue
Framingham, MA 01790

Dated: _____, 2013

Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH 43204
(614) 488-0400

Dated: January 30th, 2013

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave. Suite 9020
Chicago, IL 60601

Dated: _____, 2013

**Counsel for Plaintiffs and the Settlement Class**

Robert L. Hickok
Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

Dated: January 30, 2013

**Counsel for Defendant ADT**

John W. Barrett, Esq.
Jonathan Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301

Dated: _____, 2013

Edward A. Broderick, Esq.
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110

Dated: _____, 2013

#17549664 v3

APPROVED AS TO FORM:

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
340 Union Avenue
Framingham, MA 01790

Dated: _____, 2013

John W. Barrett, Esq.
Jonathan Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301

Dated: _____, 2013

_Edward A. Broderick_

Edward A. Broderick, Esq.
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110

Dated: _January 30_, 2013

Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH 43204
(614) 488-0400

Dated: _____ (2013)

_Alexander H. Burke_

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave. Suite 9020
Chicago, IL 60601

Dated: _Jan 30_, 2013

Counsel for Plaintiffs and the Settlement
Class

_Robert L. Hickok_

Robert L. Hickok
Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

Dated: _January 30_, 2013

Counsel for Defendant ADT

-19-

#17549664 v3