**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARK FITZHENRY, on behalf of himself and others similarly situated, Plaintiff, | ) ) ) Case No. 1:13-cv-9709 |
| v. | ) ) Judge Tharp |
| THE ADT CORPORATION (f/k/a ADT Security Services, Inc.) and SECURITY SOLUTIONS INC. | ) Magistrate Judge Finnegan ) ) JURY DEMANDED ) |
| Defendants. | ) |

### Plaintiff's Motion to Designate Cases as Related and Reassign

Plaintiff respectfully requests that, pursuant to Local Rule 40.4, this Court designate *Fitzhenry v. The ADT Corporation,* No.1:13-cv-9709 (Tharp., J.) ("*ADT II*"), as related to *Desai v. ADT Security Services*, LLC, No. 1:11-cv-01925 ("*ADT I*") (Bucklo, J.), and reassign *ADT II* to the Hon. Elaine E. Bucklo and Hon. Arlander Keys, because the two cases involve the same issues of fact and law, as well as the same principal defendant.

In support, Plaintiff states:

1.       This is a Telephone Consumer Protection Act, 47 U.S.C. §227(b) class action, which alleges improper automated telemarketing calls made by or on behalf of ADT Security Solutions, Inc. ("ADT II"). There is a similar action pending before Judge Bucklo, *Desai v. ADT Security Services*, LLC, No. 1:11-cv-01925 ("ADT I"), which also alleges improper telemarketing calls made by or on behalf of ADT. Judge Bucklo has presided over *ADT I* since March 21, 2011—more than three and a half years.

2.       *ADT I* was a hotly-contested case involving more than 90 subpoenas and multiple discovery-related motions and orders. It centered on the resolution of a question of first impression in this district, namely, ADT's vicarious liability for alleged illegal telemarketing

1

conducted by its dealers. (Ex. 1, *ADT I* Complaint.) The case required considerable judicial

oversight by both Judge Bucklo and Magistrate Judge Keys.

3.    After almost two years of litigation, the named plaintiffs and three of the

defendants presented for preliminary approval a $15 million nationwide class-action settlement.

After an extensive mail and publication notice campaign overseen by the Court, Judge Bucklo

granted final settlement approval on June 21, 2013. In addition, as part of the settlement

agreement, ADT agreed to implement remedial measures to ensure that illegal telemarketing

conducted by its dealers was brought to an end.  Unfortunately, that has not happened, or was

ineffective.

4.    Despite the class settlement, ADT I remains pending because ADT continues to

pursue indemnification claims against several third-party defendants who elected not to

participate in the class-action settlement. (ECF No. 248.)

5.    *ADT II* was filed on December 5, 2013. The complaint alleges the same claims as

*ADT I*—telemarketing by ADT dealers in violation of Sections 227(b) of the TCPA.  (Ex. 2, *ADT*

*II* Complaint.)

6.    A motion for reassignment should be granted pursuant to Local Rule 40.4 if the

moving party shows that "case at issue is related to an earlier filed case." *See* L.R. 40.4(a). Two

cases are related if: (1) the cases involve the same property; (2) the cases involve some of the

same issues of fact or law; *or* (3) the cases grow out of the same transaction or occurrence. L.R.

40.4(a)." *Helferich Patent Licensing, LLC v. New York Times Co.*, No. 1:10-cv-04387, 2012 WL

1368193, *1-2 (April 19, 2012 N.D. Ill.) (emphasis added).

7.    *ADT II* involves much more than "some" of the same factual and legal issues as

*ADT I.* The legal issues in the two cases are identical, and focus on ADT's vicarious liability for

its dealers' TCPA violations. The factual issues also are the same, as both cases involve alleged illegal telemarketing by ADT dealers. ADT is the sole named defendant in both cases (although ADT joined third-party defendants in *ADT I*.) Further, the two cases involve the same series of transactions and occurrences. Despite the class settlement, ADT continues to accept business generated by its authorized dealers through illegal telemarketing. This is the same conduct, and the same law, that were involved in ADT I.

8.      Additionally, reassignment is proper where the moving party can show that: "(1) both cases are pending in the same Court; (2) the administration of both cases by the same judge is likely to result in substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later-filed case would be likely to substantially delay the proceedings in the earlier case; and (4) the cases are susceptible of disposition in a single proceeding." *Id.* *2.

9.      Consideration of these factors also supports reassignment. First, both *ADT I* and *ADT II* are pending in the Northern District of Illinois. Second, through close oversight of *ADT I* through all phases of the case, Judge Bucklo has considerable experience with the legal and factual issues that will be identical in ADT II. Familiarity with those facts and circumstances would need to be replicated by Judge Tharp if *ADT II* is not reassigned.

10.      Similarly, Magistrate Judge Keys was intimately involved with key first-party discovery issues and made several nuanced discovery rulings in ADT I. The discovery in ADT II will be identical to that which plaintiffs sought in ADT I. Judge Keys' familiarity with the issues, parties and discovery materials will substantially advance ADT II. There should be no reason to duplicate and relitigate the discovery disputes that arose in ADT I. Designating ADT II as related

to ADT I will obviate any need to do so, and will therefore promote judicial economy and resources.

      11.    Reassigning *ADT II* would not delay resolution of *ADT I* in any way. And there is no barrier to resolution of the two cases before Judge Bucklo.

