1      IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF ILLINOIS
2                EASTERN DIVISION

3   VISHVA DESAI, et al.,                )     No. 2011 C 1925
                     Plaintiffs,         )     February 19, 2013
4              v.                        )     9:35 a.m.
    ADT SECURITY SERVICES, INC., et al., )
5                    Defendants.         )

6          TRANSCRIPT OF PROCEEDINGS - MOTION
           BEFORE THE HON. ELAINE E. BUCKLO
7
    APPEARANCES:
8   On behalf of Plaintiff:    MR. ALEXANDER H. BURKE
                               BURKE LAW OFFICES, LLC
9                              155 North Michigan Avenue, Suite 9020
                               Chicago, Illinois 60601
10                             (312) 729-5288

11                             MR. BRIAN K. MURPHY
                               MURRAY, MURPHY, MOUL & BASIL, LLP
12                             1533 Lake Shore Drive
                               Columbus, Ohio 43204
13                             (614) 488-0400

14                             MR. MATTHEW McCUE
                               LAW OFFICE OF MATTHEW McCUE
15                             1 South Avenue, Suite 3
                               Natick, Massachussetts 01760
16                             (508) 655-1415

17  On behalf of Defendants:   MR. JOHN A. LEJA
                               POLSINELLI SHUGHART PC
18                             161 North Clark Street, Suite 4200
                               Chicago, Illinois 60601
19                             (312) 873-3670

20                             MR. MICHAEL F. BAUGHMAN
                               PEPPER HAMILTON, LLP
21                             3000 Two Logan Square
                               Philadelphia, Pennsylvania 19103-2799
22                             (215) 981-4969

23                             MS. NICOLE M. BARRETT
                               SESSIONS FISHMAN NATHAN & ISRAEL, LLC
24                             55 West Monroe Street, Suite 1120
                               Chicago, Illinois 60603
25                             (312) 578-0992


            MICHAEL P. SNYDER, Official Court reporter

1        THE CLERK:  11 C 1925,Desai versus ADT Security

2  Services; motion.

3        THE COURT:  Good morning.

4        MR. BAUGHMAN:  Good morning, Your Honor.  Michael

5  Baughman for ADT.

6        MR. LEJA:  Good morning, Your Honor.  John Leja for

7  ADT.

8        MR. BURKE:  Good morning, Judge.  Alexander Burke for

9  the plaintiffs.

10        MR. MURPHY:  Good morning, Your Honor.  Brian Murphy

11  on behalf of the plaintiffs.

12        MR. McCUE:  Matthew McCue for the plaintiffs.

13        MS. BARRETT:  And Nicole Barrett for the third-party

14  defendant Elephant Group.

15        THE COURT:  Good morning.

16        I'm certainly willing to give you preliminary

17  approval, so I guess I just need to give you some dates.

18        MR. BAUGHMAN:  That's great, Your Honor.

19        I guess one point from the defendant ADT's perspective

20  is we certainly support preliminary approval of the settlement.

21  We just want -- and we filed some briefs on this.  We just want

22  to point out we are spending $4 million on notice, so we want

23  to make sure the Court is comfortable with the notice plan.

24        THE COURAT:  Yes, I am.  I thought it was appropriate

25  that the two parts, the two kinds of notice.

MICHAEL P. SNYDER, Official Court reporter

1    MR. BAUGHMAN:  Okay.  And the majority of the class is

2  going to receive publication notice rather than direct notice

3  here.

4    THE COURT:  Well, that's right.  You know, I may not

09:37:15    5  have, and I always do look at the notice things.  Just tell me

6  again, where is the publication notice going to be?

7    MR. MURPHY:  Your Honor, if I might, it's going to be

8  published in a two-fifth-page ad in Gray Magazine, a

9  two-fifth-page ad in USA Weekend, a full-page ad in Reader's

09:37:32    10  Digest --

11    THE COURT:  Reader's Digest just went into bankruptcy.

12    MR. BAUGHMAN:  They are still operating I believe.

13    MR. MURPHY:  I believe they are still operating.

14    One-third page in Good Housekeeping, a third page in

09:37:42    15  People Magazine, a third page in TV Guide, a third page in

16  Sports Illustrated, a third page in Time Magazine and a sixth

17  page in the Friday edition of USA Today.  Your Honor, that's

18  designed to reach approximately 67 percent of --

19    THE COURT:  People that you think would have --

09:37:59    20  frankly, I was more concentrating on what people would have to

21  do and whether the notice was clear.  I don't know what

22  people -- it doesn't sound like people read anything anymore.

