**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT, | ) | |
| on behalf of themselves and others similarly situated, | ) | |
|     Plaintiffs, | ) | |
| | ) | Case No.: 1:11-cv-1925 |
|     v. | ) | |
| | ) | Judge Elaine E. Bucklo |
| ADT SECURITY SYSTEMS, INC., et al., | ) | |
|     Defendant. | ) | |
| ----------------------------------- | ) | |
| ADT SECURITY SYSTEMS, INC., | ) | |
|     Third-Party Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| MR. PETE TOLMAN; LEADS DIRECT | ) | |
| MARKETING; VOICE TEL CORP.; MR. | ) | |
| CHRISTOPHER LONG; EMI, INC.; CITY VIP, | ) | |
| LLC; JMB ENTERPRISES; DIRECT SAVINGS | ) | |
| USA, INC.;MR. OSCAR MONTENEGRO; | ) | |
| EVERSAFE SECURITY SYSTEMS, INC.; SAFE | ) | |
| STREETS USA, LLC; PARAMOUNT MEDIA | ) | |
| GROUP; THE ELEPHANT GROUP, INC.; and | ) | |
| UNKNOWN JOHN DOE DEFENDANTS I | ) | |
| THROUGH XX, | ) | |
|     Third-Party Defendants. | ) | |
| ----------------------------------- | ) | |
| SAFE STREETS USA, LLC, as successor to | ) | |
| EVERSAFE SECURITY SYSTEMS, INC., | ) | |
|     Cross-Claimant and Third-Party Plaintiff | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| DIRECT SAVINGS USA, INC.; MR. OSCAR | ) | |
| MONTENEGRO; DIRECT SAVINGS USA, | ) | |
|     Cross-Defendants and | ) | |
|     Third-Party Defendants. | ) | |
| _____ | ) | |

## THE ELEPHANT GROUP, INC.'S ANSWER TO ADT SECURITY SERVICES, INC.'S CORRECTED FIRST AMENDED THIRD PARTY COMPLAINT

NOW COMES Third-Party Defendant, The Elephant Group, Inc., ("Elephant Group") by and through undersigned counsel, and for its answer to Third-Party Plaintiff ADT Security Services, Inc.'s Corrected First Amended Third Party Complaint states as follows:

### PARTIES

1.    Upon information and belief, Plaintiff Vishva Desai ("Desai") is an individual who resides in the Northern District of Illinois.

**ANSWER: Elephant Group denies the allegations in ¶ 1 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

2.    Upon information and belief, Plaintiff Philip J. Charvat ("Charvat") is an individual who resides in Westerville, Ohio. Vishva Desai ("Desai") is an individual who resides in the Northern District of Illinois.

**ANSWER: Elephant Group denies the allegations in ¶ 2 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

3.    Defendant and Third Party Plaintiff ADT is a Delaware corporation with its principal place of business located at 1501 Yamato Road, Boca Raton, Florida 33431.

**ANSWER: Elephant Group denies the allegations in ¶ 3 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

4.    Upon information and belief, Third Party Defendant Mr. Pete Tolman ("Mr. Tolman") is an individual who resides at 4344 Gold Run Dr., Oakley, California

94561.

**ANSWER: Elephant Group denies the allegations in ¶ 4 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

5.     Upon information and belief, Third Party Defendant Leads Direct Marketing ("Leads Direct Marketing") is a California corporation with its corporate headquarters located at 4344 Gold Run Dr., Oakley, California 94561.

**ANSWER: Elephant Group denies the allegations in ¶ 5 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

6.     Upon information and belief, Third Party Defendant Voice Tel Corporation ("Voice Tel") is a California corporation with its corporate headquarters located at 4344 Gold Run Dr., Oakley, California 94561.

**ANSWER: Elephant Group denies the allegations in ¶ 6 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

7.     Upon information and belief, Third Party Defendant Mr. Christopher Long ("Mr. Long") is an individual who resides at 14281 Spring Vista Lane, Chino Hills, California 91709.

**ANSWER: Elephant Group denies the allegations in ¶ 7 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

8.     Upon information and belief, Third Party Defendant EMI, Inc. ("EMI") is a California corporation with its corporate headquarters located at 14281 Spring Vista Lane, Chino Hills, California 91709.

**ANSWER: Elephant Group denies the allegations in ¶ 8 for lack of**

knowledge or information sufficient to form a belief as to the truth therein.

9.     Upon information and belief, Third Party Defendant City VIP, LLC ("City VIP") is an Iowa corporation with its corporate headquarters located at 736 Federal St. Ste. 2420, Davenport, Iowa 52803.

**ANSWER: Elephant Group denies the allegations in ¶ 9 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

10.     Upon information and belief, Third Party Defendant JMB Enterprises ("JMB Enterprises") is an Iowa corporation with its corporate headquarters located at 736 Federal St. Ste. 2420, Davenport, Iowa 52803.

**ANSWER: Elephant Group denies the allegations in ¶ 10 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

11.     Upon information and belief, Third Party Defendant Direct Savings USA, Inc. ("Direct Savings") is a Florida corporation with its corporate headquarters located at 6245 Powerline Road, Fort Lauderdale, Florida 33309.

**ANSWER: Elephant Group denies the allegations in ¶ 11 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

12.     Upon information and belief, Third Party Defendant Mr. Oscar Montenegro ("Mr. Montenegro") is the President of Direct Savings USA, Inc., resides in the State of Florida, and is located at 5747 N. University Drive, Tamarac, Florida 33321.

