Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    CENTRAL DISTRICT OF CALIFORNIA

4    SANTA ANA DIVISION

5    Case No. 8:12-bk-11252-RK

6    - - - - - - - - - - - - - - - - - - - -x

7    In the Matter of:

8

9    CHRISTOPHER THOMAS LONG,

10

11                  Debtor.

12

13   - - - - - - - - - - - - - - - - - - - -x

14

15              Section 341 Meeting of Creditors

16

17

18

19

20

21

22

23

24

25

Page 2

1  A P P E A R A N C E S :

2  BURD & NAYLOR

3       Chapter 7 Trustee

4       PO Box 504

5       Santa Ana, CA 92702

6

7  BY:  KAREN S. NAYLOR, ESQ.

8

9  BURKE LAW OFFICES, LLC

10      Attorneys for Creditor

11      155 North Michigan Avenue

12      Suite 9020

13      Chicago, IL 60601

14

15  BY:  ALEXANDER H. BURKE, ESQ.

16

17  LAKE FOREST BANKRUPTCY

18      Attorneys for Creditor

19      27031 Vista Terrace #201

20      Lake Forest, CA 92630

21

22  BY:  ANERIO V. ALTMAN, ESQ.

23

24

25

Page 3

1              P R O C E E D I N G S

2           MS. NAYLOR:  The next matter, Christopher Long.

3     Creditors on this case?  And can I have you both -- sorry.

4           Can I have you, sir, raise your right hand.

5        (Debtor sworn)

6           MS. NAYLOR:  Okay.  And sir, can I have you state your

7     name and your address for me, please?

8           MR. LONG:  Yeah, it's Christopher Thomas Long, 20402

9     Santa Ana Avenue, Newport Beach, California 92660, number 19.

10          DEBTOR'S COUNSEL:  Migda (ph.) Su (ph.) appearing for

11    the debtor.

12          MS. NAYLOR:  For the record, the debtor has provided

13    me with his Social Security card.  The number on the Social

14    Security is the same as that set forth in the notice of

15    commencement.  And sir, did you sign that I'm the -- or did you

16    review the U.S. Trustee handout?

17          MR. LONG:  Yes.

18          MS. NAYLOR:  Did you sign your bankruptcy documents?

19          MR. LONG:  Yes.

20          MS. NAYLOR:  Did you review them carefully before you

21    signed them?

22          MR. LONG:  Yes.

23          MS. NAYLOR:  Are you personally familiar with the

24    information contained in these documents?

25          MR. LONG:  Yes.

Page 4

1          MS. NAYLOR:  To the best of your knowledge, is

2     everything in here true and correct?

3          MR. LONG:  Yes.

4          MS. NAYLOR:  Did you list everything you own?

5          MR. LONG:  Yes.

6          MS. NAYLOR:  Did you list all your creditors?

7          MR. LONG:  Yes.

8          MS. NAYLOR:  Have you ever filed bankruptcy before?

9          MR. LONG:  No.

10          MS. NAYLOR:  Do you know of any changes at all that

11     need to be made to your documents?

12          MR. LONG:  Not that I know of.  No.

13          MS. NAYLOR:  Okay.  The DH Concepts LLC, what's that?

14          MR. LONG:  It used to be a debt consolidation firm.

15     But we've been out of business for a few years.  But we have

16     some residual income coming in a month, about 300 dollars,

17     roughly.

18          MS. NAYLOR:  And are you sole shareholder of that?

19          MR. LONG:  Um-hum.

20          MS. NAYLOR:  So you're receiving about 300 dollars a

21     month?

22          MR. LONG:  If that, yeah.  But that's --

23          MS. NAYLOR:  There's no more other -- that's not going

24     to increase?

25          MR. LONG:  No.

Page 5

1              MS. NAYLOR:  Okay.  First Source Merchants?  What's

2      that?

