J. James Learned
Buchhammer and Kehl, P.C.
1821 Logan Avenue
P.O. Box 568
Cheyenne, WY 82003-0568
(307)634-2184
fax (307) 634-2199

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF WYOMING

| | |
|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ADT SECURITY SERVICES, INC.<br><br>Plaintiff, | Docket No. 11-cv-1925<br>Case Pending in N.D. Ill |

## RESPONSE AND OBJECTION TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

COMES NOW, EngageTel, Inc., by and through undersigned counsel and pursuant to Rule 45(c)(2)(B), F.R.C.P., tenders its objection to the *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action* as follows:

1. The responding party further objects to the request to produce sensitive commercial information. Certain requests call for the disclosure of proprietary information that the responding party and its clients are contractually obligated to protect as private.

CHARVAT000928

2.     The responding party provides services to telemarketers in the form of a "caller name service" and collecting "Do Not Call" requests. The responding party provides a block of telephone numbers to clients for their use. The numbers are virtual and cannot be linked to a particular telephone line or a particular call.

3.     While preserving the objections herein and others legally available, and without waiving the same, the responding party tenders the attached documents in response to Plaintiff's *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action.*

4.     There are no other documents available to the responding party that are responsive to Plaintiff's subpoena.

DATED this 27th day of April, 2011.

                                        ENGAGETEL, INC.

BY: _____
                                        J. James Learned, #6-4150
                                        BUCHHAMMER AND KEHL, P.C.
                                        1821 Logan Avenue
                                        P.O. Box 568
                                        Cheyenne, WY 82003-0568
                                        (307) 634-2184
                                        Fax (307) 634-2199

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was forwarded as noted below, this 27th day of April, 2011;

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Ste 9020
Chicago, IL 60601

☐ Facsimile
☒ U.S. Mail
☐ Overnight Courier
☐ Hand Delivery

_____
J. James Learned

CHARVAT000930

# ENGAGETEL, INC. RESPONSE TO SUBPOENA ## 1, 2, & 5

CHARVAT000931



EngageTel

SCANNED

EngageTel Inc.
2710 Thomes Ave Suite 913
Cheyenne, WY 82001
Telephone: (888) 343-5008
Fax contract to:
Facsimile: (877) 687-4452

## Engage RevenueShare Master Services Agreement

This Master Services Agreement is dated as of the 1st day of September, 2009 ("Effective Date") and is by and between EngageTel Inc. ("Company") having its principal place of business at 2710 Thomes Ave, Ste. 913, Cheyenne, WY 82001, and EMI Inc. ("Customer"), having offices at 14281 Spring Vista Lane, Chino Hills, CA 91709.

FOR AND IN CONSIDERATION OF the premises and mutual agreements herein, EngageTel and Customer agree as follows:

Section 1. TERM AND TERMINATION FOR CAUSE AND CONVENIENCE

(a) The initial term of this Agreement shall be (1) one year, beginning from the initial monthly payment to Customer. The Agreement shall also automatically renew, for each annual term, thereafter, unless either party informs the other party within 30 days of the anniversary date, in writing.

(b) Company and/or Customer may terminate this agreement with or without cause immediately upon notification of the other party. Upon termination, all services, use of services and compensation will cease immediately. If after 24 hours of termination, or a request to remove specific telephone number(s) by Company, Customer continues to utilize telephone numbers, Customer information may be placed into the calling name field of CNAM on telephone numbers assigned to Customer, at the discretion of EngageTel.

Section 2. SERVICES

Company intends to make available its Engage RevenueShare to Customer solely for its use.

Section 3. ENGAGETEL'S RESPONSIBILITIES

(a) EngageTel provides its services through various network and database facilities. ███████████████████████ As part of its service, EngageTel will manage the "calling name" and/or calling number that will be passed to terminating carriers for calls originated via telephone numbers that EngageTel has assigned. EngageTel will also manage any transactions wherein the CNAM information is passed between carriers or CNAM database organizations.

(b) 

EngageTel Master Agreement 4/10/09

Customer CTL
EngageTel DC

Proprietary and Confidential

Page 1 of 6

CHARVAT000932

Section 3.  ENGAGETEL'S RESPONSIBILITIES Continued

(c) EngageTel stipulates that it does <u>not</u> have access to Customer's calling data. Should Customer send EngageTel calling data for analysis, EngageTel will not share that data with any 3rd party.

