IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT, on behalf of themselves and others similarly situated<br><br>                Plaintiffs,<br><br>vs.<br><br>ADT SECURITY SERVICES, INC.<br><br>                Defendant. | Case No. 1:11-cv-1925 |

## DECLARATION OF DANIEL BERNAL

1.     I, Daniel Bernal, declare as follows:

2.     I am over the age of 18 years and not a party to this action. I have personal knowledge of the matters contained in this declaration and, if called as a witness to testify, I could and would competently testify to them.

3.     I am the president of Dynamic Interactive Corp. ("Dynamic"), a corporation duly organized under the laws of the state of Nevada, with its principal office in California.

4.     Dynamic's business address is 16842 Von Karman, Suite 475 in Irvine, CA 92606.

5.     Dynamic is a telecommunication services company that provides an array of products and services to its client, including Voice Broadcasting.

6.     Voice Broadcasting is the method of rapidly delivering prerecorded information to multiple targeted recipients through their phone. The Dynamic platform is designed to avoid the cost and/or the time of calling each recipient individually. Voice Broadcasting is also known

             CONFIDENTIAL

as Autodialing, Robo Calls, Automatic Calls, Automated Calls, Voice Blasting, Mass Calling, Voice Messaging, and Outbound IVR (Interactive Voice Response).

7.     Voice Broadcasting is used by businesses, non-profit groups, political organizations, schools, and government offices for a number of applications. These include, but are not limited to, the following: customer messaging, member announcements, event promotion, lead generation, fundraising, political promotion, get out the vote, emergency notifications, reminders, wake up calls, telephone polling, collections, and telemarketing.

8.     On November 11, 2010, Europe Media International ("EMI"), by and through its principal, Christopher Long, retained Dynamic to provide the platform for EMI pre-recorded telemarketing campaigns. A true and accurate copy of the contract between Dynamic and EMI is attached at Exhibit A.

9.     Dynamic provided the platform for EMI's pre-recorded voice telemarketing campaigns through June of 2011.

10.     A Dynamic customer, such as EMI, uses the Dynamic Voice Broadcasting system by logging on with their username and password, and then creating a new "Campaign".

11.     To create a new Campaign, the customer will begin by naming their Campaign.

12.     A customer will then select the type of pre-recorded message Campaign they are going to perform, for example, they have the option to choose if they will leave voice messages for the recipients, or if pre-recorded message will only play for a live person once the call has connected.

13.     Next, a customer selects a local start time and end time for the Campaign. This is referred to as setting a "Schedule" for the Campaign.

ADT 001821                    CONFIDENTIAL

14.     After that, Dynamic's customers have the option of choosing a "Dup-Policy", which is designed to ensure that the same recipient is not contacted in a designated period of time.

15.     Next, a customer has the option to choose a "DNC Digit", which is a number that can be pressed if a recipient wants to be put on the product's Do Not Call List.

16.     The customer then has the option if they want to include calls to "wireless" numbers or cell-phones on their Campaign.

17.     After a Campaign is created and the Schedule to transmit the calls has been set, the customer will then attach a "Phone List".

18.     To do so, the customer will select a Phone List, which has typically previously been uploaded to their account, and add it to a specific Campaign.  A customer can add multiple Phone Lists to a Campaign.

19.     After a customer has created a Campaign, set the Schedule, and attached the Phone List(s) they want to contact, as well as funded their account with minutes, they are ready to begin making calls.

20.     In order to do so, a customer will simply open the Campaign they have created, and press the "Play" button next to the Campaign.

21.     When a call recipient presses "1" to express interest in a product, they are transferred to Dynamic's customer's preferred destination; this will typically be Dynamic's customer's clients' call center.

22.     Dynamic does not review or approve of the content of the pre-recorded messages that are transmitted by its clients on the Dynamic platform.

3

          CONFIDENTIAL

23.    Dynamic's clients are responsible to ensure that its Voice Broadcasting messages and transmissions are compliant with all applicable law.

24.    The platform Dynamic operates on saves the call transmission records for each campaign run by each customer of Dynamic. These are also known as "Call Detail Records".

