**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VISHVA DESAI and PHILIP J. CHARVAT,<br>on behalf of themselves and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 11 C 1925 |
| ADT SECURITY SYSTEMS, INC., | ) ) | Judge Bucklo |
| Defendant. | ) ) | |
| ------------------------------------------------------------- | ) | |
| ADT SECURITY SYSTEMS, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| MR. PETE TOLMAN; LEADS DIRECT<br>MARKETING; VOICE TEL CORP.; MR.<br>CHRISTOPHER LONG; EMI, INC.; CITY VIP, LLC;<br>JMB ENTERPRISES; DIRECT SAVINGS USA, INC.;<br>MR. OSCAR MONTENEGRO; EVERSAFE<br>SECURITY SYSTEMS, INC.; SAFE STREETS USA,<br>LLC; PARAMOUNT MEDIA GROUP; THE<br>ELEPHANT GROUP, INC.; and UNKNOWN JOHN<br>DOE DEFENDANTS I THROUGH XX, | ) ) ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) | |
| ------------------------------------------------------------- | ) | |
| SAFE STREETS USA, LLC, as successor to<br>EVERSAFE SECURITY SYSTEMS, INC., | ) ) | |
| Cross-Claimant and   Third-Party Plaintiff | ) ) | |
| v. | ) ) | |
| DIRECT SAVINGS USA, INC.; MR. OSCAR<br>MONTENEGRO; DIRECT SAVINGS USA, | ) ) ) | |
| Cross-Defendants and<br>Third-Party Defendants.<br>_____ | ) ) ) | |

**ELEPHANT GROUP INC.'S RESPONSE IN OPPOSITION TO**
**ADT'S MOTION TO STRIKE ANSWER AND**
**MOTION FOR LEAVE FILE TO FILE AN ANSWER *INSTANTER***

NOW COMES Third Party Defendant, Elephant Group, Inc. ("EG") by and through undersigned counsel, and hereby responds to Third Party Plaintiff, ADT Security Services, Inc.'s ("ADT's") motion to strike EG's answer and, further, moves for leave to file its answer *instanter*. In support of this motion, EG states as follows:

**I.      Introduction**

EG admittedly filed its answer to ADT's corrected amended third party complaint late due to a mistake in failing to calendar the deadline following the Court's ruling on EG's motion to dismiss. EG regrets this harmless oversight. Nevertheless, even though the deadline for filing an answer had passed, ADT and EG have continued to actively litigate this matter and operated under the presumption that an answer had been filed in which EG denied all material allegations of liability. Given that EG has participated in this litigation in good faith, that there is absolutely no prejudice suffered by ADT, and the late filing of the answer will not negatively impact or delay these proceedings in any fashion, EG respectfully requests that the motion to strike be denied and that EG be granted leave to file an answer *instanter*.

**II.     Procedural Background**

Plaintiffs initiated this lawsuit against ADT on March 21, 2011 bringing claims pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). *Doc.1*. On October 28, 2011, ADT filed a third-party complaint against EG and numerous other entities. *Doc. 121*. On January 31, 2012, EG moved dismiss the third party complaint pursuant to Fed.R.Civ.P.12(b)(6). *Doc. 169*. While the motion remained pending before the Court, the parties continued to actively engage in written and oral discovery. Additionally, the parties

participated in three different day-long mediation sessions with mediator Professor Eric Green, a co-founder of JAMS/Endispute who now mediates complex cases through his Boston firm, Resolutions LLC. EG and its attorneys attended these mediation sessions. The parties continued to update the Court on the status of the settlement discussions. *See, Doc. 202*. On September 26, 2012, the Court entered an Order granting EG's motion to dismiss in part and denying it in part. *Doc. 217*. The Court dismissed ADTs claims for common law indemnification and contribution, and denied the motion as it pertained to the claim for contractual indemnification. *Id*. Following the entry of the opinion, the 14 day deadline to file an answer to the surviving claims pursuant to Fed.R.Civ.P. 12(a)(4)(A) was inadvertently not calendared. *See Declaration attached as Exhibit 1*, ¶5. As a result, the deadline to file an answer passed and an answer to ADT's third party complaint was not filed at that time. *Id*.