      12.    This analysis, and transfer, is consistent with the principles behind Local Rule 40.4(a), as "the reassignment mechanism is primarily concerned with judicial efficiency. . . . We are convinced based on our own examination of the two cases, combined with the information the parties have supplied, that the cases are fundamentally similar, and the motion to reassign... is therefore granted"). See *Global Patent Holdings, LLC v. Green Bay Packers, Inc.,* 2008 WL 1848142 at *4 (N.D. Ill. 2008).

      WHEREFORE, plaintiff respectfully requests that, pursuant to Rule 40.4 of the Local Rules, this Court designate *Fitzhenry v. The ADT Corporation,* No.1:13-cv-9709 (Tharp., J.) ("*ADT II*"), as related to *Desai v. ADT Security Services*, LLC, No. 1:11-cv-01925 ("*ADT I*") (Bucklo, J.), and reassign ADT II to the Hon. Elaine E. Bucklo and Hon. Arlander Keys.

PLAINTIFF,
MARK FITZHENRY
By his attorneys,

/s/ Alexander E. Burke

Alexander E. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 facsimile
ABurke@BurkeLawLLC.com

John W. Barrett*, pro hac vice expected*
Jonathan Marshall*, pro hac vice expected*
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 facsimile
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
*Subject to Pro Hac Vice Admission*

Brian K. Murphy, *pro hac vice expected*
Joseph F. Murray, *pro hac vice expected*
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH  43204
(614) 488-0400
(614) 488-0401  facsimile
murphy@mmmb.com

Matthew P. McCue, *pro hac vice expected*
The Law Office of Matthew P. McCue
1 South Ave, Third Floor
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice Admission*

Edward A. Broderick, *pro hac vice expected*
Anthony Paronich, *pro hac vice expected*
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice Admission*

5

# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT, on behalf of themselves and others similarly situated, | Case No. 1:11-cv-1925 |
| Plaintiffs, | Judge Bucklo |
| vs. | Magistrate Judge Keys |
| ADT SECURITY SERVICES, INC.. Defendant. | JURY DEMANDED |

## AMENDED CLASS ACTION COMPLAINT

In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." 47 U.S.C. §227, Congressional Statement of Findings #5. Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls, finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

47 U.S.C. §227, Congressional Statement of Findings ##10 and 12. Telemarketing via pre-recorded phone message is similarly prohibited by the Telemarketing and Consumer Fraud Abuse Prevention Act, 15 U.S.C. §6101, a law enacted in 2004 and enforced by the Federal Trade Commission via the Telemarketing Sales Rule ("TSR"), 16 CFR Part 310.

This consumer class action concerns widespread institutional disregard for the TCPA by defendant, ADT Security Systems, Inc. ("ADT" or "Defendant"), and ADT's authorized retailers. Upon information and belief, over the past four years, hundreds of thousands of unsolicited pre-recorded telephone calls have been made by or on behalf of ADT, and/or with ADT's knowledge, consent, approval and/or acquiescence, to residential and mobile phone numbers throughout the United States, as part of a campaign to promote ADT's products in violation of the TCPA and the privacy rights of citizens of the United States.

## THE PARTIES

1. Vishva Desai ("Ms. Desai") and Philip J. Charvat ("Mr. Charvat") bring this case against ADT Security Services, Inc. ("ADT") to secure redress for violation of the TCPA.

2. Ms. Vesau is an individual who resides in this District.

3. Mr. Charvat is an individual with a principal residence in Westerville, Ohio.

4. ADT is a Delaware corporation located at 2711 Centerville Road in Wilmington, DE 19808.

5. ADT's corporate headquarters are located at One Town Center Road in Boca Raton, Florida, 33486.

6. At all relevant times, ADT has conducted business in Illinois, solicited business in Illinois, engaged in a persistent course of conduct in Illinois, or has derived substantial revenue from services rendered in Illinois.

## JURISDICTION

7. The District Court has original jurisdiction pursuant to 28 U.S.C. 1332(d)(2)(A) because, on information and belief, the matter in controversy is believed to exceed the sum or value of $5,000,000 for the class, exclusive of interests and costs, and is a class action in which a member of the plaintiff class is a citizen of a state different from the defendant.

8.   The District Court also has federal question jurisdiction over these claims pursuant to 28 U.S.C. 1331.  *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 466 (7th Cir. 2005).

## THE LEGAL BASIS OF THE CLASS CLAIMS

9.   The claims of the Plaintiffs, and the class of persons they seek to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

10. The TCPA specifically prohibits the use of an unsolicited pre-recorded phone message to residential homes to advertise the sale of goods and services.  47 U.S.C. § 227(b)(1)(B); 47 C.F.R. §64.1200.

11. It is also a violation of the TCPA to call a person's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice message.  47 U.S.C. § 227(b)(1)(A)(iii);

12. Under the TCPA, as interpreted by the Federal Communications Commission, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly place those calls.

13. The Federal Communications Commission has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, Paragraph 13 (1995).*

14. In 2005, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."  See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm*

*Mutual Automobile Insurance Company for Clarification and Declaratory Ruling,* Declaratory Ruling, 20 FCC Rc. 13664, 13667 Paragraph 7 (2005).

15. Accordingly, an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

16. The phone calls at issue in this case were made for the benefit of ADT. Because these calls were made "on behalf" of ADT, ADT is legally responsible to ensure that such calls are compliant with applicable telemarketing law, even if ADT did not itself physically dial the call.

17. Further, ADT is responsible for the illegal actions of its agents and is also responsible for any illegal actions conducted in the course of any joint venture with any third party.