23    All of these publications still exist?

24    MR. MURPHY:  They do, Your Honor.

09:38:20    25    THE COURT:  And you have some reason to think this is

MICHAEL P. SNYDER, Official Court reporter

1   where they go, where ADT or -- well, I guess it wasn't ADT

2   directly.

3            MR. MURPHY:  If you notice, the publications are sort

4   of broad, have a wide breadth in terms of interest and things

09:38:33   5   of that nature.

6            THE COURT:  USA Today I assume is read by business

7   people traveling or something.  I don't know who else reads USA

8   Today.  Nobody subscribes to it, do they?

9            Okay, Reader's Digest.  Let's see.  That's in

09:38:48   10   bankruptcy, but I guess that means not enough people are

11   reading it.  I don't know if they are anymore.

12           TV Digest?  I thought it went out of business.  I

13   guess not.

14           What else?  Time Magazine?  Time Magazine still

09:39:03   15   exists, right?

16           MR. MURPHY:  People Magazine, Your Honor, Sports

17   Illustrated.  There is also a --

18           THE COURT:  And some women's magazine?

19           MR. MURPHY:  There is also some web-based advertising

09:39:14   20   that's part of it.  Your Honor, we sort of picked as broad a

21   range of publications --

22           THE COURT:  All right.  As he points out, spending a

23   lot of money on it.  Okay, this sounds okay to me.  And I did

24   look at the substance of it, and I thought for that kind of

09:39:32   25   thing, you don't know if they ever got a call, it was

            MICHAEL P. SNYDER, Official Court reporter

1    appropriate.

2          MR. BAUGHMAN:  And just so it's clear, there will be

3    folks who give a release who probably don't see the notice and

4    don't get payment.  That's one of the reasons there is a

09:39:44   5    provision in the agreement for some changes in business

6    practices which we think would be adequate consideration for

7    those who don't receive monetary coverage.  It's a very broad

8    release, but we think, you know, under the circumstances,

9    that's what ADT was willing to settle for here.  We think it's

09:39:56  10    reasonable.

11          THE COURT:  Now you're making me wonder what I missed.

12    Where did I put it?  Hold on a minute.  Let me just go find it.

13          (Pause.)

14          THE COURT:  Okay.  Now, just tell me what you're

09:41:03  15    referring to.

16          MR. BAUGHMAN:  The release or the business practice?

17          THE COURT:  Yes.  It's the release I guess I have to

18    say I probably hadn't read.

19          MR. BAUGHMAN:  Yes.  It's under the definition of

09:41:16  20    covered calls.  That's sort of who is giving a release.

21          THE COURT: Where is it?

22          MR. BAUGHMAN:  Section 2.13 of the settlement

23    agreement.  It's also in the motions.  2.13 of the agreement.

24    That's basically who the settlement class is.

09:41:47  25          THE COURT:  Do you think you could have put it in

MICHAEL P. SNYDER, Official Court reporter

1   smaller print?

2           Okay.  So tell me what it will do.

3           MR. BAUGHMAN:  Basically --

4           And you guys are welcome to jump in.

09:42:00   5           THE COURT:  I don't want to leave it that they can

6   turn around and do the same thing again.

7           MR. BAUGHMAN:  Here's the thing.  The theory of the

8   case, Your Honor, is not that ADT made any particular calls.

9           THE COURT:  I know; it's that they have people --

09:42:09   10           MR. BAUGHMAN:  Right, that calls were made on their

11  behalf.  Now, these are calls that ADT didn't know about,

12  didn't authorize from our perspective, didn't have anything to

13  do with from our perspective.  So the release covers anyone

14  from what, January 1st, 2007, through the date the agreement

09:42:27   15  was signed who received a call by anyone who was trying to sell

16  in any way ADT Security services.

17           So whether it mentioned ADT, whether it was made by

18  ADT, whether it was made by an ADT authorized dealer, it could

19  be someone who was a lead generator who was trying to sell

09:42:42   20  these to ADT.  Basically ADT is seeking total peace from this

21  settlement, they are spending a lot of money to get total peace

22  to any call that in any way relates to trying to sell ADT

23  leads.