**ANSWER: Elephant Group denies the allegations in ¶ 12 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

13.     Upon information and belief, Third Party Defendant the Unknown John

4

Doe Defendants ("John Doe Defendants") are business entities and/or individuals that were or are improperly and illegally using ADT's trademark and/or name in telemarketing calls without ADT's authorization. Each of the John Doe Defendants is subject to the jurisdiction of this Court by virtue of his, her, or its business in this jurisdiction. ADT does not presently have sufficient information to identify the John Doe Defendants but will do so through discovery or otherwise.

**ANSWER: Elephant Group denies the allegations in ¶ 13 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

14.     Mr. Tolman, Leads Direct Marketing, Voice Tel, Mr. Long, EMI, City VIP, JMB Enterprises, Direct Savings, Mr. Montenegro, and John Doe Defendants are collectively referred to as "Unauthorized Third Party Defendants." Counts I, II, V, VI, VII, and VIII in this First Amended Third Party Complaint are against the Unauthorized Third Party Defendants.

**ANSWER: Elephant Group denies the allegations in ¶ 14 for lack of knowledge or information sufficient to justify a reasonable belief as to the truth therein.**

15.     Third Party Defendant Eversafe Security Systems, Inc. is a New Jersey corporation with its principal place of business located at 475 Market St., 3rd Fl., Elmwood Park, New Jersey 07407.

**ANSWER: Elephant Group denies the allegations in ¶ 15 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

16.     Third Party Defendant Safe Streets USA, LLC ("Safe Streets") is a limited

liability company registered in Delaware with its principal place of business located at 5305 Raynor Road, Suite 100, Garner, NC 27529, and, upon information and belief, is the corporate successor of Eversafe Security Systems, Inc. Eversafe Security Systems, Inc. and Safe Streets USA, LLC are collectively referred to as "Eversafe." Count IX in this First Amended Third Party Complaint is against Eversafe.

**ANSWER: Elephant Group denies the allegations in ¶ 16 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

17.     Upon information and belief, Third Party Defendant Paramount Media Group ("Paramount") is a Florida organization with its corporate headquarters located at 4800 N. Federal Highway, Boca Raton, FL 33431. Counts III and IV in this First Amended Third Party Complaint are against Paramount.

**ANSWER: Elephant Group denies the allegations in ¶ 17 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

18.     Upon information and belief, Third Party Defendant The Elephant Group, Inc., d/b/a Saveology.com ("Elephant Group") is a Florida limited liability company with its corporate headquarters located at 3303 West Commercial Blvd., Ft. Lauderdale, Florida 33309. Counts X, XI, and XII in this First Amended Third Party Complaint are against Elephant Group.

**ANSWER: Elephant Group states that it is a Delaware corporation with offices at the address alleged. Except as specifically admitted, Elephant Group denies the allegations in ¶ 18.**

**VENUE AND JURISDICTION**

6

19.     This Court has supplemental jurisdiction of the joinder claims in this First Amended Third Party Complaint pursuant to 28 U.S.C. § 1367(a) because the claims asserted in this First Amended Third Party Complaint are part of the same case in controversy as the claims stated in Plaintiffs' Amended Complaint.

**ANSWER:  Elephant Group admits the allegations in ¶ 19 for jurisdictional purposes only.**

20.     The District Court also has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332 over some or all of the claims.

**ANSWER:  Elephant Group admits the allegations in ¶ 20 for jurisdictional purposes only.**

21.     This Court has jurisdiction over the Unauthorized Third Party Defendants and Third Party Defendants Eversafe, Elephant Group, and Paramount because they have engaged in conduct relevant to the claims at issue in this case in the State of Illinois and/or have systematic and continuous contacts with the State of Illinois and have otherwise availed themselves to the jurisdiction of Illinois.

**ANSWER:  Elephant Group admits the allegations in ¶ 21 for jurisdictional purposes only.**

22.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims at issue occurred within this district.

**ANSWER:  Elephant Group admits the allegations in ¶ 22 for venue purposes**

only.

## BACKGROUND AND PROCEDURAL HISTORY

23. On or about March 21, 2011, Plaintiff Vishva Desai commenced this action against ADT alleging that she received a call on her cellular phone purportedly made "on behalf of" Defendant ADT using a pre-recorded message and automatic dialing equipment.

**ANSWER: Elephant Group admits the allegations in ¶ 23.**

24. On or about April 18, 2011, Desai amended her complaint to incorporate plaintiff Philip Charvat's claims. A true and correct copy of Plaintiffs' Amended Complaint is attached hereto as Exhibit A.

**ANSWER: Elephant Group admits the allegations in ¶ 24.**

25. In their Amended Complaint, Plaintiffs claim that they received three separate, unsolicited telephone calls using pre-recorded messages, purportedly promoting the services of Defendant ADT and purportedly made "on behalf of" ADT. (*See* Exh. A at ¶¶ 47, 54, 74).

**ANSWER: Elephant Group admits the allegations in ¶ 25.**

26. Plaintiffs allege that the calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), and seek to represent a class of similarly situated persons. (*See* Exh. A at ¶¶ 9-19).

**ANSWER: Elephant Group admits the allegations in ¶ 26.**

27. On or about August 11, 2011, ADT filed its Answer and Affirmative Defenses to Plaintiffs' Amended Complaint.

**ANSWER: Elephant Group admits the allegations in ¶ 27.**

28.     None of the calls were made by ADT or "on behalf of" ADT and ADT denies all liability for the allegations in Plaintiffs' Amended Complaint.