3              MR. LONG:  It's a merchant card processing company.

4              MS. NAYLOR:  Merchant card processing?

5              MR. LONG:  Yeah.

6              MS. NAYLOR:  Okay.

7              MR. LONG:  (Indiscernible).

8              MS. NAYLOR:  Is that still operating?

9              MR. LONG:  Yes.

10              MS. NAYLOR:  And what does it do?

11              MR. LONG:  What is it -- I'm sorry?

12              MS. NAYLOR:  And so -- I'm sorry --

13              MR. LONG:  I'm not involved anymore.  My partnership's

14      down to like ten percent, if that.  And it's in the red.

15              MS. NAYLOR:  So have you received any income from

16      that?

17              MR. LONG:  No.

18              MS. NAYLOR:  When was the last time you received any

19      income?

20              MR. LONG:  I never received income.

21              MS. NAYLOR:  And how -- it says here that you have a

22      hundred percent interest, but you say you only have ten?

23              MR. LONG:  When I -- the point -- when I filled it

24      out, it was.  And then my partners said that I hadn't worked

25      there in a few months, so they basically said just ten percent.

Page 6

1    And I thought that was changed.  I notified counsel of that.

2           MS. NAYLOR:  How did -- they just unilaterally told

3    you, you went from a hundred percent -- how did your --

4           MR. LONG:  Because I was working full-time there, and

5    then I didn't work there anymore.  I was legally --

6           MS. NAYLOR:  But how could you have a hundred percent

7    and then somebody else tell you you went down?

8           MR. LONG:  I never -- it was a hundred percent legally

9    on paper, but it was always as partners that were -- you know,

10   were on the paperwork.  But we had agreements.

11          MS. NAYLOR:  Has that company ever made money?

12          MR. LONG:  It's like in a hole, like 150,000 dollars.

13          MS. NAYLOR:  So the liabilities exceed the assets by

14   150,000?

15          MR. LONG:  About 100,000, yeah.  Something like that.

16          MS. NAYLOR:  Are you married?

17          MR. LONG:  No.

18          MS. NAYLOR:  Do you owe any child support or spouse

19   support?

20          MR. LONG:  No.

21          MS. NAYLOR:  Name and address for your employer?

22          MR. LONG:  Battery Specialties, 3530 Cadillac Avenue,

23   Newport -- sorry, Costa Mesa, California 92626.

24          MS. NAYLOR:  What's the name of the company?

25          MR. LONG:  Battery Specialties.

Page 7

1          MS. NAYLOR:  Are you an employee?

2          MR. LONG:  Yes.

3          MS. NAYLOR:  Okay, I'm sorry, what's the address again

4     of that?

5          MR. LONG:  3530 Cadillac Avenue, Costa Mesa 92626.

6          MS. NAYLOR:  Are you expecting a refund for 2011?

7          MR. LONG:  Not that I know of.

8          MS. NAYLOR:  Okay.  Did you have some questions, sir?

9     And actually, can I get your name, first?

10          MR. BURKE:  My name is Alexander Burke.  My client is

11     Mushfa Disai (ph.) who's the plaintiff in a class action in

12     Chicago.

13          MS. NAYLOR:  Okay.

14          MR. BURKE:  The class action is against ADT Security.

15     And I'm seeking information on documents pursuant to a subpoena

16     and discovery requests.  Mr. Long, and a company that I believe

17     he's been involved with called EMI Incorporated, are third-

18     party defendants in that lawsuit.

19          MS. NAYLOR:  Okay.  Are you -- let me just check here.

20     Are you affiliated with EMI?

21          MR. LONG:  Yes.

22          MS. NAYLOR:  It's not listed here.

23          Counsel, I don't see -- actually they have -- question

24     18 is "none".

25          MR. BURKE:  My information says that Mr. Long is or

Page 8

1    was the president of EMI Incorporated.

2            MS. NAYLOR:  Are you, sir?

3            MR. LONG:  Was.  The company hasn't been operating

4    since April.

5            MS. NAYLOR:  So why isn't that business listed in

6    here?

7            MR. LONG:  I'm not sure.  It should have been.

8            MS. NAYLOR:  It's not listed in B or it's not listed

9    in 18.