Section 4.  CUSTOMER RESPONSIBILITIES AND ACCEPTABLE USE

(a) Customer may request changes to Calling Name information or Forwarding Number to be manually implemented by EngageTel personnel by submitting a request to EngageTel by email at: customerservice@engagetel.com.

(b) Customer acknowledges that EngageTels's revenue share does not provide and excludes local dial tone and usage, emergency (e.g. 911), intraLATA toll, interLATA toll, interstate toll, international toll, 700, 800, 900, collect, 3rd party, operator assisted, calling card, billed to services, or any other services that may result in charges being assessed to the Customer telephone numbers, as such numbers are provided through this Agreement, or to the Company, its local providers or its database providers. Customer also acknowledges that EngageTel's program cannot be utilized by Customer, its employees, its agents, it contractors or its authorized users in an attempt to avoid paying intrastate switched access charges, interstate switched access charges, international switched access charges and tariffs, or reciprocal compensation charges which are normally applicable.

(c) Customer also acknowledges and agrees that any attempt by the Customer, its employees, its agents, its sub contractors or its authorized users to use services provided under this Agreement to obtain any of the aforementioned non-provided and excluded services or in an attempt to avoid intrastate switched access charges, interstate switched access charges, international switched access charges and tariffs, or reciprocal compensation charges without providing the Company, or its partners, an opportunity to recover its costs, plus a reasonable profit, will result in the immediate termination of this Agreement with all compensations due the Customer being forfeited.

(d) Customer agrees to comply with all applicable local, state and federal rules and laws when using Engage RevenueShare Services, including, but not limited to, those rules and laws which may pertain to <u>consumer fraud, obscenity, telemarketing and/or "no call" lists (e.g., Part 310 of the FTC's rules and Part 64 of the FCC's rules)</u>. Likewise, Customer warrants that it has obtained all government approvals, licenses, authorizations, consents or permits necessary to provide the services for which Customer will use EngageTel's assigned numbers. Customer agrees to indemnify and hold EngageTel, its local providers and its database providers harmless from any of Customer's actions, or actions of Customer's employees, agents, subcontractors and authorized users, which are not in compliance with any such, rules, laws, regulations or requirements.

(e) [redacted]

EngageTel Master Agreement 4/10/09

Customer CTL

EngageTel

## Section 4. CUSTOMER RESPONSIBILITIES AND ACCEPTABLE USE (Continued)

(f) ~~[redacted]~~

(g) The Customer agrees that use of EngageTel's RevenueShare, provided to the Customer pursuant to this Agreement, will be for the delivery of queries for outbound calls only, which outbound calls will be provided by and through the facilities of the Customer's local and long distance carrier of choice.

(h) The Customer agrees to provide EngageTel with a toll-free number or IP address to forward return calls to. In the event that a normal POTS number is provided for forwarding, Customer agrees to accept charges related to call forwarding, which will be deducted from their monthly compensation.

(i) Customer understands and acknowledges that by signing this agreement, they are assuming total responsibility for the control and use of all telephone numbers assigned to Customer by EngageTel.

(j) Customer understands and agrees that telephone numbers assigned to them will not be used to call Canada, Mexico, or anywhere outside of the United States.

(k) Customer acknowledges and agrees that EngageTel telephone numbers will not be misused in any manner that will cause carrier network saturation in a particular geographic region, whether it be outbound or inbound (return) calls.

(l) Customer understands and agrees that participation in calling practices that could be considered fraudulent or harassing to the general public are not acceptable. This includes, but is not limited to: false claims made in the broadcast message, excessive calling to individual telephone numbers, etc.

## Section 5. NON-CIRCUMVENTION

EngageTel and Customer do hereby irrevocably agree not to circumvent, avoid, bypass, or obviate the other party, directly or indirectly, to avoid payment or fees or commissions, in any transaction with any corporation, client, contractor, provider, vendor, partnership or individual, disclosed by the disclosing party to the other party, in connection with any project, sale (or potential sale), contract, agency, distributorships, funding or any other transaction involving any consulting, sale of products or services, or addition, negotiations, re-negotiations, renewal, extension, amendments, new contract/agreements, parallel contracts/ agreements or third party assignments thereof. Further, during the term of this Agreement, and for a period of two (2) years following termination or expiration of the Agreement, Customer agrees they shall not, whether on their own or through or on the behalf of any other person or entity disturb or negatively affect the business relationship between EngageTel and any of its business relationships, including, but not limited to, telemarketing firms, call centers, LEC"s, CLEC's, ILEC'S, IXC'S and sales agents, and customers.