25.    The platform Dynamic operates on also saves the actual Voice Broadcasting messages that are transmitted for each campaign.

26.    On March 15, 2012, Dynamic's office manager, Joe Martin, was served with a subpoena that was issued by the Plaintiffs in this action.

27.    I responded to the subpoena by providing the following responsive documents:

      i.    The contract entered into between EMI and Dynamic;

      ii.    Documents evidencing the receipt of wire transfers from EMI, which was how EMI paid for the campaigns they transmitted using the Dynamic platform;

      iii.    A series of Voice Broadcasting messages that EMI had saved in its account (however, these were not the only messages utilized by EMI to telemarketing via pre-recorded message due to the fact that I was not familiar with the method in which to obtain older audio files from the system.)

      iv.    A document that identified what customer folders those Voice Broadcast messages were saved in;

      v.    All Call Detail Records for Voice Broadcasts sent by EMI while using the Dynamic Platform;

ADT 001823                CONFIDENTIAL

28. Plaintiffs' counsel also asked me to identify which, if any, campaign run by EMI on the Dynamic platform, contacted the number (405) 326-9079, which I was informed was the Plaintiff Vishva Desai's number.

29. The (405) 326-9079 number was contacted on March 1, 2011 by EMI, using the ANI (574) 970-0866. The call remained connected for approximately one minute.

30. I produced the results of this search to Plaintiffs' counsel.

31. Plaintiffs' counsel also asked me to identify specific Voice Broadcasting pre-recorded messages that promoted ADT Security Services.

32. The following Voice Broadcasting pre-recorded messages, identified by .wav file that were produced, were used for the corresponding ADT related pre-recorded telemarketing campaign indicated below:

| Client/Campaign Name | Call Log and Date | ANI Displayed | Successfully Initiated Calls | Pre-Recorded Message File and Name |
|---|---|---|---|---|
| Alarm Pros/ "Alarm Pro" | call_log_18596_1674 14_1712884.txt – January 25, 2011 | (603) 606-4297 | 21,739 | 181874.wav "adtdebbie" |
| Home Alert/ "Home Alert" | call_log_18175_1579 89_1472361.txt – November 17, 2010 | (860) 899-2711 | 90,930 | 162354.wav "adtdebbie" |
| Home Alert/ "HA-8" | call_log_18791_1695 77_1754165.txt – February 10, 2011 | (715) 254-0276 | 106,890 | 184595.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 65_1808827.txt – February 14, 2011 | (574) 970-0866 | 51,558 | 18594.wav "adtdebbie" |
| | | | | |

ADT 001824                    CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1751520.txt – February 9, 2011 | (574) 970-0866 | 14,276 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1754150.txt – February 10, 2011 | (574) 970-0866 | 33,087 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1756845.txt – February 11, 2011 | (574) 970-0866 | 5,005 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1756845.txt – February 14, 2011 | (574) 970-0866 | 51,558 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1762179.txt – February 14, 2011 | (574) 970-0866 | 51,558 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1765654.txt – February 15, 2011 | (574) 970-0866 | 10,705 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1776534.txt – February 18, 2011 | (574) 970-0866 | 11,791 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1784334.txt – February 21, 2011 | (574) 970-0866 | 15,417 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1805552.txt – February 28, 2011 | (574) 970-0866 | 18,278 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 63_1808825.txt – March 1, 2011 | (574) 970-0866 | 30,854 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1751523.txt -- February 9, 2011 | (574) 970-0866 | 20,465 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1754153.txt -- | (574) 970-0866 | 13,868 | 184594.wav "adtdebbie" |