The same day the order on the motion to dismiss was entered, the parties reported to Magistrate Judge Keys that "after several private mediation sessions, they are very close to resolution of the case." *Doc. 215*. The parties continued to focus on a possible settlement of the case and continued to report to this Court and Judge Keys on their progress. On November 9, 2012, the parties informed Judge Keys "that their settlement negotiations have progressed, an agreement is near, and that they are working diligently in trying to resolve this case prior to the next status hearing." *Doc. 219*. On December 10, 2012 a similar report to Judge Keys was given. *Doc. 222*. A class wide settlement was ultimately finalized that resolved plaintiffs' claims against ADT. The final order with regard to the settlement was entered on June 21, 2013. *Doc. 243*. During this entire time period, ADT and EG continued to discuss a resolution of their third party claims, including discussions between the lawyers and additional in-person meetings

between representatives of the parties, and the parties continued to report their progress to the Court. Unfortunately, ADT and EG were unable to reach a settlement of the third party claims.

On January 14, 2014, almost a year and a half after the Court's decision on EG's motion to dismiss, ADT served comprehensive written discovery requests on EG. *Exhibit 1, ¶* 14. EG also served comprehensive written discovery requests on ADT. *Id.* ADT and EG exchanged written discovery responses and participated in 8 separate days of depositions. *Id. at ¶* 15. During this entire time period, both ADT and EG litigated the case as if EG had in fact filed its answer and the merits of the claim were at issue. The material allegations were contested and both ADT and EG developed evidence in support of their respective positions. Both ADT and EG used written and oral discovery to develop evidence that would support their respective cases and anticipated dispositive motions. Those dispositive motions were filed by both parties on July 14, 2014. In its motion, EG advanced the same essential arguments that have been made both during discovery and in settlement discussions – that the calls underlying this case were not caused by either EG or any affiliate of EG. ADT cannot conceivably deny that it was aware that EG was challenging the material allegations in this case (as EG has done since first being served with the third party complaint by filing a motion to dismiss, through discovery and culminating in the summary judgment motion).

## III. EG's Failure to Formally File An Answer Is Harmless

While EG's answer to ADT's third party complaint was due 14 days after this Court's decision on EG's motion to dismiss, the Federal Rules allow for the extension of time to file the answer after the expiration of the specified period "where the failure to act was the result of excusable neglect." *Fed.R.Civ.P. 6(b)*. In determining whether a late filing is the result of excusable neglect, courts must look to whether there will be prejudice to the opposing party, the

4

effect on the judicial proceedings, the reason for the delay, and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). This Court should allow the late filing of EG's answer because the failure to file the answer previously was the result of excusable neglect, there is no prejudice to ADT, the judicial proceedings will not be adversely affected as the briefing on the cross-dispositive motions can continue without need of any delay and EG has acted promptly and in good faith to immediately correct the oversight.

The determination of excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. 380, 395. Significantly, a finding of excusable neglect "is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Id.* at 391. Rather, it extends to cases in which the delay is "caused by inadvertence, mistake, or carelessness." *Id.* at 388. Here, undersigned concedes that the failure to file the answer until now was an inadvertent mistake and sincerely regrets the oversight. Nevertheless, when analyzed under the *Pioneer* factors, the Court should deny ADT's motions to strike the answer and grant EG leave to file a late answer in the interest of justice and equity.

### A.   ADT Suffered No Prejudice Because of the Late Filing of an Answer

The first factor in the *Pioneer* analysis weighs strongly in favor of EG. ADT has suffered no prejudice whatsoever due to the late filing of the answer in this matter. Any claim to the contrary rings hollow in light of the actions of the parties. Since the entry of the Court's order on EG's motion to dismiss, ADT and EG have worked cooperatively in this litigation in both trying to reach a settlement of the claims and engaging in extensive written and oral discovery into the merits of the claims.