18. Federal regulations also require that companies making telemarketing calls provide or volunteer a phone number or address for their company at any point during the call. Failure to do so is a violation of 47 CFR §64.1200(d)(4):

> Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

19. Plaintiffs brings this action individually and as the representative of all members of a nation-wide class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

## ADT'S AUTHORIZED DEALER PROGRAM

20. ADT is the self proclaimed world's largest provider of residential and commercial electronic security service, handling over seven million customers.

21. ADT markets and distributes products via a distribution network of authorized dealers.

22. ADT compensates each authorized dealer through a structure of commission payments based upon the amount of product and services sold.

23. ADT allows its authorized dealers to market ADT's products and services.

24. ADT has, at all times, had the right and responsibility to control and police its authorized dealers as evidenced by the following facts:

    a.        ADT's contracts with its dealers are form agreements prepared by ADT typically entitled "Authorized Dealer Agreement."

    b.        Each ADT authorized dealer is given a set of standardized written procedures, entitled the "ADT Dealer Program Guidelines", which are referenced by and incorporated into the Authorized Dealer Agreement.

    c.        Pursuant to these form contracts, ADT's authorized dealers agree to sell and install home security services to customers and then are *required* to "sell" these customer accounts exclusively to ADT, which then provides security monitoring services.

    d.        Once an authorized dealer installs alarm equipment in a customer's home or office, the alarm system is connected by telephone lines to ADT's monitoring centers, which monitor the alarm equipment.

    e.        All authorized dealers are instructed to market using the ADT name. In addition, ADT advertises through it's website to it's authorized dealers that "As an ADT Authorized Dealer, you can have the opportunity to capitalize on the power of the ADT name."

## ADT PROMOTES USE OF TELEMARKETING
## TO GENERATE NEW LEADS

25. ADT sells its security alarm systems through its own call center as well as those of authorized dealers.

26. ADT promotes these systems through a variety of marketing methods, including telemarketing. ADT also approves authorized dealers' scripts and marketing materials.

27. ADT's contractual agreements with authorized dealers give dealers the authority to solicit consumers through means including telemarketing. ADT authorized dealers sell ADT security systems exclusively, using a variety of methods, including telemarketing.

28. In 2007, the Federal Trade Commission ("FTC") brought a complaint against ADT and two of its authorized dealers, for engaging in illegal telemarketing.

29. The FTC alleged that ADT marketed its security systems directly to consumers and through authorized dealers, which used a variety of marketing techniques, including telemarketing.

30. The FTC specifically alleged that ADT and/or its authorized dealers called consumers whose numbers were on the Do Not Call Registry in violation of the Telemarketing Sales Rule, 16 C.F.R. 310.4(b)(1)(iii).

31. In November of 2007, ADT and the FTC entered into a Consent Decree and Order for Civil Penalties ("Consent Decree"). A copy of the Consent Decree is attached at Exhibit A.

32. As part of the Consent Decree with the FTC, ADT agreed

- To monitor and audit its agents' telemarketing practices;

- To create a complaint database for telemarketing complaints and to promptly investigate complaints;

- To conduct a reasonable due diligence investigation to ensure that its authorized dealers had established and actively enforced telemarketing policies and procedures;

- To have a written contract with authorized dealers engaged in telemarketing on ADT's behalf that specifically included provisions relating to telemarketing compliance;

- To monitor outbound telemarketing campaigns conducted by its authorized dealers;

- To cease doing business with an authorized dealer after becoming aware that the authorized dealer was engaged in telemarketing in violation of the TSR;

33. By entering into the Consent Decree, ADT acknowledged that it had both the ability and the duty to control the actions of its authorized dealers to ensure compliance with telemarketing law.

34. The FTC Consent Decree further specifically enjoined ADT from failing to monitor its authorized dealers, and from doing business with authorized dealers who ADT knew or should have known were engaged in illegal telemarketing.

35.  The FTC Consent Decree further Ordered ADT to:

- Develop, implement, adequately staff, and continuously operate and maintain, a system to receive and retain complaints related to telemarketing ADT goods or services that are received by telephone, mail and e-mail.

- Make available to the FTC all relevant information relating to complaints made to ADT by consumers relating to its telemarketing practices, including but not limited to (1) the name, address and phone number of the complaining consumer; (2) the substance of the complaint; (3) the nature and result of any investigation concerning the complaint; (4) the name, phone number and address of the Authorized Dealer, Authorized Marketer or Authorized Telemarketer, which made the call that was the basis of the complaint (5) the date of the call, and (6) any relevant information for determining whether a violation of the law had occurred.

- Submit to the FTC monthly reports documenting the complaints made to ADT in regards to violations of the Telemarketing Sales Rule;

- Promptly investigate each consumer complaint relating to telemarketing and take all reasonable steps to identify the person whose activities prompted the complaint; and

- For a period of five years from the entry of the Order, to take a random sampling of 10% of all new accounts to determine how its customers were solicited and to specifically note if the client was contacted initially through outbound telemarketing.

**ADT PROFITS DIRECTLY FROM ILLEGAL TELEMARKETING**
**THROUGH ITS JOINT VENTURE WITH AUTHORIZED DEALERS**

36. As described above, ADT markets its goods and services directly to consumers and through its  relationships with authorized dealers.

37. At all relevant times, ADT was engaged in a partnership with its authorized dealers.

38. At all relevant times, ADT was engaged in a contractual association with its authorized dealers, to carry out a single business enterprise for profit.