24           Is that --

09:42:56   25           MR. McCUE:  Correct.

        MICHAEL P. SNYDER, Official Court reporter

1    MR. BAUGHMAN:  Which is why publication notice is
2 necessary, Your Honor, because we just don't know who those
3 folks are.
4    THE COURT:  Well, on its face that makes sense.

09:43:15    5    So what is it you're worried about?
6    MR. BAUGHMAN:  Your Honor, I think you should approve
7 the settlement.  My concern is I don't want objectors coming in
8 six months down the road after we spent $4 million and saying,
9 "Oh, this release is too broad" or "Oh, the notice wasn't

09:43:31   10 sufficient."  I just want to make sure Your Honor is in
11 agreement with us that this release is appropriate.
12    THE COURT:  Well, I am at the moment.  I mean, I
13 can't -- it is preliminary approval.  I don't have some
14 objection.

09:43:41   15    MR. BAUGHMAN:  I understand.
16    THE COURT:  It's been a while since I had an objection
17 on a settlement, but I can't, you know, I can't utterly and
18 finally say that somebody couldn't come in and say something
19 that convinced me otherwise.  I can't do that.  I'm not in a

09:43:55   20 position --
21    MR. BAUGHMAN:  Understood, Your Honor, but we just
22 want to make sure Your Honor knows all the facts ahead of time.
23 If you have any questions, I understand the claims
24 administrator is here to answer any questions about the notice.

09:44:07   25 But we just want Your Honor going into it with eyes wide open

MICHAEL P. SNYDER, Official Court reporter

1  so that any issues are resolved before we spend the $4 million

2  rather than after.

3      THE COURT:  Well, I am trying to think what the

4  alternative would be.  So your concern is that somebody --

09:44:26  5      MR. BAUGHMAN:  There would be no settlement I think

6  would be the alternative.

7      THE COURT:  Your concern is if somebody would come in

8  and say what?

9      MR. BAUGHMAN:  They could say the release is too

09:44:36  10  broad, they could say that, you know, they disagree with the

11  publication notice.

12      THE COURT:  Well, the release releases ADT from any

13  claims for anything that's made up until today or, from any

14  calls.

09:44:50  15      MR. BAUGHMAN:  Right, whether ADT made the calls,

16  whether someone ADT has no idea made the calls, whether ADT is

17  mentioned in the calls, anything that can in any way be traced

18  to ADT is released.  So it could be an independent --

19      THE COURT:  Well, there's got to be some date in which

09:45:10  20  that's the case.  Otherwise, it's true, it's just ongoing.

21      MR. BAUGHMAN:  Well, it's through the date of the

22  settlement agreement.

23      THE COURT:  Right.  I think that's right.

24      All right.  Anything else?

09:45:25  25      MR. BAUGHMAN:  I don't think so, Your Honor.  I mean,

MICHAEL P. SNYDER, Official Court reporter

1   the notice, it's publication notice.

2          THE COURT:  I'm comfortable with these.

3          MR. BAUGHMAN:  Some folks won't receive consideration,

4   but they do get -- I don't know if change in business practices

09:45:35   5   is the right term now, but it's set forth in detail in Section

6   4.6 where we are making certain requirements on our authorized

7   dealers relating to prerecorded messages.  So folks who don't

8   receive cash consideration will receive that.

9          THE COURT:  Let me ask this.  How did this ever happen

09:45:51   10   in the first place?  Why is it?  I wouldn't decide to -- I

11   mean, why would somebody decide to call, start calling people

12   and say "I'd like to sell you an ADT system"?

13          MR. BAUGHMAN:  They tried --

14          THE COURT:  Why if they haven't talked to ADT?

09:46:13   15          MR. BAUGHMAN:  Because I think what they do is they

16   try to land the customer and then sell it to somebody who will

17   sell it to somebody who will sell it to somebody who will sell

18   it to ADT.

19          THE COURT:  There are lots of security firms.

09:46:24   20          MR. BAUGHMAN:  They might sell it to Pinnacle, they

21   might sell it to somebody else as well.