**ANSWER: Elephant Group denies the allegations in ¶ 28 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

29.     As described below, ADT avers that any liability resulting from this lawsuit arises from the acts, errors, omissions, and/or other conduct of the Unauthorized Third Party Defendants, and Third Party Defendant Paramount, and that ADT is entitled to indemnity and/or contribution from Eversafe and Elephant Group.

**ANSWER: Elephant Group admits that ADT makes the referenced averment but denies any and all liability and denies that ADT is entitled to indemnity and/or contribution. Except as specifically admitted, Elephant Group denies the allegations in ¶ 29.**

## FACTUAL ALLEGATIONS

### *The Desai Call*

30.     Plaintiff Desai alleges that on or about February 27, 2011, she received a telephone call utilizing a pre-recorded message on her cellular telephone, and that the call was placed using an automated dialing system ("Desai Call"). (*See* Exh. A at ¶ 47).

**ANSWER: Elephant Group admits that Desai made the referenced allegation. Except as specifically admitted, Elephant Group denies the allegations in ¶ 30.**

31.     Desai's cellular phone number that received the call is 405-326-xxxx.

**ANSWER: Elephant Group denies the allegations in ¶ 31 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

32.    Desai claims that the caller identification for the Desai Call indicated that the Desai Call originated from the telephone number (574) 970-0866. (*See* Exh. A at ¶ 50).

**ANSWER: Elephant Group admits that Desai made the referenced allegation.  Except as specifically admitted, Elephant Group denies the allegations in ¶ 32.**

33.    Desai pleads that the message in the Desai Call mentions ADT's name. (*See* Exh. A at ¶ 49).

**ANSWER: Elephant Group admits that Desai made the referenced allegation.  Except as specifically admitted, Elephant Group denies the allegations in ¶ 33.**

34.    ADT did not initiate, make or authorize the Desai Call.

**ANSWER: Elephant Group denies the allegations in ¶ 34 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

35.    On or about April 8, 2011, plaintiff Desai served a subpoena on EngageTel, Inc. ("Engagetel"), a company to whom the number which placed the Desai Call had been assigned, requesting "all documents concerning, and communications with, any entity or entities associated with the 'Desai Call'" and "[a]ll documents concerning ADT Security Services, Inc., or any agent, subsidiary or affiliate thereof." In response to this subpoena, EngageTel stated it "does not have a relationship with ADT Security" and that

the "end user" of the telephone number associated with the Desai Call was EMI, Inc. and its president Christopher Long.

**ANSWER: Elephant Group denies the allegations in ¶ 35 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

36.    ADT has no association with EMI and ADT did not authorize it to conduct telemarketing on its behalf.

**ANSWER: Elephant Group denies the allegations in ¶ 36 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

37.    EMI is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 37 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

38.    ADT has no association with Mr. Long and ADT did not authorize him to conduct telemarketing on its behalf.

**ANSWER: Elephant Group denies the allegations in ¶ 38 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

39.    Mr. Long is not authorized to conduct any activities on behalf of ADT or to hold himself out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 39 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

40.    Upon information and belief, EMI initiated or made the Desai Call.

**ANSWER: Elephant Group denies the allegations in ¶ 40 for lack of**

**knowledge or information sufficient to form a belief as to the truth therein.**

41. Upon information and belief, EMI initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 41 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

42. Upon information and belief, Mr. Christopher Long initiated or made the Desai Call.

**ANSWER: Elephant Group denies the allegations in ¶ 42 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

43. Upon information and belief, Mr. Christopher Long initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 43 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

44. Upon information and belief, some of the Unknown John Doe Defendants initiated or made the Desai Call.

**ANSWER: Elephant Group denies the allegations in ¶ 44 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

45. Upon information and belief, some of the Unknown John Doe Defendants initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 45 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

46. None of the John Doe Defendants were authorized to conduct any activities on behalf of ADT or to hold themselves out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 46 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

47.    Upon information and belief, any liability resulting from the Desai Call or similar calls arises from the acts, errors, omissions, and/or other conduct of EMI.

**ANSWER: Elephant Group denies the allegations in ¶ 47 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

48.    Upon information and belief, any liability resulting from the Desai Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Mr. Long.

**ANSWER: Elephant Group denies the allegations in ¶ 48 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

49.    Upon information and belief, any liability resulting from the Desai Call or similar calls arises from the acts, errors, omissions, and/or other conduct of the Unknown John Doe Defendants.

**ANSWER: Elephant Group denies the allegations in ¶ 49 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

*Facts Pertaining to Elephant Group and Paramount*

50. The terms of ADT's relationship with Elephant Group is set forth in an agreement dated May 28, 2008 ("Elephant Group Agreement"). Pursuant to the Elephant Group Agreement, Elephant Group engages in marketing activity to promote leads for ADT Authorized Dealers.

**ANSWER: Elephant Group admits to the existence of the agreement dated May 28, 2008 which is in writing and is the best evidence of its content. To the**

**extent this allegation mischaracterizes the agreement, those allegations are denied. Except as specifically admitted, Elephant Group denies the allegations in ¶ 50.**

51.     Pursuant to the terms of the Elephant Group Agreement, Elephant Group is not permitted to conduct any unsolicited telemarketing services involving ADT's products or services. The only circumstances in which Elephant Group may make telephone calls involving ADT's services is to respond by telephone to consumer inquiries (received by internet, telephone, email, or other electronic means) regarding ADT or ADT Dealer's goods and services.