10           DEBTOR'S COUNSEL:  Leave to amend financial affair 18

11   as --

12           MS. NAYLOR:  Is that business still operating?

13           MR. LONG:  No.

14           MS. NAYLOR:  Are there any assets in that business?

15           MR. LONG:  No.

16           MS. NAYLOR:  Yeah, they need to put those other two

17   businesses in question 18 too.

18           DEBTOR'S COUNSEL:  Yeah, I made note of that.

19           MR. BURKE:  We have information that he also is

20   involved with a company called Nationwide Media Incorporated.

21           MS. NAYLOR:  Is that true, sir?

22           MR. LONG:  Involved?  I was a broker of theirs -- sub-

23   broker, but I was never involved.

24           MS. NAYLOR:  So you were just a broker, but you didn't

25   have any ownership interest?

Page 9

1           MR. LONG:  Never.

2           MS. NAYLOR:  I'm sorry, I didn't mean to interrupt

3    you.

4           MR. BURKE:  May I do some questioning?

5           MS. NAYLOR:  Sure.

6           MR. BURKE:  Okay.  What is EMI Incorporated, or what

7    was it?

8           MR. LONG:  It was a telemarketing firm.

9           MR. BURKE:  Did EMI do telemarketing for ADT Security

10   Services Inc.?

11          MR. LONG:  Never for ADT Inc.

12          MR. BURKE:  For -- did EMI do telemarketing for

13   Paramount Media, Incorporated?

14          MR. LONG:  Yes.

15          MR. BURKE:  Are you aware that Paramount Media

16   Incorporated was affiliated through lead generations with ADT?

17          MR. LONG:  They were a -- from what I understood, they

18   were an authorized ADT retailer, yes.

19          MR. BURKE:  So were the phone calls that you made

20   through EMI Incorporated indirectly advertising ADT products

21   and services?

22          MR. LONG:  I was -- it was advertising home security

23   systems.

24          DEBTOR'S COUNSEL:  Excuse me.  I'm going to instruct

25   the client not to answer any further questions unless they are

Page 10

1   with respect to the assets.  Attorney is not asking questions

2   which shows there are assets.  He's asking some other questions

3   for his other litigation, which I'm going to tell debtor not to

4   answer.  If there is anything with respect to any asset, that

5   he will answer those questions.

6           MS. NAYLOR:  Okay.  But I can tell you, it doesn't

7   look so swift that he doesn't even list them on the --

8           DEBTOR'S COUNSEL:  Absolutely.  I agree.

9           MS. NAYLOR:  They're obviously a big issue.

10          MR. BURKE:  I'm trying to figure out what information,

11  what documents, what data exists.  There's a court order from

12  Chicago from a federal magistrate judge ordering EMI and Mr.

13  Long to turn over all documents having to do with the

14  telemarketing business.

15          MS. NAYLOR:  Well, why don't we maybe just jump

16  straight to that part.  I mean, I agree with counsel to a

17  point -- I mean, the problem is, this is not supposed to be

18  used for other litigation.  I mean, if you think it's going to

19  lead to assets for this estate -- but I don't know if it is.

20          So who has the books and records of EMI?

21          MR. LONG:  I have to check, but I think I have some.

22  I mean, I should have own records, yes.  Right.

23          MS. NAYLOR:  So do you -- you're maintaining the --

24          MR. LONG:  Maintain the book -- the business is done.

25  So I just filed these last year's taxes and then, you know, no

Page 11

1      longer -- there's nothing else going on.

2              MS. NAYLOR:  So why wasn't this company listed?

3              MR. LONG:  Is it under O.C. Financial?  It was a d/b/a

4      of O.C. Financial.

5              MS. NAYLOR:  I didn't see -- well, there's nothing

6      under 18.  But if we go back to B --

7              MR. LONG:  The lawsuit should be stated in there too,

8      as well.

9              MS. NAYLOR:  I don't see any.  These are the business

10     you have listed.  Just those two we talked about.  The --

11             DEBTOR'S COUNSEL:  What other names?

12             MS. NAYLOR:  I don't see any other names.

13             MR. LONG:  Was it supposed to be within the last five

14     years or -- because it hasn't --

15             MS. NAYLOR:  Well, six years.

16             MR. LONG:  Okay.

17             MS. NAYLOR:  You listed here "versus Disai".  You

18     listed those two.  But you still have to list the interest in a

19     business.