## Section 6. NO WARRANTIES

EngageTel makes no warranties or representation, express or implied, including any warranty of merchantability or fitness for a particular use, except those expressly set forth in this Agreement.

EngageTel Master Agreement 4/10/09

Customer _CTL_

EngageTel _Dc_

Proprietary and Confidential

## Section 7. LIABILITY

(a) EngageTel's liability for any claim, loss or damage arising out of the furnishing of its services, including but not limited to mistakes, omissions, interruptions, delays, errors, other defects, or representations by the Company, or use of these services or damages arising out of the failure to furnish the service whether caused by act or omission, shall be limited to the amounts owed Customer by EngageTel at the time such damages occur. Such allowances shall be the sole remedy of the customer and the sole liability of EngageTel.

(b) EngageTel will not be liable for any direct, indirect, incidental, special, consequential, exemplary or punitive damages, or for any lost profits of any kind, to customer as a result of any service, equipment or facilities, or the acts or omissions or negligence of EngageTel's employees or agents. In any event, no action or proceeding against EngageTel shall be commenced more than three months after the service is rendered.

(c) EngageTel shall not be liable for any delay or failure of performance or equipment due to causes beyond its control, including but not limited to: acts of God, fire, flood, explosion or other catastrophes; any law, order, regulation, direction, action, or request of The United States government or of any other government, including state and local governments having or claiming jurisdiction over EngageTel, or of any department, agency, compensation, bureau, corporation, or other instrumentality of any one or more of these federal, state, or local governments, or of any military authority; preemption of existing service in compliance with national emergencies; insurrections; riots; wars; unavailability of rights-of-way or materials; or strikes, lockouts, work stoppages, or other labor difficulties.

(d) EngageTel shall not be liable for any damages or losses due to the fault or negligence of the Customer, or Customer's authorized users or due to the failure or malfunction of Customer-provided equipment or facilities or the equipment or facilities of Customer's authorized users.

## Section 8. INDEMNIFICATION

EngageTel shall be indemnified, defended and held harmless by the Customer, against any claim, loss or damage arising from Customer's use, or by the use of others authorized by the Customer, of services furnished under this Agreement, including, but not limited to: claims for libel, slander, invasion of privacy or infringement of copyright arising from the material, data, information, or other content transmitted via EngageTel's service; and patent infringement claims arising from combining or connecting the service offered by EngageTel with apparatus and systems of the Customer or others; all other claims arising out of any act or omission of the Customer or others, in connection with any service provided by EngageTel pursuant to this Agreement.

## Section 9. NOTICE

Notices, under this Agreement, shall be sent in writing to the authorized representatives, identified by the parties, on the signature page of this Agreement.

## Section 10. PRIOR AGREEMENTS; SEVERABILITY; COMPLETE UNDERSTANDING; MODIFICATION

EngageTel Master Agreement 4/10/09

Customer _CTL_
EngageTel _DL_

Proprietary and Confidential

CHARVAT000935

If any provision of this agreement is for any reason found to be unenforceable, the remainder of this Agreement will continue in force and effect. This Agreement CONSTITUTES THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN THE PARTIES CONCERNING THE SUBJECT MATTER OF THIS AGREEMENT. Any and all prior or contemporaneous agreements, whether written, oral or otherwise, are hereby superseded and are null and void. No amendment of this Agreement shall be binding, unless it is in writing and signed by both parties

Section 11. CONFIDENTIALITY

The terms and conditions of this Agreement contain proprietary information pertaining to both EngageTel and Customer of a highly sensitive nature such that improper disclosure would expose each party to an unreasonable risk of harm from their competitors. Accordingly, the terms and conditions of this Agreement are to be held as strictly confidential among those employees and agents of both parties with a need to know such terms and conditions. The parties agree that impending or existing breaches in the confidentiality of this Agreement, or any of the terms and conditions herein, would cause the party to whom such confidential information pertains to irreparable injury for which it would have no adequate remedy at law, and agree that the aggrieved party shall be entitled to immediate injunctive relief prohibiting such breach(es) in confidentiality, in addition to any other rights and remedies available to it.