ADT 001825                                    CONFIDENTIAL

| | February 10, 2011 | | | |
|---|---|---|---|---|
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1756848.txt -- February 11, 2011 | (574) 970-0866 | 16,250 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1762182.txt -- February 14, 2011 | (574) 970-0866 | 39,804 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1765657.txt -- February 15, 2011 | (574) 970-0866 | 10,988 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1769439.txt -- February 16, 2011 | (574) 970-0866 | 97,749 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1773130.txt -- February 17, 2011 | (574) 970-0866 | 131,014 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1776537.txt -- February 18, 2011 | (574) 970-0866 | 71,999 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1776537.txt -- February 21, 2011 | (574) 970-0866 | 46,690 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1791788.txt -- February 23, 2011 | (574) 970-0866 | 122,055 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1795226.txt -- February 24, 2011 | (574) 970-0866 | 130,044 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1798421.txt -- February 25, 2011 | (574) 970-0866 | 99,394 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 66_1805555.txt -- February 28, 2011 | (574) 970-0866 | 130,684 | 184594.wav "adtdebbie" |
| | | | | |

ADT 001826      CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1751521.txt -- February 9, 2011 | (574) 970-0866 | 40,086 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1754151.txt -- February 10, 2011 | (574) 970-0866 | 101,123 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1756846.txt -- February 11, 2011 | (574) 970-0866 | 97,260 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1762180.txt -- February 14, 2011 | (574) 970-0866 | 46,659 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1765655.txt -- February 15, 2011 | (574) 970-0866 | 91,360 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1769437.txt -- February 16, 2011 | (574) 970-0866 | 110,182 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1773128.txt -- February 17, 2011 | (574) 970-0866 | 123,666 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1776535.txt -- February 18, 2011 | (574) 970-0866 | 117,577 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1784335.txt -- February 21, 2011 | (574) 970-0866 | 110,568 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1787964.txt -- February 22, 2011 | (574) 970-0866 | 125,107 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1791786.txt -- February 23, 2011 | (574) 970-0866 | 139,915 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1795224.txt -- | (574) 970-0866 | 142,685 | 184594.wav "adtdebbie" |

ADT 001827                    CONFIDENTIAL

|  | February 24, 2011 |  |  |  |
|---|---|---|---|---|
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1798419.txt -- February 25, 2011 | (574) 970-0866 | 120,473 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1805553.txt -- February 28, 2011 | (574) 970-0866 | 120,309 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-1" | call_log_18790_1695 58_1808820.txt – March 1, 2011 | (574) 970-0866 | 161,083 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-2" | call_log_18790_1695 59_1808821.txt – March 1, 2011 | (574) 970-0866 | 9,877 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-3" | call_log_18790_1695 60_1808822.txt – March 1, 2011 | (574) 970-0866 | 140,681 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-4" | call_log_18790_1695 60_1808823.txt – March 1, 2011 | (574) 970-0866 | 912 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-5" | call_log_18790_1695 60_1808824.txt – March 1, 2011 | (574) 970-0866 | 122,596 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-6" | call_log_18790_1695 60_1808825.txt – March 1, 2011 | (574) 970-0866 | 30,854 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-7" | call_log_18790_1695 64_1808826.txt – March 1, 2011 | (574) 970-0866 | 68,654 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-8" | call_log_18790_1695 65_1808827.txt – March 1, 2011 | (574) 970-0866 | 63,640 | 18594.wav "adtdebbie" |
| Paramount Media Group/"PMG-9" | call_log_18790_1695 65_1808828.txt – March 1, 2011 | (574) 970-0866 | 119,952 | 184594.wav "adtdebbie" |
|  |  |  |  |  |

ADT 001828                    CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| Paramount Media Group/"PMG-10" | call_log_18790_1695 99_1808842.txt – March 1, 2011 | (574) 970-0866 | 133,213 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-11" | call_log_18790_1695 65_1808829.txt – March 1, 2011 | (574) 970-0866 | 139,872 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-12" | call_log_18790_1696 05_1808844.txt – March 1, 2011 | (574) 970-0866 | 6,953 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-13" | call_log_18790_1702 15_1808908.txt – March 1, 2011 | (574) 970-0866 | 120,766 | 184594.wav "adtdebbie" |
| Paramount Media Group/"PMG-14" | call_log_18790_1711 26_1808967.txt – March 1, 2011 | (574) 970-0866 | 4,572 | 184594.wav "adtdebbie" |

33.    For every call made by EMI over the Dynamic platform, the corresponding call log will have a "disposition desc", which identifies the result of the imitated calls. The following defined terms are used therein:

      i.   "local operator" – The call was not completed because it was blocked internally.

      ii.   "local no answer" – The call was not completed because it was blocked internally.

      iii.   "do not call" – The call was not transmitted because the number was on the Federal Do Not Call List.

      iv.   "no answer" – The call was not completed because it was not answered on the other end.

      v.   "fast-busy" – The call was not completed because the recipient's number was disconnected.