ADT's allegation that it somehow relied on EG's decision not to contest the allegations and built its discovery around that understanding is wholly without merit and conveniently self-serving. ADT served comprehensive written discovery on EG directed to the merits of their claims and deposed three current or former employees of EG, including an EG corporate representative. Notably, the deposition notice issued to EG pursuant to Fed.R.Civ.P 30(b)(6) identified multiple merit based topics of inquiry on which EG was asked to designate a representative to testify on its behalf. Each of the topics was directly related to the substance of ADT's third party claims against EG and included:

1. The Agreement between EG and ADT.

2. EG's marketing of ADT products and services.

3. EG's sales of ADT products and services.

4. EG's telemarketing compliance.

5. The relationship between EG and Paramount Media Group ("Paramount"), including but not limited to how EG decided to contract with Paramount, the agreement with Paramount, and monitoring and supervision of Paramount.

6. Paramount's marketing of ADT products and services.

7. Paramount's telemarketing compliance.

8. The relationship between EG and EMI, Inc.

*See ADT's Rule 30(b)(6) deposition notice attached as Exhibit 2.*

The deposition of EG's corporate representative proceeded as scheduled and ADT's counsel explored each area of the above referenced topics in great detail over the course of nearly six hours. *See Deposition of Daphne Fernandes attached as Exhibit 3.* ADT would have had no reason to depose the corporate representative on any of the above referenced issues had it

truly believed that EG was not contesting the allegations in its complaint. Obviously, ADT deposed EG's corporate representative to explore the disputed issues of liability.

ADT also deposed EG's former chief development officer, Reid Shaprio, regarding the merits of the indemnity claim. ADT served a subpoena on Mr. Shapiro that included a rider commanding him to produce e-mails, phone texts, audio and video recordings and electronic and paper documents in his possession and control that relate in any way to 21 different subjects. *See Shapiro Notice of Subpoena attached as Exhibit 4.* These subjects were directed to the merits of ADT's contractual indemnity claims and the allegations in its third party complaint. *Id.* The deposition proceeded and ADT interrogated Mr. Shapiro on an extremely wide range of topics.

ADT also deposed EG's former chairman, Joseph Bamira, again focusing on the merits of their third party claims and the allegations in its third party complaint. *Exhibit 1*, ¶ 15. In addition to the depositions of EG representatives, ADT presented 3 of their own employees for depositions, two of which were presented as corporate representatives. *Id.*

Clearly, ADT focused its discovery on the merits of the contractual indemnity claim and the contested allegations in its third party complaint. These depositions and the written discovery that preceded them would have been wholly irrelevant and unnecessary for ADT if it in fact relied upon EG's failure to respond to the complaint as they now assert. Had ADT truly believed the allegations were admitted, it would have had no reason to take the depositions of three EG representatives and present three of their own employees for deposition. In short, ADT conducted extensive discovery into areas that would only be relevant if EG had not admitted the allegations in ADT's third party complaint. In fact, had ADT truly believed that EG was not challenging the merits of the claim, as ADT now claims, then it begs two questions: first, why

did EG file a motion to dismiss all claims? Second, why did ADT not move to limit discovery to just damages and instead agree to participate in liability discovery?

Now, in this motion to strike ADT suggests it will need additional discovery to "test the answers' allegations." *Doc. 275, p.4.* This is nothing but a red herring because the answer makes no allegations directed at ADT to test. Rather, the answer contains a denial of ADT's material allegations that EG is liable to them for their claim of contractual indemnity. Of course, ADT has known that EG denied liability from the start. ADT has conducted extensive discovery into their claims which are based upon their written agreement with EG. That discovery is complete and there is nothing contained in the answer that would necessitate additional discovery.