39. To carry out this partnership and/or joint venture, ADT and its authorized dealers combined their property, money, effects, skill and knowledge.

40. In the course of its partnership or joint venture, ADT delegated authority to market its products to ADT's authorized dealers.

41. ADT either knew or should have known that its authorized dealers were engaging in telemarketing via auto-dialer and/or pre-recorded message.

42. Even after ADT became aware that its authorized dealers were engaging in telemarketing via auto-dialer or pre-recorded message, it failed to take sufficient action to cause such conduct to cease.

43. By failing to act after having knowledge of such conduct, ADT ratified illegal telemarketing conducted on its behalf by its authorized dealers.

### CONSUMERS COMPLAIN ABOUT ADT'S
### TELEMARKETING TACTICS

44. For many years now, consumers have been complaining directly to ADT, and to the Federal Trade Commission, that ADT's distributors were engaging in illegal telemarketing in violation of the TCPA.

45. The Federal Trade Commission recently produced to class counsel well over a thousand pages of consumers complaints relating to illegal pre-recorded telemarketing being conducted by ADT's authorized distributors on behalf of ADT.

46. Upon information and belief, despite having knowledge that a number of its distributors were engaged in illegal telemarketing, and having the ability to discipline such distributors, ADT failed to take action to cause such conduct to cease. The persons who suffered TCPA violations as a result of these actions and omissions are the class members in this class.

## **FACTUAL ALLEGATIONS AS TO THE REPRESENTATIVE PLAINTIFFS**

### *The Call to Ms. Desai*

47.  On or about February 27, 2011, at approximately 4:21 central time, Ms. Desai received a telephone call on her cellular telephone, phone number xxx-xxx-9079 (the "Desai Call").

48. Ms. Desai's cellular telephone voice mail answered the call.

49. The following automated message was then played on Ms. Desai's voice mail:

[unintelligible] With an alarm system from ADT, you'll have total protection. Soon, because it's obvious that you have an alarm, you significantly reduce the possibility of burglary or [unintelligible] robbery.  To get this free in-home system, press 1 now and we can schedule your installation.  You just pay the monthly monitoring fee.

50. The caller identification for the Desai Call indicated telephone number (574) 970-0866.

51. Upon information and belief, based upon the content of the Desai Call, ADT or a party authorized by ADT, and/or acting on behalf of ADT, placed the Desai Call.

52. Upon information and belief, the Desai Call was dialed by a machine, rather than by a human being, and the message left on Ms. Desa's voice mail was a pre-recorded message.

53. Ms. Desai does not have any relationship with ADT and never gave anyone consent to contact her cell phone on behalf of ADT.

### *The First Call to Mr. Charvat*

54. On September 7, 2010, ADT, either directly or via one of its authorized dealers, employed the use of automated telephone equipment to deliver a pre-recorded message (the "First Charvat Call") to Mr. Charvat's residential phone line (xxx) xxx-8940, without Mr. Charvat's prior express consent.

55. The First Charvat Call promoted ADT's goods and services.

56. The First Charvat Call failed to identify the business, individual, or other entity responsible for initiating the First Call.

57. The First Charvat Call failed to include the phone number on whose behalf the solicitation was made.

58. After receiving the First Charvat Call, Mr. Charvat followed the instructions of the pre-recorded message in order to reach a live operator and to identify the parties responsible for the First Charvat Call.

59. After following a prompt, Mr. Charvat was referred to a live operator who informed Mr. Charvat that he worked for Direct Savings, an ADT authorized dealer.

60. The ADT agent told Mr. Charvat that his name was Jason and that he worked for Direct Savings located at 6245 North Powerline Road in Fort Lauderdale, Florida.

61. The web site for Direct Savings (www.directsavingsusa.com) confirms that Direct Savings is an Authorized Dealer for ADT.

***Direct Savings And Its ADT Affiliates***

62. The web site for Direct Savings lists the various state license numbers under which Direct Savings does business in other states.

63. Such entities include, but may not be limited to Eversafe Security Systems, Inc. of Elmwood Park, New Jersey and Security Choice, Inc. of Fort Mill, South Carolina, both of which are authorized ADT dealers.

64. Upon information and belief, at all relevant times, ADT authorized dealers including Direct Savings, Eversafe and Security Choice have all engaged in illegal telemarketing on behalf of ADT.

65. In addition, and on information and belief, Direct Savings also uses the d/b/a Alarm One (www.alarmone.com) and All Home Security (www.allhomesecurity.com), which entities also identify themselves as ADT authorized dealers.

66. Upon information and belief, Alarm One and All Home Security, at all relevant times, have engaged in illegal telemarketing on behalf of ADT.

67. Direct Savings' web-site also indicates that it is affiliated with an entity called The Elephant Group, a Florida corporation.

68. The Elephant Group is a marketing entity that promotes various products, including ADT home security systems (www.elephantgroup.com).

69. The Elephant Group is also an ADT authorized dealer.

70. Upon information and belief, The Elephant Group has engaged in illegal telemarketing on behalf of ADT.

71. The Elephant Group, and a Fort Lauderdale Florida corporation called Saveology, Inc. are owned by the same principal, Benzion Aboud.

72. Saveology, Inc. is an ADT authorized dealer.

73. Upon information and belief, at all relevant times to this Complaint, Saveology has engaged in illegal telemarketing on behalf of ADT.