22          These folks are independent lead generators who are

23   out there trying to sign people up for security systems which

24   they will sort of sell down the line, which under the

09:46:42   25   plaintiff's theory ends up eventually with ADT.

          MICHAEL P. SNYDER, Official Court reporter

1                THE COURT:  Okay.

2                MR. BAUGHMAN:  So there's a line of like five entities

3     involved with respect to the Desai call, for example.

4                So if it will help, for example, with respect to the

09:47:09   5     call involving Desai, the call was made by a company called

6     EMI, which is an independent lead generator.  Then they get

7     somebody on the phone and say "Hey, are you interested in a

8     security company?"  Then they try to transfer it to a company

9     called Paramount.  Paramount in turn tries to sell it to a

09:47:26  10     company called Savology.  Savology in turn tries to sell it to

11     an ADT dealer.

12                Now, our defense in the case is all along the lines

13     there are contracts which say you can't use prerecorded

14     messages, and that's why our defense in this case has been we

09:47:38  15     didn't have anything to do with these calls, we didn't

16     authorize them; in fact, we prohibited them.  But that's sort

17     of the scenario.  And the release will cover all of that for

18     every conceivable lead generator.

19                THE COURT:  That's fine.

09:47:48  20                MR. BAUGHMAN:  Okay.

21                THE COURT:  That's fine subject to somebody coming

22     back with something really convincing, but it sounds

23     appropriate to me.

24                MR. BAUGHMAN:  Very good.

09:47:56  25                THE COURT:  Okay.  What dates do you people want?

                 MICHAEL P. SNYDER, Official Court reporter

1    Okay.  So this is the date of preliminary approval.  Notices

2    are going to get published and go out to the extent they can go

3    out when, two weeks?

4            MR. MURPHY:  By March 12th, 2013, Your Honor.

09:48:30    5            THE COURT:  Okay.  And their time?

6            MR. MURPHY:  The objection exclusion date we have

7    running from today, Your Honor, would be May 10th, 2013.

8            THE COURT:  That's fine.  Okay.

9            MR. MURPHY:  And then final approval, Your Honor, I

09:48:45    10   think the earliest date would be June 10th of 2013.

11           THE COURT:  I usually put these at 1:30 on a Friday

12   afternoon.  Would June 21 be all right or are you trying to

13   avoid a Friday?

14           MR. MURPHY:  No, Friday is fine.

09:49:12    15           MR. BAUGHMAN:  Let me check.

16           The 21st is fine.

17           THE COURT:  All right.

18           MR. MURPHY:  Your Honor, then under the calendar we

19   have final approval submissions two weeks before that, so I

09:49:56    20   believe that would be June 7th.

21           THE COURT:  Okay.  That's good.

22           All right.  Thank you.

23           MR. BAUGHMAN:  Thank you, Your Honor.

24           MR. MURPHY:  Thank you, Your Honor.

09:50:01    25           MR. BURKE:  Thank you, Your Honor.

                MICHAEL P. SNYDER, Official Court reporter

1       Judge, should we email you a copy of the proposed

2   final approved order?

3           THE COURT:  We should have it.  Don't we?

4           THE CLERK:  No, it's not in the box.

09:50:11   5           THE COURT:  Okay.  There is some, how do they do that?

6           MR. BURKE:  I have a paper copy if that's more useful

7   for Your Honor.

8           THE COURT:  However you enter it.

9           THE CLERK:  You can send it in the proposed order.

09:50:26   10          MR. BURKE:  All right.

11          THE COURT:  There's some special thing that says

12  proposed order.  Either put it in there and leave the dates

13  blank or put the dates in and send the whole thing.

14          MR. BURKE:  Thank you.

09:50:36   15          MR. MURPHY:  Thank you.

16          MR. LEJA:  Thank you, Your Honor.

17      (Proceedings concluded.)

18                  C E R T I F I C A T E
        I, Michael P. Snyder, do hereby certify that the
19  foregoing is a complete, true, and accurate transcript of the
    proceedings had in the above-entitled case before the Honorable
20  ELAINE E. BUCKLO, one of the judges of said Court, at Chicago,
    Illinois, on February 19, 2013.

21

22                          /s/ Michael P. Snyder
                            Official Court Reporter
23                          United States District Court
                            Northern District of Illinois
                            Eastern Division

24

25


            MICHAEL P. SNYDER, Official Court reporter