**ANSWER: Elephant Group admits to the existence of the agreement dated May 28, 2008 which is in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied. Except as specifically admitted, Elephant Group denies the allegations in ¶ 51.**

52.     Pursuant to the terms of the Elephant Group Agreement, when Elephant Group makes telephone calls to respond to consumer inquiries, it is required to follow all federal, state and local laws regarding telemarketing. Among other things, the Elephant Group Agreement states that Elephant Group "may not use prerecorded messages in connection with Telemarketing Services on ADT's behalf without prior written approval from ADT." ADT has never given Elephant Group approval of any kind to use prerecorded messages in connection with any telemarketing services.

**ANSWER: Elephant Group admits to the existence of the agreement dated May 28, 2008 which is in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied.**

**Except as specifically admitted, Elephant Group denies the allegations in ¶ 52.**

53.    The Elephant Group Agreement contains an Indemnity Provision, Section 6(b), which states, "Elephant Group shall indemnify, defend and hold ADT, its Affiliates, officers, directors, employees and agents (collectively the "ADT Group") harmless from and against any and all damages, costs (including court costs and attorneys' fees), losses, fees and expenses suffered by the ADT Group resulting from or relating to, any negligence or intentional torts by Elephant Group, its Affiliates, officers, directors, employees and agents, in connection with or related to this Agreement, except to the extent that any such claim or action is due to any negligent acts, omissions, wrongful acts, fault or willful misconduct of ADT, its employees, agents or invitees."

**ANSWER: Elephant Group admits to the existence of the agreement dated May 28, 2008 which is in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied.  Except as specifically admitted, Elephant Group denies the allegations in ¶ 53.**

54.    Section 23.F of the Elephant Group Agreement further provides that "Elephant Group agrees to indemnify, defend and hold ADT harmless from and against any claims, actions, proceedings and damages, including reasonable attorney's fees and costs, and all monetary penalties or costs imposed upon ADT arising out of Elephant Group's breach of" the telemarketing provisions of the Elephant Group Agreement.

**ANSWER: Elephant Group admits to the existence of the agreement dated May 28, 2008 which is in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied.  Except**

as specifically admitted, Elephant Group denies the allegations in ¶ 54.

55.     Upon information and belief, Elephant Group and Paramount are parties to an Affiliate Agreement whereby Paramount may conduct certain marketing of ADT products for Elephant Group. ADT is not a party to the contract between Elephant Group and Paramount, was not involved in the negotiation or course of performance of the contract, and had no involvement in Elephant Group's selection of Paramount to perform any work, nor did it approve Elephant Group's appointment of Paramount.

**ANSWER: Elephant Group admits to the existence of an agreement between Saveology and Paramount which is in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied. Except as specifically admitted, Elephant Group denies the allegations in ¶ 55.**

56.     Pursuant to the terms of the agreement between Paramount and Elephant Group, Paramount is prohibited from engaging in any unsolicited telemarketing involving ADT's products or services and is prohibited from making any telephone calls involving ADT that utilize pre-recorded messages.

**ANSWER: Elephant Group admits to the existence of an agreement between Saveology and Paramount which is in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied. Except as specifically admitted, Elephant Group denies the allegations in ¶ 56.**

57.     In the course of Plaintiffs' ongoing discovery regarding their claims against

ADT, Third Party Defendant EMI produced certain documents entitled "Transfer Service Orders" which mention a company called "Paramount Media Group." Upon determining that Paramount Media Group was in fact Paramount, ADT demanded that Elephant Group conduct an investigation into any connection between Paramount and EMI.

**ANSWER: Elephant Group denies the allegations in ¶ 57 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

58.     According to Elephant Group's investigation, Paramount claims that sometime in late 2010 or early 2011, EMI contacted Paramount and proposed to provide leads to Paramount from what EMI represented was its own opt-in database of customers for generic security leads (i.e., not leads involving ADT specifically, but security services generally). According to Elephant Group's investigation, Paramount claims it agreed to use EMI's services. Paramount claims that EMI was to make telephone contact with the opt-ins through a live telephone operator, who would then "warm transfer" the calls to a live operator at Paramount for a fee.

**ANSWER: Elephant Group denies the allegations in ¶ 58.**

59.     ADT had no involvement in, no knowledge of, and did not approve any of the activities taking place between EMI and Paramount. To the extent that Paramount utilized EMI to conduct any telemarketing services involving ADT's products or services, Paramount had no authority to do so.

**ANSWER: Elephant Group denies the allegations in ¶ 59.**

60.     After learning the results of Elephant Group's investigation regarding Paramount, ADT instructed Elephant Group to cease using Paramount for any activities

involving ADT, which Elephant Group did.

**ANSWER: Elephant Group admits ADT instructed Elephant Group to cease using Paramount for any activities involving ADT, which Elephant Group did. Except as specifically admitted, Elephant Group denies the allegations in ¶ 60.**

### *First Charvat Call*

61.     Plaintiff Charvat alleges that on or about September 7, 2010, he received a pre-recorded message on his residential phone line ("First Charvat Call"). (*See* Exh. A at ¶ 54).

**ANSWER: Elephant Group admits that Charvat made the referenced allegation.  Except as specifically admitted, Elephant Group denies the allegations in ¶ 61.**

62.     Charvat's residential telephone number that received the First Charvat Call is 614-895-xxxx.

**ANSWER: Elephant Group denies the allegations in ¶ 62 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

63.     Charvat alleges that the caller identification for the First Charvat Call indicated that the call originated from the telephone number (401) 558-0010.