20             So you maintain all the books and records of EMI?

21             MR. LONG:  Um-hum.

22             MS. NAYLOR:  Was that a yes?

23             MR. LONG:  Yes.

24             MR. BURKE:  Are there -- is there a computer for EMI?

25             MR. LONG:  No.

Page 12

 1          MR. BURKE:  Was there ever a computer for EMI?

 2          MR. LONG:  As in what kind of computer?  Like that we

 3  operated off of?  I mean, I ran multiple businesses off my

 4  computer, but it was never owned by EMI.

 5          MR. BURKE:  Do you still have that computer?

 6          MR. LONG:  I'd have to check storage.  I don't know.

 7          MS. NAYLOR:  Are these books and records located at a

 8  storage unit or at your house?

 9          MR. LONG:  They're at a storage unit.

10          MS. NAYLOR:  And where's the storage unit -- the name

11  of the storage unit?

12          MR. LONG:  It's at the old office.  I have to check

13  with my landlord and see, make sure he still has it.

14          MR. BURKE:  What's the office address?

15          MR. LONG:  I don't recall.

16          MS. NAYLOR:  Do you have a city or a street name?

17          MR. LONG:  It's in Costa Mesa.

18          MS. NAYLOR:  What street?

19          MR. LONG:  That's a good question.  I don't know.  I

20  honestly don't know.  I haven't worked there since April.

21          MR. BURKE:  My information tells me that --

22          MS. NAYLOR:  But you can't remember the street that

23  you worked at.

24          MR. BURKE:  -- he's the president of this company.

25          MS. NAYLOR:  You have no idea of the street?

Page 13

1           MR. LONG:  It's off Redhill (ph.) -- and I draw a

2    blank on the other street.  It's off Redhill, just north of

3    the -- just north of the 73 Freeway.

4           MS. NAYLOR:  North of the 73 Freeway?

5           MR. LONG:  Yes.

6           MR. BURKE:  Who's paying for the storage?

7           MR. LONG:  Should be the old landlord.

8           MR. BURKE:  The landlord's paying for the storage?

9           MR. LONG:  It was in the -- it was in his storage, in

10   the old landlord's storage.

11          MR. BURKE:  What was his name, the old landlord?

12          MR. LONG:  Nick.

13          MR. BURKE:  Nick what?

14          MR. LONG:  Long.  My brother.

15          MR. BURKE:  Last summer you e-mailed me call logs of

16   several million calls.  Do you remember that?

17          MR. LONG:  Does that pertain to the assets?  Yes.

18          MR. BURKE:  Where did those call records come from?

19          MR. LONG:  From the dialing company.

20          MR. BURKE:  What dialing company?

21          MR. LONG:  The dialing company that I did business

22   with was Dynamic.

23          MR. BURKE:  Was that the full name?

24          MR. LONG:  I think.  I have to recall, but I think

25   it's Dynamic Internet Interactive, I believe.

Page 14

1          MR. BURKE:  Where is Dynamic Interactive?

2          MR. LONG:  They were located in Costa Mesa.

3          MR. BURKE:  Who's your contact at Dynamic Internet

4     Interactive?

5          MR. LONG:  Stephanie.  I don't know the last name.

6          MR. BURKE:  Where was Dynamic Interactive located?

7          MR. LONG:  In --

8          MR. BURKE:  Other than -- I mean, do you have a street

9     or an address in Costs Mesa?

10         MR. LONG:  Anton.

11         MR. BURKE:  The records that you produced, were those

12    all records of pre-recorded message calls?

13         MR. LONG:  Clarify "pre-recorded message calls".

14         MR. BURKE:  Like a message that had been recorded

15    ahead of time that was played during the call.

16         MR. LONG:  Yes.

17         MR. BURKE:  And they were advertising security

18    services, right?