Section 12. ASSIGNMENT

Neither party shall assign its rights and obligations under this agreement without approval of the other Party, which approval shall not be unreasonably withheld.

Section 13. APPLICABLE LAWS

This Agreement shall be interpreted under the laws of the state of Wyoming.

Section 14. ▉▉▉▉▉▉▉▉▉▉



EngageTel Master Agreement 4/10/09

Customer _CTL_
EngageTel _PC_

Proprietary and Confidential

Page 5 of 6

CHARVAT000936

# EngageTel

IN WITNESS WHEREOF, the parties have signed this Agreement as of this date.

Company: EngageTel Inc.

Signature _____

Printed Name: DENNIS CARLSON

Title: PRESIDENT

Date 9/1/09

Customer: EMI Inc.

Signature _____

Printed Name: Christopher Long

Title: President

Date 9/1/09

EngageTel Master Agreement 4/10/09

Customer CTL
EngageTel DC

Proprietary and Confidential

Page 6 of 6

CHARVAT000937

# ENGAGETEL, INC. RESPONSE TO SUBPOENA ## 3, 4, & 7

CHARVAT000938

–Document "EMI ANIs, 3/16/2010" represents the numbers assigned to EMI, Inc.

CHARVAT000939



**EMI ANIs, 03/16/2010**

**ANI**

207-512-5075
207-512-5077

315-701-3354
315-701-3357

339-502-6550
339-502-6568

401-515-0265
401-515-0266

574-970-0866
574-970-0867

603-606-4286
603-606-4297

616-604-2080
616-604-2081

715-254-0275
715-254-0276

860-470-0014
860-470-0015

–Document "EngageTelIVRReport_02262011" represents the numbers that requested to be put on a Do Not Call List

CHARVAT000941

EngageTelIVRReport_02262011

```
8594020502
9788528167
2156808797
5027973209
5154501375
5154501375
2568999991
4797903337
9317439192
8108363352
3369848464
9782778286
5808890381
8033890275
6784519952
7313587089
3025881361
9787907076
6154990391
4048194535
anonymous
4172141304
6788516411
4783963147
9109222220
8149371219
6014169001
3134782873
2252889104
3347072336
3048800126
3048800126
8433432559
6623213107
2698304970
5735288342
8149773327
9897411199
7344782693
9857881145
9895510555
4403711076
2522413285
5015635485
8036618721
4408340302
9362396794
6622311123
8643849520
6622311123
4173881248
9192254478
6626330611
7154191669
3373028066
3373028066
3363026170
4402202715
9032612580
4233101005
9194135442
3369785028
5149410537
```

CHARVAT000942

EngageTelIVRReport_02262011

5149410537
4795860594
8597978857
9192254478
3302842529
4174347961
5708993288
8706567096
8479025253
5042615216
4058161691
9192600556
6189124393
5047568533
3135238525
3135238525
8609704496
8163591268
8039176061
3187894380
8643497300
2692400783
7812151789
7407278406
7068347456
2082937182
2082937182
2082937182
2052694776
4042425678
4796013167
3365951198
8643032934
2162565865
3364670733
2162565865
4235343474
7154171187
5054041212
9895256575
5738550300
9105488943
7345441227
6019542196
3044760323
9788771593
7068500192
7273591709
6783781310
9208199333
6628200902
3185126851
6016240863
4045425900
3362744398
4145306754
8432769181
9122203890
6103937996
3367721540
8638378924
7122460004
3185880011

EngageTelIVRReport_02262011

```
6012489924
9194910005
8596992915
6789757086
5732258842
5044817734
2704014445
2312887755
2513678582
6623211303
7738228087
8606525068
8167522659
8595364607
8593075729
2623707015
9783239046
6194059290
8162235412
5734069452
6605376006
8703301099
5123171997
7049156720
4403202459
7042224869
3374010192
6107814739
6784711570
6015084738
2563947913
7708968819
8134840249
3186179461
3344753069
4403827429
7065298313
6787643569
8453646496
7707332396
6016953349
2058355471
7206292553
2163124347
8439260806
6305368881
2513917486
7173546827
9102790554
7173271883
8606691303
3185476165
8107011067
2486941104
5156644770
2522612460
7137755383
6102959639
3364208500
2708934095
5133120859
9106898827
4177186868
```

CHARVAT000944