ADT 001829                    CONFIDENTIAL

    vi. "answering machine" – The call was completed, but answered by an answering machine.

    vii. "local fax" – The call was not completed, because the recipients number was a known facsimile number.

    viii. "failed" – The call was not completed.

    ix. "wireless" – The call was not completed, because it was being attempted to a wireless phone number.

    x. "live person" – The call was completed and answered by a live person.

    xi. "operator" – The call was not completed, because it dialed a disconnected number.

34. A true and accurate transcription of these ADT related pre-recorded messages is attached hereto as Exhibit B.

35. The aforementioned call log files referenced in the chart in paragraph 32 are a subset of the records that Dynamic has regarding the activities of EMI with the above-listed ADT audio messages.

36. I am the duly authorized custodian of the aforementioned business records.

37. These records were prepared by the personnel of Dynamic in the ordinary course of business on or about time of the acts, conditions, or events recorded. These records were prepared in good faith, well prior to the initiation of any litigation.

38. The records were prepared in the following manner:

    i. Contract – I retrieved the client contract from our file cabinet, scanned, and emailed it.

11

ii.  Wire Transfers – I retrieved the payment memos from our file cabinet, scanned, and emailed them.

iii.  Call Detail Records – I opened the phone software, opened the old EMI account and searched for the old call logs, then had the system prepare the call logs and downloaded them. Then I compressed groups of them and either emailed or send a cd via FedEx with the .txt log files.

iv.  EMI Stored Voice Messages -- (a) I opened to folder in our system that maintains the EMI records; (b) I found the "log file" on the log file page by querying the appropriate date; (c) I selected the relevant campaign; (d) I selected the "voice files" tab; (d) I selected the Voice File Setup page and downloaded the .wav file for the campaign.

v.  Other EMI Voice Messages – (a) I opened to folder in our system that maintains the EMI records; (b) I found the "log file" on the log file page by querying the appropriate date; (c) I selected the relevant campaign; (d) I selected the "voice files" tab; (d) I selected the Voice File Setup page and downloaded the .wav file for the campaign.

39.  I have delivered all of the foregoing records by delivering a true, legible, and durable copy of the records to Anthony Paronich, counsel for the Plaintiffs, via e-mail and/or sending a CD via Federal Express to his business address.

40.  From November of 2010 through June of 2011, EMI attempted more than fifty million (50,000,000) phone calls with pre-record messages using the Dynamic platform.

ADT 001831                    CONFIDENTIAL

Sworn as true to the best of my knowledge and belief, subject to the penalties of perjury.

_____                    $7-2-12$
DANIEL BERNAL                                        Date

13

ADT 001832                                          CONFIDENTIAL

# EXHIBIT A

                CONFIDENTIAL

11/11/2010  23:38  7149136942                   FAX                              #0310 P.001/003



5839

**Dynamic Interactive Voice Broadcasting Order**
575 Anton Blvd. Suite 1150, Costa Mesa, CA 92626

**DYNAMIC**
INTERACTIVE

**CUSTOMER SERVICE AGREEMENT**



CUSTOMER *(Legal Name):* European Marketing International

Customer's Contact Person: Chris Long

Street Address: 1900 Quail St.

City, State, Zip: ~~3800~~ Newport Beach CA.92663

Country: US.