There is absolutely no reason to believe that ADT was prejudiced by EG's answer being filed late. The parties actively engaged in oral and written discovery, worked up their respective cases, and prepared dispositive motions after the answer was technically due. ADT and EG continued to litigate this matter as if the answer had already been filed and EG had denied all material allegations of liability. The record establishes that ADT has suffered no prejudice whatsoever.

## B. THE DELAY IN FILING THE ANSWER WILL NOT DELAY THE PROCEEDINGS

The delay in the filing EG's answer to the complaint will not delay these proceedings. As acknowledged by ADT, discovery in this matter has recently been completed and the parties have filed their own dispositive motions. No additional discovery is required for the Court to consider the dispositive motions and the parties have obtained all the evidence necessary to support their respective motions. There is nothing contained in EG's answer that would require the parties to reopen discovery. As the Court may recall, ADT and EG reported on June 3, 2014 that they were working together to complete remaining discovery and advised the Court of their

intentions to file dispositive motions. *Doc. 273*. That discovery is now complete and the filing of EG's answer does nothing more than confirm that EG denies ADT's allegations of liability and confirm the pleadings to the discovery, something ADT has known all along.

A similar situation was addressed in *Auto Owners Ins. Co. v. LA Oasis, Inc.*, 2005 WL 1313684 (N.D. Ind. 2005). In *Auto Owners*, the defendants failed to file an answer to the complaint for more than eight months because of a "simple mistake." *Auto Owners*, 2005 WL 1313684, *3. In denying plaintiff's motion strike the late answer, the *Auto Owners* court stated "[t]he *Pioneer* court contemplated inadvertence as one aspect of excusable neglect. In the absence of any articulable harm to Auto Owners, the court will not strike the tardy answer, even though it is eight months late." *Id.* The court further found that "the length of delay in filing an answer also has had no impact on the proceedings. Auto Owners had ample time to file a motion for default judgment in the absence of an answer from La Oasis and Randhawa, but it chose to file a motion for summary judgment on the legal question of coverage instead." *Id.*

The situation here is no different. The delay in filing EG's answer was a mistake, but it has had no impact on the proceedings. Like the plaintiff in *Auto Owners*, ADT could have moved for a default judgment against EG in the absence of answer at any time, but it chose not do so. In fact, ADT did move for default judgment against numerous other third party defendants. *See Docs. 107-113, 127-128*. With regard to EG, however, ADT simply proceeded with the litigation and operated under the presumption that EG was denying its allegations. ADT and EG continued to report to the Court that they were working together on discovery and advised the Court of their intentions to file dispositive motions. *Doc. 273*. When viewed in context, at best ADT, like EG, is guilty of an oversight related to the deadline for EG's answer. At its worse, ADT recognized that EG had missed a deadline, and is now seeking a determination of the merits of

the case not based on the facts developed during discovery, but on procedural technicalities. The interests of justice require that this case be resolved on the merits. *Sun v. Board of Trustees of University of IL*, 473 F.3d 799, 811 (7th Cir 2007) ("This Circuit has a well established policy favoring a trial on the merits over a default judgment.")

While there was admittedly a long delay in filing the answer, an adverse impact on these proceedings is non-existent. The parties have completed discovery into all areas relevant to the third party claims for indemnity and dispositive motions have been filed. There is nothing in the answer that would require the reopening of discovery or delay these proceedings in fashion.

### C.      EG Acted in Good Faith

The reason for the delay was an unfortunate mistake. Nevertheless, EG gained no tactical advantage by waiting to file an answer and simply operated under the assumption that an answer denying ADT's material allegations had been filed. EG acted in good faith at all times litigating this matter and actively engaged with ADT on all aspects of the litigation. At no time during the course of this litigation did ADT object or raise any issues regarding EG's failure to file an answer and both parties proceed as if an answer had been timely filed.