### *The Second Charvat Call*

74. On January 11, 2011, ADT, either directly or via one of its authorized dealers, employed the use of automated telephone equipment to deliver a pre-recorded message to Mr. Charvat's residential phone line (xxx) xxx-8940, without Mr. Charvat's prior express consent (the "Second Charvat Call").

75. The Second Charvat Call promoted ADT's goods and services.

76. The Second Charvat Call failed to identify the business, individual, or other entity responsible for initiating the Second Charvat Call.

77. The Second Charvat Call failed to include the phone number on whose behalf the solicitation was made.

78. At no time did Mr. Charvat give prior express consent to ADT, or its agents, to contact him at home via pre-recorded message.

79. Mr. Charvat did not have a prior business relationship with ADT or its agents.

80. After receiving the Second Charvat Call, Mr. Charvat followed the instructions of the pre-recorded message in order to reach a live operator and to identify the parties responsible for the First Call.

81. After following a prompt, Mr. Charvat was referred to an individual named "Scott" with an entity called "Home Security" and was offering a ADT home security system. "Scott" informed Mr. Charvat that he was an "authorized agent" for ADT.

## CLASS ALLEGATIONS

82. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

83. Upon information and belief, over the past four years, pursuant to a uniform policy and procedure, ADT and/or its authorized agents, have engaged in widespread advertising via unsolicited prerecorded telemarketing calls and auto-dialer use in violation of the TCPA.

84. Upon information and belief, over the past several years, pursuant to a uniform policy and procedure, ADT and/or its authorized agents, have transmitted unsolicited prerecorded telemarketing calls to hundreds of thousands, if not millions, of consumers throughout the United States.

85. Upon information and belief, pursuant to a uniform policy and procedure, ADT and/or its authorized agents did not obtain the consent of recipients prior to the transmission of prerecorded telemarketing calls.

86. The class of persons represented by Plaintiffs is composed of all persons or entities within the United States who ADT either directly, or through its authorized agents, sent, or caused to be sent, unsolicited prerecorded telemarketing calls promoting ADT's goods or services, at any time within the four years prior to the filing of the instant Complaint.

87. A sub-class of persons represented by Plaintiffs is composed of all persons or entities who received, on a cellular phone, an unsolicited ADT prerecorded telemarketing/auto-dialer calls promoting ADT's goods or services, at any time within the four years prior to the filing of the instant Complaint.

88. The classes as defined above are identifiable by phone records and phone number databases, employed by ADT, or its agents, in transmitting its unsolicited prerecorded telemarketing calls. On information and belief, the potential class members number in the hundreds of thousands and constitutes a class so numerous that joinder of all class members is impracticable.

89. Plaintiffs are members of the class.

90. Plaintiff Desai is a member of the sub-class..

91. There are questions of law and fact common to Plaintiffs and to the proposed class, including but not limited to the following:

a. Whether ADT violated the TCPA by engaging in advertising by unsolicited prerecorded telemarketing calls.

b. Whether the unsolicited prerecorded telemarketing calls sent by ADT's agents were made "on behalf of" ADT;

c. Whether the Plaintiffs and the members of the class are entitled to statutory damages as a result of ADT's actions.

92. Plaintiffs claims are typical of the claims of the class.

93. Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and they are represented by counsel skilled and experienced in class actions.

94. The actions of ADT are generally applicable to the class as a whole and to Plaintiffs.

95. Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by ADT and/or its agents.

96. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and because class members are unlikely to know that their rights have been violated.

97. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

98. Plaintiffs are capable of and is willing to represent the other members of the class.

## CAUSES OF ACTION

### COUNT I: NEGLIGENT VIOLATION OF THE TCPA
### SENDING UNSOLICITED PHONE MESSAGES

99. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

100. ADT, either directly or through its authorized agents, negligently caused pre-recorded telemarketing solicitations to be sent to Plaintiffs' home or cell-phone, and to the homes or cell-phones of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

101.  The TCPA provides for statutory damages in the amount of a minimum of $500 for each negligent violation of the TCPA.

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray that this Honorable Court find that ADT is responsible to class for its negligent violation of the TCPA and award statutory damages in favor of the class.

## COUNT II: KNOWING VIOLATION OF THE TCPA
## SENDING UNSOLICITED PHONE MESSAGES

102.  Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

103.  ADT, either directly or through its authorized agents, knowingly caused pre-recorded telemarketing solicitations to be sent to Plaintiffs' home or cell phone, and to the homes or cell-phones of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

104.  The TCPA provides for statutory damages in the amount of $1,500 for each knowing violation of the TCPA.

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray that this Honorable Court find that ADT is responsible to class for its knowing violation of the TCPA and award statutory damages in favor of the class.

## COUNT III: INJUNCTIVE RELIEF
## TO BAR FUTURE TCPA VIOLATIONS

105.  Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

106.  The TCPA expressly authorizes injunctive relief to prevent further violations of the Telephone Consumer Protection Act.

107.  The Plaintiffs, acting on behalf of the Class, respectfully petition this Court to order all defendants, including but not limited to ADT, its employees, agents or independent distributors, to immediately cease engaging in unsolicited telemarketing in violation of the TCPA.

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray that this Honorable Court find that ADT is responsible to class for its violation of the TCPA and issue injunctive relief to ensure that ADT, and its agents, cease engaging in such conduct going forward.