**ANSWER: Elephant Group admits that Charvat made the referenced allegation.  Except as specifically admitted, Elephant Group denies the allegations in ¶ 63.**

64.     Charvat alleges the First Charvat Call promoted ADT's goods and services. (*See* Exh. A at ¶ 55).

**ANSWER: Elephant Group admits that Charvat made the referenced allegation. Except as specifically admitted, Elephant Group denies the allegations in ¶ 64.**

65. ADT did not initiate, make or authorize the First Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 65 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

66. On or about April 27, 2011, plaintiff Charvat served a subpoena on EngageTel, a company to whom the number which placed the First Charvat Call had been assigned, requesting all documents relating to the First Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 66 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

67. On or about May 10, 2011, EngageTel responded to the subpoena by naming Leads Direct Marketing as the company that used the phone number associated with the First Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 67 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

68. Upon information and belief, Leads Direct Marketing is associated with Voice Tel Corporation and both companies are owned by Mr. Pete Tolman.

**ANSWER: Elephant Group denies the allegations in ¶ 68 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

69. ADT has no association with Mr. Tolman and ADT did not authorize him to conduct telemarketing on its behalf.

**ANSWER: Elephant Group denies the allegations in ¶ 69 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

70.  Mr. Tolman is not authorized to conduct any activities on behalf of ADT or to hold himself out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 70 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

71.  ADT has no association with Leads Direct Marketing and ADT did not authorize it to conduct telemarketing on its behalf.

**ANSWER: Elephant Group denies the allegations in ¶ 71 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

72.  Leads Direct Marketing is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 72 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

73.  ADT has no association with Voice Tel Corporation and ADT did not authorize it to conduct telemarketing on its behalf.

**ANSWER: Elephant Group denies the allegations in ¶ 73 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

74.  Voice Tel Corporation is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 74 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

75.    Upon information and belief, Mr. Pete Tolman initiated or made the First Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 75 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

76.    Upon information and belief, Mr. Pete Tolman initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 76 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

77.    Upon information and belief, Leads Direct Marketing initiated or made the First Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 77 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

78.    Upon information and belief, Leads Direct Marketing initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 78 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

79.    Upon information and belief, Voice Tel initiated or made the First Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 79 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

80.    Upon information and belief, Voice Tel initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 80 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

81.     Upon information and belief, some of the John Doe Defendants initiated or made the First Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 81 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

82.     Upon information and belief, some of the John Doe Defendants initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 82 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

83.     None of the John Doe defendants are authorized to conduct any activities on behalf of ADT or to hold themselves out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 83 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

84.     Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Mr. Pete Tolman.

**ANSWER: Elephant Group denies the allegations in ¶ 84 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

85.     Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Leads Direct Marketing.

22

**ANSWER: Elephant Group denies the allegations in ¶ 85 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

86.     Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Voice Tel Corporation.

**ANSWER: Elephant Group denies the allegations in ¶ 86 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

87.     Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of some of the Unknown John Doe Defendants.

**ANSWER: Elephant Group denies the allegations in ¶ 87 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

88.     Charvat further alleges that when he received the First Charvat Call he followed the instructions of the pre-recorded message to reach a live operator and that the live operator informed him that he worked for Direct Savings USA, Inc. (*See* Exh. A at ¶ 59).

**ANSWER: Elephant Group denies the allegations in ¶ 88 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

89.     ADT has no association with Direct Savings USA, Inc. and ADT did not authorize Direct Savings USA, Inc. to conduct telemarketing on its behalf.

**ANSWER: Elephant Group denies the allegations in ¶ 89 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

90.     Direct Savings USA, Inc. is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 90 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

91.     Upon information and belief, Mr. Oscar Montenegro is the President of Direct Savings USA, Inc.

**ANSWER: Elephant Group denies the allegations in ¶ 91 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

92.     ADT has no association with Mr. Oscar Montenegro and ADT did not authorize him to conduct telemarketing on its behalf.

**ANSWER: Elephant Group denies the allegations in ¶ 92 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

93.     Mr. Oscar Montenegro is not authorized to conduct any activities on behalf of ADT or to hold himself out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 93 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

94.     Upon information and belief, Mr. Oscar Montenegro initiated or made the First Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 94 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

95.     Upon information and belief, Mr. Oscar Montenegro initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 95 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

96.  Upon information and belief, Direct Savings USA, Inc. initiated or made the First Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 96 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

97.  Upon information and belief, Direct Savings USA, Inc. initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 97 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

98.  Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Mr. Oscar Montenegro.

**ANSWER: Elephant Group denies the allegations in ¶ 98 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

99.  Upon information and belief, any liability resulting from the First Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of Direct Savings USA, Inc.

**ANSWER: Elephant Group denies the allegations in ¶ 99 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

*Facts Pertaining to Eversafe*

100.  Eversafe is an Authorized Dealer of ADT. Pursuant to the terms of the

Authorized Dealer Agreement between ADT and Eversafe, Eversafe is an independent contractor and not an agent of ADT.

**ANSWER: Elephant Group denies the allegations in ¶ 100 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

101.   The Authorized Dealer Agreement between ADT and Eversafe requires Eversafe to follow all federal state and local laws concerning their activities, including all laws concerning telemarketing.