19         MR. LONG:  Yes.

20         MR. BURKE:  And the client was Paramount Media.  Was

21    that right?

22         MR. LONG:  Um-hum.  Correct

23         MR. BURKE:  When did EMI go under?

24         MR. LONG:  I'd say late April.

25         MS. NAYLOR:  Of 2011?

Page 15

1          MR. LONG:  Yes.

2          MR. BURKE:  Why did EMI go under?

3          MR. LONG:  Because we lost all our clients.

4          MR. BURKE:  Why did you lose all your clients?

5          DEBTOR'S COUNSEL:  Again, is that discovery of the

6     asset or are you building up the other case here?

7          MR. BURKE:  I'm trying to learn about where these

8     records went.  I had a subpoena that was issued to EMI and to

9     Mr. Long around April 2011.  And I've gotten partial responses.

10          MS. NAYLOR:  Let me ask you a question.  Do you still

11     have access to that storage unit?

12          MR. LONG:  I'd have to make a phone call.  But I don't

13     know.

14          MS. NAYLOR:  You would -- you don't know whether you

15     can get to those records that have been subpoenaed that are in

16     that storage unit?

17          MR. LONG:  As far as I know, my counsel handed over

18     all the information we had for the subpoena.

19          MS. NAYLOR:  Okay.  But I'm just saying -- if all the

20     rest -- but you could get access to that storage unit, since

21     your brother has it, right?

22          MR. LONG:  Sure.

23          MR. BURKE:  Is there any other place, other than the

24     storage unit, where there may be records for EMI Incorporated?

25          MR. LONG:  No.

Page 16

1           MR. BURKE:  Who's Chris Lopez?

2           MR. LONG:  Was a broker.

3           MR. BURKE:  For EMI Incorporated?

4           MR. LONG:  Yes.

5           MR. BURKE:  Might Chris Lopez have documents or data
6    having to do with EMI Incorporated?

7           MR. LONG:  He may.  I don't know.

8           MR. BURKE:  Do you know his address?

9           MR. LONG:  I don't.

10          MR. BURKE:  Do you know generally where he lives?

11          MR. LONG:  Last time I spoke to him, it was Huntington
12   Beach.

13          MS. NAYLOR:  You might pick your favorite questions.
14   We've got a roomful.

15          I know somebody else had questions.

16          MR. ALTMAN:  No, actually, I'm with him.

17          MS. NAYLOR:  Okay.

18          MR. ALTMAN:  I'll see if there's any -- decide.  I
19   have some brief questions.

20          Does anyone else have any ownership interest in EMI,
21   or did they have any ownership interest in EMI, other than you?

22          MR. LONG:  No.

23          MR. ALTMAN:  Okay.  Did anyone else have access to the
24   books and records while EMI was operating, as of 2010?

25          MR. LONG:  Books and records as in what?

Page 17

1        DEBTOR'S COUNSEL:  Of EMI.

2        MR. ALTMAN:  Of EMI?

3        MR. LONG:  Of like the accounts like --

4        MR. ALTMAN:  Yeah.

5        MR. LONG:  -- a QuickBooks account or anything like

6   that?

7        MR. ALTMAN:  Anything, yes.

8        MR. LONG:  Yeah.  The lady that ran the business.

9        MR. ALTMAN:  Okay.  Who was that?

10        MR. LONG:  Samantha Omar.

11        MR. ALTMAN:  Okay.  Do you know where she's located?

12        MR. LONG:  Last I spoke she was in Orange County,

13   southern Orange County, Orange County somewhere.

14        MR. ALTMAN:  Okay.  Do you know her phone number?

15        MR. LONG:  I don't.

16        MR. ALTMAN:  Do you have it in your cell phone right

17   now?

18        MR. LONG:  I'd have to check it.  I haven't talked to

19   her in a while, but yes.

20        MR. ALTMAN:  Would you please check?

21        DEBTOR'S COUNSEL:  Trustee, after this, I'm going to

22   tell the debtor not to answer any questions.  They are fishing

23   off their other case and using bankruptcy court for that, which

24   is not the right thing to do at this time.