Phone 949-313-3168 Fax

Email clong@emidial.com

Dynamic Inter. Sales Rep: ___Joseph "Santino" Alcaraz___

**Dial Package Requested:**

| Quantity | Rate** | Total Amount |
|---|---|---|
| 66,666 min. | $ .015 | $ $1000.00 |

**⁎⁎** Per Minute or Per Message *(circle one)*

**Dial Type Requested** *(check "√"one)*

☑ Live Answer Calls
☐ Voice Mail Calls
☐ Live and Voice Mail Calls

Would you like a live transfer option? Yes/ No *(circle one)*
Telephone number to direct calls to: 949-313-2112

Source of telephone message *(check "√"one)*

☐ Dynamic Interactive will assist
☑ Recorded by Customer via telephone
☐ Customer's wav or mp3

Is the Customer providing the telephone list? ☑ YES ☐ NO

IF NO, Customer represents the following:
*(check "√" at least one)*

☐ Customer is a tax-exempt or nonprofit organization
☐ Calls are not to solicit investment in or purchase of a product or service

INV 5839
11-11-10

IF YES, Customer represents the following:
*(check "√" at least one)*

☐ Telephone numbers do not include any residential lines
☐ Customer is a tax-exempt or nonprofit organization

If none of the above are checked, then:
*(check "√" all that apply)*

☐ Calls are not to solicit investment in or purchase of a product or service
☑ Calls are to solicit investment in or purchase of a product or service, but to persons that ☐ have given Customer permission in writing to receive the solicitation, or ☐ who voluntarily purchased or entered into a transaction with Customer within 18 months of the date of the call, or ☐ who has inquired about Customer's products or services within 3 months of the date of the call.

Customer also represents that no person to be called has made a Customer-specific do-not-call request, or has registered his or her telephone number on a do-not-call registry of the U.S. or the state in which he or she resides.

Payment: The total Amount due $ /000 will be paid by: *(check "√" all that apply)*

☑ Wire Transfer *(preferred)* ☐ Check, drawn on U.S. bank
☐ MasterCard ☐ Visa ☐ American Express

Card Number _____

Expiration Date (mmyy)_____ cvv _____

Name on Card _____

Billing Address _____

City_____ State _____ Zip _____

Signature of Cardholder: _____

*The undersigned, as or for Customer on whose behalf the undersigned is authorized to bind, agrees to abide by all the terms and conditions of this Customer Service Agreement, including the following Terms and Conditions which are incorporated herein by this reference All Sales are final no refunds are granted.*

Authorized Signature          Date  11-5-10

Print Name  Chris Long        Phone Number 949-313-3168

Dynamic Interactive Corp.                      Fax 714.913.6942

ADT 001834                              CONFIDENTIAL

7149138942                                    FAX                              #0310 P 002/003

## TERMS AND CONDITIONS

1. This Customer Service Agreement (this "Agreement") consists of the information appearing on page 1 hereof and the following Terms and Conditions. Dynamic Interactive Corp. ("Dynamic Interactive" or "we" or "us") will provide telecommunications services ("Services") specified in this Agreement to the Customer identified on page 1 hereof (and the person who signed this Agreement on page 1 hereof, individually and collectively, the "Customer" or "you") in exchange for payment based on the rates specified herein, and the promises contained in this Agreement.

2. By signing this Agreement: you represent and warrant to us that you are at least eighteen (18) years of age or, as applicable, the age of majority in the state or province or commonwealth in which you reside and that you possess the legal right and ability to enter into this Agreement; you authorize Dynamic Interactive to debit the credit card or debit card account for payments for the Services; you represent and warrant that you are the authorized signer on this account and personally guarantee payment to Dynamic Interactive to perform verification of funds with my financial institution and any other credit investigation deemed necessary. Prepayment is non-refundable and must be used for Services.

3. The provision of Services under this Agreement is subject to advance payment by Customer. Charges on your account will be deducted as and when Services are provided from any prepayment made to Dynamic Interactive. Dynamic Interactive may cancel or re-schedule orders if Dynamic Interactive determines, in its sole discretion, that Customer's financial condition or previous payment record warrants such change. Prepayments and credits on file with Dynamic Interactive expire 365 days after payment and cannot be used thereafter.