On the issue of good faith, the case of *Sweetwater Investors, LLC v. Sweetwater Apartments Loan, LLC*, 2011 WL 1545076 (M.D.Ala. 2011) is instructive. In *Sweetwater*, defendants failed to timely file their answer following the entry of an order denying their motion to dismiss. Defendants maintained that they inadvertently failed to calendar the fourteen day deadline provided in Fed.R.Civ.P. 12(a)(4)(A) due to an oversight and they were unaware that the deadline had passed until plaintiff filed a Motion for Summary Judgment. *Id. at *5*. Significantly, the court noted that although the answer was not timely filed, "the litigation was far from stagnant." *Id. at *1*. Analyzing the *Pioneer* factors, the court found that defendants

10

acted in good faith in large part because the continued to actively litigate the case. The court found "no suggestion that counsel for Defendants purposefully ignored the deadline for serving answers, as established in *Fed.R.Civ.P. 12(a)(4)(A)*, or purposefully refused to serve an answer to the amended complaint." *Id. at *6.* The court went on to state that "while the attorneys for Defendants neglected a deadline for a period of time, no argument has been made that they neglected this case altogether. To the contrary, as stated elsewhere in this opinion, the attorneys on both sides have been very busy pursuing discovery and settlement negotiations. On this record, the court finds that *Pioneer's* good faith factor weighs in Defendants' favor." *Id.* Like the Defendants in *Sweetwater*, there is no suggestion here that EG purposefully ignored the deadline for serving its answer. While there was admittedly a long delay in filing the answer, no argument can be made that EG neglected the litigation of this case.

A similar result was reached in *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848 (11th Cir.1996). In *Cheney*, notwithstanding that counsel's "failure to comply with the filing deadline [was] attributable to negligence," the Eleventh Circuit found "no indication that counsel deliberately disregarded [the local rule's filing deadline]," and there was no argument that counsel "intended to delay the trial, or that he sought an advantage by filing late." *Cheney*, 71 F.3d at 850. "The nonfiling was simply an innocent oversight by counsel." *Id.* Accordingly, the court found "no bad faith that would warrant forfeiture of [the plaintiff's] right to a full trial of his cause." *Id.*

Here, the record establishes that EG has acted diligently and in good faith with regard to every aspect of the litigation. EG has cooperated with ADT pursuing discovery and engaging in settlement negotiations. Counsel for EG have traveled to Fort Lauderdale, Florida on multiple occasions for depositions and in person settlement discussions. Six witnesses have been deposed

11

and thousands of documents have been exchanged. EG has attended all hearings before this Court and actively participated in all aspects of the litigation, both in cooperation in defending the plaintiffs' claims and adversely in continued litigation of the remaining indemnity claim. At no time did ADT move to default EG, or bring the failure to answer to the Court's attention. EG's failure to timely answer provided it with no tactical advantage and there was no intention to take advantage of ADT, interfere with judicial decision making, or otherwise manipulate the legal process.

## IV.    Conclusion

The determination of whether to find excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding [a] party's omission." *Pioneer*, 507 U.S. at 395. Considering the absence of prejudice to ADT and the lack of impact on efficient judicial administration, combined with the good faith of counsel, all factors weigh in favor of a finding of excusable neglect under Rule 6(b)(1)(B). A just outcome to this case should be decided based on substantive arguments and evidence presented by the parties. This case should be decided on the merits instead of on the technical mistake on the part of any party.

WHEREFORE, Elephant Group, Inc. requests that the Court enter an Order denying ADT's motion to strike and granting Elephant Group leave to file its answer to the third party complaint *instanter* and for all other just and equitable relief.

Respectfully submitted,


/s/ Daniel W. Pisani
James K. Schultz
Daniel W. Pisani
Sessions Fishman Nathan & Israel, LLC
55 West Monroe Street, Suite 1120
Chicago, Illinois 60603
Telephone:  (312) 578-0990
Facsimile: (312) 578-0991
jschultz@sessions-law.biz
dpisani@sessions-law.biz

*Attorneys for Elephant Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 15, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.


<u>/s/ Daniel W. Pisani</u>