## COUNT IV: INJUNCTIVE RELIEF
## PRESERVATION OF EVIDENCE

108.  Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

109.  ADT or its agents, have custody and control of the business records and other information necessary to identify the members of the class including names and telephone numbers.  Unless immediate injunctive relief is ordered, it is feared that the defendants will alter, erase, delete, destroy or otherwise dispose of the records in their possession which are necessary to identify each recipient of the pre-recorded messages sent by ADT.  For this reason, the Plaintiffs petition the Court for an order enjoining ADT and its agents, or anyone acting on their behalf, from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray that this Honorable Court find that Order that ADT and its agents preserve all evidence relating to this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of themselves and the other members of the class, the Plaintiffs pray for the following relief:

1.     That ADT be restrained from engaging in future telemarketing in violation of the TCPA.

2.      That ADT, and its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

3.      That this Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure.

4.      That the named plaintiffs and the other members of the class action so certified be awarded statutory damages for each separate violation of the TCPA by the named defendants.

5.      That the named plaintiffs and the members of the class be granted such other and further relief as is just and equitable under the circumstances.

**THE CLASS PLAINTIFFS REQUESTS A JURY TRIAL AS TO ALL CLAIMS OF THE COMPLAINT SO TRIABLE**

PLAINTIFFS, VISCVA DESAI and PHIL CHARVAT,

By their attorneys,

/s/Alexander H. Burke
Alexander H Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 *facsimile*
ABurke@BurkeLawLLC.com

/s/Brian K. Murphy
Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul & Basil LLP
1533 Lake Shore Drive
Columbus, OH  43204

(614) 488-0400
(614) 488-0401 *facsimile*
E-mail:  murphy@mmmb.com
        murray@mmmb.com

John W. Barrett, Esq. *Pro Hac Vice Admission Pending*
Jonathan Marshall, Esq.
Bailey & Glasser, LLP
227 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 *facsimile*

Edward A. Broderick, Esq. *Pro Hac Vice Admission Pending*
The Law Office of Edward A. Broderick
727 Atlantic Avenue, Second Floor
Boston, MA  02111
(617) 738-7080
(617) 314-7783 *facsimile*

Matthew P. McCue, Esq. *Pro Hac Vice Admission Pending*
The Law Office of Matthew P. McCue
340 Union Avenue
Framingham, MA 01790
 (508) 620-1166
 (508) 820-3311 *facsimile*

# Exhibit 2

Case: 1:13-cv-08708 Document #: 259-1 Filed: 12/05/13 Page 26 of 40 PageID #:3272

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARK FITZHENRY, on behalf of himself and others similarly situated, | ) ) | 1:13-cv-8708 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY DEMANDED |
| THE ADT CORPORATION (f/k/a ADT Security Services, Inc.) and SECURITY SOLUTIONS INC. | ) ) ) | |
| Defendants. | | |

### CLASS ACTION COMPLAINT

### Preliminary Statement

1.      In 2011, counsel for the Plaintiff filed a Class Action Complaint against the Defendant The ADT Corporation (f/k/a ADT Security Services, Inc.) ("ADT") relating to the telemarketing activities of its authorized dealers alleged to be in violation of the Telephone Consumer Protection Act, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.[1] *See Desai v. ADT Security Services, Inc.*, United States District Court for the Northern District of Illinois (Eastern Division), Civil Action No. 11-cv-1925 (Bucklo, J.).

2.      After two years of litigation, the parties reached a class action settlement in *Desai v. ADT*, pursuant to which ADT agreed to change its corporate policies to prohibit authorized dealers from telemarketing via pre-recorded message.

3.      Unfortunately, this has not occurred and, at least one, ADT authorized dealer has continued to telemarket in violation of federal telemarketing law.

_____

[1] *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

4.      Months following this settlement, and in violation of the TCPA, an ADT Authorized Dealer called Security Solutions, Inc. ("Security Solutions"), sent Plaintiff Mark Fitzhenry ("Plaintiff" or "Mr. Fitzhenry") a pre-recorded telemarketing call and subsequently tried to offer him ADT goods and services.

5.      Because the calls at issue were transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Fitzhenry brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls advertising ADT goods and services, for the time frame following the release that was received by ADT at the conclusion of the *Desai v. ADT* litigation.

6.      A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7.      Plaintiff Mark Fitzhenry is a resident of the state of South Carolina.

8.      Defendant The ADT Corporation (f/k/a ADT Security Services, Inc.) is a corporation traded on the New York Stock Exchange under the symbol "ADT" that is headquartered in Boca Raton, FL.

9.      Defendant Security Solutions, Inc. is an ADT Authorized Dealer, headquartered in Nashville, TN, which solicits new ADT subscribers from all over the country.

**Jurisdiction & Venue**

10.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.     This Court has personal jurisdiction in this manner because ADT does business throughout the United States, including within the State of Illinois. In addition, *ADT v. Desai* is still pending before Judge Bucklo of the Northern District as the previous class settlement did not resolve third party claims brought by ADT against other entities.  ADT therefore has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Illinois.

12.     Venue is proper in the United States District Court for the District of Illinois as ADT is subject to personal jurisdiction in this district, and Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. *See* 28 U.S.C. § 1391.

**TCPA Background**

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]"  Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

. . . .