**ANSWER: Elephant Group denies the allegations in ¶ 101 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

102.   The Authorized Dealer Agreement contains an Indemnity Provision that states "[Eversafe] and Owner shall, jointly and severally, indemnify and hold ADT, its respective Affiliates, officers, directors, employees and agents (collectively the 'ADT Group') harmless from and against any and all damages, costs (including court costs and attorneys' fees (including costs of in-house attorney services)), losses, fees and expenses suffered by the ADT group resulting from (i) Authorized Dealer's failure to comply with any of the terms and conditions of this Agreement, the Alarm Services Agreements, and the Servicing Agreements; and (ii) any claims by a third party(ies) arising from or relating to [Eversafe's] (or any Representative of Affiliate thereof) or Owner's action or conduct related to or arising from this Agreement."

**ANSWER: Elephant Group denies the allegations in ¶ 102 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

103.   On October 7, 2010, Eversafe's owner, Todd Herman, signed and notarized

an ADT Authorized Dealer Certification of Telemarketing Compliance, which is incorporated into the Authorized Dealer Agreement.

**ANSWER: Elephant Group denies the allegations in ¶ 103 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

104.   Section (i) of the Certification of Telemarketing Compliance states "[Eversafe] has established and implemented effective written policies and procedures for compliance with the requirements of the Telephone Consumer Protection Act of 1991 ("TCPA"), the Telemarketing Sales Rule ("TSR"), and of all other federal, state and local laws, statutes ordinances, rules and regulations regulating telemarketing and advertising."

**ANSWER: Elephant Group denies the allegations in ¶ 104 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

105.   Section (ii) of the Certification of Telemarketing Compliance states "[Eversafe] maintains written telemarketing policies and procedures for compliance with the TCPA and the TSR; provides a copy of its telemarketing policy to consumers upon request; has trained its telemarketing personnel on the requirements of the TCPA and the TSR; and has established a reliable procedure for recording Do-Not-Call ("DNC") requests for ensuring that individuals who request that they not be called are in fact not called in the future."

**ANSWER: Elephant Group denies the allegations in ¶ 105 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

106.   Section (vii) of the Certification of Telemarketing Compliance states "[Eversafe] will always clearly and unequivocally identify itself only by its true and

correct company name and will never, expressly or impliedly, identify itself as ADT, as an ADT Authorized Dealer or utilize the ADT name, trade name, trademark, service mark, or any direct or indirect reference to ADT in any telemarketing advertising."

**ANSWER: Elephant Group denies the allegations in ¶ 106 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

107.    Section (ix) of the Certification of Telemarketing Compliance states "[t]o the extent that Dealer uses and third-parties, including but not limited to any employees, agents or subcontractors, to perform any telemarketing or advertising services for [Eversafe], [Eversafe] will ensure that such third-parties will perform such services in accordance with this certification, and [Eversafe] assumes all responsibility for the acts or omissions of such third parties."

**ANSWER: Elephant Group denies the allegations in ¶ 107 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

108.    Section (x) of the Certification of Telemarketing Compliance states "[Eversafe] agrees to indemnify and hold harmless ADT, and its officers, directors, employees, agents, parents and subsidiaries, against any and all claims losses, costs, damages, expenses, fines, penalties, and assessments, including but not limited to attorneys' fees and court costs, of whatever kind and nature, resulting directly or indirectly from [Eversafe's] breach of any of the above covenants, representations, warranties and certifications"

**ANSWER: Elephant Group denies the allegations in ¶ 108 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

109.    Eversafe had a contractual relationship with Direct Savings and its president Mr. Montenegro. ADT is not a party to the contract, was not involved in the negotiation or course of performance of the contract, and had no involvement in Eversafe's selection of Direct Savings to perform any work for Eversafe.

**ANSWER: Elephant Group denies the allegations in ¶ 109 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

110.    The contract between Eversafe and Direct Savings required Direct Savings to comply with the TCPA and forbade Direct Savings from using ADT's name in any telemarketing or using pre-recorded messages in telemarketing without Eversafe's approval.

**ANSWER: Elephant Group denies the allegations in ¶ 110 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

### *Second Charvat Call*

111.    Charvat also alleges that on or about January 18, 2011, he received a second call containing a pre-recorded message on his residential phone line ("Second Charvat Call"). (*See* Exh. A at ¶74).

**ANSWER: Elephant Group admits that Charvat made the referenced allegation.  Except as specifically admitted, Elephant Group denies the allegations in ¶ 111.**

112.    Charvat's residential telephone number that received the Second Charvat Call is 614-895-xxxx.

**ANSWER: Elephant Group denies the allegations in ¶ 112 for lack of**

knowledge or information sufficient to form a belief as to the truth therein.

113.    Charvat alleges that the caller identification for the Second Charvat Call indicated that the call originated from the telephone number (918)-442-0937.

**ANSWER: Elephant Group admits that Charvat made the referenced allegation.  Except as specifically admitted, Elephant Group denies the allegations in ¶ 113.**

114.    Charvat alleges the Second Charvat Call promoted ADT's goods and services. (*See* Exh. A at ¶ 75).

**ANSWER: Elephant Group admits that Charvat made the referenced allegation.  Except as specifically admitted, Elephant Group denies the allegations in ¶ 114.**

115.    ADT did not initiate, make or authorize the Second Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 115 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

116.    On or about March 29, 2011, plaintiff Charvat served a subpoena on Fulltel, Inc. ("Fulltel"), whom records indicated was assigned the phone number that made the Second Charvat Call, for all documents identifying what entity or entities initiated the Second Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 116 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

117.    On or about April 22, 2011, FullTel responded to the subpoena by stating numbers used by its customer TM Caller ID.