25        MR. ALTMAN:  Well, we're creditors as to this

Page 18

1   information and these documents, and we're trying to find

2   information about them.  We have no affirmative money claims

3   against Mr. Long or against EMI.

4           MR. BURKE:  At this time.

5           MR. ALTMAN:  At this time.  We're just interested in

6   this information --

7           MS. NAYLOR:  Once you get the information you told me

8   you were going to give him, I would just hand the phone over

9   and just write it down.  Because I don't want to put somebody's

10  phone number on a record.

11          DEBTOR'S COUNSEL:  Let's write it down.  Can you give

12  me your card?  We can write it on the paper.

13          MS. NAYLOR:  Do you have some other questions while

14  he's looking it up?

15          MR. LONG:  I turned it off because I thought we were

16  supposed to.

17          MS. NAYLOR:  You're right.  You're supposed to.

18          DEBTOR'S COUNSEL:  If you have it write it, if you

19  don't have it, that's fine.

20          MS. NAYLOR:  Do you have any other questions while

21  he's looking that up?  Is it turning on?  It's still thinking.

22          DEBTOR'S COUNSEL:  We can do that in hallway.

23          MS. NAYLOR:  Okay.  Any other questions?

24          MR. BURKE:  Not at this time.

25          MS. NAYLOR:  Okay.  The 2010 -- 2009 and 2010 tax

Page 19

1    returns, sir, you provided me, are those -- are you expecting a

2    refund for 2011?

3            MR. LONG:  I have to file still, so I don't know.  I'm

4    expecting no.

5            MS. NAYLOR:  Did you pay any money into the taxing

6    authorities?

7            MR. LONG:  In what year, 2009 --

8            MS. NAYLOR:  For 2011?  Have you filed you 2010s?

9            MR. LONG:  Yes.

10           MS. NAYLOR:  Okay.  You got 1,500 dollars -- owe

11   1,500.  Are you expecting more than 1,500 dollars for 2011?

12           MR. LONG:  I don't think so, no.  But if I do, I'll

13   make sure --

14           MS. NAYLOR:  Let me know.

15           MR. LONG:  -- it's in an amendment.

16           MS. NAYLOR:  Okay.  Are these the ones -- the tax

17   returns you gave to me, are these true and correct copies of

18   the ones you sent to the taxing authorities?

19           MR. LONG:  Yes.

20           MS. NAYLOR:  I can give these back to you.  You'll get

21   that stuff to them?

22           DEBTOR'S COUNSEL:  If we find the number, we will give

23   it to him.

24           MS. NAYLOR:  Okay.

25           MR. BURKE:  I'd also ask for his brother's phone

Page 20

1    number and any one of the other -- these people we mentioned

2    today.

3         DEBTOR'S COUNSEL:  We are not going to give his

4    brother's phone number if he doesn't want to.

5         MR. BURKE:  I think it's responsive to my subpoena and

6    these discovery requests.

7         DEBTOR'S COUNSEL:  That you can go to the other court.

8    I will not let bankruptcy court be used for that.

9         MS. NAYLOR:  I'll let you guys discuss that off the

10   record.

11        MR. BURKE:  Okay.

12        DEBTOR'S COUNSEL:  Thank you.

13        MS. NAYLOR:  Thank you.

14       (Whereupon these proceedings were concluded)

15

16

17

18

19

20

21

22

23

24

25

Case: 1:11-cv-01925 Document #: 282-22 Filed: 07/14/14 Page 21 of 21 PageID #:4314

Page 21

1

2                   C E R T I F I C A T I O N

3

4        I, Penina Wolicki, hereby certify that

5    the foregoing is a true and correct

6    transcription, to the best of my ability, of

7    the sound recorded proceedings submitted for

8    transcription.

9

10       I further certify that I am not employed

11   by nor related to any party to this action.

12

13       In witness whereof, I hereby sign this

14   date:

15   March 27, 2012.

16

17       ------------------------------------

18               Penina Wolicki

19   AAERT Certified Electronic Transcriber

20                CET**D-569

21

22

23

24

25