4. Customer must notify Dynamic Interactive of any charge disputed in good faith, with supporting documentation, within thirty (30) days from the date of payment to Dynamic Interactive, or Customer will be deemed to agree to such charges and no adjustments to charges or charge-backs will be made. Customer shall continue to be responsible to pay for the undisputed charges on the invoice by the due date.

5. Customer shall pay any collection charges or other expenses, including reasonable attorney's fees, incurred by Dynamic Interactive to collect any sums due under this Agreement.

6. Customer shall pay, and gives Dynamic Interactive the right to collect in arrears, all sales, use, excise or other taxes, fees or charges of any nature whatsoever, now or hereafter imposed or assessed on Dynamic Interactive, by any U.S. government taxing authority upon or with respect to the Services provided.

7. Either party may terminate this Agreement at any time, provided you will remain responsible for payment of Services rendered prior to the effective date of termination. Dynamic Interactive may terminate this Agreement and/or suspend the provision of Services immediately for illegal, fraudulent or improper use of the Service (including without limitation Customer's use of the Services in contravention of Paragraph 9), or for non-payment, or if you violate any term(s) of this Agreement including any provisions expressly incorporated herein. Dynamic Interactive will not be liable to you or any third party should we exercise our right to discontinue Services, in whole or in part, or terminate this Agreement.

8. Customer agrees not to transmit content through use of the Services that is unlawful, threatening, abusive, harassing, libelous, deceptive, fraudulent, invasive of another's privacy, vulgar, obscene or otherwise contains objectionable material of any kind or nature. Customer is responsible for maintaining the confidentiality of, and shall not transfer sell or assign, access numbers, pass codes and user names provided by Dynamic Interactive solely for use by Customer.

9. It is the sole responsibility of Customer to use Services in accordance with all applicable local, state, federal and foreign laws and regulations, including but not limited to, laws and regulations pertaining to telemarketing and personal data privacy. Customer acknowledges that the advertising of goods, products or services by the transmission of unsolicited voice messages may be in violation of Federal, State, and foreign laws and regulations (including, without limitation, the U.S. Telephone Consumer Protection Act of 1991, as amended) (Collectively, "Applicable Laws") and may subject the advertiser to penalties. Customer also agrees to comply with Dynamic Interactive privacy policies (located at www.dynamicic.com) and terms of service (located at www.dynamicic.com) which are incorporated herein by this reference, as such policies may be amended from time to time. Compliance with this Paragraph requires, among other things, that all messages sent via the Services, in whatever medium, contain the valid name and required contact information for Customer, and that Customer shall comply promptly with any "do not call" or "do not send" request.

10. You agree to indemnify and hold harmless Dynamic Interactive and its directors, officers, employees, attorneys, and agents (each such person, including Dynamic Interactive, an "Indemnitee") from and against any losses, claims, damages and liabilities, joint or several (collectively, the "Damages"), to which such Indemnitee may become subject in connection with or otherwise relating to or arising from the Services (including, but not limited to, any breach of any of Customer's obligations or inaccuracy of any of Customer's representations hereunder or violation of or alleged violation of any applicable laws or regulations with respect to the Services, included but not limited to, any claims that Customer's use of the Services violated the rights of any third party (including those claims relating to the content provided by Customer or Dynamic Interactive use of Customer's telephone lists on behalf of Customer) or claims relating to the transmission of a telephone solicitation to a residence telephone or for any errors in data or distribution information provided by Customer), and to reimburse each Indemnitee for all fees and expenses (including the fees and expenses of counsel) as incurred in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, the "Proceedings") arising therefrom, whether or not such Indemnitee is a formal party to such Proceeding.

11. In the event Customer utilizes Services to conduct telemarketing activities or disseminates materials offering the availability of goods or products or services, Customer specifically warrants to Dynamic Interactive (i) that it will undertake all required actions necessary to comply with applicable federal, state or foreign "Do Not Call" and telemarketing registration statutes and regulations and (ii) Customer will not utilize the Services in a manner which results in a violation of any applicable laws or regulations with respect to such Services.