> Banning such automated or prerecorded telephone calls to the home, except
> when the receiving party consents to receiving the call[,] . . . is the only effective
> means of protecting telephone consumers from this nuisance and privacy
> invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

15.   The TCPA prohibits persons from initiating any telephone call to a residential

telephone line using a prerecorded voice to deliver a message without the prior express consent

of the called party, unless the call is initiated for emergency purposes or is exempted by rule or

order of the FCC.  47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

16.   For pre-recorded or auto-dialed telemarketing calls made to cell and landlines

after October 16, 2013, prior express consent must be evidenced by a signed writing (a) bearing

the signature of the person providing consent; (b) that specifies the telephone number to which

the person consenting is called; (c) clearly authorizes the company to call the person using an

auto dialer or prerecorded message for telemarketing purposes; and (d) providing consent is not

a condition of purchasing goods or services.  *See in the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991,* 27 FCC Rccd. 1830, 1844 ¶33.

(2012).

17.   Under the TCPA, a seller of a product or service may be vicariously liable for a

third-party marketer's violations of Section 227(b), even if the seller did not physically dial the

illegal call, and even if the seller did not directly control the marketer who did.  *In re Joint Pet.*

*filed by Dish Network*, *LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

18.   A seller is liable under Section 227(b) when it has authorized a telemarketer to

market its goods or services. *Id.* ¶ 47.

19.     Additionally, a seller may be vicariously liable for a Section 227(b) violation

under principles of apparent authority and ratification. Factors relevant to a finding of vicarious

liability include:

> a.    Whether "the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information;
>
> b.    Whether the outside sales entity can "enter consumer information into the seller's sales or customer systems;
>
> c.    Whether the outside sales entity has "the authority to use the seller's trade name, trademark and service mark;
>
> d.    Whether "the seller approved, wrote or reviewed the outside entity's telemarketing scripts"; and
>
> e.    "Whether the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct."

*Id.* ¶ 46.

20.     The May 2013 FCC Ruling further held that, even in the absence of

evidence of a formal contractual relationship between the seller and the telemarketer, a

seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual)

authority" to make the calls.  28 F.C.C.R. at 6586 (¶ 34).

21.     The May 2013 FCC Ruling further clarifies the circumstances under

which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be

relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

*Id.* at ¶ 46.

22.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information. "  *Id.* at 6592-93 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593 (¶ 46).

<u>Factual Allegations</u>

**SECURITY SOLUTIONS'S CALL TO THE PLAINTIFF**

23.     Well over one year ago, Mr. Fitzhenry received a pre-recorded telemarketing call from Security Solutions promoting ADT's goods and services.  He filed suit and that matter was ultimately resolved.

24.     As he had sued Security Solutions himself, and being aware of the class settlement in *Desai v. ADT,* Mr. Fitzhenry expected that these unwanted telemarketing calls promoting ADT security services would stop.

25.     However, on October 10, 2013, Plaintiff received another unwanted pre-recorded telemarketing call from Security Solutions, again, explicitly promoting ADT goods and services.

26.     The Caller ID on the call was (718) 737-7162.

27.     On that call, Plaintiff was informed:

   a.  The security system they were offering is ADT;
   b.  The monitoring would be done exclusively by ADT;
   c.  The telemarketing representative asked the Plaintiff if he had seen "our" (ADT's) commercials and flyers in the mail;
   d.  When the equipment is installed, it will include an ADT yard sign and window decal;

6

e. To find out more information about the promotion they were offering, the Plaintiff was instructed to visit www.adt.com, for more information;

f. ADT would be handling the billing of the account directly;

g. The call was being made by Security Solutions, an authorized ADT dealer.

28. Security Solutions is an ADT Authorized Dealer.

29. Security Solutions's website, http://www.securitysolutionstn.com/, identifies the company as an "ADT Authorized Dealer," displays the ADT corporate logo, and prominently states "ADT: The Most Trusted Name in Home Security."

30. Since at least August of 2012, ADT had been aware of illegal telemarketing engaged in by Security Solutions.

## ADT'S AUTHORIZED DEALER PROGRAM AND HISTORY OF TCPA COMPLIANCE ISSUES

31. ADT is the self-proclaimed world's largest provider of residential and commercial electronic security service, handling over seven million customers.

32. ADT markets and distributes products via a distribution network of authorized dealers.

33. ADT compensates each authorized dealer through a structure of commission payments based upon the amount of product and services sold.

34. ADT allows its authorized dealers to market ADT's products and services, to display the ADT logo and to market using the ADT trade name.

35. One of ADT's authorized dealers is Security Solutions, Inc., the same entity that made the pre-recorded telemarketing call to the Plaintiff.

36. ADT has, at all times, had the right to control its authorized dealers as evidenced by the following facts:

    a.       ADT's contracts with its dealers are form agreements prepared by ADT typically entitled "Authorized Dealer Agreement."

    b.       Each ADT authorized dealer is given a set of standardized written procedures, entitled the "ADT Dealer Program Guidelines", which are referenced by and incorporated into the Authorized Dealer Agreement.

    c.       Pursuant to these form contracts, ADT's authorized dealers agree to sell and install home security services to customers and then are ***required*** to "sell" these customer accounts exclusively to ADT, which then provides security monitoring services.

    d.       Once an authorized dealer installs alarm equipment in a customer's home or office, the alarm system is connected by telephone lines to ADT's monitoring centers, which monitor the alarm equipment.

    e.       All authorized dealers are instructed to market using the ADT name. In addition, ADT advertises through its website to its authorized dealers that "As an ADT Authorized Dealer, you can have the opportunity to capitalize on the power of the ADT name."

37.   ADT sells its security alarm systems through these authorized dealers and allows its dealers to hold themselves out to public as authorized ADT dealers.