**ANSWER: Elephant Group denies the allegations in ¶ 117 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

118. On or about April 28, 2011, Plaintiffs served a subpoena on TM Caller ID requesting all documents relating to the Second Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 118 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

119. On or about May 19, 2011, TM Caller ID responded to the subpoena by stating the telephone number associated with the Second Charvat Call was used by City VIP, LLC.

**ANSWER: Elephant Group denies the allegations in ¶ 119 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

120. Upon information and belief, City VIP shares office space with JMB Enterprises, which is described on its website as "one of the top Voice Message Broadcast provider [sic] available today. We have been in this industry for over ten years, [and] are committed to getting your message out to the greatest number of people in the least amount of time."

**ANSWER: Elephant Group denies the allegations in ¶ 120 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

121. ADT has no association with City VIP and ADT did not authorize it to conduct telemarketing on its behalf.

**ANSWER: Elephant Group denies the allegations in ¶ 121 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

122.    City VIP is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 122 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

123.    ADT has no association with JMB Enterprises and ADT did not authorize it to conduct telemarketing on its behalf.

**ANSWER: Elephant Group denies the allegations in ¶ 123 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

124.    JMB Enterprises is not authorized to conduct any activities on behalf of ADT or to hold itself out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 124 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

125.    Upon information and belief, City VIP initiated or made the Second Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 125 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

126.    Upon information and belief, City VIP initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 126 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

127.    Upon information and belief, JMB Enterprises initiated or made the Second Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 127 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

128.   Upon information and belief, JMB Enterprises initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 128 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

129.   Upon information and belief, some of the Unknown John Doe Defendants initiated or made the Second Charvat Call.

**ANSWER: Elephant Group denies the allegations in ¶ 129 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

130. Upon information and belief, some of the Unknown John Doe Defendants initiated or made similar calls to others.

**ANSWER: Elephant Group denies the allegations in ¶ 130 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

131.   None of the John Doe defendants are authorized to conduct any activities on behalf of ADT or to hold themselves out as associated with ADT in any way.

**ANSWER: Elephant Group denies the allegations in ¶ 131 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

132.   Upon information and belief, any liability resulting from the Second Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of City VIP.

**ANSWER: Elephant Group denies the allegations in ¶ 132 for lack of**

knowledge or information sufficient to form a belief as to the truth therein.

133.    Upon information and belief, any liability resulting from the Second Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of JMB Enterprises.

**ANSWER: Elephant Group denies the allegations in ¶ 133 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

134.    Upon information and belief, any liability resulting from the Second Charvat Call or similar calls arises from the acts, errors, omissions, and/or other conduct of some of the Unknown John Doe Defendants.

**ANSWER: Elephant Group denies the allegations in ¶ 134 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

### *Unauthorized Third Party Defendants' Actions In Holding Themselves Out As Associated In Some Way With ADT Are False, Deceptive, And Unlawful.*

135.    Today, no less than 7.4 million commercial, government and residential customers throughout the world receive security services provided under ADT's name. In the United States alone, ADT receives over 16 million alarm signals per year warning of a threat to people and property.

**ANSWER: Elephant Group denies the allegations in ¶ 135 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

136.    Purchasers rely upon ADT's name for high-quality, reliable security services and trust their safety and personal property to security services provided under ADT's name.

**ANSWER: Elephant Group denies the allegations in ¶ 136 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

137.    The Unauthorized Third Party Defendants who initiated the Desai Call, First Charvat Call, and Second Charvat Call engaged in false, misleading and deceptive business practices by making calls to Desai, Charvat and, upon information and belief, others, and holding themselves out as being associated in some way with ADT when, in fact, those entities are not associated with ADT, have no right to conduct any business on behalf of ADT, no right to telemarket on behalf of ADT, and no right to engage in telemarketing using pre-recorded messages. To the contrary, to the extent that these entities engaged in telemarketing activities that violated the TCPA, they were acting contrary to ADT's expressly stated policy and instructions that any telemarketing involving ADT's products and services be done in strict accordance with the TCPA and other laws.

**ANSWER: Elephant Group denies the allegations in ¶ 137 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

138.    The Unauthorized Third Party Defendants initiated or made each of the calls willfully and with a wanton disregard for ADT's rights.

**ANSWER: Elephant Group denies the allegations in ¶ 138 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

139.    ADT has been and will continue to be irreparably harmed if the Unauthorized Third Party Defendants are permitted to continue to engage in unlawful business practices and deceit.

**ANSWER: Elephant Group denies the allegations in ¶ 139 for lack of knowledge or information sufficient to form a belief as to the truth therein.**

## COUNT I – INDEMNIFICATION
### (AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

**The allegations in this Count are not directed toward Elephant Group. Therefore, no answer is required.**

## COUNT II – CONTRIBUTION
### (AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

**The allegations in this Count are not directed toward Elephant Group. Therefore, no answer is required.**

## COUNT III – INDEMNIFICATION
### (AGAINST PARAMOUNT)

**The allegations in this Count are not directed toward Elephant Group. Therefore, no answer is required.**

## COUNT IV – CONTRIBUTION
### (AGAINST PARAMOUNT)

**The allegations in this Count are not directed toward Elephant Group. Therefore, no answer is required.**

## COUNT V – UNFAIR COMPETITION UNDER
## THE LANHAM ACT 15 U.S.C. § 1125(A) ET SEQ.
### (AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