12. Dynamic Interactive disclaims any and all warranties, whether express or implied, relating to the services, including but not limited to warranties of merchantability or fitness for a particular purpose.

Tel 714.913.6940                          Dynamic Interactive Corp.                    Fax 714.913.6942

ADT 001835                                                              CONFIDENTIAL

7143136942                            FAX                            #0310 P.003/003

...teractive' total liability for damages arising out of or ...ting to the services or this agreement, whether to customer or any other party and regardless of the form of action, is limited to an amount equivalent to the charges by Dynamic Interactive to customer for the particular service performed by Dynamic Interactive during the six (6) month period immediately prior to the date of event, act or omission giving rise to the liability.

13. In no event shall Dynamic Interactive be liable for any special, indirect, incidental or consequential damages (including but not limited to loss of profit or other monetary loss; loss or interruption of data or computer time; alternation or erroneous transmission of data; accuracy of data; unauthorized access to or use of data processed or transmitted by, to, or through the service; program errors; or patent, trade secret or copyright infringement) even if Dynamic Interactive is advised in advance of the possibility of such damages.

14. ARBITRATION. Dynamic Interactive and you (referring to the individual executing this agreement in his/her individual capacity) and the Customer (such references include our respective subsidiaries, affiliates, predecessors in interest, successors and assigns) agree to arbitrate all disputes and claims arising out of or relating to this Agreement between Dynamic Interactive and you and/or the Company. In no event may demand for arbitration of a claim, dispute or other matter in question be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitation. All issues are for the Arbitrator to decide, including the scope of this arbitration clause, but the arbitrator is bound by the terms of this Agreement. The arbitration shall be governed by the Commercial Dispute Resolution Procedures of the American Arbitration Association, ("AAA"), as modified by this Agreement, and shall be administered by the AAA. The AAA rules are available at www.adr.org. You and the Company agree that by entering into this Agreement you and/or the Company and Dynamic Interactive are waiving the right to a trial by jury. All hearing conducted as part of the arbitration shall take place in Orange County, California. YOU, AND/OR THE COMPANY, AND DYNAMIC INTERACTIVE MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR, THE COMPANY'S OR DYNAMIC INTERACTIVE'S INDIVIDUAL CAPACITY, and not as a plaintiff, defendant, or class member in any purported class or representative proceeding. Further, you and the Company agree that the arbitrator may not consolidate proceedings or more than one individual's or entity's claims, and may not otherwise preside over any form of a representative or class proceeding. The parties agree to the following Submission to Jurisdiction. The parties hereto irrevocably and unconditionally (i) agree that the sole and exclusive venue for any suit, action, or other legal proceeding, including enforcement of the arbitration award, arising out of or relating to this Agreement or any other agreement, document or instrument delivered pursuant to, or in connection with this Agreement shall be solely and exclusively brought and maintained in courts of appropriate subject matter jurisdiction sitting in Orange County, California (either (1) in federal court, United States District Court, Central District of California, Southern Division (Santa Ana Courthouse – Ronald Regan Federal Building and U.S. Courthouse) or (2) in the Superior Court of California, County of Orange, Central Justice Center (Santa

Ana)); (ii) consent to the jurisdiction of each such court in any such suit, action or proceeding; and (iii) waive any objection which it or they may have to the laying of venue of any such suit, action, or proceeding in any of such courts.

15. General.

(i) This Agreement in no way confers any rights upon, or imposes obligations on either of the parties toward, any third party, including but not limited to any recipient of messages transmitted through the Services.

(ii) The pricing terms referenced herein shall be considered confidential information of Dynamic Interactive. Customer agrees not to disclose such confidential information to any third parties.

(iii) This Agreement constitutes the entire agreement between the parties, and supersedes all prior and contemporaneous negotiations and agreements between the parties concerning its subject matter. This writing is intended as the final, complete and exclusive statement of the terms of the Agreement between the parties and cannot be changed or terminated orally. This Agreement represents the final written expression of the understanding reached at arm's length between the parties, and neither party shall be construed as the draftsman of this document.