38.   ADT promotes these systems through a variety of marketing methods, including telemarketing.

39.   ADT's contractual agreements with authorized dealers give dealers the authority to solicit consumers through means including telemarketing. ADT authorized dealers sell ADT security systems exclusively, using a variety of methods, including telemarketing.

40.   In 2007, the Federal Trade Commission ("FTC") brought a complaint against ADT and two of its authorized dealers for engaging in illegal telemarketing.

41.   The FTC alleged that ADT marketed its security systems directly to consumers and through authorized dealers, which used a variety of marketing techniques, including telemarketing.

42.    The FTC specifically alleged that ADT and/or its authorized dealers called consumers whose numbers were on the Do Not Call Registry in violation of the Telemarketing Sales Rule, 16 C.F.R. 310.4(b)(1)(iii).

43.    In November of 2007, ADT and the FTC entered into a Consent Decree and Order for Civil Penalties ("Consent Decree").

44.    As part of the Consent Decree with the FTC, ADT agreed

- To conduct a reasonable due diligence investigation to ensure that its authorized dealers had established and actively enforced telemarketing policies and procedures;

- To have a written contract with authorized dealers engaged in telemarketing on ADT's behalf that specifically included provisions relating to telemarketing compliance;

- To monitor outbound telemarketing campaigns conducted by its authorized dealers;

- To cease doing business with an authorized dealer after becoming aware that the authorized dealer was engaged in telemarketing in violation of the TSR;

45.    By entering into the Consent Decree, ADT acknowledged that it had both the ability and the duty to control the actions of its authorized dealers to ensure compliance with telemarketing law.

46.    The FTC Consent Decree further specifically enjoined ADT from failing to monitor its authorized dealers, and from doing business with authorized dealers who ADT knew or should have known were engaged in illegal telemarketing.

47.    While the Consent Decree was still in effect, ADT was sued by a number of individuals related to the telemarketing activities.

48.    ADT was also subject of a class action lawsuit, related to illegal telemarketing conducted by its authorized dealers, which was filed in 2011.

9

49.    In that case, Plaintiff alleged that ADT, through its authorized dealers, made millions of illegal telemarketing calls.

50.    ADT resolved that matter by making a payment of $15,000,000 into a common fund, where class members could submit claims.

51.    As ADT has failed to effectively end the illegal telemarketing engaged in by its dealers, Plaintiff brings this putative class action.

### Class Action Allegations

52.    As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

53.    The class of persons Plaintiff proposes to represent is tentatively defined, subject to modification after discovery and case development:

> All persons within the United States whom (a) ADT, through their agents, played a pre-recorded message during a telephone call the purpose of which was to sell ADT goods or services (or develop "leads" for such sales) from June 22, 2013 ongoing, and (b) and who did not previously give such number to ADT, or their agents with permission to be contacted.

Collectively, all these persons will be referred to as "Class members."

42.    Class members are identifiable through phone records and phone number databases.

43.    Given the nature of the automated technology used to transmit pre-recorded telemarketing calls, the potential class members number at least in the thousands.  Individual joinder of these persons is impracticable.

44.    Plaintiff is a member of the class.

45.    The Plaintiff and the class have all been harmed by the actions of the Defendants.

46.     This Class Action Complaint seeks injunctive relief and monetary damages.

47.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a.     Whether the Defendants violated the TCPA by advertising via unsolicited prerecorded telemarketing calls;

    b.     Whether the Defendants can meet their burden of proof with respect to statutory defenses for the telemarketing calls;

    c.     Whether the Defendants conduct was knowing and/or willful;

    d.     Whether the Plaintiffs and the class members are entitled to statutory damages as a result of Defendants' actions;

    e.     Whether Defendants should be enjoined from engaging in such conduct in the future.

48.     Plaintiff is an adequate representative of the class because his interests do not conflict with class member interests, he will fairly and adequately protect class member interests, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

49.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and their agents.

50.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

51.     The interest of the Class members in individually pursuing claims against the Defendants is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendants from engaging in the same behavior in the future.

11

52.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

53.     The Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

54.     Plaintiff is unaware of litigation concerning this controversy already commenced by others who meet the proposed class definition.

## CAUSES OF ACTION

### FIRST COUNT

#### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

55.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

56.     The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

57.     As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute.

58.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.

12

## SECOND COUNT

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227 *ET SEQ.*

59.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

60.     The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

61.     As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute.

62.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

1.     That Defendants be restrained from engaging in future telemarketing in violation of the TCPA.

2.     That Defendants, and its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

3.     That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure.

4.     That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation.

13

5.      That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
MARK FITZHENRY
By his attorneys,

/s/ Alexander E. Burke

Alexander E. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 facsimile
ABurke@BurkeLawLLC.com

John W. Barrett
Jonathan Marshall
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 facsimile
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
*Subject to Pro Hac Vice Admission*

Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH 43204
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com

Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice Admission*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave, Third Floor
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice Admission*

DOCUMENT PRESERVATION DEMAND

Plaintiff demands that the defendant take affirmative steps to preserve all recordings, data, emails, recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls for purposes of marketing State Farm products or services (e.g. call detail and/or dialer records), the events described herein, any third party associated with any such telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim and discoverable. If defendant is aware of any third party that has possession, custody or control of any such materials that may be discoverable, such as ADT agents, phone companies, dialer companies including but not limited to YTel and Five9 (if applicable), lead generators (including but not limited to Variable Marketing, LLC, Instant Insurance Transfers, Insurance Leads in Real Time if applicable), telemarketers, outbound voice message companies (e.g. CallAssistant), plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.