**The allegations in this Count are not directed toward Elephant Group. Therefore, no answer is required.**

## COUNT VI – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT - FLA. STAT. § 501.201 et seq. AND/OR THE COMMON LAW OR OTHER APPLICABLE STATE STATUTES

(AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

**The allegations in this Count are not directed toward Elephant Group. Therefore, no answer is required.**

## COUNT VII: COMMERCIAL DISPARAGEMENT
(AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

**The allegations in this Count are not directed toward Elephant Group. Therefore, no answer is required.**

## COUNT VIII: INJUNCTIVE RELIEF
(AGAINST UNAUTHORIZED THIRD PARTY DEFENDANTS)

**The allegations in this Count are not directed toward Elephant Group. Therefore, no answer is required.**

## COUNT IX: CONTRACTUAL INDEMNIFICATION
(AGAINST EVERSAFE)

**The allegations in this Count are not directed toward Elephant Group. Therefore, no answer is required.**

## COUNT X: CONTRACTUAL INDEMNIFICATION
(AGAINST ELEPHANT GROUP)

197.   Pursuant to the terms of the Elephant Group Agreement, Elephant Group is not permitted to conduct any unsolicited telemarketing services involving ADT's products or services. The only circumstances in which Elephant Group may make telephone calls involving ADT's services is to respond by telephone to consumer inquiries (received by internet, telephone, email or other electronic means) regarding ADT or ADT Dealer's goods and services.

**ANSWER: Elephant Group admits to the existence of the agreement which is**

**in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied. Except as specifically admitted, Elephant Group denies the allegations in ¶ 197.**

198.  Pursuant to the terms of the Elephant Group Agreement, when Elephant Group makes telephone calls to respond to consumer inquiries, it is required to follow all federal, state and local laws regarding telemarketing. Among other things, the agreement states that Elephant Group "may not use prerecorded messages in connection with Telemarketing Services on ADT's behalf without prior written approval from ADT." ADT has never given Elephant Group approval of any kind to use prerecorded messages in connection with any telemarketing services.

**ANSWER: Elephant Group admits to the existence of the agreement which is in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied. Except as specifically admitted, Elephant Group denies the allegations in ¶ 198.**

199.   The Elephant Group Agreement contains an Indemnity Provision – Section 6(b) - which states, "Elephant Group shall indemnify, defend and hold ADT, its Affiliates, officers, directors, employees and agents (collectively the "ADT Group") harmless from and against any and all damages, costs (including court costs and attorneys' fees), losses, fees and expenses suffered by the ADT Group resulting from or relating to, any negligence or intentional torts by Elephant Group, its Affiliates, officers, directors, employees and agents, in connection with or related to this Agreement, except to the extent that any such claim or action is due to any negligent acts, omissions,

38

wrongful acts, fault or willful misconduct of ADT, its employees, agents or invitees."

**ANSWER: Elephant Group admits to the existence of the agreement which is in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied. Except as specifically admitted, Elephant Group denies the allegations in ¶ 199.**

200.   Section 23.F of the Elephant Group Agreement further provides that "Elephant Group agrees to indemnify, defend and hold ADT harmless from and against any claims, actions, proceedings and damages, including reasonable attorney's fees and costs, and all monetary penalties or costs imposed upon ADT arising out of Elephant Group's breach of" the telemarketing provisions of the Elephant Group Agreement.

**ANSWER: Elephant Group admits to the existence of the agreement which is in writing and is the best evidence of its content. To the extent this allegation mischaracterizes the agreement, those allegations are denied. Except as specifically admitted, Elephant Group denies the allegations in ¶ 200.**

201.   Pursuant to the terms of the Elephant Group Agreement, Elephant Group is required to hold harmless ADT and indemnify ADT, keep indemnified, and exonerate ADT from any loss, claim, or expense stemming from any conduct by it or any third parties with which it is associated, including Paramount.

**ANSWER: Elephant Group denies the allegations in ¶ 201.**

202.   The First Amended Complaint is premised, at least in part, on allegations arising from the conduct of EMI, with which Paramount had a relationship which, in turn, had a contractual relationship with Elephant Group. To the extent that any of the liability

in this case is premised on the conduct, actions or omissions of Elephant Group or EMI, Paramount or third parties with which Elephant Group contracted, Elephant Group is required to indemnify ADT for all losses, liability, attorneys fees and other expenses associated with this action.

**ANSWER: Elephant Group denies the allegations in ¶ 202.**

203.    To date, Elephant Group has not agreed to indemnify ADT for any amounts associated with this litigation, resulting in harm to ADT.

**ANSWER: Elephant Group denies the allegation in ¶ 203.**

**COUNT XI – INDEMNIFICATION**
(AGAINST ELEPHANT GROUP)

This Count was dismissed per Court Order. *Dkt. 217*.

**COUNT XII – CONTRIBUTION**
(AGAINST ELEPHANT GROUP)

This Count was dismissed per Court Order. *Dkt. 217*.

WHEREFORE, Elephant Group respectfully requests this Answer be deemed good and sufficient, that the lawsuit be dismissed and for all other general and equitable relief.

Respectfully submitted,


/s/ Daniel W. Pisani
James K. Schultz
Daniel W. Pisani
Sessions Fishman Nathan & Israel, LLC
55 West Monroe Street, Suite 1120
Chicago, Illinois 60603
Telephone:  (312) 578-0990
Facsimile: (312) 578-0991
jschultz@sessions-law.biz
dpisani@sessions-law.biz

*Attorneys for Elephant Group, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 10, 2014 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.

*/s/ Daniel W. Pisani*