(iv) If any provision of this Agreement, or part thereof, is declared invalid, void or otherwise unenforceable, such provision or part thereof shall be deemed severed from this Agreement and every other provision of this Agreement shall otherwise remain in full force and effect. If any provision is held invalid as to duration, scope, activity, or subject, such provision shall be construed by limiting and reducing it so as to be enforceable to the extent compatible with applicable law.

(v) No consent to or waiver of any breach or default in the performance of any obligations hereunder shall be deemed or construed to be a consent to or waiver of any other breach or default in the performance of the same or any other obligation hereunder. Failure on the part of any party to complain of any act or failure to act of the other party, or to declare any party in default, irrespective of the duration of such failure, shall not constitute a waiver of rights hereunder, and no waiver hereunder shall be effective unless it is in writing and executed by the party waiving the breach or default hereunder.

(vi) This Agreement shall be governed by the law of the State of California without consideration to its choice of law provisions (and excluding application of the United Nations Convention on Contracts for the International Sale of Goods).

(vii) Contractor may not assign or transfer any of its rights or delegate or pledge any of its duties hereunder without prior written consent of Company. Any attempted assignment or transfer in violation of this provision shall be void.

(viii) This Agreement shall be binding upon and inure to the benefit of the parties' successors, legal representatives and permitted assigns.

(ix) The terms of the following paragraphs shall survive any termination of this Agreement: 2, 5, 6, 8-15.

(x) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

Initials:

ADT 001836                            CONFIDENTIAL

# EXHIBIT B

CONFIDENTIAL

### 162354.wav

"Hello, my name is Jennifer with ADT. Over the next few weeks we'll be in your neighborhood installing free in-home alarm systems, and we would like to offer you one too. You'll get the system, free installation, four panic buttons for police, fire, home invasion and medical dispatch. Don't leave your home unprotected against these things, with an alarm system from ADT, you'll have total protection, and because it's obvious you have an alarm, you significantly reduce the possibility of burglary or home invasion robbery. To get this free in-home system, press 1 now, and we can schedule your installation. You just pay the monthly monitoring fee. Press 1 now. Press 1 now. Press 1 and get protected. Press 1."

### 181874.wav

"Hello, my name is Jennifer with ADT. Over the next few weeks we'll be in your neighborhood installing free in-home alarm systems, and we would like to offer you one too. You'll get the system, free installation, four panic buttons for police, fire, home invasion and medical dispatch. Don't leave your home unprotected against these things, with an alarm system from ADT, you'll have total protection, and because it's obvious you have an alarm, you significantly reduce the possibility of burglary or home invasion robbery. To get this free in-home system, press 1 now, and we can schedule your installation. You just pay the monthly monitoring fee. Press 1 now. Press 1 now. Press 1 and get protected. Press 1."

### 184594.wav

"Hello, my name is Jennifer with ADT. Over the next few weeks we'll be in your neighborhood installing free in-home alarm systems, and we would like to offer you one too. You'll get the system, free installation, four panic buttons for police, fire, home invasion and medical dispatch. Don't leave your home unprotected against these things, with an alarm system from ADT, you'll have total protection, and because it's obvious you have an alarm, you significantly reduce the possibility of burglary or home invasion robbery. To get this free in-home system, press 1 now, and we can schedule your installation. You just pay the monthly monitoring fee. Press 1 now. Press 1 now. Press 1 and get protected. Press 1."

### 184595.wav

"Hello, my name is Jennifer with ADT. Over the next few weeks we'll be in your neighborhood installing free in-home alarm systems, and we would like to offer you one too. You'll get the system, free installation, four panic buttons for police, fire, home invasion and medical dispatch. Don't leave your home unprotected against these things, with an alarm system from ADT, you'll

have total protection, and because it's obvious you have an alarm, you significantly reduce the possibility of burglary or home invasion robbery. To get this free in-home system, press 1 now, and we can schedule your installation. You just pay the monthly monitoring fee. Press 1 now. Press 1 now. Press 1 and get protected. Press 1,"

ADT 001839                    CONFIDENTIAL